Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (MT-7572)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200
Attorneys for Defendants Noreen Diaz and
United Orthopaedic Appliances Co., Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BEVERLY HERTZOFF, EDWIN HERTZOFF,      :    **DEFENDANT NOREEN DIAZ'**
and CLAYTON HERTZOFF,                   :    **DECLARATION IN SUPPORT OF**
                                        :    **DEFENDANTS' MOTION TO**
                 Plaintiffs,            :    **DISMISS**
                                        :
    -against-                           :    07 CV 3157 (CM)(MHD)
                                        :
NOREEN DIAZ and UNITED ORTHOPAEDIC      :
APPLIANCES CO., INC.                    :
                                        :
                 Defendants.            :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK     )
                      )ss.:
COUNTY OF NEW YORK    )

    NOREEN DIAZ, being duly sworn, deposes and says:

    1.    I am a defendant in the captioned proceeding and am the current sole shareholder

and President of defendant United Orthopaedic Appliances Co., Inc. ("UOA"). I submit this

affidavit for the limited purpose of providing the Court with true and complete copies of two

documents referenced by and incorporated into Plaintiffs' Amended Complaint in this

proceeding, but not attached to that pleading.

510419.01

2.      The first document, annexed hereto as Exhibit 1, is the parties' Agreement of

Lease, dated August 23, 2006, and relied upon by Plaintiffs in support of their allegations

contained in Paragraph 41 of the Amended Complaint.

3.      The second document, annexed hereto as Exhibit 2, is a letter from me to Plaintiff

Clayton Hertzoff dated May 22, 2007, and relied upon by Plaintiffs in support of their allegations

contained in Paragraphs 25, 26, and 39 of the Amended Complaint.

4.      Because Defendants' Motion to Dismiss certain of Plaintiffs' claims cannot be

fully understood without providing the Court with copies of the documents referenced in, but not

appended to, the Amended Complaint, they are respectfully provided with this Declaration for

the Court's convenience and consideration.

_____
NOREEN DIAZ

Sworn to before me
this _13_ day of July, 2007

_____
Notary Public

FREDERICK MARSHALL
Notary Public. State of New York
No. 4976533
Qualified in Nassau County
Term Expires Jan. 14, 2011

510419.01

**STANDARD FORM OF OFFICE LEASE**
The Real Estate Board of New York, Inc.

*AGREEMENT OF LEASE*, made as of this 23 day of AUGUST, 2006, between EDWIN HERTZOFF and BEVERLY HERTZOFF, individuals residing at Ripling Brook Dr. Short Hills, NJ, party of the first part, hereinafter referred to collectively as "Owner" or "Landlord", and UNITED ORTHOPAEDIC APPLIANCES CO., INC., a New York corporation, having an address at 2094 Front Street, East Meadow, New York 11554, party of the second part, hereinafter referred to as "Tenant".

*WITNESSETH:* Owner hereby leases to Tenant and Tenant hereby hires from Owner the premises (hereinafter collectively called "premises", "demised premises", "Premises" or "Demised Premises") consisting of the entire first (1st) and second (2nd) floors and the entire basement space, substantially shown as hatched on the floor plans annexed hereto as Exhibit A and made a part hereof, in the building known as 791 Broadway, New York, New York (hereinafter called "building" or "Building"), for the term (hereinafter called "term" or "Term"), to commence on the date hereof (the "Commencement Date"), and to end on the last day of the month on which the two (2) year anniversary of Commencement Date occurs (the "Expiration Date"), or until such term shall sooner cease and expire as hereinafter provided, both dates inclusive, and at an annual rental rate (hereinafter called "rent", "fixed rent" or "fixed annual rent"), as set forth in Article 37 hereof, together with all other sums of money as shall become due and payable by Tenant under this Lease (hereinafter called "additional rent" or "Additional Rent"), which Tenant agrees to pay in lawful money of the United States by check drawn on a bank or trust company which is a member of the New York Clearing House Association, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment on the execution hereof.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy:** 2. Tenant shall use and occupy the demised premises for office for the production, fitting and sale of prosthetics, orthotics and other similar items and for any other legal use.

**Tenant Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workman's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within thirty days thereafter, at Tenant's expense, by payment or filing the bond required by law. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's right thereto and to have them removed by Tenant, in which event the same shall be removed from the premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this Article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed, by Tenant at the end of the term remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner, at Tenant's expense.

**Maintenance and Repair:** 4. Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein. Tenant shall be responsible for all damage or injury to the demised premises or any other part of the building and the systems and equipment thereof, whether requiring structural or nonstructural repairs caused by or resulting from carelessness, omission, neglect or improper conduct of Tenant, Tenant's subtenants, agents, employees, invitees or licensees, or which arise out of any work, labor, service or equipment done for or supplied to Tenant or any subtenant or arising out of the installation, use or operation of the property or equipment of Tenant or any subtenant. Tenant

shall also repair all damage to the building and the demised premises caused by the moving of Tenant's fixtures, furniture and equipment. Tenant shall promptly make, at Tenant's expense, all repairs in and to the demised premises for which Tenant is responsible, using only the contractor for the trade or trades in question, selected from a list of at least two contractors per trade submitted by Owner. Any other repairs in or to the building or the facilities and systems thereof for which Tenant is responsible shall be performed by Owner at the Tenant's expense. Owner shall maintain in good working order and repair the exterior and the structural portions of the building, including the structural portions of its demised premises, and the public portions of the building interior and the building plumbing, electrical, heating and ventilating systems (to the extent such systems presently exist) serving the demised premises. Tenant agrees to give prompt notice of any defective condition in the premises for which Owner may be responsible hereunder. There shall be no allowance to Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner or others making repairs, alterations, additions or improvements in or to any portion of the building or the demised premises or in and to the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall not be entitled to any setoff or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this Lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 shall not apply in the case of fire or other casualty which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance, Floor Loads:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters, Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, whether or not arising out of Tenant's use or manner of use thereof, (including Tenant's permitted use) or, with respect to the building if arising out of Tenant's use or manner of use of the premises or the building (including the use as permitted under the lease). Nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has, by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant may, after securing Owner to

**Subordination:**

**Property Loss, Damage Reimbursement Indemnity:**

**Destruction, Fire and Other Casualty:**

**Eminent Domain:**

**Assignment, Mortgage, Etc.:**

**Electric Current:**

**Access to Premises:**

Twelve

Rider to be added if necessary.

**Vault, Vault Space, Area:** 14. No Vault, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All Vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:** 15. Tenant will not at any time use or occupy the demised premises in violation of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations, whether or not of record.

**Bankruptcy:** 16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Owner by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of the term demised and/or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement of a case in bankruptcy under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If such premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:** 17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under §235 of Title 11 of the U.S. Code (bankruptcy code); or if Tenant shall fail to move into or take possession of the premises within thirty (30) days after the commencement of the term of this lease, then, in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith, proceed to remedy or cure such default, then Owner may serve a written five (5) days' notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days this lease and the term thereunder shall end and expire as fully and definitely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required; then and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives

the service of notice of intention to re-enter or to institute legal proceedings to that end. If Tenant shall make default hereunder prior to the date fixed as the commencement of any renewal or extension of this lease, Owner may cancel and terminate such renewal or extension agreement by written notice.

**Remedies of Owner and Waiver of Redemption:** 18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Owner to collect the deficiency for any subsequent month by a similar proceeding. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability hereunder as aforesaid. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rents collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event of Owner obtaining possession of demised premises, by reason of the violation by Tenant of any of the covenants and conditions of this lease, or otherwise.

**Fees and Expenses:** 19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions of any article of this lease, after notice required and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder. If Owner, in connection with the foregoing or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorneys' fees, in instituting, prosecuting or defending any action or proceeding, and prevails in any such action or proceeding then Tenant will reimburse Owner for such sums so paid or obligations incurred with interest and costs. The foregoing expenses incurred by reason of Tenant's default shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefor. If Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner, as damages.

**Building Alterations and Management:** 20. Owner shall have the right at any time without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets or other public parts of the building and to change the name, number or designation by which the building may be known. There shall be no allowance to Tenant for diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner or other Tenants making any repairs in the building or any such alterations, additions and improvements. Furthermore, Tenant shall not have any claim against Owner by reason of Owner's imposition of such controls of the manner of access to the building by Tenant's social or business visitors as the Owner may deem necessary for the security of the building and its occupants.

**No Representations by Owner:** 21. Neither Owner nor Owner's agents have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement

Case 1:07-cv-03457-CM-MHD    Document 152    Filed 07/13/2007    Page 5 of 10

building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Services Provided by Owner:** 29. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease, for the curing of such default, Owner shall provide: (a) necessary elevator facilities on business days from 8 a.m. to 6 p.m. and have one elevator subject to call at all other times; (b) heat to the demised premises when and as required by law, on business days from 8 a.m. to 6 p.m.; (c) water for ordinary lavatory purposes, but if Tenant uses or consumes water for any other purposes or in unusual quantities (of which fact Owner shall be the sole judge), Owner may install a water meter at Tenant's expense which Tenant shall thereafter maintain at Tenant's expense in good working order and repair to register such water consumption and Tenant shall pay for water consumed as shown on said meter as additional rent as and when bills are rendered; (d) cleaning service for the demised premises on business days at Owner's expense provided that the same are kept in order by Tenant. If, however, said premises are to be kept clean by Tenant, it shall be done at Tenant's sole expense. ... will furnish the same at Tenant's expense.

RIDER to be added in respect to rates and conditions ...

**Captions:** 30. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provisions thereof.

**Definitions:** 31. The term "office", or "offices", wherever used in this lease, shall not be construed to mean premises ...

**Adjacent Excavation-Shoring:** 32. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 33. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with, the Rules and Regulations ...

---

**End of Term:** 22. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear and damages which Tenant is not required to repair as provided elsewhere in this lease excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this Lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 23. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 31 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 24. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for Owner's inability) to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in condition required by this lease. ...

**No Waiver:** 25. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations, set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of said premises, and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:** 26. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any proceeding or action for possession including a summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding including a counterclaim under Article 4 except for statutory mandatory counterclaims.

**Inability to Perform:** 27. This Lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment, fixtures, or other materials if Owner is prevented or delayed from so doing by reason of strike or labor troubles or any cause whatsoever including, but not limited to, government preemption or restrictions or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions which have been or are affected, either directly or indirectly, by war or other emergency.

**Bills and Notices:** 28. Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the

---

hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

Rider to be added if necessary.

In this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

Security: 34. Tenant has deposited with Owner the sum of $_____ as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security; and Tenant agrees to look to the new Owner solely for the return of said security, and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Owner nor its successor or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

Estoppel Certificate: 35. Tenant, at any time, and from time to time, upon at least 10 days' prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this Lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates to which the rent and additional rent have been paid, and stating whether or not there exists any default by Owner under this Lease, and, if so, specifying each such default.

Successors and Assigns: 36. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building, for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

☞ Space to be filled in or deleted.

In Witness Whereof, Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:

_EDWIN HERTZOFF_

_BEVERLY HERTZOFF_

UNITED ORTHOPAEDIC APPLIANCES CO., INC.

Witness for Tenant:

By: _____
Name: Abreen Diaz
Title: President

SEE RIDER ANNEXED HERETO CONTAINING ARTICLES 37 THROUGH ___48___ HEREOF.

ACKNOWLEDGEMENTS

CORPORATE OWNER
STATE OF NEW YORK,        ss.:
County of

On this _____ day of _____, 19____,
before me personally came
to me known, who being by me duly sworn, did depose and say that
he resides in
that he is the
the corporation described in and which executed the foregoing
instrument, as OWNER; that he knows the seal of said corporation;
that the seal affixed to said instrument is such corporate seal; that it was
so affixed by order of the Board of Directors of said corporation,
and that he signed his name thereto by like order.

CORPORATE TENANT
STATE OF NEW YORK,        ss.:
County of

On this _____ day of _____, 19____,
before me personally came
to me known, who being by me duly sworn, did depose and say that
he resides in
that he is the
the corporation described in and which executed the foregoing
instrument, as TENANT; that he knows the seal of said corporation;
that the seal affixed to said instrument is such corporate seal; that it was
so affixed by order of the Board of Directors of said corporation,
and that he signed his name thereto by like order.

INDIVIDUAL OWNER
STATE OF NEW YORK,        ss.:
County of

On this _____ day of _____, 19____,
before me personally came
to be known and known to me to be the individual
described in and who, as OWNER, executed the foregoing instru-
ment and acknowledged to me that                    he
executed the same.

INDIVIDUAL TENANT
STATE OF NEW YORK,        ss.:
County of

On this _____ day of _____, 19____,
before me personally came
to be known and known to me to be the individual
described in and who, as TENANT, executed the foregoing                    he
instrument and acknowledged to me that
executed the same.

## GUARANTY

**FOR VALUE RECEIVED,** and in consideration for, and as an inducement to Owner making the within lease with Tenant, the undersigned guarantor to Owner, Owner's successors and assigns, the full performance and observance of all the covenants, conditions and agreements herein provided to be performed and observed by Tenant, including the "Rules and Regulations" as therein provided, without requiring any notice of non-payment, non-performance, or proof, or notice, or demand, whereby to charge the undersigned therefor, all of which the undersigned hereby expressly waives and expressly agrees that the validity of this agreement and the obligation of the guarantor hereunder shall in no way be terminated, affected or impaired by reason of the assertion by Owner against Tenant of any of the rights or remedies reserved to Owner pursuant to the provisions of the within lease. The undersigned further covenants and agrees that this guaranty shall remain and continue in full force and effect as to any renewal, modification or extension of this lease and during any period when Tenant is occupying the premises as a "statutory tenant." As a further inducement to Owner to make this lease and in consideration thereof, Owner and the undersigned agree that in any action or proceeding brought by either Owner or the undersigned against the other on any matters whatsoever arising out of, under, or by virtue of the terms of this lease or of this guaranty that Owner and the undersigned shall and do hereby waive trial by jury.

Dated: .................... 19 ........

Guarantor ....................

Witness ....................

Guarantor's Residence ....................

Business Address ....................

Firm Name ....................

STATE OF NEW YORK } ss.:
COUNTY OF }

On this ........ day of ................ , 19...., before me personally came ................ to me known and known to me to be the individual described in, and who executed the foregoing Guaranty and acknowledged to me that he executed the same.

.................... Notary

---



## IMPORTANT - PLEASE READ

### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 33.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress or egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any Tenant or by jobbers or others in the delivery or receipt of merchandise, any hand trucks, except those equipped with rubber tires and side guards. If said premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalk and curb in front of said premises clean and free from ice, snow, dirt and rubbish.

2. The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed and no sweepings, rubbish, rags, acids or other substances shall be deposited therein, and the expense of any breakage, stoppage, or damage resulting from the violation of this rule shall be borne by the Tenant who, or whose clerks, agents, employees or visitors, shall have caused it.

3. No carpet, rug or other article shall be hung or shaken out of any window of the building and no Tenant shall sweep or throw or permit to be swept or thrown from the demised premises any dirt or other substances into any of the corridors or halls, elevators, or out of the doors or windows or stairways of the building and Tenant shall not use, keep or permit to be used or kept any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors, and/or vibrations, or interfere in any way with other Tenants or those having business therein, nor shall any bicycles, vehicles, animals, fish, or birds be kept in or about the building. Smoking or carrying lighted cigars or cigarettes in the elevators of the building is prohibited.

4. No awning or other projection shall be attached to the outside walls of the building without the prior written consent of Owner.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Tenant on any part of the outside of the demised premises or the building or on the inside of the demised premises if the same is visible from the outside of the premises without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the premises. In the event of the violation of the foregoing by any Tenant, Owner may remove same without any liability, and may charge the expense incurred by such removal to Tenant or Tenants violating this rule. Interior signs on doors and directory tablet shall be inscribed, painted or affixed for each Tenant by Owner at the expense of such Tenant, and shall be of a size, color and style acceptable to Owner.

6. No Tenant shall mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. No Tenant shall lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used an interlining of builder's deadening felt shall be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. No additional locks or bolts of any kind shall be placed upon any of the doors or windows by any Tenant, nor shall any changes be made in existing locks or the mechanism thereof. Each Tenant must, upon the termination of his Tenancy, restore to Owner all keys of stores, offices and toilet rooms, either furnished to, or otherwise procured by, such Tenant, and in the event of the loss of any keys, so furnished, such Tenant shall pay to Owner the cost thereof.

8. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations of the lease or which these Rules and Regulations are a part.

9. Canvassing, soliciting and peddling in the building is prohibited and each Tenant shall cooperate to prevent the same.

10. Owner reserves the right to exclude from the building all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom any Tenant requests same in writing. Each Tenant shall be responsible for all persons for whom he requests such pass and shall be liable to Owner for all acts of such persons. Tenant shall not alter any lock or install a new or additional lock or bolt on any door of its premises without furnishing Owner with a key therefor. Tenant, upon the termination of its tenancy, shall deliver to Owner the keys of all doors which have been furnished to Tenant.

11. Owner shall have the right to prohibit any advertising by any Tenant which in Owner's opinion, tends to impair the reputation of the building or its desirability as a building for offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

12. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors to permeate in or emanate from the demised premises.

13. If the building contains central air conditioning and ventilation, Tenant agrees to keep all windows closed at all times and to abide by all rules and regulations issued by Owner with respect to such services. If Tenant requires air conditioning or ventilation after the usual hours, Tenant shall give notice in writing to the building superintendent prior to 3:00 p.m. in the case of services required on week days, and prior to 3:00 p.m. on the day prior in case of after hours service required on weekends or on holidays. Tenant shall cooperate with Owner in obtaining maximum effectiveness of the cooling system by lowering and closing venetian blinds and/or drapes and curtains when the sun's rays fall directly on the windows of the demised premises.

---

14. Tenant shall not move any safe, heavy machinery, heavy equipment, bulky matter, or fixtures into or out of the building without Owner's prior written consent. If such safe, machinery, equipment, bulky matter or fixtures requires special handling, all work in connection therewith shall comply with the Administrative Code of the City of New York and all other laws and regulations applicable thereto and shall be done during such hours as Owner may designate.

15. Refuse and Trash. (1) Compliance by Tenant. Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders, regulations of all state, federal, municipal, and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall sort and separate such waste products, garbage, refuse and trash into such categories as provided by law. Each separately sorted category of waste products, garbage, refuse and trash shall be placed in separate receptacles reasonably approved by Owner. Such receptacles may, at Owner's option, be removed from the demised premises in accordance with a collection schedule prescribed by law. Tenant shall remove, or cause to be removed by a contractor acceptable to Owner, at Owner's sole discretion, such items as Owner may expressly designate. (2) Owner's Rights in Event of Noncompliance. Owner has the option to refuse to collect or accept from Tenant waste products, garbage, refuse or trash (a) that is not separated and sorted as required by law or (b) which consists of such items as Owner may expressly designate for Tenant's removal and to require Tenant to arrange for such collection at Tenant's sole cost and expense, utilizing a contractor satisfactory to Owner. Tenant shall pay all costs, expenses, fines, penalties, or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 15, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any action, claims and suit arising from such noncompliance, utilizing counsel reasonably satisfactory to Owner.

16.

---



STANDARD FORM OF

# Office Lease

The Real Estate Board of New York, Inc.
© Copyright 1994. All rights reserved.
Reproduction in whole or in
part prohibited

TO

Dated ................ 19 ....

Rent Per Year ....................

Rent Per Month ....................

Term ....................
From ....................
To ....................

Drawn by ....................
Checked by ....................
Entered by ....................
Approved by ....................

Page 6 of 6

pFORMAction™ WLO-3239  08/19/96

RIDER ANNEXED TO AGREEMENT OF LEASE
BETWEEN EDWIN HERTZOFF AND BEVERLY HERTZOFF (LANDLORD),
AND UNITED ORTHOPAEDIC APPLIANCES CO., INC. (TENANT)

**FIXED RENT AND
PRORATION OF
FIXED RENT:**

37.    A.    The Fixed Rent shall be payable as follows:

(a)    for the period from the Commencement Date through the last day of the last day of the month in which the first anniversary of the Commencement Date shall occur at a rental rate of $120,000 per annum, and

(b)    for the period from the first day of the month immediately following the month in which the first anniversary of the Commencement Date shall occur through the last day of the month in which the second anniversary of the Commencement Date shall occur (the "Expiration Date") at a rental rate of $144,000.00 per annum.

B.    If the Commencement Date shall not be the first or last day of a month (as the case may be), Fixed Rent shall be prorated on a per diem basis, and any excess amount paid on the execution of this Lease shall be credited to the Fixed Rent for the next calendar month.

**ADJUSTMENTS OF RENT:**

38.    A.    Definitions as used herein:

(a)    "Taxes" shall mean (1) the amount finally determined to be legally payable, by legal proceedings or otherwise, of all real estate taxes or other taxes imposed in substitution thereof, assessments (including any Business Improvement District), and other governmental impositions and charges which shall be levied, assessed or imposed, or become due and payable or become liens upon, or arise in connection with the use, occupancy or possession of, the Building or any part thereof or interest therein during the term of this Lease "Taxes" shall not include (i) any succession, gains, recording, income, franchise, transfer, inheritance, capital stock, excise, excess profits, occupancy or rent, gift, estate, foreign ownership or control, payroll or stamp tax of Landlord or any superior party, (ii) any other tax, assessment, charge or levy on the rent reserved under this Lease, (iii) any charges and/or taxes which are paid by individual tenants, which shall be the obligation of such tenants as applicable or (iv) any penalties or late charges imposed against Landlord or any superior party with respect to real estate taxes, assessments and the like.

(b)    "Tax Base" shall mean the Taxes for the July 1, 2006 to June 30, 2007 Tax Year.

(c)    "Tenant's Proportionate Share" shall mean 58.7%.

(d)    "Tax Year" shall mean each period of twelve months, commencing on the first day of July, in which occurs any part of the Term or such other period as may hereafter be adopted as the fiscal year for real estate tax purposes of The City of New York.

"Landlord's Tax Statement" shall mean an annual statement setting forth the amount of Tenant's Tax Payment payable by Tenant for a specified Tax Year pursuant to this Article.

B.    If Taxes payable in any Tax Year shall exceed the Tax Base, Tenant shall pay as additional rent a sum (hereinafter referred to as "Tenant's Tax Payment") equal to Tenant's Proportionate Share of the amount by which the Taxes for such Tax Year exceed the Tax Base.

C.    Tenant's Tax Payment for each Tax Year shall be due and payable in installments in the same manner that Taxes for such Tax Year are due and payable by Landlord to the City of New York. Tenant shall pay each such installment of Tenant's Tax Payment within twenty (20) days after the rendering of a Landlord's Tax Statement by Landlord to Tenant, which statement shall be rendered so as to require Tenant's Tax Payment to be paid by Tenant no more

441745.02

than thirty (30) days prior to the date such Taxes first become due. Landlord's Tax Statement shall set forth in reasonable detail the computation of Tenant's Tax Payment with respect to the particular installment(s) being billed, and shall accurately reflect the amount of Taxes owed by Landlord with respect to the Property. A copy of the relevant tax bill shall accompany each statement or if such bill is not then available, Landlord shall deliver a copy thereof to Tenant promptly after Landlord's receipt thereof. If Landlord shall receive a refund or credit of Taxes for any Tax Year for which Tenant has made a Tenant's Tax Payment, Landlord shall either promptly pay to Tenant, or, at Landlord's election, credit against subsequent payments by Tenant of Rent hereunder, Tenant's Proportionate Share of the refund or credit, in either event not to exceed Tenant's Tax Payment paid for such Tax Year.

D.    At Tenant's request, Landlord shall commence a protest, action or proceeding to reduce the assessment applicable to Property. In the event Landlord fails to commence such protest, action or proceeding within thirty (30) days after request by Tenant, Tenant shall be permitted to commence the same as Landlord's agent and Tenant shall be entitled to reimbursement of any costs and expenses incurred by Tenant in connection with such protest, action or proceeding as well as Tenant's proportionate share of any refund with respect to Taxes previously paid by Tenant.

## UTILITIES:

39.    Modifying the provisions of Articles 12 and 29 of this Lease, Tenant shall obtain and pay for all electric current, heating oil, gas, water and other fuels and utilities supplied to, used in connection with or servicing the Premises and all mechanical systems therein, including without limitation, the heating, ventilation and air-conditioning system and lighting equipment and systems, by direct application to and arrangement with the utility company or companies providing such servicing and utilities to the Premises. Notwithstanding anything to the contrary contained herein, all building systems servicing the Premises shall be delivered to Tenant in good working order on the Commencement Date and Tenant's sole responsibility for the maintenance of such systems shall be limited to the fees payable for a maintenance contract for the same throughout the term of this Lease.

## BROKERAGE:

40.    Landlord and Tenant each represents that in the negotiation of this Lease it dealt with no broker or brokers. Landlord and Tenant each hereby agrees to indemnify and hold the other harmless from and against any and all claims, liabilities, suits, costs and expenses including reasonable attorneys' fees and disbursements arising out of any inaccuracy or alleged inaccuracy of the above representation. The provisions of this Article shall survive the expiration or sooner termination of this Lease.

## ASSIGNMENT AND
## SUBLETTING:

41.    INTENTIONALLY OMITTED.

## SUBORDINATION, NON-DISTURBANCE AND
## ATTORNMENT:

42.    Landlord shall obtain from all present and future ground leases, superior leases, and grants of term of the land on which the Building stands, all mortgages and building loan agreements, including leasehold mortgages and spreader and consolidation agreements, which may now or hereafter affect the land, the Building or any superior lease and all advances made thereunder, and all amendments, modifications, supplements, renewals, substitutions, refinancings and extensions thereto or thereof an agreement in recordable form between Tenant and any superior mortgagee or superior lessor, as the case may be, which shall provide in substance that, as long as Tenant is not then in default under this Lease after notice and the expiration of all applicable cure periods, if any, such superior mortgagee or superior lessor, as the case may be, will not name or join Tenant as a party defendant or otherwise in any suit, action or proceeding to enforce any such superior mortgage or superior lease, as the case may be, nor will this Lease be terminated by enforcement of any rights given to any such superior mortgagee or superior lessor, as the case may be, pursuant to the terms, covenants or conditions contained in any such superior mortgage or superior lease, as the case may be.

- 2 -

441745.02

**INDEMNIFICATION:**

43.    Landlord shall indemnify and save harmless Tenant against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Tenant shall not be reimbursed by insurance, including reasonable attorneys' fees actually incurred by Tenant, if and to the extent caused by or arising from (i) any breach by Landlord, Landlord's agents, contractors, employees, invitees, or licensees, of any covenant or condition of this Lease, or (ii) the negligence or willful misconduct of Landlord, Landlord's agents, contractors, employees, invitees or licensees, or (iii) any acts, omissions or negligence of Landlord, or the contractors, agents, employees, invitees or licensees of Landlord, in or about the Premises or the Property.

**ALTERATIONS:**

44.    Supplementing the provisions of Article 3, Tenant shall be permitted to make all non-structural alterations that do not materially adversely effect the Building utility systems or the exterior of the Building, provided that Tenant delivers plans and specifications (to the extent plans and specifications are traditionally prepared for such alteration) and Landlord shall approve the same, which approval shall be unreasonably withheld, conditioned ore delayed. All Alterations shall, upon installation become the property of Landlord and be surrendered on the expiration date or sooner termination of the Term hereof.

**HAZARDOUS MATERIALS**

45.    A.    Tenant hereby represents, warrants and covenants that it shall not install or permit any Hazardous Materials (as hereinafter defined) to be placed or stored in or about the Premises (other than Hazardous Materials installed, placed, stored or placed in the Premises or the Building by Tenant). Tenant shall indemnify and hold Landlord harmless from and against any claims, demands, losses, liabilities, penalties and damages arising out of, or in any way connected with the installation, placement, storage or release of Hazardous Materials used or installed by Tenant, Tenant's employees, contractors or agents upon the Premises. As used herein, the term "Hazardous Materials" shall be any petroleum product, asbestos product, or any other material, substance or waste that is now, or hereafter during the Term, recognized as being hazardous or dangerous to health or the environment by any federal, state or local agency having jurisdiction over the Building of which the Premises is a part.

B.    Landlord represents, warrants and covenants that (i) to the best of Landlord's knowledge, there are no discharges of Hazardous Materials at or about the Building or the Land in violation of any Legal Requirement and (ii) Landlord has complied, as of the date hereof, and Landlord shall, at Landlord's sole cost and expense, continue to comply (or to cause compliance), with all legal requirements that concern the management, control, discharge, treatment and/or removal of Hazardous Materials at or about the Building or the land. Landlord shall indemnify and hold Tenant harmless from and against any claims, demands, losses, liabilities, penalties and damages arising out of, or in any way connected with the installation, placement, storage or release of Hazardous Materials in or about the Building or the land in violation of applicable legal requirements. Landlord shall be responsible, at Landlord's expense, for compliance with any applicable legal requirements, relating to the removal, encapsulation or other treatment of any Hazardous Material located within the Premises, unless such Hazardous Material shall have been placed in the Premises by Tenant or by any of Tenant's agents, employees or contractors. This covenant shall survive the expiration or earlier termination of this Lease.

**TERMINATION OPTION:**

46.    Landlord or Tenant shall each have the right at any time after the first (1st) anniversary of the Commencement Date to cancel and terminate this Lease (the "Termination Option"), provided that the terminating party shall give at least ninety (90) days' prior written notice to the other of it's exercise of the Termination Option (the "Termination Notice"). In the event either party shall deliver the Termination Notice pursuant to the provisions of this Article, this Lease shall terminate and expire on the later of the date set forth in the Termination Notice as the termination date, if applicable, or ninety (90) days after the delivery of the Termination Notice, with the same force and effect as though said date were the expiration date and neither party shall have any liability to the other with respect to this Lease, except pursuant to those provisions which expressly survive its expiration or sooner termination.

- 3 -

441745.02

**DEFAULT:**

47.    Notwithstanding anything contained herein to the contrary, Tenant shall have the right to cure: (i) monetary defaults within fifteen (15) days after receiving notice of such a default from Landlord; and (ii) non-monetary defaults within thirty (30) days after receiving notice of such a default from Landlord.  Notwithstanding anything contained herein to the contrary, it shall not be considered an event of default under this lease if Tenant shall have commenced to cure a non-monetary event of default within the time periods specified above and if Tenant shall thereafter proceed with due diligence and good faith to complete the curing of such breach within a reasonable period of time.

**MISCELLANEOUS PROVISIONS:**

48.    A.    If any of the provisions of this Lease, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

B.    Notwithstanding anything to the contrary contained in Article 9 or elsewhere in this Lease, if (i) an independent architect determines that the Premises cannot be restored in sixty (60) days after the fire or other casualty or (ii) the Premises or access thereto are damaged or rendered untenantable by fire or other casualty at any time during the last year of the term (whether or not any specified percentage of the Premises are damaged or rendered untenantable), Tenant shall have the right to terminate this Lease upon ten (10) days prior written notice to Landlord.

C.    Notwithstanding anything to the contrary contained in this Lease, including without limitation, Article 6, it is specifically understood that it shall be Landlord's obligation to make any and all repairs and/or alterations required to be performed in order to cure any violations of any federal, state, or local laws, ordinances, rules, regulations or requirements (collectively, "requirements") arising from or relating to conditions existing in the Premises prior to the commencement of the lease term, and any and all requirements governing (a) the installation of sprinklers and compliance with any fire safety regulations and (b) the removal or encapsulation of asbestos.  Landlord further represents that the common areas of the Building and the means of egress and ingress thereto are in compliance with the Americans With Disabilities Act of 1990 as well as any other similar state and local and legal requirements currently exists.  Tenant's responsibility for compliance with requirements shall be limited to non-structural alterations which are required as a result of Tenant's particular use of the Premises.

D.    Except as otherwise provided for in this Lease, Landlord shall provide Tenant with access to the Premises twenty-four (24) hours per day, seven (7) days per week, throughout the term of this Lease.

E.    All exhibits to this Lease and any and all rider provisions attached to this Lease are hereby incorporated into this Lease.  If any provision contained in any rider hereto is inconsistent or in conflict with any printed provision of this Lease, the provision contained in such rider shall supersede said printed provision and shall control.

F.    This Lease may be executed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same instrument.

G.    Tenant shall be permitted to install signage and/or awnings on the exterior of the Building with Landlord's consent, which consent shall not be unreasonably withheld, conditioned or delayed, provided that the same comply with all applicable legal requirements.

H.    Tenant shall name Landlord as an additional insured on the insurance required to be carried by Tenant hereunder.

- 4 -

441745.02

**United Orthopaedic Appliances Co., Inc.**
791 Broadway
New York, NY  10003
Tel: 212-674-2366
Fax: 212-473-0658

May 22, 2007

Clayton Herztoff
791 Broadway
New York, NY  10003

Dear Clayton,

This letter serves as a formal notification regarding your employment agreement and commission with United Orthopaedic Appliances Co., Inc.  Commission is based on collected monies for each quarter and is dispensed after management reviews all reports.  Payment of commission will be paid in accordance with the general policy of U.O.A./C.O.S.I.

Commission for the time period of January 1, 2007 through March 31, 2007 was $8163.26 less $4,163.26, which represents the cost to U.O.A. Inc. parts and labor for a case that was mishandled by you, employee of United Orthopaedic Appliances Co., Inc.  You, never properly maintained the case of Isaiah Johnson ID # 5062, and this led to a deficit of receivables in the amount of $25,000.00.  You the O&P manager verbally acknowledged the lack of judgment during a company meeting held on April 30, 2007 regarding the character and integrity of patient, Isaiah Johnson in the presence of Martin Diaz and General Manager, Laurie M. Smith You blatantly admitted your poor judgment and incompetence for dispensing the prosthetic devices to Isaiah Johnson.  You also admitted to the owners you take full responsibility for your actions and believed Isaiah Johnson was trustworthy and felt confident he would forward the insurance checks to United Orthopaedic Appliances Co.

Clayton, you also admitted this patient had been seen while being under the influence of alcohol and was not exactly a "model citizen".  After more than twenty years in this field, clearly you should be able to make conscientious decisions regarding reimbursement from a non-participating insurance company.  You acknowledged that you were aware that Isaiah Johnson was going to receive the insurance checks directly to his home.  Therefore, the full liability of this case, which included material and man-hours, consisting over $4163.00, belongs to you, the practitioner.

Sincerely,

Noreen Diaz
President

Cc. Colleen