Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (MT-7572)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200
*Attorneys for Defendants Noreen Diaz and*
*United Orthopaedic Appliances Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BEVERLY HERTZOFF, EDWIN HERTZOFF,    :
and CLAYTON HERTZOFF,    :
    :
                    Plaintiffs,    :
    :
        -against-    :        07 CV 3157 (CM)(MHD)
    :
NOREEN DIAZ and UNITED ORTHOPAEDIC    :
APPLIANCES CO., INC.    :
    :
                    Defendants.    :
    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS


GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendants*
111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200

*Of Counsel:*
*Andrew L. Zwerling (AZ-5455)*
*Colleen M. Tarpey (CT-7572)*

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................................ ii

Preliminary Statement ......................................................................................... 1

Factual Background ............................................................................................. 3

POINT I

PLAINTIFFS' CLAIM FOR BREACH OF THE STOCK  PURCHASE
AGREEMENT IS WOEFULLY PREMATURE ..................................... 7

POINT II

PLAINTIFF CLAYTON HERTZOFF'S CLAIMS FOR VIOLATION OF
NEW YORK LABOR LAW 191-C AND FOR  BREACH OF HIS
EMPLOYMENT AGREEMENT AND CONSTRUCTIVE DISCHARGE
FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED AND MUST BE DISMISSED ......................................... 10

A.     The Claim Under New York Labor Law 191-c Is Improperly Pled .......... 11

B.     Plaintiff Clayton Hertzoff Has Failed To Allege A "Material"
Breach Of The Employment Agreement Because His Allegations
Of "Breach" Do Not State A Claim As They Fail To Correspond
To Any Contractual Obligation Of UOA .................................... 12

C.     Plaintiff Clayton Hertzoff's Claim For Constructive Discharge
Fails To Allege, Nor Can It, That He Was Forced To Resign, And
Thus Fails To State A Claim .................................................... 14

D.     Plaintiff Clayton Hertzoff's Claim For "Anticipatory" Breach Of
The Employment Agreement Must Be Dismissed For Failure To
Plead That The Alleged Breach Anticipated Rendered His
Performance Under The Agreement Impossible Or That It
Adequately Demonstrated UOA's Intention Not To Continue As
His Employer ...................................................................... 15

POINT III

PLAINTIFFS' CLAIM FOR NON-PAYMENT OF RENT
DELIBERATELY MISLEADS THIS COURT AND MUST BE
DISMISSED ...................................................................... 16

Conclusion ....................................................................................................... 17

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Auerbach v. Board of Education of the Harborfields Central School District,*
    136 F.3d 104 (2d Cir., 1998)................................................................7, 17

*Harsco Corp. v. Segui,*
    91 F.3d 337 (2d Cir., 1996)................................................................10, 13

*Mina Investment Holdings, Ltd. v. Lefkowitz,*
    51 F. Supp. 2d 486 (S.D.N.Y., 1999)................................................14, 16

*Parker v. Chrysler Corp.,*
    929 F. Supp. 162 (S.D.N.Y. 1996) ...........................................................14

*Pena v. Brattleboro Retreat,*
    702 F.2d 322 (2d Cir., 1983)....................................................................14

*Teachers Insurance and Annuity Association of America v. Coaxial
    Communications of Central Ohio, Inc.,*
    807 F. Supp. 1155 (S.D.N.Y. 1992)..........................................................15

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,*
    103 F. Supp. 2d 711 (S.D.N.Y., 2000).......................................................13

*Unique Medium, LLC v. Town of Perth,*
    309 F. Supp. 2d 338 (N.D.N.Y., 2004) .......................................................7

## STATE CASES

*American Insurance Association v. Chu,*
    64 N.Y.2d 379, 487 N.Y.S.2d 311 (1985) ...................................................8

*Cuomo v. Long Island Lighting Company,*
    71 N.Y.2d 349, 525 N.Y.S.2d 828 (1988) ...................................................8

*Espada 2001 v. New York City Campaign Finance Board,*
    302 A.D.2d 299, 754 N.Y.S.2d 544 (1st Dep't 2003)...................................9

*Fischetto v. LB 745 LLC,*
    36 A.D.3d 538, 829 N.Y.S.2d 54 (1st Dep't, 2007).....................................12

*In re Guardianship of Chantel Nicole R..,*
    34 A.D.3d 99, 821 N.Y.S.2d 194 (1st Dep't 2006).......................................8

*Mount Sinai Hospital v. Allstate Insurance Co.,*
    25 A.D.3d 673, 811 N.Y.S.2d 726 (2d Dep't 2006).......................................8

508835.TOA

*Murphy v. D'Apice,*
    123 A.D.2d 415, 506 N.Y.S.2d 605 (2d Dep't 1986)......................................................9

*NYPIRG v. Carey,*
    42 N.Y.2d 527, 399 N.Y.S.2d 621, 369 N.E.2d 1155 (1977)........................................8

*Nyack Hospital v. General Motors Acceptance Corp.,*
    27 A.D.3d 96, 808 N.Y.S.2d 399 (2d Dep't 2005)..........................................................8

*Ocean Diagnostic Imaging, P.C. v. Nationwide Mutual Insurance Company,*
    2006 WL. 796973 (App. Term, 2nd and 11th Jud. Dts. 2006) ......................................9

*Pirog v. Cockburn,*
    34 A.D.3d 819, 823 N.Y.S.2d 899 (2d Dep't 2006)........................................................8

*Richbell Information Services, Inc. v. Jupiter Partners, L.P.,*
    309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003) ....................................................9

*Suffolk County v. Long Island Power Authority,*
    177 Misc. 2d 208, 673 N.Y.S.2d 545 (Sup. Ct. Nas. Co. 1998)....................................8

*Vista Surgical Supplies, Inc. v. General Assurance Company,*
    2006 WL. 1540358 (App. Term, 2nd and 11th Jud. Dts. 2006) ....................................9

*Zink v. Heiser,*
    109 Misc. 2d 354, 438 N.Y.S.2d 209 (Sup. Ct. Queens Co. 1981) ...............................9

## FEDERAL STATUTES

28 U.S.C. §1332(a) .......................................................................................................5, 10

508835.TOA

## PRELIMINARY STATEMENT

Parties and their attorneys who intend to file a lawsuit are obligated to investigate the viability of the claims prior to commencement of the action. This is because the filing of frivolous claims clogs congested court dockets and imposes a needless expenditure of time, resources and money on the judicial system and the defendants who are named in such lawsuits. Parties and their counsel must therefore preliminarily probe the strength of the allegations underlying their claims in a realistic and objective manner, and also ensure that there are no procedural impediments to filing suit. There is a strong incentive to taking these steps: severe sanctions can be imposed where a party fails in fulfilling these obligations.

As will be shown, in their lawsuit, Plaintiffs Beverly, Edwin and Clayton Hertzoff ("Plaintiffs") have tossed these principles by the wayside.

This matter involves the sale of the stock of Plaintiffs' family owned and operated orthopedic appliances company – Defendant United Orthopaedic Appliances, Inc. ("UOA") – to Defendant Noreen Diaz ("Ms. Diaz"). At the time of the sale of UOA to Ms. Diaz, the parties entered into the two agreements, each of which are annexed to and incorporated by reference into the Amended Complaint in this matter, dated June 8, 2007. The first agreement was a "Stock Purchase Agreement" entered into between Ms. Diaz as the purchaser and the Hertzoffs as the sellers, dated August 20, 2006, which transferred the stock of UOA to Ms. Diaz. *See*, Amended Complaint dated June 8, 2007 (hereinafter, "Am. Cmplt."), Exhibit A. The second was an Employment Agreement, dated August 20, 2006, between UOA, under Ms. Diaz' control as the

1

employer, and Clayton Hertzoff, Beverly and Edwin Hertzoffs' son, as the employee. *See*, Am. Cmplt., Exhibit C.

Plaintiffs now claim breaches of both agreements and the "constructive discharge" of Clayton Hertzoff from his position as a prosthetist at UOA. They are also pursuing a claim for unpaid rent. The claims alleged, however, must be dismissed.

As a threshold matter, this Court lacks subject matter jurisdiction over the claim for the alleged breach of the Asset Purchase Agreement. Even accepting the facts as alleged in the Amended Complaint as true, this claim is not yet ripe for adjudication. As will be shown, the monies allegedly due Plaintiffs under this contract are not due until *August 20, 2008,* making this claim woefully premature and subject to dismissal. Remarkably, despite being put on notice of this fact in a Rule 11 letter, counsel for Plaintiffs has refused to withdraw this premature claim.

Further, Plaintiffs fail to state a claim upon which relief can be granted with regard to the alleged breach of the Employment Agreement and Clayton Hertzoff's claim for "constructive discharge" from his employment with UOA. For example, Clayton's claim under Labor Law § 191-c for an alleged unpaid bonus fails to plead that he had been terminated prior to the commencement of that claim as required by that statute; to the contrary, Plaintiffs assert that Clayton was employed by Defendants at the time of the alleged failure to pay the bonus. Similarly, for example, Clayton's claim of constructive discharge fails as a matter of law because Plaintiffs fail to allege, nor can they, that Clayton was forced to resign from UOA.[1]

---

[1] Clayton Hertzoff's violations of the Employment Agreement are the subject of a separate Order To Show Cause seeking injunctive relief that is before the Court.

2

508835.01

As for the claim of unpaid rent, that too is premature. (In any event, the rent has since been paid, rendering this claim moot.)

Accordingly, and for the reasons set forth herein, the causes of action in the Amended Complaint for breach of the Asset Purchase Agreement and Clayton Hertzoff's claims for breach of the Employment Agreement and his constructive discharge from UOA must be dismissed.

## FACTUAL BACKGROUND

Plaintiffs sold UOA to Ms. Diaz in August, 2006. *See*, Am. Cmplt., ¶9. As consideration for the sale of the stock to Ms. Diaz, UOA agreed to attempt to bill for and collect certain outstanding accounts receivable accrued prior to the sale from UOA's customers during the two year period immediately following the transfer of the stock, and to apply those accounts receivable to certain pre-sale debts of the company. *See*, Am. Cmplt., Exhibit A, ¶1.3.

The "Net Accounts Receivable" that UOA is obligated to collect and apply to the accounts payable are defined by the Stock Purchase Agreement as "the accounts receivable of [UOA] earned prior to and collected during the twenty-four (24) month period immediately following the Closing Date [of August 8, 2006] less any refunds or repayments." Am. Cmplt., Exhibit A, ¶ 1.3. The Stock Purchase Agreement requires UOA to then pay the "Net Accounts Receivable" (hereinafter, the "A/R") to three accounts payable – an HSBC line of credit, back rent owed by UOA to the Hertzoffs as landlords, and a promissory note owed by UOA to Beverly Hertzoff – each of these items to be paid off in that order from the A/R actually collected. *See*, Am. Cmplt., Exhibit A, ¶ 1.3; Schedule 1.2.

3

In the event that the A/R collected exceeds the amount of the three accounts payable, the surplus is to be paid to the Hertzoffs within thirty days of the second annual anniversary of the agreement, *i.e., August 20, 2008*. *See*, Am. Cmplt., Exhibit A, ¶ 1.3. In the event of a shortfall between the A/R actually collected and the amount of the accounts payable, UOA is obligated to fund the shortfall and pay off the accounts payable, up to the maximum amount of the A/R actually collected plus $100,000. *See*, Am. Cmplt., Exhibit A, ¶ 1.3. Accordingly, by definition as set forth in the parties' Stock Purchase Agreement, the amount of the A/R cannot be calculated until the 24 month period in which UOA is entitled to collect the A/R is completed, *i.e, on August 8, 2008*. Further, no surplus or shortfall between the A/R and the accounts payable can be ascertained until the collection period ends on *August 8, 2008*.

In addition to the Stock Purchase Agreement, UOA also entered into an Employment Agreement with Clayton Hertzoff, presumably in consideration for his sale of his share of UOA stock to Ms. Diaz. Pursuant to the terms of the Employment Agreement, Clayton Hertzoff would provide services to UOA as a prosthetist and be expected to maintain a certain personal net sales amount each year for a period of ten years, in exchange for a base salary, commissions on his net sales, the possibility of a discretionary bonus, life and health insurance benefits, and certain other perquisites, such as a company car and five weeks of paid vacation plus sick and personal days. *See*, Am. Cmplt., Exhibit C, Section 3.

Plaintiffs filed their initial complaint on or about April 19, 2007 (the "Complaint"), which pleading essentially three claims against Defendants. The first claim involved the breach of the Stock Purchase Agreement, as set forth above. *See*, Complaint, ¶¶ 10-14. The second claim was for UOA's alleged non-payment of rent to the Hertzoffs in their capacity as landlords to UOA. *See*, Complaint, ¶¶ 15-20. The third and final claim was for alleged breach of the

4

508835.01

Employment Agreement premised upon UOA's alleged failure to pay Clayton Hertzoff a "bonus" due to him. *See*, Complaint, ¶¶ 21-24.

On June 1, 2007, Defendants (through their legal counsel) sent a letter to Plaintiffs' counsel stating that the claim for the "breach" of the Asset Purchase Agreement was not yet ripe for adjudication because the outstanding monies were not due until August 20, 2008, and that all back rent had been paid (and enclosing copies of checks). In addition, Defendants advised Plaintiffs and their legal counsel that the dispute involving Clayton Hertzoff's bonus appeared to be valued at no more than $4,163 and that, as a result, this Court could not exercise jurisdiction over the matter, because the amount failed to meet the minimum jurisdictional threshold for diversity jurisdiction pursuant to 28 USC §1332(a).

By the June 1, 2007 letter, Plaintiffs and their counsel were advised that Defendants would seek sanctions against them as appropriate pursuant to Rule 11 of the Federal Rules of Civil Procedure ("FRCP") should Plaintiffs fail to withdraw the Complaint. In response, however, Plaintiffs amended the Complaint rather than withdraw it.

The Amended Complaint, dated June 8, 2007, restates the premature cause of action for "breach" of the Stock Purchase Agreement." The Amended Complaint also recasts the original unpaid rent claim for the months of March through May 2007 as now including claim for unpaid rent for June 2007, and for a total amount of unpaid rent in the amount of $10,000. *See*, Declaration of Noreen Diaz, sworn to July 13, 2007 (hereinafter, "Diaz Dec."), Exhibit 1. Despite knowledge that the March through May rents were paid, those claims were maintained in the Amended Complaint. *See*, Am. Cmplt., ¶¶ 40-43. Moreover, the Amended Complaint intentionally misleads the Court regarding the viability of Plaintiffs' claim for unpaid rent in the

5

amount of $10,000 for June rent by simply omitting the Defendants' right to cure the alleged default within 15 days of the Plaintiffs' June 5, 2007 notice of default for unpaid June rent, as set forth in the Agreement of Lease between UOA and the Hertzoffs. *See*, Diaz Dec., Exhibit 1; Rider ¶47. Since the Defendants' time to cure the alleged default had not yet elapsed, Plaintiffs had no viable claim for unpaid rent as alleged as of the date of the Amended Complaint on June 8, 2007.

Finally, the Amended Complaint takes a different tack with regard to the $4,163 claim for alleged "breach" of Clayton Hertzoff's Employment Agreement. It adds two state law causes of action premised upon the New York Labor Law, one of which must be dismissed as improperly pled. In apparent recognition that the claim for breach of the Employment Agreement premised upon unpaid commissions would fail to sustain the jurisdictional amount required to maintain the action in Federal Court, Clayton and his counsel added a claim for "constructive discharge," apparently hoping to allege damages in the amount of all salary and commissions he would have earned over the ten-year period of the Employment Agreement. *See*, Am. Cmplt., ¶¶ 31-37. The claim, however, fails to state a claim for relief as a result, among other things, of Clayton's failure to allege (and inability to allege, since he was still working for UOA on June 8, 2007) that he had resigned his position in light of the "intolerable" working conditions imposed upon him by UOA.

Moreover, as set forth in the May 22, 2007 letter from Ms. Diaz to Clayton Hertzoff referenced in the Amended Complaint, Clayton Diaz cannot claim a "material" breach of the Employment Agreement on the sole grounds that UOA failed to pay him only one half of the commissions he earned in one quarter, given that it indisputably fulfilled all other terms and conditions of its employment of Clayton Hertzoff, including the paying of base salary, all other

6

commission amounts, health and life benefits as set forth in the Employment Agreement, paid vacations, and the like. *See*, Diaz Dec., Exhibit 2.

Accordingly, and for the reasons detailed below, all but two claims in the Amended Complaint must be dismissed.

**POINT I**

**PLAINTIFFS' CLAIM FOR BREACH OF THE STOCK PURCHASE AGREEMENT IS WOEFULLY PREMATURE**

The first claim asserted by Plaintiffs in the Amended Complaint alleges a breach of the Stock Purchase Agreement entered into between the parties. It states that "Defendants have failed to fulfill their current contractual obligation cause all "Net Accounts Receivable" to be billed and collected and have failed to allocate each dollar of the Net Accounts Receivable actually collected to discharge the designated Accounts Payable." Am. Cmplt., ¶12.

This Court lacks subject matter jurisdiction over this claim, because it is not yet ripe for adjudication. The ripeness doctrine prevents a federal court from considering a case in which the dispute has not yet matured to a point that warrants decision. *See*, *Unique Medium, LLC v. Town of Perth*, 309 F.Supp.2d 338, (N.D.N.Y., 2004). "When the events alleged in a plaintiff's cause of action have not yet occurred, a federal court is precluded from exercising subject matter jurisdiction because a real case or controversy does not exist…" *Auerbach v. Bd. of Educ. of the Harborfields Cent. School Dist.*, 136 F.3d 104 (2d Cir., 1998).

New York State law provides likewise. It provides that a court "should not resolve disputed legal questions unless this would have an immediate practical effect on the conduct of

7

the parties." *In re Guardianship of Chantel Nicole R.*. 34 A.D.3d 99, 107 821 N.Y.S.2d 194, 200

(1st Dep't 2006). *See also Cuomo v. Long Island Lighting Company*, 71 N.Y.2d 349, 354, 525

N.Y.S.2d 828 (1988).  Consistent with this principle, "an action 'may not be maintained if the

issue presented for adjudication involves a future event beyond control of the parties which may

never occur.'" *American Ins. Assn. v. Chu*, 64 N.Y.2d 379, 385, 487 N.Y.S.2d 311 (1985);

*NYPIRG v. Carey*, 42 N.Y.2d 527, 531, 399 N.Y.S.2d 621, 369 N.E.2d 1155 (1977); *Suffolk

County v. Long Island Power Authority*, 177 Misc.2d 208, 673 N.Y.S.2d 545, 550-551 (Sup. Ct.

Nas. Co. 1998).

        Here, the parties' Stock Purchase Agreement plainly defines the "Net Accounts

Receivable" as "the accounts receivable of [UOA] earned prior to and collected during the

twenty-four (24) month period immediately following the Closing Date [of August 8, 2006] less

any refunds or repayments."  Am. Cmplt., Exhibit A, ¶ 1.3.  Because UOA has until 24 months

from the Closing Date of the Stock Purchase Agreement, or until *August 8, 2008*, to bill for and

collect the Net Accounts Receivable, Plaintiff cannot assert that UOA has "breached" the Stock

Purchase Agreement by its failure to do so until after that date!  Plainly, Plaintiffs' claim is

premature until the time in which UOA has to bill for and collect the Net Accounts Receivable

expires on *August 8, 2008* and must be dismissed for this Court's lack of subject matter

jurisdiction over same.  *See Pirog v. Cockburn*, 34 A.D.3d 819, 823 N.Y.S.2d 899 (2d Dep't

2006)(court properly dismissed the causes of action concerning the adoption of the

Comprehensive Plan for the Town of Montgomery as those causes of action were not ripe for

judicial review); *Mount Sinai Hosp. v. Allstate Ins. Co.*, 25 A.D.3d 673, 811 N.Y.S.2d 726 (2d

Dep't 2006)(until it is established when the 30-day period within which Allstate was required to

respond began to run, any claim for payment was premature); *Nyack Hosp. v. General Motors*

8

*Acceptance Corp.*, 27 A.D.3d 96, 808 N.Y.S.2d 399 (2d Dep't 2005)(time period for no-fault insurer to either pay or deny hospital's claim did not begin to run until insurer received additional verification from hospital in response to its request, and hospital's claim for payment was premature prior to that date); *Richbell Information Services, Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 306 765 N.Y.S.2d 575 (1st Dep't 2003)(cause of action was not ripe for adjudication until the wronged party was injured); *Espada 2001 v. New York City Campaign Finance Bd.*, 302 A.D.2d 299, 754 N.Y.S.2d 544 (1st Dep't 2003)(any claim for post-election payment of matching funds was premature since there had been no final audit of petitioners' campaign and no final determination of petitioners' eligibility); *Murphy v. D'Apice*, 123 A.D.2d 415, 506 N.Y.S.2d 605 (2d Dep't 1986)(issue raised in proceeding to invalidate petition nominating independent candidate in general election was not justiciable in light of fact that board of elections had not yet ruled on validity of nominating petition); *Vista Surgical Supplies, Inc. v. General Assurance Company*, 2006 WL 1540358 (App. Term, 2nd and 11th Jud. Dts. 2006)(action dismissed as premature where defendant's time to pay or deny claim had not yet elapsed); *Ocean Diagnostic Imaging, P.C. v. Nationwide Mutual Insurance Company*, 2006 WL 796973 (App. Term, 2nd and 11th Jud. Dts. 2006)(where period within which defendants were required to respond to plaintiff's claims had not yet begun, any claim for payment was premature); *Zink v. Heiser*, 109 Misc.2d 354, 438 N.Y.S.2d 209 (Sup. Ct. Queens Co. 1981)(employee's action against trustees of employer's pension plan to recover "vested" monies due him was dismissed as premature, where action was commenced before date employee reached his sixty-fifth birthday and was entitled to commence receiving benefits under plan).

Beyond this breach of contract claim being premature, it is improperly and fatally pled.

9

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir., 1996).   Because the amount of the Net Accounts Receivable is not yet known, nor is UOA yet required to have collected the same, Plaintiffs tellingly plead no damages with regard to their first cause of action, stating as their entire claim for relief only that, "Defendants have breached their current contractual obligations to plaintiff (sic) under the Agreement." Am. Cmplt., ¶ 15. Of course, given that Defendants have until August 20, 2008 to fulfill this obligation, and that the amount in dispute may vary between today and that date, it is not possible for Plaintiffs to prove damages underlying this claim.

Accordingly, because the claim is prematurely brought and Plaintiffs cannot state a cause of action upon which relief can be granted by this Court, the Plaintiffs' first claim for "Breach of Stock Purchase Agreement" must be dismissed in its entirety.

## POINT II

### PLAINTIFF CLAYTON HERTZOFF'S CLAIMS FOR VIOLATION OF NEW YORK LABOR LAW 191-C AND FOR BREACH OF HIS EMPLOYMENT AGREEMENT AND CONSTRUCTIVE DISCHARGE FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND MUST BE DISMISSED

Plaintiff Clayton Hertzoff tries to keep this matter in the Federal Courts by asserting various breaches of the Employment Agreement in a transparent attempt to maintain the minimum monetary amount required to sustain diversity jurisdiction pursuant to 28 USC §1332(a).  However, as set forth below, his claims too, must be dismissed for failure to state a claim.

10

508835.01

**A.    The Claim Under New York Labor Law 191-c Is Improperly Pled**

Plaintiffs third claim for relief purports to state a claim pursuant to New York Labor Law §191-c. That section states that:

> **When a contract between a principal and a sales representative is terminated,** all earned commissions shall be paid within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated.... A principal who fails to comply with the provisions of this section concerning timely payment of all earned commissions shall be liable to the sales representative in a civil action for double damages. The prevailing party in any such action shall be entitled to an award of reasonable attorney's fees, court costs, and disbursements.

New York Labor Law §191-c(1) and (3)(emphasis added). Clearly, the statute is meant to protect the worker whose employment contract has been terminated from an unscrupulous employer's failure to pay commissions otherwise due and owing to the worker despite the termination of the employment contract.

In this matter, however, Clayton Hertzoff does not and cannot allege that his Employment Agreement was terminated prior to his commencement of suit against the Defendants for, among other things, an alleged violation of the above provisions of the New York Labor Law. Indeed, the Amended Complaint instead pleads that "[a]t all relevant times, plaintiff Clayton Hertzoff was an employee of Defendant UOA." Am. Cmplt., ¶21. Accordingly, Plaintiff Clayton Hertzoff's cause of action against Defendants for the alleged violation of the above-cited section must be dismissed for failure to state a claim.

It would seem axiomatic that, where the plain language of a statute requires a certain condition precedent to the relief afforded therein, a plaintiff asserting a claim for that relief must

11

have pled all conditions precedent. *See, e.g., Fischetto v. LB 745 LLC*, 36 A.D.3d 538, 829

N.Y.S.2d 54 (1st Dep't, 2007)(dismissing plaintiff's claim because defendant was a landowner

and not an "employer" to whom section of New York Labor Law invoked by plaintiff would

apply). Because he cannot and does not allege that his Employment Agreement was terminated

prior to bringing the claim for relief under New York Labor Law 191-c, Clayton Hertzoff has

failed to make out an essential element of a cause of action pursuant to that statute.

**B.    Plaintiff Clayton Hertzoff Has Failed To Allege A "Material" Breach Of The Employment Agreement Because His Allegations Of "Breach" Do Not State A Claim As They Fail To Correspond To Any Contractual Obligation Of UOA**

Plaintiff Clayton Hertzoff's fifth claim for relief states that Defendant UOA has

"materially" breached the Employment Agreement in two ways. The first allegation of material

breach relates back to the unpaid commissions as set forth in second, third, and fourth claims, the

underlying circumstances of which are set forth in the referenced May 22, 207 letter from

Noreen Diaz to Clayton Hertzoff. *See*, Diaz Dec., Exhibit 2. The second allegation of material

breach alleges that UOA breached Clayton Hertzoff's Employment Agreement by "requesting"

that Plaintiff Clayton Hertzoff engage in certain allegedly "deceptive" insurance billing

practices.

As for the first allegation, Plaintiff Clayton Hertzoff has failed to allege a "material"

breach of the Employment Agreement relating to UOA's failure to pay him one half of one

annual quarter's worth of commissions. Plaintiff does not allege, nor can he, that UOA failed to

pay his base salary or the commissions due to him for the remainder of the time he worked for

UOA. Neither does Clayton Hertzoff allege that he was not paid for or allowed to take any of

12

the five weeks of vacation or the sick or personal days to which he was entitled, that UOA failed to provide him with the appropriate life insurance and health insurance benefits specified in the Employment Agreement or that he did not receive every other benefit of employment as described therein. As a matter of law, these facts undermine Clayton's breach of contract claims.

"Materiality goes to the essence of the contract. That is, a breach is material if it defeats the object of the parties in making the contract and deprives the injured party of the benefit that it justifiably expected." *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F.Supp.2d 711 (S.D.N.Y., 2000). To the extent that Clayton Hertzoff wishes to rely upon the non-payment of one-half of one annual quarter's worth of commissions, without more, as a *material* breach sufficient to warrant total recission of the Employment Agreement, he cannot do so. Indeed, he has failed to plead that UOA's failure in this regard, even if true, "defeated" the object of the parties in making the Employment Agreement. Moreover, Clayton Hertzoff fails to allege, as is required to plead a claim for breach of contract, that he performed adequately under the agreement prior to Defendants' alleged breach. *See, Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir., 1996).

With regard to the other "material" breaches alleged, while the allegations are certainly salacious – that UOA engages in and "requests" that its employees engage in deceptive insurance billing practices – the claim fails to point to any provision of the Employment Agreement that is "breached" by virtue of UOA's alleged "requests." Indeed, even taking the allegations as true as this Court is required on a motion to dismiss the pleading, Clayton Hertzoff fails to plead anything more than a "request" from UOA to engage in such practices, and further fails to allege that any adverse employment action was taken against him by UOA for his refusal to grant the alleged "request."

13

To survive a motion to dismiss, a complaint "must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." *Mina Inv. Holdings, Ltd. v. Lefkowitz*, 51 F.Supp.2d 486 (S.D.N.Y., 1999). Accordingly, as the allegations fail to allege any "breach" of any specific provision of the Employment Agreement, let alone a "material" breach of same, the Plaintiffs' fifth claim for relief must be dismissed.

**C.     Plaintiff Clayton Hertzoff's Claim For Constructive Discharge Fails To Allege, Nor Can It, That He Was Forced To Resign, And Thus Fails To State A Claim**

A constructive discharge occurs when the employer, rather than acting directly, "deliberately makes an employee's working conditions so intolerable that the employee *is forced into an involuntary resignation.*" *Pena v. Brattleboro Retreat*, 702 F.2d 322 (2d Cir., 1983) (emphasis added). In this matter, unlike the *Pena* case cited above, Clayton Hertzoff simply does not and cannot allege that he resigned as a result of the "intolerable" working conditions alleged in the Amended Complaint.

Indeed, as is alleged earlier in the Amended Complaint, at all relevant times Plaintiff Clayton Hertzoff was an employee of UOA. *See*, Am. Cmplt., ¶ 21. How is it possible to sustain a claim for constructive discharge without any discharge of the employee? *See, e.g., Parker v. Chrysler Corp.*, 929 F.Supp. 162 (S.D.N.Y. 1996) (holding that, in the analysis of the "constructive discharge" element of Title VII claim, the court determines whether the employee's *resignation* was forced so as to be treated as an actual discharge by the employer). Plaintiff provides the Court with a laundry list of allegedly "intolerable" working conditions, but fails to allege an essential element of the claim – that he resigned from employment because of them. As a result, even taking all of the facts alleged in the Amended Complaint as true and

14

providing Plaintiff Clayton Hertzoff with the benefit of every possible inference in his favor, he

has simply failed to allege an element essential to make out a *prima facie* claim for constructive

discharge.  As a result, this claim too, must be dismissed.

**D.**    **Plaintiff Clayton Hertzoff's Claim For "Anticipatory" Breach Of The Employment Agreement Must Be Dismissed For Failure To Plead That The Alleged Breach Anticipated Rendered His Performance Under The Agreement Impossible Or That It Adequately Demonstrated UOA's Intention Not To Continue As His Employer**

In a final attempt to plead some cause of action with regard to the Employment

Agreement worth more than $4,163 in lost commissions, Plaintiff Clayton Hertzoff alleges hat

UOA's statements in the May 22, 2007 letter from Noreen Diaz to Clayton Hertzoff evidence

UOA's "intention not to perform their obligations under the Employment Agreement." Am.

Cmplt., ¶ 39.  Nowhere in that letter does UOA ever state, through Ms. Diaz, that it does not

intend to continue to employ Clayton Hertzoff.  *See*, Diaz Dec., Exhibit 2.  The letter merely

chastises an employee for what UOA's President apparently felt was poor judgment and

performance on that employee's part.  *Id.*

"Repudiation or anticipatory breach of a contract occurs when there has been an overt

communication of intention or an action which renders performance [by the other party]

impossible or demonstrates a clear determination not to continue with performance." *Teachers*

*Ins. and Annuity Ass'n of America v. Coaxial Communications of Cent. Ohio, Inc.*, 807 F.Supp.

1155 (S.D.N.Y. 1992).  Here, Plaintiff Clayton Hertzoff does not allege that his performance

under the Employment Agreement was rendered impossible (*i.e.*, that he could not continue to be

a prosthetist) as a result of UOA's statements in the May 22, 2007 letter or by the other

15

unspecified "actions and statements" to Plaintiff. Moreover, mere conclusory allegations, without factual support, that the May 22, 2007 letter and other unspecified "actions and statements" by UOA were sufficient to evidence UOA's intention not to perform under the Employment Agreement renders the pleading insufficient, even under the liberal standards afforded to pleadings on a motion to dismiss pursuant to FRCP 12(b)(6). *See, Mina Inv. Holdings, Ltd. v. Lefkowitz*, 51 F.Supp.2d 486 (S.D.N.Y., 1999).

Here, Plaintiff Clayton Hertzoff's claim for alleged "anticipatory breach" of the Employment Agreement by UOA is nothing if not conclusory, and as a result, fails to state a claim upon which relief can be granted.

## POINT III

### PLAINTIFFS' CLAIM FOR NON-PAYMENT OF RENT DELIBERATELY MISLEADS THIS COURT AND MUST BE DISMISSED

Finally, Plaintiff asserts an eighth claim for relief, alleging that certain rent has been left unpaid by UOA. The amount of damages alleged is for $10,000 – one month of unpaid rent. *See*, Am. Cmplt., ¶¶ 41 - 43. A careful reading of the allegations reveals, however, that only the June rent allegedly remains unpaid.

But a claim for unpaid rent for June, 2007 was not yet ripe for adjudication by this Court as of the date of the Amended Complaint, yet it was nevertheless, included in the Amended Complaint merely as a transparent attempt to make Plaintiffs' meritless claims seem more substantial in monetary value.

16

508835.01

Indeed, the Notice of Default for unpaid rent in June is dated June 5, 2007. Am. Cmplt., Exhibit B. Pursuant to the terms of the Agreement of Lease referenced in the Amended Complaint, however, UOA had fifteen days to cure any default in payment of rent from the date of UOA's receipt of the default notice from the Hertzoffs. *See*, Am. Cmplt., ¶41; *cf.* Diaz Dec., Exhibit 2, Rider at ¶47.[2] As demonstrated by a plain reading of the allegations and the documents referenced therein, no "breach" of the Agreement of Lease had occurred as of the June 8, 2007 service date of the Plaintiffs' Amended Complaint. This claim for alleged "non-payment of rent," therefore, was not yet ripe for adjudication and the Court has no subject-matter jurisdiction over same. *See, Auerbach v. Bd. of Educ. of the Harborfields Cent. School Dist.*, 136 F.3d 104 (2d Cir., 1998).

## CONCLUSION

As a result of the foregoing, on the basis of a plain reading of the allegations in the Amended Complaint and the documents annexed thereto and referenced therein, Plaintiffs First, Third, Fifth, Sixth, Seventh, and Eighth "claims for relief" are subject to dismissal by this Court pursuant to either FRCP 12(b)(1) or 12(b)(6). Accordingly, Defendants respectfully request that this Court dismiss the deficiently plead and premature causes of action from Plaintiffs' Amended Complaint and see the Amended Complaint for what it is – an utterly frivolous attempt to make a "federal case" out of some bad blood between the parties resulting from a negotiated arms-length transaction with which Plaintiffs (11 months after signing the agreements) now find themselves unhappy.

---

[2] Moreover, the June rent was paid by UOA within the cure period.

508835.01

Dated: Great Neck, New York
      July 12, 2007

GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendants*

By_____
      Andrew L. Zwerling
      Colleen M. Tarpey
111 Great Neck Road
Great Neck, NY 11021
(516) 393-2200

18

508835.01