Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (MT-7572)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200
*Attorneys for Defendants Noreen Diaz and*
*United Orthopaedic Appliances Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BEVERLY HERTZOFF, EDWIN HERTZOFF,  :
and CLAYTON HERTZOFF,              :
                                   :
                Plaintiffs,        :
                                   :
        -against-                  :    07 CV 3157 (CM)(MHD)
                                   :
NOREEN DIAZ and UNITED ORTHOPAEDIC :
APPLIANCES CO., INC.               :
                                   :
                Defendants.        :
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' NOREEN DIAZ AND UNITED
ORTHOPAEDIC APPLIANCES CO., INC'S
MOTION FOR PRELIMINARY INJUNCTIVE RELIEF


GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendants*
111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200

*Of Counsel:*
*Andrew L. Zwerling (AZ-5455)*
*Colleen M. Tarpey (CT-7572)*

510417.03

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................1

POINT I

       DEFENDANTS ARE ENTITLED TO INJUNCTIVE RELIEF TO
       PREVENT IRREPARABLE HARM TO UOA BY VIRTUE OF
       CLAYTON HERTZOFF'S BREACH OF THE NON-COMPETE AND
       NON-SOLICITATION PROVISIONS OF HIS EMPLOYMENT
       AGREEMENT ..........................................................................................5

       A.    Clayton Hertzoff's Indisputable Breaches Of The Employment
             Agreement..................................................................................6

       B.    Defendant UOA Would Suffer Irreparable Harm In The Absence
             Of Injunctive Relief Enjoining Clayton Hertzoff's Breaches Of
             The Employment Agreement....................................................10

       C.    UOA Can Demonstrate Likelihood Of Success On The Merits...............14

       D.    Defendants Have Raised Sufficiently Serious Questions Going To
             The Merits To Make Them Fair Ground For Litigation And A
             Balance Of Hardship Tips Decidedly In Their Favor...............................16

       E.    Injunctive Relief Is Necessary To Maintain The Status Quo ....................17

       F.    Should Defendants Prevail On This Application, They Are Entitled
             To Payment From Defendant Clayton Hertzoff Of Legal Fees,
             Costs And Disbursements ........................................................18

CONCLUSION..........................................................................................................18

510417.03

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AB Electrolux v. Bermil Industries Corporation,*
    481 F. Supp. 2d 325 (S.D.N.Y. 2007)...........................................................................5

*Absolute Recovery Hedge Fund, L.P. v. Gaylord Container Corp.,*
    185 F. Supp. 2d 381 (S.D.N.Y. 2002)........................................................................17

*Citibank, N.A. v. Citytrust,*
    756 F.2d 273 (2d Cir. 1985)......................................................................................10

*EarthWeb, Inc. v. Schlack,*
    71 F. Supp. 2d 299 (S.D.N.Y. 1999)..........................................................................13

*Estee Lauder Companies Inc. v. Batra,*
    430 F. Supp. 2d 158 (S.D.N.Y. 2006).............................................................10, 13, 14

*FMC Corp. v. Taiwan Tainan Giant Industrial Co,*
    730 F.2d 61 (2d Cir. 1984).........................................................................................13

    *FMC Corp. v. Taiwan Tainan Giant Industrial Co.,*
        730 F.2d 61 (2d Cir. 1984).................................................................................13

*Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.,*
    323 F. Supp. 2d 525 (S.D.N.Y. 2004)............................................................5, 6, 10, 13

*Lichtenberg v. Besicorp Group Inc. BGI,*
    43 F. Supp. 2d 376 (S.D.N.Y. 1999)..........................................................................17

*Markovits v. Venture Information Capital, Inc.,*
    129 F. Supp. 2d 647 (S.D.N.Y. 2001).........................................................................12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn,*
    73 F. Supp. 2d 425 (S.D.N.Y. 1999)..........................................................................13

*Natsource LLC v. Paribello,*
    151 F. Supp. 2d 465 ............................................................................................11, 12

*New York v. Shinnecock Indian Nation,*
    280 F. Supp. 2d 1 (E.D.N.Y. 2003) ...........................................................................17

*In re Northwest Airlines Corp.,*
    349 B.R. 338 (S.D.N.Y. 2006)...................................................................................10

*Roso-Lino Beverage Distributings Inc. v. Coca-Cola*
    *Bottling Co. of New York, Inc.,*
    749 F.2d 124 (2d Cir.1984).......................................................................................10

ii

*Shred-It, USA, Inc. v. Mobile Data Shred, Inc.,*
    202 F. Supp. 2d 228 (S.D.N.Y. 2002)............................................................12

*Sierra Club v. U.S. Army Corps of Engineers,*
    732 F.2d 253 (2d Cir. 1984).........................................................................17

*Ticor Title Insurance Co. v. Cohen,*
    173 F.3d 63 (2d Cir. 1999).............................................................11, 14, 15

*Travellers International AG v. Trans World Airlines, Inc.,*
    684 F. Supp. 1206 (S.D.N.Y. 1988)...............................................................11

*Velo-Bind, Inc. v. Scheck,*
    485 F. Supp. 102 (S.D.N.Y. 1979) .................................................................11

*Warner-Lambert Co. v. Northside Development Corp.,*
    86 F.3d 3 (2d Cir. 1996)................................................................................10

*Webcraft Technologies, Inc. v. McCaw,*
    674 F. Supp. 1039 (S.D.N.Y. 1987)..........................................................5, 16

## STATE CASES

*BDO Seidman v. Hirshberg,*
    93 N.Y.2d 382, 690 N.Y.S.2d 854 (1999) ....................................................15

*Chernoff Diamond & Co. v. Fitzmaurice, Inc.,*
    234 A.D.2d 200 (1st Dep't 1996) ..................................................................15

*Gelder Medical Group v. Webber,*
    41 N.Y.2d 680 (1977) ...................................................................................15

*Jay's Custom Stringing, Inc. v. Yu,*
    2001 WL. 761067 (S.D.N.Y. 2001)...............................................................13

*Karpinski v. Ingrasci,*
    28 N.Y.2d 45, 268 N.E.2d 751, 320 N.Y.S.2d 1 (1971)................................15

*Meteor Industries, Inc. v. Metalloy Industries, Inc.,*
    149 A.D.2d 483, 539 N.Y.S.2d 972 (2d Dep't 1989)....................................15

*Reed, Roberts Associate v. Strauman,*
    40 N.Y.2d 303, 386 N.Y.S.2d 677 (1976) ....................................................15

## PRELIMINARY STATEMENT

This request for injunctive relief is necessary to stop Plaintiffs Beverly, Edwin and Clayton Hertzoff ("Plaintiffs"), sellers of Defendant United Orthopaedic Appliances Co., Inc. ("UOA"), from destroying the value of the business they sold to Defendant Noreen Diaz ("Ms. Diaz"). Moreover, the request is warranted in light of the contractual restrictive covenant agreed to by Plaintiff Clayton Hertzoff ("Clayton") in the Employment Agreement that he signed with UOA once his parents, Edwin and Beverly Hertzoff, had consummated the sale of UOA to Ms. Diaz.[1]

In August 2006, Ms. Diaz purchased UOA from Plaintiffs. (UOA is in the business of manufacturing and selling standard and custom-built orthopedic appliances, prosthetics and braces to customers/patients referred to UOA by their physicians and at hospital clinics.) One facet of that transaction was that Defendants were required to employ Clayton for a period of ten years and pursuant to a generous compensation package. Relevant to this request for injunctive relief, Clayton's Employment Agreement contained restrictive covenants that, among other things, proscribed him, upon terminating his employment with UOA, from providing proprietary information of UOA to its competitors and from working with any competitors of UOA within a specified geographic area and for a period of one year. By signing the Employment Agreement, Clayton acknowledged that any breach of the restrictive covenants would necessarily cause UOA harm that could not be remedied with monetary damages and would be subject to injunctive relief.

---

[1] The facts underlying this application for injunctive relief are set forth in detail in the accompanying Affidavit In Support Of Motion For Injunctive Relief of Noreen Diaz, sworn to July 13, 2007 (hereinafter, "Diaz Aff.").

Approximately eight months after the purchase agreement, Plaintiffs commenced a lawsuit against Ms. Diaz and UOA. The lawsuit itself was baseless. One claim – for a failure to pay certain monies to Plaintiffs out of the Accounts Receivable of UOA – is subject to dismissal as premature because, pursuant to the plain terms of the Stock Purchase Agreement, those monies are not due and payable until August 2008. A second claim for unpaid rent is moot because the rent has since been paid. All that remained was a claim for approximately $4,000 for an alleged bonus due Clayton, an amount that fell well below the jurisdictional limit of this Court.

Based upon the frivolous nature of the lawsuit, counsel for Defendants wrote a Rule 11 letter to counsel for Plaintiff requesting that the lawsuit be discontinued. Rather than do so, on Friday June 8, 2007, Plaintiffs served Defendants with an Amended Complaint. That pleading kept the original claims and, in addition to some other changes, added a claim that Clayton Hertzoff had been "constructively discharged" from his job. This cause of action was initially rendered incredible by the facts 1) Clayton had not been terminated by Clayton nor had he or his counsel ever claimed that he had been terminated or was no longer working for UOA; 2) Clayton was still using the company car provided to him and 3) in the week immediately *following* his claim of "constructive discharge," Clayton took a one week *paid* vacation from UOA! (The "constructive discharge" claim suffers from other serious factual flaws.)

On the day Clayton was slated to return from his paid vacation, Defendants learned that he had quit his job with UOA and was working with a direct competitor of UOA (New England Orthotic & Prosthetic Systems, LLC ["NEO"]) within the geographic area proscribed by the restrictive covenant in Clayton's employment agreement. Even worse, in direct violation of his Employment Agreement, he was servicing UOA customers on behalf of his new employer. To

2

510417.03

compound this, Clayton has also been disparaging UOA to individuals at hospital clinics and

referral sources, and has been advising certain insurers that UOA is "dissolved" as a corporation.

This latter conduct has caused UOA to receive letters from those insurers seeking an audit of

UOA's billings. Even Plaintiffs' counsel has entered the act by serving over 20 subpoenas on

various non-party healthcare institutions and insurers, all of whom have done business with UOA

in the past, even though such non-party discovery is premature and wrongfully conducted given

that it is tied to the premature Accounts Receivable claim referred to above.

Based upon the plain language of Clayton's Employment Agreement, it cannot

reasonably be disputed that Defendants are entitled to the requested injunctive relief. That

Clayton is violating the unequivocal provisions of his Employment Agreement by stealing UOA

customers and proprietary information and working for a direct competitor of UOA within the

proscribed geographic area cannot be contested.

Moreover, the harm to UOA is accruing on a daily basis, with every new customer stolen

and with every disparaging and false comment designed to undermine the viability of UOA.

Plaintiffs' efforts to damage UOA's relationship with third-party insurers further compound this

harm. Most of UOA's customers' braces and prosthesis are paid for by third-party insurers, and

the ability to bill those insurers for the work performed by UOA is crucial to UOA's continuation

as a viable business. In addition to Clayton's acknowledgement in his Employment Agreement

that "damages at law would be an insufficient remedy," the facts as established demonstrate that,

absent intervention by this Court in the form of injunctive relief, UOA will be caused irreparable

injury.   The viability of UOA depends on immediate relief being granted; delaying such

intervention until the outcome of this litigation will reward Plaintiffs for their egregious

behavior.

3

510417.03

Furthermore, it is clear that Clayton will not refrain from further violations unless the Court intervenes. In its June 18, 2007 termination letter to Clayton (which was sent after UOA learned that Clayton had started working for NEO and was violating the Employment Agreement), Clayton was reminded that, pursuant to the Employment Agreement, he is required to refrain from "interfering with UOA's business in any way, including the disclosure to third parties of any proprietary information as set forth in the Agreement." (*See*, Diaz Aff., ¶ 20.) Indeed, by signing the Employment Agreement, Clayton Hertzoff agreed to protect UOA's proprietary business information and not to compete with UOA, should his employment with UOA end for any reason. (*See*, Diaz Aff., ¶ 21.) Clayton has simply ignored these admonitions, which highlights the need for assistance by this Court in the form of injunctive relief.

4

**POINT I**

**DEFENDANTS ARE ENTITLED TO INJUNCTIVE RELIEF
TO PREVENT IRREPARABLE HARM TO UOA BY VIRTUE OF
CLAYTON HERTZOFF'S BREACH OF THE NON-COMPETE AND
NON-SOLICITATION PROVISIONS OF HIS EMPLOYMENT AGREEMENT**

To win a preliminary injunction in this Circuit, the moving party must demonstrate "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardship tipping decidedly toward the party requesting the preliminary relief." *AB Electrolux v. Bermil Industries Corporation*, 481 F.Supp.2d 325, 329-330 (S.D.N.Y. 2007); *Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*, 323 F.Supp.2d 525, 531 (S.D.N.Y. 2004); *Webcraft Technologies, Inc. v. McCaw*, 674 F.Supp. 1039 (S.D.N.Y. 1987) (granting employer requested injunctive relief to prevent harm caused by former employee's breach of restrictive covenant and theft of trade secrets).

Here, Defendant UOA easily meets the standard, as the harm it will suffer by Clayton Hertzoff's violations of the restrictive covenant and other provisions of the Employment Agreement is clearly irreparable. Moreover, Clayton Hertzoff has acknowledged, by his signature on the Employment Agreement, that the harm suffered by UOA in the event of his breach, or even threatened breach, of those portions of the agreement would be irreparable.

Additionally, UOA has a significant likelihood of success on the merits, because the restrictive covenant provisions of the Employment Agreement are not overbroad in geographical scope or time, and are necessary to prevent Clayton Hertzoff's disclosure and further disclosure of UOA's customer information, referral sources, and other trade secrets to the direct competitor

5

of UOA for whom he has already commenced work. Further, because Clayton is a trained

prosthetist, skilled in the manufacture and fitting of custom-made prosthetic devices, the skills he

learned as an employee of UOA are special or unique, such that they are presumptively entitled

to protection from direct use by UOA's competitors in violation of the restrictive covenant.

Finally, taken together with the Hertzoff's overall scheme to harass and annoy UOA and

Ms. Diaz and to destroy the goodwill of the business they are apparently unhappy that they sold,

the merits of the underlying action – at least on the part of Defendants soon-to-be-alleged

counterclaims and grounds for dismissal – are fair ground for litigation and the balance of the

equities tips squarely in favor of Defendants. *See Johnson Controls, Inc. v. A.P.T. Critical

Systems, Inc.*, 323 F.Supp.2d 525 (S.D.N.Y. 2004)(preliminary injunction granted enjoining

former employees from breaching noncompete provisions of employment agreements).


**A.    Clayton Hertzoff's Indisputable Breaches Of The Employment
       Agreement**

It cannot be contested that Clayton has violated the unequivocal terms of his Employment

Agreement.

Specifically, the Employment Agreement states, at Paragraph 7.a. that:

> Employee [Clayton Hertzoff] acknowledges that the names of the
> clients and referral sources of Company, as may exist from time to
> time, and the financial statements, business plans, internal
> memoranda, reports, audits, patient surveys, employee surveys,
> operating policies, quality assurance materials, fees, and other such
> materials or records of proprietary nature of Company
> (collectively, the "Confidential Information") are valuable, special
> and unique assets of Company and are deemed to be trade secrets.

*See*, Diaz Aff., 22.

6

510417.03

The Employment Agreement further states at Paragraph 7.b. that:

> Employee [Clayton Hertzoff] agrees that he will not, after the date hereof and for so long as any such Confidential Information may remain confidential, secret, or otherwise wholly or partially protectable: (i) use the Confidential Information, except in connection with his retention by Company, or (ii) divulge any such Confidential Information to any third party, unless Company gives its prior written consent to such use or divulgence.

*See*, Diaz Aff., 23.

Despite these unequivocal contractual obligations, however, since his termination on June 18, 2007, Clayton Hertzoff has, as an employee of NEO, used his knowledge of UOA client names and referral sources of business to UOA to directly compete with UOA and has shared that Confidential Information with his new employer.

For example, he appeared at the Metropolitan Hospital clinic on June 18, 2007 and proceeded to treat patients scheduled to see other UOA practitioners that day. *See* Diaz Aff., 25. He has also been observed by UOA practitioners at the clinics at St. Vincent's Hospital, Woodhall Hospital, and Kings County Hospital, locations where he is known only through his work with UOA. *See*, Diaz Aff., 25. Clearly, Clayton Hertzoff is only in contact with those UOA referral sources and is only allowed to see their patients as a result of his employment with UOA and their familiarity with him because of his employment with UOA. *See* Diaz Aff., 25.

Moreover, the Employment Agreement states at Paragraph 8.a. that:

> Employee shall not, either directly or indirectly, at any time during the term of his employment and for twelve (12) months following the termination of this Agreement, except with the written consent of Company: (i) solicit, interfere with or endeavor to entice away from Company, any of its employees, agent, contractor, customer, or referral sources; (ii) for his own account or for the account of

7

> others, induce any customers to patronize any competing billing service provider, request or advise any customer to withdraw, curtail, or cancel such customer's relationship with Company or disclose to any other person, partnership, firm, corporation or other entity the names or addresses of any customers of Company.

*See* Diaz Aff., 26.

Further, the Employment Agreement states at Paragraph 8.b. that:

> Employee shall not, at any time during the term of his employment under this Agreement and for twelve (12) months after the termination of this Agreement: (i) engage in the sale of orthotics and prosthetics as an employee, independent contractor, shareholder, partner, or otherwise and whether separately or in conjunction with any other entity or individual within a three (3) mile radius of Company's location; and/or (ii) operate or have any financial or other interest in any entity involved in the business of providing orthotics and prosthetics within a three (3) mile radius of Company's location.

*See* Diaz Aff., 27.

These provisions as well are currently being violated by Clayton Hertzoff.

Clayton Hertzoff's current employer, NEO, maintains an office at 235 East 38th Street in New York, New York, less than two miles from UOA's location. According to NEO's website, NEO is in the business of providing "high quality orthotic and prosthetic patient care services and products." *See* Diaz Aff., 29.

Accordingly, Clayton Hertzoff is in direct violation not only of those portions of the Employment Agreement that prohibit him from using or sharing UOA's Confidential Information with third parties, but is also in direct violation of the provisions of his Employment Agreement that prohibit him from working for a competitor, and from soliciting or interfering with UOA's customers and referral sources. *See* Diaz Aff., 30.

Moreover, Clayton Hertzoff acknowledged, by his signature on the Employment Agreement that, in the event of a breach or a threatened breach by him of these provisions, UOA would have no adequate remedy at law. *See* Diaz Aff., 34.

Further, Sections 7 and 8 of the Employment Agreement deal with the prohibitions against Clayton Hertzoff's disclosure of Confidential Information to third parties and his solicitation of customers or competition with UOA for a year after his employment. Both provisions state that, in the event of a breach or anticipated breach of these provisions, UOA "shall be entitled to an injunction" restraining Clayton Hertzoff from:

- disclosing, in whole or in part, any Confidential Information;

- interfering with Company's relationships with its employees, customers and referral sources, or with any hospital or managed care entity with which Company has a contractual relationship;

- rendering any professional services to any customer of UOA who has been solicited by Clayton Hertzoff in violation of the Employment Agreement;

- rendering any professional services to any or any person, firm, corporation, association, or other entity to whom any such Confidential Information, in whole or in part, has been disclosed by Clayton Hertzoff or is threatened to be disclosed by him;

- soliciting, interfering with or endeavoring to entice away from UOA, any of its employees, agents, contractors, customers, or referral sources;

- for his own account or for the account of others, inducing any customers to patronize any competing billing service provider, requesting or advising any customer to withdraw, curtail, or cancel such customer's relationship with UOA or disclosing to any other person, partnership, firm, corporation or other entity the names or addresses of any customers of UOA;

- engaging in the sale of orthotics and prosthetics as an employee, independent contractor, shareholder, partner, or

9

otherwise and whether separately or in conjunction with any other entity or individual within a three (3) mile radius of Company's location; and/or

•    operating or having any financial or other interest in any entity involved in the business of providing orthotics and prosthetics within a three (3) mile radius of Company's location.

*See* Diaz Aff., 33.  Given these signed acknowledgements by Clayton, he is hard-pressed to contest the availability and propriety of injunctive relief at this time.

**B.    Defendant UOA Would Suffer Irreparable Harm In The Absence Of Injunctive Relief Enjoining Clayton Hertzoff's Breaches Of The Employment Agreement**

Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.  *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985).  Irreparable harm is that "injury which is so serious that a monetary award cannot be adequate compensation." *Id.* at 275; *see also Warner-Lambert Co. v. Northside Development Corp.*, 86 F.3d 3, 8 (2d Cir. 1996) (irreparable harm requirement may be met by showing that harm is unquantifiable in monetary terms).  In order to demonstrate irreparable injury the movant must show an injury that is neither remote nor speculative, but actual and imminent and cannot be remedied by an award of monetary damages. *Estee Lauder Companies Inc. v. Batra*, 430 F.Supp.2d 158 (S.D.N.Y. 2006).  The applicant for injunctive relief must show that it is "likely to suffer irreparable harm if equitable relief is denied." *Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*, 323 F.Supp.2d 525, 531 (S.D.N.Y. 2004).  Importantly, loss of an ongoing business can constitute irreparable harm.  *In re Northwest Airlines Corp.*, 349 B.R. 338, 383 (S.D.N.Y. 2006).  *See Roso-Lino Beverage Distribs. Inc. v. Coca-Cola Bottling Co. of*

10

*New York, Inc.*, 749 F.2d 124, 125-26 (2d Cir.1984) (holding that loss of an "ongoing business representing many years of effort and the livelihood" of its owners constitutes irreparable harm); *Travellers Int'l AG v. Trans World Airlines, Inc.*, 684 F.Supp. 1206, 1216 (S.D.N.Y. 1988) ("[L]oss of a business constitutes irreparable injury and thus is not compensable by a damage award.").

Here, Defendants have readily satisfied these criteria.

### 1.    Irreparable Harm Attributable To Breach Of Restrictive Covenant

When, as here, a party violates a non-compete clause, generally the ensuing loss of client relationships and customer good will built up over the years constitutes irreparable harm. As the Second Circuit has remarked, it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69-70 (2d Cir. 1999). *See Natsource LLC v. Paribello*, 151 F.Supp.2d 465 (S.D.N.Y. 2001. *See also Velo-Bind, Inc. v. Scheck*, 485 F.Supp. 102, 109 (S.D.N.Y. 1979) ("By siphoning off plaintiff's carefully gleaned customers, defendants subject plaintiff to a definite possibility of irreparable harm, which increases as long as it continues unrestrained. What is at stake here is plaintiff's good will built up over the years, which is not, contrary to defendant's assertion, monetarily ascertainable.").

As is set forth above, Clayton Hertzoff was an employee of UOA for over thirty years and the son of the prior owners, no doubt privy to every facet of the operation of the business and its referral sources, customer lists, and contracts with the third party insurance payors whose payments generate the revenue that keeps UOA operational.    Moreover, as a trained prosthetist,

11

he knows any and all UOA "tricks of the trade" with regard to the manufacture and fitting of custom build prosthetic devices.

Additionally, Clayton  acknowledged and admitted by his signature on the Employment Agreement that he was privy to "Confidential Information" relating to UOA, and that his theft of such information or disclosure of it to third parties would constitute "irreparable harm" to UOA. Now, in contravention of all the promises he made to UOA in August, 2006, he has taken his knowledge of UOA's Confidential Information, and has taken a job less than 2 miles from UOA's offices, working in the same hospital clinics that he worked in on behalf of UOA, only now working on behalf of UOA's direct competitor, NEO.

Given this showing of irreparable injury, it is clear that Defendants are entitled to the injunctive relief they seek. *See Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F.Supp.2d 228 (S.D.N.Y. 2002)(amount of past harm done or potential future harm to document destruction service providers' attempts to establish customer relationships resulting from competitor and its principal owner's violation of non-compete clause in connection with its sale of assets to providers would be difficult to quantify, and thus providers established irreparable harm prerequisite for issuance of preliminary injunction enjoining competitor and owner from engaging in mobile shredding business in the United States and Canada); *Natsource LLC v. Paribello*, 151 F.Supp.2d 465 (S.D.N.Y. 2001)(employer, which sought preliminary injunction enforcing non-compete clause in employment contract, would be irreparably harmed if it did not receive the benefit of its bargain and its customers left employer to follow broker within the initial 120 days following broker's termination); *Markovits v. Venture Info Capital, Inc.*, 129 F.Supp.2d 647 (S.D.N.Y. 2001)(business consulting firm would suffer irreparable injury in absence of preliminary injunction enforcing former employee's non-compete agreement; it would

12

be difficult, if not impossible, to enumerate monetary damages for harm firm would suffer absent injunction); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn*, 73 F.Supp.2d 425 (S.D.N.Y. 1999)(former employer, a provider of financial services, was entitled to a preliminary injunction that prohibited former employees from soliciting and effecting account transfers from clients they serviced during their tenure with former employer, in suit to enforce confidentiality and noncompetition agreements)

### 2.    Irreparable Harm Due To Misappropriation Of Proprietary Information

Irreparable harm to an employer may also result where an employee has misappropriated trade secrets or confidential customer information, including pricing methods, customer lists and customer preferences. *FMC Corp. v. Taiwan Tainan Giant Indus. Co*, 730 F.2d 61, 63 (2d Cir.1984) ("[I]t is clear that the loss of trade secrets cannot be measured in money damages."). Indeed, irreparable harm is presumed where a trade secret has been misappropriated, even in the absence of an employment agreement. *Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*, 323 F.Supp.2d 525, 533 (S.D.N.Y. 2004); *Jay's Custom Stringing, Inc. v. Yu*, 2001 WL 761067 at *8 (S.D.N.Y. 2001); *EarthWeb, Inc. v. Schlack*, 71 F.Supp.2d 299, 309-10 (S.D.N.Y. 1999). This is because, as the Second Circuit has explained, "a trade secret once lost is, of course, lost forever and, therefore, such a loss cannot be measured in money damages. Even where a trade secret has not yet been disclosed, irreparable harm may be found based upon a finding that trade secrets will inevitably be disclosed...." *Estee Lauder Companies Inc. v. Batra*, 430 F.Supp.2d 158 (S.D.N.Y. 2006) (*citing, FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984); *EarthWeb, Inc. v. Schlack*, 71 F.Supp.2d 299, 309 (S.D.N.Y. 1999)).

13

Here, the effect of Clayton's provision of Confidential Information to UOA's direct competitor is impossible to measure given the difficulty of proving which customers or referral sources may have changed their loyalties due to his interference and which may have moved on by their own volition. Moreover, the effect of Clayton's interference in the Hospital clinics is likewise difficult or impossible to measure, as are damages in the event that UOA loses a contract enabling it to bill for services to one or more third party insurers as a result of Clayton's interference and his spreading of false stories of UOA's "dissolution" as an active corporation.

Finally, where an employee has signed an Employment Agreement acknowledging that certain post-termination activity, such as the revelation to third parties of trade secrets or breach of a restrictive covenant, would irreparably harm his employer, that acknowledgement is viewed by the courts as an admission of that fact. *See, Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999); *Estee Lauder Companies Inc. v. Batra*, 430 F.Supp.2d 158 (S.D.N.Y. 2006). Even without Clayton's acknowledgement, this conclusion would be inevitable.

*               *               *

It is respectfully asserted that, given that Clayton Hertzoff signed an agreement acknowledging that the very acts he now takes would cause irreparable harm to UOA, this Court should find that UOA will suffer irreparable harm if injunctive relief is not granted to prevent Clayton Hertzoff from continuing to breach Sections 7 and 8 of the Employment Agreement.

## C.    UOA Can Demonstrate Likelihood Of Success On The Merits

Reference to relevant decisional law compellingly establishes that the restrictive covenants UOA is seeking to enforce are indeed enforceable and proper.

14

In New York, a standard of reasonableness is applied to restrictive covenants, assessed under a three-pronged test. *Reed, Roberts Assoc. v. Strauman*, 40 N.Y.2d 303, 307, 386 N.Y.S.2d 677 (1976); *Karpinski v. Ingrasci*, 28 N.Y.2d 45, 49, 268 N.E.2d 751, 320 N.Y.S.2d 1 (1971). "In this context a restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee" *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89, 690 N.Y.S.2d 854 (1999).

A covenant that is reasonable in time and geographic scope shall be enforced to the extent necessary "(1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique." *Ticor*, 173 F.3d at 70.

Here, the restrictive covenant is utterly reasonable in time and geographic scope, being limited to a singe year, and a three mile radius around UOA's offices in Manhattan. *See* Diaz Aff., ¶ 33. Courts have upheld the reasonableness of similarly crafted restrictive covenants before. *See, Meteor Industries, Inc. v. Metalloy Industries, Inc.*, 149 A.D.2d 483, 485, 539 N.Y.S.2d 972, 974 (2d Dep't 1989) (three year restrictive covenant reasonable); *Chernoff Diamond & Co. v. Fitzmaurice, Inc.*, 234 A.D.2d 200, 201-2 (1st Dep't 1996) (two-year restrictive covenant reasonable); *Gelder Medical Group v. Webber*, 41 N.Y.2d 680 (1977)(thirty-mile, five-year restrictive covenant enforceable).

Moreover, the restrictive covenant and other provisions of the Employment Agreement are plainly, and by their very terms, designed to prevent Clayton from usurping UOA's

15

Confidential Information whether for his own benefit or the benefit of a third party and his solicitation or disclosure of trade secrets and/or his release of confidential information regarding the employer's customers. Unquestionably, the restrictive covenants are necessary to protect legitimate interests of UOA and Ms. Diaz. Clayton Hertzoff has already begun a campaign to destroy the value of the business that he sold to Ms. Diaz by the breach of the restrictive covenant provisions of his Employment Agreement and further interference with UOA's business reputation and good will as described elsewhere.

Accordingly, Defendants have provided this Court with sufficient reason to grant injunctive relief on the basis of the Defendants' likelihood of success on the underlying merits of their claims against Clayton Hertzoff for breach of the Employment Agreement.[2]

**D.      Defendants Have Raised Sufficiently Serious Questions Going To The Merits To Make Them Fair Ground For Litigation And A Balance Of Hardship Tips Decidedly In Their Favor**

In addition to meeting the first prong of the test articulated by the court in the *Webcraft Technologies* case cited above (*Webcraft*, 674 F.Supp. 1039 (S.D.N.Y. 1987)), Defendants are entitled to the grant of injunctive relief by this Court on the basis of the second prong as well. As is plain from Ms. Diaz' Affidavit, Defendants can and have raised serious questions with regard to Clayton's breach of Sections 7 & 8 of his Employment Agreement that make them fair grounds for litigation.

Additionally, reference to the factor of a balancing of the equities also favors the issuance of the injunctive relief requested by Defendants. "[T]he balance of hardships inquiry asks which

---

[2] The Defendants' counterclaims against Clayton Hertzoff in this regard are, of necessity, to be pled at some point in the future, because Defendants have made a motion to dismiss that is pending with the Court and thus have not yet pled counterclaims in an answer to the Amended Complaint.

510417.03

of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Absolute Recovery Hedge Fund, L.P. v. Gaylord Container Corp.*, 185 F.Supp.2d 381, 388 (S.D.N.Y. 2002).

The conduct of all Plaintiffs and their legal counsel in this action – in providing a smoke-screen to justify Clayton's breaches with trumped up and legally insufficient charges of "constructive discharge" and in doing all they can to harass and annoy Defendants into renegotiating the terms of the August 2006 sale of UOA -- tips the balance of the hardships here squarely in favor of the Defendants. Indeed, Plaintiffs actions, if allowed to continue through Clayton's interference and direct competition with UOA, threaten to strip all value from the company that the Hertzoffs sold -- destroying the good faith, customer base, and referral network of UOA only 11 months after Ms. Diaz purchased the company outright. Plainly, such a result is inequitable, and cannot be allowed.

**E.**     **Injunctive Relief Is Necessary To Maintain The Status Quo**

The purpose of a preliminary injunction is to maintain the status quo until there can be a determination on the merits of the action. *Sierra Club v. U.S. Army Corps of Engineers*, 732 F.2d 253, 256 (2d Cir. 1984); *New York v. Shinnecock Indian Nation*, 280 F. Supp.2d 1, 4 (E.D.N.Y. 2003); *Lichtenberg v. Besicorp Group Inc. BGI*, 43 F. Supp.2d 376, 384 (S.D.N.Y. 1999).

Here, Clayton is attempting to steal customers from UOA who have been with UOA for years and to undermine the viability of an entity -- UOA -- that has been a presence in this industry for decades. Clayton's claimed entitlement to misappropriate UOA customers and

17

proprietary information represents a sharp break from a status quo that has existed for decades and, at a minimum, since UOA was purchased by Ms. Diaz. Injunctive relief was designed for circumstances such as this.

F.      **Should Defendants Prevail On This Application, They Are Entitled To Payment From Defendant Clayton Hertzoff Of Legal Fees, Costs And Disbursements**

Pursuant to Paragraph 8.i. of the Employment Agreement, "In the event that [UOA] is successful in judicial proceedings to enforce its rights under this Section 8, then Employee [Clayton Hertzoff] agrees to reimburse [UOA] for the legal fees, costs, and disbursements which it incurs as a result of such proceedings." Accordingly, it is respectfully requested that, should this Court issue an Order granting Defendants' request for preliminary injunctive relief pursuant to Section 8 of the Employment Agreement, that such Order make provision for Defendant's recovery of legal fees, costs and disbursements incurred in procuring said relief.

## CONCLUSION

The patent violations of his employment agreement by Clayton are intended to harm and have harmed the financial viability of UOA, and, if left unrestrained, will cause irreparable harm to UOA. The egregiousness of Clayton's actions take on even greater meaning when viewed in conjunction with other actions of Plaintiffs that are prejudicial to UOA, including Plaintiffs' commencement of and maintenance of frivolous litigation against UOA in the Federal Courts. These actions of Plaintiffs, whether viewed singularly or collectively, are part of a blatant attempt by Plaintiffs to re-write the deal they agreed to in August, 2006.

18

510417.03

Therefore, for the reasons set forth above and in the accompanying Affidavit of Ms. Diaz, it is respectfully submitted that Defendants have amply demonstrated their entitlement to injunctive relief against Clayton Hertzoff as set forth herein.

Dated: Great Neck, New York
      July 13, 2007

GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendants*

By _____
    Andrew L. Zwerling
    Colleen M. Tarpey
111 Great Neck Road
Great Neck, NY 11021
(516) 393-2200

19

510417.03