Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (MT-7572)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200
Attorneys for Defendants Noreen Diaz and
United Orthopaedic Appliances Co., Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| BEVERLY HERTZOFF, EDWIN HERTZOFF, and CLAYTON HERTZOFF, <br><br> Plaintiffs, <br><br> -against- <br><br> NOREEN DIAZ and UNITED ORTHOPAEDIC APPLIANCES CO., INC. <br><br> Defendants. | **DEFENDANT NOREEN DIAZ' AFFIDAVIT IN SUPPORT OF DEFENDANTS' MOTION FOR INJUNCTIVE RELIEF** <br><br> 07 CV 3157 (CM)(MHD) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK     )
                                         )ss.:
COUNTY OF NEW YORK  )

NOREEN DIAZ, being duly sworn, deposes and says:

**Introduction**

1.      I am a defendant in the captioned proceeding and am the current sole shareholder

and President of defendant United Orthopaedic Appliances Co., Inc. ("UOA"), and submit this

affidavit in support of UOA's application for injunctive relief against plaintiff Clayton Hertzoff.

The intervention of this Court is necessary to assist in restraining a pattern of wrongful conduct

of Plaintiffs Beverly Hertzoff, Edwin Hertzoff and Clayton Hertzoff (collectively referred to as

508117.02

"Plaintiffs" or the "Hertzoffs") that is designed to harass and annoy UOA and destroy its business reputation and that, if left unchecked, will cause UOA irreparable harm.

2.     UOA is in the business of manufacturing and selling standard and custom-built orthopedic appliances, prosthetics, and braces to customers referred to us by their physicians.   In addition, our prosthetists also provide services in certain hospital clinics, which provide an additional source of customers for UOA.  Most of our customers' braces and prosthesis are paid for by third-party insurers, and the ability to bill those insurers for the work performed by UOA is crucial to UOA's continuation as a viable business.

3.     The Hertzoffs – Plaintiffs Beverly, Edwin, and Clayton – are mother/wife, father/husband, and son respectively, and formerly owned and operated UOA as a family business for many years.  UOA was operated out of a building owned by the Hertzoff family at 791 Broadway, New York, New York and paid rent to the Hertzoffs.  In addition to rental income, the Hertzoffs also received salaries as employees of the business and other revenue the business generated over the years.

4.     Over time, however, the Hertzoffs proved to unable to transition the company to compete in the modern healthcare environment and were forced to sell the company to me in August 2006, having accumulated significant corporate and personal debt in the attempt to remain operational.[1]  For example, it is my understanding that Beverly Hertzoff had lent the company significant sums of her own personal money, that the company was in arrears on its

---

[1] In addition, the Hertzoffs simply had failed to modernize the company.  Mrs. Hertzoff kept all of the company's books and records by hand, for example, and the company had no functioning computer system for maintaining customer accounts, keeping track of referral sources, or organizing and tracking inventory.  Since taking over in August, 2006, a major portion of the work that my husband and I have done in re-building UOA has been to modernize and computerize its systems and the processes by which it gets orders, tracks referral sources, customers, and inventory, and collects accounts receivables.

2

rent to the Hertzoffs for many months as of the date of their sale of the company and that the company had other corporate debt.

5.      I purchased all of the outstanding UOA stock on or about August 20, 2006. A copy of the Stock Purchase Agreement is annexed hereto as Exhibit 1. Pursuant to the terms of the agreement that I entered into with the Hertzoffs, I paid nothing upon the closing of the transaction, but was obligated to cause UOA to continue to bill and collect for outstanding accounts receivables ("A/R") owed to UOA prior to the closing date and, by August 20, 2008, to apply the incoming A/R to certain accounts payable of the corporation. (*See*, Ex. 1, ¶1.3.)

6.      The accounts payable to which the A/R was to be applied included 1) an HSBC line of credit; 2) a promissory note that was owed to Beverly Hertzoff personally by UOA; and 3) accrued and unpaid rent owed by UOA to its landlords, the Hertzoffs. (Ex. 1, ¶ 1.3; Schedule A). In the event of a surplus of A/R over accounts payable, the Hertzoffs were to receive that surplus on August 20, 2008. (Ex. 1, ¶ 1.3) In the event that the A/R was insufficient to cover all accounts payable, UOA was obligated to make a $100,000 payment to the Hertzoffs on August 20, 2008 – the two year anniversary of the closing. *Id.*

7.      In addition to the above, UOA also agreed to enter into an employment agreement with Clayton Hertzoff for a 10-year term at a generous annual salary, plus commissions on his sales, plus a possible annual discretionary bonus, plus use of a company car and other benefits.

8.      On or about April 19, 2007, Plaintiffs commenced a lawsuit against UOA and me. For reasons that are fully described in a motion to dismiss separately filed by Defendants, the lawsuit is frivolous. A copy of the Complaint is attached hereto as Exhibit 2. Essentially, the lawsuit consists of the following:

3

- A claim that Defendants have failed to forward to Plaintiffs AR monies that they claim are due them under the Purchase Agreement. Given that the Purchase Agreement does not mandate such payment in full until **August 20, 2008**, this claim is woefully premature.

- A claim for unpaid rent, which was rendered moot by payment of such rent.

- A claim that Clayton is due approximately $4,000 as an unpaid bonus.

9.      Based upon the frivolous nature of the lawsuit, our attorneys wrote to counsel for Plaintiffs demanding that they withdraw the lawsuit or face possible sanctions. Attached hereto as Exhibit 3 is a copy of that letter.

10.     Rather than withdraw this baseless lawsuit, Plaintiffs served an Amended Complaint, that added, among other claims, a cause of action alleging that Clayton had been constructively discharged. (A copy of that pleading is attached hereto as Exhibit 4.) This claim was truly baffling, because we received the amended pleading on Friday, June 8, 2007, the day before Clayton was scheduled to take paid vacation. Even more confusing, Clayton proceeded to take the paid vacation after asserting his claim of constructive discharge and even continued to use the company car during that ensuing time frame!

11.     The situation thereafter worsened. On the day Clayton was scheduled to return from his paid vacation, we learned that he had taken a job with one of UOA's competitors instead and, in violation of several provisions of his Employment Agreement, has since been 1) soliciting UOA customers and referral sources away from UOA; 2) disparaging UOA to insurers and to the hospital clinics with which UOA works; and 3) working within a proscribed restrictive covenant area. Furthermore, he and the other Plaintiffs have been engaged in a campaign to smear the reputation of UOA and to undermine its viability as a business entity.

508117.02

12.    It is clear that Clayton's belated claim for constructive discharge in the Amended Complaint is a contrived claim that Clayton hopes to use as legal justification for his blatant violations of his employment agreement that would otherwise proscribe him from stealing and using UOA's proprietary information and working so closely with a direct competitor of UOA.

13.    It is this behavior that Defendants seek the Court's assistance in terminating. As set forth below, Defendants are entitled to injunctive relief against Clayton Hertzoff to prevent him from harming UOA by the misappropriation of UOA's confidential and proprietary business information, by soliciting its customers and referral sources, and by continuing to disparage UOA's business sources.

Plaintiff Clayton Hertzoff Has Breached The Non-Compete
And Non-Solicitation Provisions Of His Employment Agreement With UOA

14.    On August 20, 2006, Defendant UOA and Plaintiff Clayton Hertzoff entered into a ten-year employment agreement, whereby UOA agreed to pay certain salary, bonuses, and commissions to Clayton in exchange for his services as a prosthetist and his ability to maintain personal sales of orthopedic services and equipment over and above $600,000 per year. A copy of the parties' Employment Agreement is annexed hereto as Exhibit 5. This agreement was one component of the larger transaction between the parties.

15.    Following commencement of the underlying lawsuit, Clayton Hertzoff went on a one-week paid vacation from June 11-15, 2007. Following his week of paid vacation, Clayton failed to report to work on the morning of Monday, June 18, 2007.

16.    UOA placed several calls to Clayton's cell phone that morning, inquiring as to where he was and why he had failed to show up for work, but none of the calls were returned.

17.     Instead, Clayton appeared at a clinic at Metropolitan Hospital at which UOA provides services, told the staff at the clinic that he had been "fired" from UOA, and proceeded to see patients who were scheduled to see other UOA practitioners that day, upon information and belief, on behalf of his new employer, New England Orthotic & Prosthetic Systems, LLC ("NEO"). NEO is a competitor of UOA.

18.     Amazingly, even while claiming that he had been fired by UOA, Clayton was still in possession of the vehicle leased for him by UOA, and was scheduled to see UOA patients the week that he failed to arrive at work. Accordingly, it is plain that, at no time prior to his employment with his new employer, was Clayton ever "fired" by UOA.

19.     It was only after learning of these facts (and others) that UOA ultimately terminated Clayton Hertzoff's employment, for cause, by letter to him dated June 18, 2007. A copy of that letter is annexed hereto as Exhibit 6.

20.     The June 18, 2007 termination letter reminds Mr. Hertzoff that, pursuant to the Employment Agreement, he is required to refrain from "interfering with UOA's business in any way, including the disclosure to third parties of any proprietary information as set forth in the Agreement." (Ex. 6, pg. 1.)

21.     Indeed, by signing the Employment Agreement, Clayton Hertzoff agreed to protect UOA's proprietary business information and not to compete with UOA, should his employment with UOA end for any reason.

22.     More specifically, the Employment Agreement states, at Paragraph 7.a. that:

6

> Employee acknowledges that the names of the clients and referral
> sources of Company, as may exist from time to time, and the
> financial statements, business plans, internal memoranda, reports,
> audits, patient surveys, employee surveys, operating policies,
> quality assurance materials, fees, and other such materials or
> records of proprietary nature of Company (collectively, the
> "Confidential Information") are valuable, special and unique assets
> of Company and are deemed to be trade secrets.

Ex. 5, ¶7.a.

23.    The Employment Agreement further states at Paragraph 7.b. that:

> Employee agrees that he will not, after the date hereof and for so
> long as any such Confidential Information may remain
> confidential, secret, or otherwise wholly or partially protectable:
> (i) use the Confidential Information, except in connection with his
> retention by Company, or (ii) divulge any such Confidential
> Information to any third party, unless Company gives its prior
> written consent to such use or divulgence.

Ex. 5, ¶7.b.

24.    Despite these unequivocal contractual obligations, however, since his termination

on June 18, 2007, Clayton Hertzoff has, as an employee of NEO, used his knowledge of the

client names and referral sources of business to UOA to directly compete with UOA and has

shared that Confidential Information with his new employer.[2]

25.    For example, he appeared at the Metropolitan Hospital clinic on June 18, 2007

and proceeded to treat patients scheduled to see other UOA practitioners that day. He has also

been observed by UOA practitioners at the clinics at St. Vincent's Hospital, Woodhall Hospital,

---

[2] In light of Clayton's actions in this regard, UOA's legal counsel sent a letter to NEO dated July 3, 2007, advising
NEO of Mr. Hertzoff's obligations under the Employment Agreement, requesting that NEO cease and desist from
using UOA's Confidential Information, and seeking an accounting of Mr. Hertzoff's activities with NEO to date. A
copy of that letter is annexed hereto as Exhibit 7. If it should become necessary, UOA will move to add NEO as a
party to this matter.

7

and Kings County Hospital, locations where he is only known through his work with UOA.

Clearly, Clayton Hertzoff is only in contact with those UOA referral sources and is only allowed

to see their patients as a result of his employment with UOA and their familiarity with him

because of his employment with UOA.

26.     Moreover, the Employment Agreement states at Paragraph 8.a. that:

> Employee shall not, either directly or indirectly, **at any time during the term of his employment and for twelve (12) months following the termination of this Agreement, except with the written consent of Company: (i) solicit, interfere with or endeavor to entice away from Company, any of its employees, agent, contractor, customer, or referral sources; (ii) for his own account or for the account of others, induce any customers to patronize any competing billing service provider, request or advise any customer to withdraw, curtail, or cancel such customer's relationship with Company or disclose to any other person, partnership, firm, corporation or other entity the names or addresses of any customers of Company.**

Ex. 5, ¶8.a. (emphasis added).

27.     Further, the Employment Agreement states at Paragraph 8.b. that:

> Employee shall not, **at any time during the term of his employment under this Agreement and for twelve (12) months after the termination of this Agreement: (i) engage in the sale of orthotics and prosthetics as an employee, independent contractor, shareholder, partner, or otherwise and whether separately or in conjunction with any other entity or individual within a three (3) mile radius of Company's location; and/or (ii) operate or have any financial or other interest in any entity involved in the business of providing orthotics and prosthetics within a three (3) mile radius of Company's location.**

Ex. 5, ¶8.b. (emphasis added).

28.     These provisions as well are currently being violated by Clayton Hertzoff.

508117.02

29.    Clayton Hertzoff's current employer, NEO, maintains an office at 235 East 38th Street in New York, New York, less than two miles from UOA's location.  According to NEO's website, NEO is in the business of providing "high quality orthotic and prosthetic patient care services and products."  *See*, NEO's website, available at http://www.neops.com/aboutus.html.

30.    Accordingly, Clayton Hertzoff is in direct violation not only of those portions of the Employment Agreement that prohibit him from using or sharing UOA's Confidential Information with third parties, but is also in direct violation of the provisions of his Employment Agreement that prohibit him from working for a competitor, and from soliciting or interfering with UOA's customers and referral sources.

31.    In addition to the above, it has also come to UOA's attention, through letters received by certain insurers and conversations with those insurers that Clayton Hertzoff has been advising certain insurers that UOA has been "dissolved" and is no longer an active corporation.

32.    These insurers have since commenced audits of UOA's billings to them from August, 2006 forward, in an effort to ascertain whether they have been paying an active entity. These audits will cost UOA time and money to comply with, and Clayton's actions in this regard are clearly an "interference" with insurers with whom UOA contracts to provide services to the insurers' insureds in breach of his Employment Agreement.

The Employment Agreement Entitles UOA To Injunctive Relief From
Clayton Hertzoff's Interference With Its Business And His Solicitation
Of UOA's Customers And Referral Sources For The Benefit Of His New Employer

33.    As noted above, Sections 7 and 8 of the Employment Agreement deal with the prohibitions against Clayton Hertzoff's disclosure of Confidential Information to third parties

9

and his solicitation of customers or competition with UOA for a year after his employment.

Both provisions state that, in the event of a breach or anticipated breach of these provisions,

UOA "shall be entitled to an injunction" restraining Clayton Hertzoff from:

(a)    disclosing, in whole or in part, any Confidential Information;

(b)    interfering with Company's relationships with its employees, customers and referral sources, or with any hospital or managed care entity with which Company has a contractual relationship;

(c)    rendering any professional services to any customer of UOA who has been solicited by Clayton Hertzoff in violation of the Employment Agreement;

(d)    rendering any professional services to any or any person, firm, corporation, association, or other entity to whom any such Confidential Information, in whole or in part, has been disclosed by Clayton Hertzoff or is threatened to be disclosed by him;

(e)    soliciting, interfering with or endeavoring to entice away from UOA, any of its employees, agents, contractors, customers, or referral sources;

(f)    for his own account or for the account of others, inducing any customers to patronize any competing billing service provider, requesting or advising any customer to withdraw, curtail, or cancel such customer's relationship with UOA or disclosing to any other person, partnership, firm, corporation or other entity the names or addresses of any customers of UOA;

(g)    engaging in the sale of orthotics and prosthetics as an employee, independent contractor, shareholder, partner, or otherwise and whether separately or in conjunction with any other entity or individual within a three (3) mile radius of Company's location; and/or

(h)    operating or having any financial or other interest in any entity involved in the business of providing orthotics and

10

prosthetics within a three (3) mile radius of Company's location.

Ex. 5, ¶7.c. & 8.c.

34.    Moreover, Clayton Hertzoff acknowledged, by his signature on the Employment Agreement that, in the event of a breach or a threatened breach by him of these provisions, UOA would have no adequate remedy at law.  Ex. 5, ¶8.d.

35.    As a result of the foregoing, UOA respectfully submits that it is entitled to injunctive relief against Clayton Hertzoff to the extent necessary to prevent his unfair competition with UOA in breach of the Employment Agreement and to prevent any further interference from him with the business of UOA.

The Broader Campaign By Plaintiffs To Undermine UOA

36.    The patent violations of his employment agreement by Clayton are intended to harm and have harmed the financial viability of UOA, and, if left unrestrained, will cause irreparable harm to UOA.  The egregiousness of Clayton's actions take on even greater meaning, however, when viewed in conjunction with other actions of Plaintiffs that are prejudicial to UOA.  Reference to these other wrongful actions of Plaintiffs either directly or through their attorney provide the context in which to assess fully the wrongfulness and impact of the employment agreement violations by Clayton.

37.    These actions of Plaintiffs, whether viewed singularly or collectively, are part of a blatant attempt by Plaintiffs to re-write the deal they agreed to in August, 2006.  Now that Clayton Hertzoff has discovered that he doesn't want to work for UOA under its new management, the Hertzoffs have taken an aggressive, uncompromising, and hostile attitude

11

toward me, my husband, and UOA generally, attempting at every turn to free Clayton from his

contractual obligations and to destroy the good will of the business with its referral sources,

customers, and third party payors.

> (a)    The Frivolous Lawsuit As An Example Of Harmful And
> Harassing Behavior
>
> > (i)    The Asset Purchase Agreement Has Not Been
> > "Breached"

38.    By way of example, Plaintiffs have commenced this litigation, claiming breaches

of the Stock Purchase Agreement that are not only utterly false, but which, even if true, are

woefully premature and could not be actionable until the two-year anniversary of the Asset

Purchase Agreement in August 2008.[3]

39.    The Stock Purchase Agreement, as set forth more fully in Defendants' motion to

dismiss this claim, requires UOA to collect the A/R "to the amount reasonably collectible, in the

normal course of" UOA's operations. Ex. 1, ¶1.3. The A/R is calculated as "the accounts

receivable of [UOA] earned prior to and collected during the twenty-four (24) month period

immediately following the Closing Date [of August 8, 2006] less any refunds or repayments."

(Ex. 1, ¶1.3, incorporating by reference the definition of "Closing Date" from ¶2.1.)

40.    If the amount of the A/R collected exceeds the amount of the accounts payable to

which it is to be applied, the Hertzoffs receive the surplus A/R collected within thirty days of the

second annual anniversary of the Agreement, the Effective Date of which was August 20, 2006.

(Ex. 1, ¶1.3. & the definition of "Effective Date" from the opening paragraph on page 1.)

---

[3] This claim and others in the Amended Complaint are the subject of a separate motion for dismissal before the
Court, a copy of which is annexed hereto as Exhibit 3.

41.    If the amount of the A/R falls short the amount of the accounts payable to which it is to be applied, UOA agreed to fund the accounts payable in the amount by which the A/R fell short, up to a maximum of $100,000. (Ex. 1, ¶ 1.3.)

42.    UOA has, since the date of that Agreement, billed for and collected over $160,000 of the outstanding A/R, despite significant hurdles in doing so as a result of the Hertzoff's poor system of record keeping.   Indeed, the paper files UOA was left to work with were in a shambles – many were missing customer insurance information, current customer contact information, and other information vital and necessary to making any collection at all on the A/R.

43.    [UOA had to undertake a Herculean effort to computerize the A/R records and process them for collection and, eventually, payment. The majority of the A/R left to be collected may likely prove to be uncollectible due to the information missing from the files and the sheer age of some of the accounts (which date back as far as early 2004).

44.    Regardless, as it lessens the amount of the shortfall that UOA will be obligated to pay the Hertzoffs in August of 2008, it only makes sense that UOA continues to work the old A/R and to attempt to collect on same.  Moreover, UOA has made more than "reasonable" efforts to collect the A/R, and reasonable efforts are all that is required.  (Ex. 1, ¶1.3.)

45.    In addition, UOA has already applied the vast majority of the collected A/R to the HSBC Account – the first item in priority of the three items of accounts payable that UOA was required to have paid off with the A/R it is obligated to collect on or before August 8, 2008.

13

46.    As of the date of this Affidavit, almost thirteen months remain before UOA is obligated to make any payment of the collected A/R toward any accounts payable.

47.    Despite the fact that their claims in this regard are over a year premature, and do not ripen until August 20, 2008, Plaintiffs commenced this action for this "breach" nonetheless, and refused to withdraw this claim after fair warning from UOA's legal counsel that the claim had been brought too early, if it did indeed have any merit at all.

48.    Further, Plaintiffs are aware that A/R has been collected and even applied to the HSBC line of credit.  Indeed, my husband and I met with the Hertzoffs and their legal counsel in February 2007, and advised them of this fact, bringing HSBC statements with us and subsequently summarizing what had been collected and paid to HSBC in a letter to them.

49.    Plaintiffs' refusal to withdraw this claim is plainly intended to simply "keep the pressure" on Defendants to renegotiate the deal, albeit unreasonably so.

> (i)    Clayton Hertzoff's Claims For Breach Of His Employment Agreement Are Similarly Meritless

50.    In addition to frivolous claims regarding alleged "breaches" of the Stock Purchase Agreement," Clayton Hertzoff has literally made a federal case out of a $4,000 dispute with UOA over some lost commissions.

51.    Indeed, despite having received his base salary, his life insurance and health benefits, paid vacation, personal and sick days, a company car, and practically every other benefit to which he was entitled under his Employment Agreement, Clayton Hertzoff alleges

14

"breach" by UOA and "constructive discharge" from his job. These allegations, while salacious, are similarly lacking in merit.

52.     In fact, following the amendment of his complaint to add the claim for "constructive discharge," Clayton took a one week paid vacation from which he was expected to return, but never did, instead taking a job with a direct competitor of UOA in violation of the restrictive covenant in his Employment Agreement.

53.     Clayton Hertzoff has, as described above, usurped UOA customers at the hospital clinics known to him only through his employment with UOA, and is disparaging UOA not only to those clinics and referral sources, but is also advising certain insurers that UOA is "dissolved" as a corporation – causing UOA to have received letters from those insurers seeking an audit of UOA's billings. (Ex. 9.)

54.     UOA can and will prove that each and every allegation made in the Amended Complaint by Clayton Hertzoff about his "intolerable" working conditions are outright falsehoods, if those same claims are not dismissed on the face of the pleading. For the benefit of the Court's understanding with regard to how frivolous this litigation is, however, the following is a brief refutation of each allegation, and an explanation of how Clayton Hertzoff would have known that each allegation pled was false.

55.     Turning first to Clayton's allegations of "constructive discharge," UOA moved its offices from the location at 791 Broadway, to a new space on Second Avenue in early June, 2007.

508117.02

56.     As a result of the move, prior to his paid vacation the week of June 11-15, UOA asked Clayton Hertzoff to see a handful of customers at its old location for the convenience of delivering their previously ordered items to them and fitting them with such items without compelling the customers to travel to the new location.

57.     Clayton agreed and set up appointments with those customers through UOA's office manager, Desiree, who was also present at the old location during those appointments to assist with necessary paperwork and other clerical duties.

58.     Clayton Hertzoff was well aware that UOA had moved its offices and that, upon his return from vacation on June 18, 2007, he would be expected to report to the new location, where a new work space had been set up for him and the other UOA prosthetists.

59.     Outrageously, and despite knowing that the arrangement to see customers at the old location was merely a one-week-long temporary arrangement for the convenience of UOA's customers (to which he had *agreed*), Clayton Hertzoff nonetheless alleged in the Amended Complaint that UOA had constructively discharged him because it "left Clayton Hertzoff virtually alone at their offices at 791 Broadway, without any telephone service, computer, fax, records and with little administrative assistance." (Ex. 4, ¶36.)

60.     Clayton Hertzoff goes on to allege that "Defendants have apparently acquired new office space and moved most personnel and equipment to the new office space but have not given any office to plaintiff Clayton Hertzoff." (Ex. 4, ¶36.)

61.     Clayton was well aware of the move before, during, and after it took place, was even called the weekend prior to the date he was supposed to return from vacation to make sure

16

that he knew the new office address, and knew full well that all of UOA's staff, including him, would be moving to the new location as soon as it was fully set up.

62.    But Clayton expects this Court to believe that UOA moved everyone but him, essentially leaving him sitting in an empty building, with no contact with the outside world, and then continued to pay him a salary and pay him for his vacation.  Plainly, this allegation is simply ridiculous and is an utter fabrication.

63.    Clayton also alleges that UOA knowingly made his employment conditions "intolerable" by failing to pay UOA suppliers of the component parts necessary to build prosthesis, causing those suppliers to stop shipping parts to UOA.  (Ex. 4, ¶35.)  Clayton knows for a fact that this allegation is utterly false.

64.    Annexed hereto are letters from the entities alleged in the Amended Complaint to have stopped shipping to UOA due to UOA's failure to timely ay their accounts.  (Ex. 10.)  All indicate that UOA is and has been a good and valued customer since takeover of the business in 2006.  Moreover, UOA has timely paid its accounts with those companies.  If any one of these entities refused to ship something to UOA, I certainly never heard about it from Clayton or any of the other UOA practitioners who would have been equally impacted by UOA's inability to receive supplies to conduct its business.

65.    This allegation is more fluff and nonsense in Plaintiffs' blatant attempts to force UOA to renegotiate the deal struck by Plaintiffs last August.

66.    Finally, Clayton claims that UOA "breached" his Employment Agreement by "requesting" that he engage in improper and deceptive billing practices, including over-billing,

17

improper use of billing codes, and other activities.  (Ex. 4, ¶ 30.)  Presuming for a moment that

the allegations were true -- and they are totally false -- nowhere in the Employment Agreement

does UOA ever place the responsibility upon Clayton for "billing" to insurers.  Any billing done

is done under UOA's provider number and thus UOA cannot "request" that Clayton "bill"

Medicaid or Medicare for anything.

      67.     Further, UOA researches and provides its prosthetists with information from the

manufacturers of certain equipment sold by UOA regarding the appropriate coding applicable to

those items.  For example, billing code "L1832" has been used by UOA in accordance with the

recommendations of the manufacturers of the braces in question.  Annexed hereto as Exhibit 11

is a page from the catalog of one such manufacturer, clearly recommending that purchasers bill

for their braces using code "L1832."

      68.     If Clayton disagreed with any of the billing practices of UOA, he nowhere alleges

that he ever refused to participate, that he refused to code something in accordance with UOA's

suggestions, and that as a result, UOA took some adverse action against him in contravention of

his Employment Agreement.  Again, his allegations are puffery – designed to cause UOA to fear

for its Medicaid and Medicare provider numbers on the basis of meritless allegations made in the

public forum of the Court.

      69.     These tactics are purely designed to force UOA to renegotiate the terms of the

sale of UOA to me in August, 2006.

18

      (b)    The Hertzoff's Lawyer Has Likewise Engaged In Harassing Litigation Conduct In An Effort To Force UOA To Renegotiate

70.    Even the Hertzoff's lawyer appears to be bent on harassing UOA into re-negotiating the Hertzoff's August 20, 2006 sale of UOA.

71.    In the initial complaint filed in this litigation, the Hertzoffs alleged three essential claims against UOA – breach of the Asset Purchase Agreement, a claim for unpaid rent to the Hertzoff's, and a claim for unpaid commission to Clayton Hertzoff in the amount of approximately $4,000.

72.    Thereafter, in what I am informed is an unusual move that may violate the procedural rules of this Court, Plaintiffs' counsel, George Hinckley, Esq., served over 20 subpoenas on various non-party healthcare institutions and insurers, all of whom have done business with UOA in the past, seeking information from them about the A/R that was the subject of the Asset Purchase Agreement. A copy of these subpoenas are annexed hereto as Exhibit 12.

73.    In addition, Mr. Hinckley's firm served a subpoena upon North Fork Bank, seeking account information not only for UOA after the sale, but also for Complete Orthopedic Services Co., Inc. ("COSI"), another company owned and operated by me and my husband, and personal banking information for me and my husband. A copy of these subpoenas is annexed hereto as Exhibit 13.

508117.02

74.    Neither COSI nor my husband are parties to this litigation and I cannot understand how any banking information related to them (or indeed my personal banking information) could in any way relate to the claims asserted in the Complaint in this matter.

75.    Further, Mr. Hinckley took these actions on behalf of his clients even prior to seeking any information from UOA regarding its efforts to collect the A/R and the amount collected. Instead, Mr. Hinckley sought that information from non-party insurers and UOA referral sources, plainly in an effort to advise these same entities, under guise of legal process, that UOA had been sold, that it was in litigation with its prior owners.

76.    Shortly after receipt of the Complaint, our legal counsel wrote to Mr. Hinckley, the Hertzoff's lawyer, advising him that the claim for breach of the Asset Purchase Agreement was premature and could not be asserted until August 2008, that the unpaid rent had been paid and was no longer a viable claim, and asking that he withdraw the Complaint, since the underlying dispute appears to have been for only approximately $4,000 and thus did not meet the amount required to pursue the litigation in Federal Court. A copy of my lawyer's letter to Mr. Hinckley is annexed as Exhibit 3.

77.    In response, Mr. Hinckley did not withdraw the Hertzoff's Complaint and let the parties settle their differences over the $4,000 allegedly owed to Clayton Hertzoff. Instead, he served an "Amended Complaint" – apparently in recognition that the original Complaint lacked merit and was not sufficient to warrant being heard in Federal court.

78.    In the Amended Complaint, dated June 8, 2007, the Hertzoffs do not withdraw their claim for alleged breach of the Asset Purchase Agreement, despite having been advised of its, at worst, utter lack of merit and, at best, premature nature.

20

79.    Instead, Clayton Hertzoff alleges a claim for "constructive discharge," and "breach" of his Employment Agreement, making scandalous and knowingly false accusations against UOA.

80.    These allegations were, of course, particularly laughable in the face of the fact that Clayton Hertzoff was still working for UOA at the time the Amended Complaint was served, and that, the week after service of the Amended Complaint, he took his previously scheduled paid vacation – which he no doubt used to secure or firm up his employment with UOA's competition!

81.    All of the above conduct by the Plaintiffs in this suit make plain that they knew at the outset of this litigation that their claims lacked merit, that they had no business bringing what was, in essence, a $4,000 dispute before the Federal Courts, and that they were simply unhappy with the deal they made in August 2006 and were either going to use this litigation to leverage a new deal or else destroy the remaining value in the good will of UOA.

82.    For these reasons and the reasons set forth in this Affidavit and the accompanying Memorandum of Law, I respectfully request that this Court grant UOA the preliminary injunctive relief to which it is entitled against Clayton Hertzoff for his breaches of the Employment Agreement.

_____
NOREEN DIAZ

Sworn to before me
this 13 day of July, 2007

_____
Notary Public

KATHLEEN HABERKERN
NOTARY PUBLIC, State of New York
No. 4600411
Qualified in Nassau County
Commission Expires October 31, 2010

21

508117.02

STOCK PURCHASE AGREEMENT

by and among

BEVERLY HERTZOFF, EDWIN HERTZOFF, CLAYTON HERTZOFF,

and

NOREEN DIAZ

Prepared By:

Garfunkel, Wild & Travis, P.C.
111 Great Neck Road, Suite 503
Great Neck, NY 11021
(516) 393-2200

439987.06

# TABLE OF CONTENTS

PAGE

ARTICLE I
  SALE AND PURCHASE OF STOCK.................................................................1

ARTICLE II
  THE CLOSING AND TRANSFER OF STOCK .......................................3

ARTICLE III
  REPRESENTATIONS AND WARRANTIES OF SELLERS............................4

ARTICLE IV
  REPRESENTATIONS AND WARRANTIES BY PURCHASER ....................9

ARTICLE V
  SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS...........10

ARTICLE VI
  INDEMNIFICATION.................................................................10

ARTICLE VII
  GENERAL PROVISIONS ...........................................................12

## STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (the "Purchase Agreement") is made effective as of the 20th day of August, 2006 (the "Effective Date") by and among Beverly Hertzoff ("B. Hertzoff"), Edwin Hertzoff ("E. Hertzoff") and Clayton Hertzoff ("C. Hertzoff," together with B. Hertzoff and E. Hertzoff, sometimes referred to herein as "Sellers") and Noreen Diaz ("Purchaser").

## W I T N E S S E T H:

WHEREAS, Sellers own the shares of the issued and outstanding capital stock of United Orthopaedic Appliances Co., Inc. (the "Corporation") set forth on Schedule A hereto, which shares represent one hundred percent (100%) of the issued and outstanding capital stock of the Corporation;

WHEREAS, Sellers have agreed to sell to Purchaser and Purchaser has agreed to purchase from the Sellers that number of shares of capital stock of the Corporation necessary to cause Purchaser to own one hundred percent (100%) of the issued and outstanding capital stock of the Corporation; and

WHEREAS, in furtherance of the foregoing, Sellers desire to sell to Purchaser and Purchaser desires to purchase from Sellers, an aggregate of one hundred (100.00) shares of capital stock of the Corporation (the "Stock"); and

WHEREAS, C. Hertzoff is presently employed by the Corporation and will remain employed subsequent to Closing Date, as defined at Article II hereof, pursuant to an employment agreement made effective as of Closing Date (the "Employment Agreement").

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I

## SALE AND PURCHASE OF STOCK

1.1.    Purchase and Sale. On the Closing Date, as defined at Article II hereof, subject to and upon the terms and conditions set forth herein, Sellers will sell, convey, transfer, assign and deliver the Stock to Purchaser and Purchaser shall purchase and accept from Sellers, all right, title and interest of Sellers in and to the Stock.

1.2.    Accounts Payable. Notwithstanding any provision to the contrary, but subject to the terms of Section 1.3 below, the Corporation shall, as of the Closing Date, assume and remain liable only for the accounts payable set forth in Schedule 1.2 attached hereto ("Accounts Payable"). The parties agree that, except for the Accounts Payable, (i) the Sellers shall assume and remain jointly and severally liable for any and all outstanding debts, loans, obligations or

439987.06

liabilities of the Corporation as of the Effective Date which obligations shall be paid, performed and/or discharged by the Sellers when due, other than those debts, loans, obligations or liabilities of the Corporation which were incurred in the ordinary operation of the Corporation prior to the Effective Date which obligations shall remain with the Corporation; and (ii) the Corporation shall not assume and shall not be responsible for any of the outstanding debts, loans, obligations or liabilities of the Corporation as of the Closing Date or relating to the operations of the Corporation prior to the Closing Date. The parties acknowledge and agree that, notwithstanding the fact that certain of the Corporation's liabilities and obligations assumed by the Sellers hereunder may not be expressly assignable (or may prohibit assignment), the Sellers shall satisfy such liabilities and obligations when due.

   1.3.   <u>Accounts Receivable</u>. Purchaser shall cause the "Net Accounts Receivable" to be billed and collected, to the extent reasonably collectable, in the normal course of the Corporation's operations. For purposes of this payment, "Net Accounts Receivable" shall be calculated as the accounts receivable of the Corporation earned prior to and collected during the twenty-four (24) month period immediately following the Closing Date less any refunds or repayments. Each dollar of the Net Accounts Receivable actually collected will be allocated to discharge the Accounts Payable in the following order of priority: (i) an amount equal to the outstanding amount of the HSBC line of credit on the Effective Date (provided the expenses for which the HSBC line of credit was utilized were expenses in incurred in the ordinary operation of the Corporation) collected, to the extent such amount is actually collected, shall be applied against and discharge the HSBC Line of Credit (as such term is defined on Schedule 1.2); (ii) the next One Hundred Thousand Dollars ($100,000) collected, to the extent such amount is actually collected, shall be applied against and discharge the Outstanding Rental Amounts (as such term is defined on Schedule 1.2); and (iii) the next One Hundred Forty Five Thousand Dollars ($145,000) collected, to the extent such amount is actually collected, shall be applied against and discharge the Seller Loan Amount (as such term is defined on Schedule 1.2). To the extent that the Corporation's Net Accounts Receivable exceed the Accounts Payable, such excess amount shall be distributed to the Sellers within thirty (30) days of the second annual anniversary of this Agreement. In the event that the Corporation's Net Accounts Receivable are less than the Accounts Payable, Purchaser shall fund such shortfall (the "Net Accounts Receivable Shortfall") up to a maximum amount of One Hundred Thousand Dollars ($100,000), and apply such funds to discharge the Accounts Payable, to the extent that Purchaser is responsible to fund the Net Accounts Receivable Shortfall hereunder, in the order of priority set forth above in this Section 1.3. Such payment by the Purchaser shall fully and completely discharge the Corporation's and the Purchaser's obligations to pay the Accounts Payable hereunder and, notwithstanding any provision to the contrary, the Sellers shall be jointly and severally responsible for discharging and paying the Accounts Payable, to the extent that the Net Accounts Receivable Shortfall exceeds the sum of (a) the Net Accounts Receivable; plus (b) One Hundred Thousand Dollars ($100,000). Any accounts receivables generated by the Company from and after the Effective Date shall be the property of the Company and no Seller shall have any right or interest in adnd to the same. Notwithstanding any provision to the contrary, the Purchaser shall ensure that the Corporation shall not borrow any additional amounts, as of the Effective Date, under the HSBC Line of Credit. Sellers shall execute and deliver any and all documents or instruments necessary

2

to terminate the HSBC Line of Credit and to cause the removal of any liens or encumbrances related thereto after the HSBC Line of Credit has been repaid as aforesaid.

## ARTICLE II

### THE CLOSING AND TRANSFER OF STOCK

2.1.     Closing.  The Closing of the transaction contemplated by this Agreement (the "Closing") shall occur as of August 8, 2006 (the "Closing Date") unless otherwise extended by the mutual agreement of the parties hereto.

2.2.     Purchaser Delivery.  At the Closing, the Purchaser shall deliver to the Sellers:

2.2.1.  An executed Lease by and among the Sellers and the Corporation for the property located at 791 Broadway, New York, NY, in the form attached hereto as Schedule 2.2(b).

2.2.2.  An executed Employment Agreement by and between C. Hertzoff and the Corporation effective the Closing Date, in the form attached hereto as Schedule 2.2(c).

2.3.     Seller Delivery.  At the Closing, the Sellers shall deliver or cause to be delivered:

2.3.1.  Lost Stock Affidavits from each of the Sellers for all the stock issued by the Company, other than the Stock being sold hereunder;

2.3.2.  New stock certificates representing all of the Stock being sold hereunder;

2.3.3.  Stock Transfer Powers representing the Stock, duly endorsed for transfer;

2.3.4.  All books and records of the Corporation; and

2.3.5.  All documents which counsel for the Purchaser shall reasonably deem necessary or advisable in order to accomplish a complete transfer of the shares of Stock to the Purchaser.

2.3.6.  An opinion of counsel to Seller in the form attached hereto as Schedule 2.3.6.

439987.06

# ARTICLE III

## REPRESENTATIONS AND WARRANTIES OF SELLERS

Sellers represent and warrant to Purchaser as of the date hereof, and as of Closing, as follows:

3.1.　Authority. Sellers have the full legal power and authority, and the right, without the consent of any other person, to execute and deliver this Agreement and to carry out the transactions contemplated hereby. Sellers own the Stock being transferred hereunder free and clear of any claims, liens and encumbrances.

3.2.　Validity. This Agreement has been, and the documents to be delivered at Closing will be, duly executed and delivered by Sellers and will constitute lawful, valid and legally binding obligations of Sellers enforceable in accordance with their respective terms.

3.3.　Ownership of Stock. Sellers own one hundred percent (100%) of the issued and outstanding shares of capital stock of the Corporation, and no party other than the Sellers possess any rights, title or interest in the capital stock or other form of capital or ownership interest of the Corporation. Sellers' will, on the Closing Date, convey good and marketable title to the Stock from the Sellers, free and clear of any liens, encumbrances, restrictions on transfer, charges or claims.

3.4.　Conflicts. Neither the execution of this Agreement by Sellers, nor the consummation of the transactions contemplated hereby will result in (i) the creation of any lien, charge, pledge, security interest or encumbrance of any nature, whatsoever, on any Seller, the Corporation, or on the Stock, or (ii) a breach, default, or violation of, or conflict with (A) any document, instrument, agreement, contract or obligation to which the Corporation or any Seller is a party, or (B) any judgment, order, decree, ruling, law, rule, or regulation of any court, governmental body or arbitrator in proceedings to which the Corporation or any Seller is a party. Sellers affirm that they have not impermissibly issued any stock to some other party that is not a party to this Agreement.

3.5.　Organization and Existence of the Corporations. The Corporation is a corporation that is duly organized, validly existing and in good standing under the laws of the State of New York. The Corporation is in compliance with all federal, state and local laws, regulations and ordinances, including, without limitation, the regulations of governmental agencies or authorities having jurisdiction over the Corporation's business where the failure to be in compliance would have a material adverse effect on the Corporation as a whole. The Corporation possesses all necessary licenses, permits, credentials, certifications, qualifications, and approvals that the Corporation reasonably believes is required by applicable federal and state laws, regulations and ordinances, and that are necessary for the conduct of the Corporation's business in the manner presently conducted.

4

3.6.    <u>Litigation</u>.  Except as set forth on <u>Schedule 3.6</u>, there are no claims, complaints, causes of action, suits, litigation, any administrative, arbitration, or enforcement actions, whether before any court or any federal, state, or other governmental or professional bureau, agency, authority or instrumentality of any kind or nature or otherwise (each individually and collectively referred to as an "Action"), pending against or, threatened against, the Sellers or the Corporation. No Action has been asserted against the Sellers or the Corporation, nor have the Sellers or the Corporation been a party to an Action as a defendant.

3.7.    <u>Taxes</u>.  The Corporation has or will have by the date of this Agreement (i) paid all income, sales, use, occupancy, property, real estate, excise, payroll, withholding taxes and all license fees imposed upon the Corporation, and its properties and assets, and (ii) timely filed all federal, state and local tax returns and related documents heretofore, required to be filed by the Corporation, or has a valid extension of time to file.  All tax returns and related documents filed by the Corporation have been prepared in accordance with all applicable laws and requirements and accurately reflect the taxable income of the Corporation.

3.8.    <u>Judgments</u>.  Neither the Sellers nor the Corporation are subject to, or in violation or default of, any judgment, order, writ, injunction or ruling of any court or any federal state, or municipal commission, bureau, agency, authority or instrumentality.

3.9.    <u>Truthful and Accurate</u>.  All representations and warranties of the Sellers and the Corporation contained in this Agreement, or in any document, instrument or agreement delivered pursuant to the provisions of this Agreement shall be true and accurate when made and on the Closing Date.  No representation or warranty by the Sellers or the Corporation in this Agreement contains or will contain any untrue statement of fact or omits or will omit any fact required to be stated therein or necessary in order to make the statements contained therein not misleading.

3.10.   <u>Qualification of the Corporation.</u>    The Corporation is duly qualified and authorized to do business and is in good standing under the laws of each jurisdiction in which the character of the properties owned or leased or the nature of the activities conducted by it make such qualification necessary, except where failure to so qualify does not have a material adverse effect on the assets, financial condition, results of operations or business of the Corporation.

3.11.   <u>Consents and Approvals</u>.  No consent, order, approval or authorization or permit of, or the exemption by or registration or filing with, or notification to (any such consent, approval, authorization, permit, exemption, registration, filing or notification being a "Consent"), any governmental, regulatory or administrative agency, commission or authority, domestic or foreign (a "Governmental Entity"), is necessary or required to be obtained or given or waiting period required to expire as a condition to the execution, delivery and performance of this Agreement by any of the Sellers or the consummation by the Sellers of the sale of the Stock.  No consent, approval, waiver or other action by any person under any contract, agreement, indenture, lease, instrument or other document to which any of the Sellers, or the Corporation, or any of their respective properties are bound or affected, is required or necessary for the execution, delivery and performance of this Agreement by Sellers or the consummation by Sellers of the sale of the Stock where the failure to obtain such consent, approval, waiver or other

5

action will have a material adverse effect on the assets, financial condition, results of operations or business of the Corporation .

3.12.  No Other Stock Purchase Agreements.    There are no options, agreements, contracts or other rights in existence involving Sellers, the Corporation to purchase or acquire the Stock, in whole or in part, or any other shares of stock in the Corporation, whether now or hereafter authorized or issued.  Additionally there are no options, agreements, contracts or other rights in existence to purchase or acquire from the Corporation or any of its or their material assets.

3.13.  Employee Plans and Agreements.

(a)    *Plans and Related Documents.*  Schedule 3.13 of this Agreement lists the 401K Plan (the "401K Plan") and the medical, dental and all other employee benefit plans, including any deferred compensation or top-hat plans to a select group of management and highly compensated employees (the "Employee Plans") for the Corporation, such plans being the only employee benefit plans supplied and/or sponsored by the Corporation, as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Except for the Employee Plans listed on Schedule 3.13, there are no other employee benefit plans, programs, arrangements or agreements, whether formal or informal, whether in writing or not, to which the Corporation is a party, with respect to which the Corporation has or is reasonably likely to incur any obligations or liability or which are maintained, contributed to, or sponsored by the Corporation for the benefit of any current or former employee, officer or director, including any deferred compensation or top-hat plans to a select group of management and highly compensated employees. The Corporation does not have any commitment (1) to create, incur liability with respect to, or cause to exist, any other employee benefit plan, program or arrangement, (2) to enter into any contract or agreement to provide compensation or benefits to any individual or (3) to modify, change or terminate any Employee Plan, other than with respect to a modification, change or termination required by ERISA or the Internal Revenue Code of 1986, as amended (the "Code"), except as required by law.

(b)    *Absence of Certain Types of Plans.*  None of the Employee Plans is a multiemployer plan (within the meaning of Section 3(37) or 4001 (a)(3) or ERISA) (a "Multiemployer Plan") or a single employer pension plan (within the meaning of Section 4001 (a)(15) or ERISA) for which the Corporation is reasonably likely to incur liability under Section 4063 or 4064 of ERISA (a "Multiple Employer Plan"). None of the Employee Plans obligates the Corporation to pay separation, severance, termination or similar-type benefits solely as a result of any transaction contemplated by this Agreement or as a result of a "change in control" with respect to the Corporation, within the meaning of such terms under Section 280G of the Code. None of the Employee Plans provides for or promises retiree medical or life insurance benefits to any current or former employee, officer or director of the Corporation.

(c)    *Compliance with Applicable Law.*  Each Employee Plan has been operated in all material respects in accordance with the requirement of all applicable laws, including, without limitation, ERISA and the Code. The Corporation has performed all material obligations

6

439987.06

required to be performed by such entity, are not in any respect in material default under or in violation of, and have no knowledge of any material default or violation by any party to, any Employee Plan. No legal action, suit or claim is pending or threatened with respect to any Employee Plan.

(d)     *Qualification of Plans.* Each Employee Plan which is intended to be qualified under Section 401(a) of the Code or Section 401(k) of the Code has received a favorable determination letter of the Internal Revenue Service (the "IRS") that it is so qualified and each trust established in connection with any Employee Plan which is intended to be exempt from federal income taxation under Section 501(a) of the Code has received a favorable determination letter from the IRS that it is so exempt, and no fact or event has occurred since the date of such determination letter from the IRS to materially adversely affect the qualified status of any such Employee Plan or the exempt status of any such trust.

(e)     *Absence of Certain Liabilities and Events.* There has been no prohibited transaction (within the meaning of Section 406 of ERISA or Section 4975 of the Code) with respect to any Employee Plan. The Corporation has not incurred any liability for any excise tax arising under Sections 4971, 4972, 4976, 4977, 4979, 4980, 4980B or 5000 of the Code. The Corporation has not incurred any liability under, arising out of, or by operation of, Title IV of ERISA, including, without limitation, any liability in connection with (1) the termination or reorganization of any employee benefit plan subject to Title IV of ERISA, or (2) the withdrawal from any Multiemployer Plan or Multiple Employer Plan. No complete or partial termination has occurred within the five years preceding the date hereof with respect to any Employee Plan governed by or subject to ERISA. No reportable event (within the meaning of Section 4043 of ERISA) has occurred or is expected to occur with respect to any Employee Plan subject to Title IV of ERISA. No Employee Plan had an accumulated funding deficiency (within the meaning of Section 302 of ERISA or Section 412 of the Code), whether or not waived, as of the most recently audited plan year of such Employee Plan. None of the assets of the Corporation is the subject of any Lien arising under Section 302(f) of ERISA or Section 412(n) of the Code. The Corporation has not been required to post any security under Section 307 of ERISA or Section 401(a)(29) of the Code.

(f)     *Plan Contributions and Funding.* All contributions, premiums, or payments required to be made with respect to any Employee Plan have been made, and all such contributions, premiums, or payments have been made on or before their due dates, except where the failure to make such contributions, premiums or payments on or before such due dates does not have a material adverse effect on the Stock, or the assets, financial condition, results of operations or business of the Corporation. All such contributions have been fully deducted for income tax purposes and no such deduction has been challenged or disallowed by any Governmental Entity and no fact or event exists which could give rise to any such challenge or disallowance. As of the Closing, no Employee Plan which is subject to Title IV of ERISA will have an "unfunded benefit liability" (within the meaning of Section 4001(a)(18) of ERISA).

7

3.14.  Environmental Matters

(a)  The Corporation has obtained all permits, licenses and other authorizations which are required with respect of the operation of its respective business under all applicable federal, state or local law, statute, ordinance, rule, regulation, code, permit, consent, approval, license, judgment, order, writ, decree, injunction, agreement or other authorization or mandate by any Governmental Entity relating to (1) pollution, waste disposal (including, but not limited to biohazard medical waste), or the protection, preservation or restoration of the environment, and (2) the use, treatment, storage, release or disposal, recycling, generation, processing, labeling, manufacture, production, sale, transportation or shipment of any hazardous or toxic waste, material, substances, products or by-products.

(b)  The Corporation is in substantial compliance with all environmental laws.

(c)  There is no civil, criminal or administrative action, suit, demand, claim, hearing, notice of violation, investigation, proceeding, or demand letter pending or threatened in writing relating to the businesses of the Corporation or any real property or facility owned, leased or operated by the Corporation or by Sellers under any environmental law by Governmental Entity or other person and neither Sellers nor the Corporation have received any written notification that any of them is a responsible party under any environmental law, including, without limitation, any written notice from the owner of any real property or other facility leased or operated by Sellers, or the Corporation , of any violation of any environmental law, or requiring Sellers or the Corporation to take remedial action with respect to the presence of any hazardous substance on any part of the real properties or other facilities, owned, leased or operated by the Corporation or Sellers.

3.15.  Employees.  Schedule 3.16 of this Agreement lists all of the officers, directors, employees and independent contractors (other than physicians performing independent medical exams) employed or retained by the Corporation by entity, and sets forth the following information for each employee: (a) name and job title; (b) current compensation paid or payable; (c) vacation and service credited for vesting in any pension, retirement, profit sharing, deferred compensation, stock option, cash bonus, savings, employee stock ownership, insurance, medical, welfare, vacation, and other employee benefit plans; and (d) current employment status, indicating whether such employee is actively employed, on leave of absence, on disability, or on workers' compensation.  Sellers represent warrant and covenant that the Company has discharged and paid in full any and all liabilities, obligations and funds (including, without limitation, any accrued benefits, vacation days, sick days and holidays) due to the employees listed on Schedule 3.16 through the Closing Date.

3.16.  Licenses and Permits.  The Corporation has all licenses and permits required to operate its respective business in substantial compliance with all federal, state and local statutes and regulations and in accordance with its current practice.

3.17.  Absence of Encumbrances .  Except as set forth on Schedule 3.17, as of the Closing Date, neither the Company nor the Sellers on behalf of the Company has:

439987.06

8

(a)     incurred any obligation or liability, absolute, accrued, contingent or otherwise, whether due or to become due, in excess of $15,000 in the aggregate, except liabilities or obligations incurred in the ordinary course of business and consistent with prior practice which do not exceed $50,000 in the aggregate;

(b)     mortgaged, pledged or subjected to lien, restriction or any other encumbrance any of the property, businesses or assets, tangible or intangible, of the Company, except for purchase money liens;

(c)     made any loans to or guaranteed any loans for any officer, director, shareholder or other affiliate of the Company,

(d)     cancelled, waived, released or otherwise compromised any debt or claim other than in the ordinary course of business, or any material right;

(e)     instituted or threatened any litigation, action or proceeding before any court, governmental or regulatory body, administrative agency or arbitrator relating to it or its property; or

(f)     issued, authorized for issuance or sold any capital stock, notes, bonds or other securities, or any option, warrant or other right to acquire the same, of the Company, or declared or paid any dividend or made any other payment or distribution in respect of its capital stock, or directly or indirectly redeemed, purchased or otherwise acquired any of its capital stock or any option, warrant or other right to acquire such capital stock.

3.18.   <u>Compliance with Laws</u>. The Corporation is in compliance in all material aspects and not in violation of any federal, state, or local statutes, regulations and administrative orders.

3.19.   <u>No Questionable Practices</u>. Neither any of the Sellers nor the Corporation nor any officer, director, employee, or agent of the Corporation has directly, or indirectly, made, promised to make, or authorized the making of an offer, payment or gift of money or anything of value to any governmental official, political party or official thereof, candidate for political office or employee, agent or fiduciary of a customer or client, to obtain a contract for or to influence a decision in favor of the Corporation where such offer, payment or gift was or would be, if made, in violation of any applicable law or regulation, or any policy of any such customer.

ARTICLE IV

<u>REPRESENTATIONS AND WARRANTIES BY PURCHASER</u>

Purchaser hereby represents and warrants to Sellers as of the date hereof, and as of the closing, as follows:

4.1.   <u>Authority; Financial Ability</u>. Purchaser has the full legal right, power and authority, without consent of any other person, to execute and deliver this Agreement and to

9

439987.06

carry out the transactions contemplated hereby. Purchaser has and will continue to have adequate financial ability to perform any and all of his obligations to Sellers.

    **4.2.**    <u>Validity</u>. This Agreement has been, and the documents to be delivered at Closing will be, duly executed and delivered by Purchaser and will constitute lawful, valid and legally binding obligations of Purchaser, enforceable in accordance with their respective terms.

    **4.3.**    <u>Conflicts</u>. To Purchaser's knowledge, neither the execution of this Agreement by Purchaser, nor the consummation of the transactions contemplated hereby will result in (i) the creation of any lien, charge, pledge, security interest or encumbrance of any nature, whatsoever, on Purchaser, or (ii) a breach, default, or violation of, or conflict with (A) any document, instrument, agreement, contract or obligation to which Purchaser is a party, or (B) any judgment, order, decree, ruling, law, rule, or regulation of any court, governmental body or arbitrator in proceedings to which Purchaser is a party.

    **4.4.**    <u>Judgments</u>. To Purchaser's knowledge, Purchaser is not subject to, or in violation or default of, any judgment, order, writ, injunction or ruling of any court or any federal, state, or municipal commission, bureau, agency, authority or instrumentality.

    **4.5.**    <u>Truthful and Accurate</u>. All representations and warranties of Purchaser contained in this Agreement, or in any document, instrument or agreement delivered pursuant to the provisions of this Agreement shall be true and accurate when made and on the Closing Date. No representation or warranty by Purchaser in this Agreement contains or will contain any untrue statement of a material fact or omits or will omit any material fact required to be stated therein or necessary in order to make the statements contained therein not misleading.

## ARTICLE V

## SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS

    **5.1.**    <u>Survival</u>. All representations, warranties and covenants contained in this Agreement or in any document delivered pursuant hereto shall be deemed to be material and to have been relied upon by the parties hereto, and shall survive the Closing for a period of three (3) year; provided, however, that the three (3) year limitation on the survival of the representations, warranties and covenants contained in this Agreement or in any documents delivered pursuant hereto shall be void and inapplicable in any instance in which (i) any of the Sellers had or should have had knowledge, prior to or at the Closing Date, of the falsity of any such representation, warranty or covenant; (ii) any of the Sellers had knowledge of and failed to disclose to Purchaser, prior to or at the Closing Date, a material liability of the Corporation; or (iii) any liability or obligation in existence prior to the Closing Date results in personal liability to the Corporation's shareholders.

## ARTICLE VI

## INDEMNIFICATION

10

6.1.    <u>Indemnification of Purchaser</u>.

6.1.1. Each of the Sellers and his/her respective estate and each of their heirs, successors and assigns agrees, jointly and severally, to indemnify and hold harmless Purchaser and the Corporation from and against any and all liabilities, obligations, contingencies, damages, costs, expenses (including, without limitation, all court costs and reasonable attorneys' fees and experts' fees and expenses), losses, and amounts paid in settlement (collectively, a "Loss" or "Losses"), whether incurred by Purchaser or Corporation in connection with any suit, claim, demand, action, proceeding or investigation, whether civil, criminal, administrative or investigative, arising out of or pertaining to

(a)    any breach or inaccuracy of any representation or warranty of Sellers contained in or made pursuant to this Agreement or in any document, instrument or certificate delivered in connection with and contemplated by this Agreement; or

(b)    a breach or default in the performance of any covenant, agreement or obligation that Sellers are required to perform under this Agreement or in any document, instrument, or certificate delivered in connection with any contemplated by this Agreement, or

(c)    any and all liabilities and obligations of Sellers or the Corporation incurred prior to the Closing date or arising from the operations of the Corporation prior to Closing; or

(d)    any claims of (i) Sellers' or the Corporation's past or current clients including without limitation, claims alleging malpractice or grounded on or arising out of medical equipment provided by Sellers, or (ii) taxing or other governmental authorities for periods prior to the Closing Date; or

(e)    Any and all actions, suits, proceedings, demands, assessments, judgments, costs and reasonable legal and other third party expenses incident to the foregoing.

6.2.    <u>Medicare/Medicaid; Taxes</u>.  Notwithstanding anything to the contrary contained in this Agreement, Sellers and their respective estate and heirs, successors and assigns, jointly and severally, covenant and agree to fully defend, indemnify and hold harmless Purchaser and the Corporation from and against any and all claims, liabilities, losses, costs, expenses or damages of any kind, nature or amount whatsoever, together with reasonable legal fees, costs and expenses incurred in defense thereof, which arise out of, result from or relate to (i) any audit, assessment, deficiency or other liability asserted by Medicare and/or Medicaid attributable to services rendered by the Corporation on or before the Closing Date, including without limitation any claims or liabilities related to over-billing and/or recoupment of overpayments; and (ii) any audit, assessment, deficiency or other liability asserted by any federal, state or local taxing authority for income, profits, franchise, sales, use, occupation, property, excise, payroll or other taxes of the Corporation and/or Sellers attributable to or arising out of the period prior to the Closing Date.  Purchaser shall provide Sellers with such access to the Corporation's books and records as may be necessary and reasonable in order to defend any action or proceeding in

11

connection with this Section 6.2, and shall fully cooperate with Sellers with respect to the defense of any such action or proceeding. This Section 6.2 shall survive the Closing forever.

6.3.    Survival. The indemnification provisions contained in Section 6.1 and 6.2 of this Agreement or in any document delivered pursuant hereto shall be deemed to be material and to have been relied upon by the parties hereto, and shall survive the Closing for a period of three (3) year; provided, however, that the three (3) year limitation on the survival of the indemnification provisions contained in this Agreement or in any documents delivered pursuant hereto shall be void and inapplicable in any instance in which (i) any of the Sellers had or should have had knowledge, prior to or at the Closing Date, of the falsity of any representation, warranty or covenant; (ii) any of the Sellers had knowledge of and failed to disclose to Purchaser, prior to or at the Closing Date, a material liability of the Corporation; or (iii) any liability or obligation in existence prior to the Closing Date results in personal liability to the Corporation's shareholders.

## ARTICLE VII

## GENERAL PROVISIONS

7.1.    Waiver. No amendment or waiver of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by the parties hereto, and then such waiver or consent shall be effective only in a specific instance for the specific purpose for which it is given.

7.2.    Notices. All notices, demands, and requests required or permitted to be given under the provisions of this Agreement shall be (i) in writing; (ii) delivered by personal delivery or sent by commercial delivery service or registered or certified mail, return receipt requested; (iii) deemed to have been given on the date of personal delivery or the date set forth in the records of the delivery service or on the return receipt; and (iv) delivered to the address designated by each of the parties:

If to Sellers:

> Beverly Hertzoff
> Edwin Hertzoff
> and Clayton Hertzoff
> c/o Jay Fox, Esq.
> O'Donnell & Fox, P.C.
> 880 Third Avenue
> New York, NY 10022
> Fax: (212) 319-3597

With Copy To:

> Jay Fox, Esq.
> O'Donnell & Fox, P.C.
> 880 Third Avenue
> New York, NY 10022

439987.06

12

Fax: (212) 319-3597

If to Purchaser:

Noreen Diaz
Complete Orthopedic Services, Inc.
2094 Front Street
East Meadow, NY 11554
Fax: (516) 478-4420

With Copy To:

Andrew E. Blustein, Esq.
Garfunkel, Wild & Travis, P.C.
111 Great Neck Road, Suite 503
Great Neck, NY 11021

7.3.   Expenses.  Except as otherwise expressly provided herein, each party to this Agreement shall pay its own costs and expenses in connection with the transactions contemplated hereby.

7.4.   Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

7.5.   Entire Transaction.  This Agreement and the documents referred to herein contain the entire understanding among the parties with respect to the transactions contemplated hereby and supersede all other agreements and understandings among the parties on the subject matter hereof.

7.6.   Applicable Law.  This Agreement is a contract made and to be performed in the State of New York and shall in all respects be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of law rules, and shall be enforced in any court of competent jurisdiction in the State of New York.

7.7.   Successors and Assigns; No Third-Party Beneficiaries.  This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective successors, heirs, executors, administrators and assigns; provided, however, that no party shall assign or delegate any of the obligations created under this Agreement without the prior written consent of the other parties.  Nothing in this Agreement shall confer upon any person or entity, other than the Corporation, not a party to this Agreement, or the legal representatives of such person or entity, any rights or remedies of any nature or kind whatsoever under or by reason of this Agreement.

7.8.   Severability.  This Agreement shall be deemed severable, and the invalidity or unenforceability of any term or provision hereof shall not affect the validity or enforceability of this Agreement or of any other term or provision hereof.  Furthermore, in lieu of any such invalid or unenforceable term or provision, the parties hereto intend that there shall be added as part of

439987.06

13

this Agreement a provision as similar in terms to such invalid or unenforceable provision as may be possible and be valid and enforceable.

7.9.    Further Assurances.  Each party hereto agrees at any time or times and from time to time, to make, execute and deliver any and all such other and further instruments or documents and do any and all such acts and/or things as the other party hereto shall reasonably require for the purpose of giving full force and effect to this Agreement.

7.10.    Headings.  The section and other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

7.11.    Construction.  The parties have participated jointly in the negotiation and drafting of this Agreement, and they agree that any ambiguity or question of intent of interpretation that may arise shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

IN WITNESS WHEREOF, each of the parties hereto has entered into this Agreement as of the date first above written.

PURCHASER:                                    SELLERS:


_____                _____
Noreen Diaz                                    Beverly Hertzoff


                                              _____
                                              Edwin Hertzoff


                                              _____
                                              Clayton Hertzoff

14

<u>SCHEDULE A</u>

| <u>Shareholder</u> | <u>Stock</u> |
|---|---|
| Beverly Hertzoff | 37.5 |
| Edwin Hertzoff | 37.5 |
| Clayton Hertzoff | 25.0 |

439987.06

## SCHEDULE 1.2

Accounts Payable

1.      The outstanding amount as of the Effective Date under the Buisiness Revolving Line of Credit of up to $250,000, dated August 14, 2005, from HSBC Bank USA, N.A. in favor of the Corporation and the related General Security Agreement, dated the same date, between HSBC Bank USA, N.A. and the Corporation.

2.      Promissory Note from the Company to Beverly Hertzoff in the amount of $145,000.00 relating to monies loaned t the Company to repair damages from a fire in the Company premises.

3.      Accrued and unpaid rent in the amount of $100,000.00 payable by the Company to Beverly Hertzoff and Edwin Hertzoff, as landlord.

## SCHEDULE 2.2(b)

### Lease

439987.06

<u>SCHEDULE 2.2(c)</u>

Employment Agreement

439987.06

## SCHEDULE 3.6

### Litigation

None.

## SCHEDULE 3.13

### Employee Plans

1.    United Orthopaedic Appliances Co., Inc. Profit Sharing Plan managed by Allmerican Financial.

2.    Oxford Health Plan Insurance of United Orthopaedic Appliances Co., Inc.

439987.06

## SCHEDULE 3.17

Encumbrances

1.  Business Revolving Line of Credit of up to $250,000, dated August 14, 2005, from HSBC Bank USA, N.A. in favor of the Corporation and the related General Security Agreement, dated the same date, between HSBC Bank USA, N.A. and the Corporation. Outstanding balance of One Hundred Forty-Four Thousand Seven Hundred Forty-Two Dollars and Thirty-Two Cents ($144,742.32) Dollars on the Closing Date.

439987.06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BEVERLY HERTZOFF, EDWIN
HERTZOFF, AND CLAYTON HERTZOFF

Plaintiffs,

v.

NOREEN DIAZ, and UNITED
ORTHOPAEDIC APPLIANCES CO. INC.

Defendant.

**JUDGE McMAHON**

**COMPLAINT**

**07 CV 3157**



Plaintiffs, by their undersigned attorneys, allege as follows:

## NATURE OF THIS ACTION

1.      This is a diversity action for breach of contract by the sellers of an

orthopedic appliances company against the purchaser of the company. Pursuant to

the parties' Stock Purchase Agreement, Defendants are obligated to bill and collect

certain designated accounts receivable and to allocate each dollar of those funds to

discharge specifically designated accounts payable. Defendants have failed to

comply with their contractual obligation. In addition, Defendant United

Orthopaedic Appliances Co. Inc. is: (1) in breach of its obligation to pay rent for

the premises located at 791 Broadway, New York, NY; and (2) in breach of its

obligation to pay a bonus to plaintiff Clayton Hertzoff pursuant to his

Employment Agreement.

## THE PARTIES

2.    Plaintiffs Edwin Hertzoff and Beverly Hertzoff, husband and wife, are citizens of New Jersey, residing at 2 Rippling Brook Drive, Short Hills, NJ 07078. Plaintiff Clayton Hertzoff, the son of Edwin and Beverly, is also a citizen of New Jersey, residing at 58 Winthrop Rd, Short Hills, NJ 07078.

3.    Defendant Noreen Diaz is a citizen of the State of New York and is the wife of Mr. Martin Diaz.

4.    Defendant United Orthopaedic Appliances Co. Inc. ("UOA") is a corporation organized under the laws of the State of New York with its principal place of business located at 791 Broadway, New York, NY 10003. Mr. Martin Diaz acts as the primary executive officer of UOA.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs, and complete diversity of citizenship exists between the plaintiffs and defendants.

6.    Venue in this judicial district is proper under 28 U.S.C. § 1391.

## FACTS

7.    UOA was founded in 1907 by plaintiff Beverly Hertzoff's grandfather. It designs, manufactures, and fits orthopedic appliances, braces, and

2

artificial limbs. UOA's offices are located at 791 Broadway New York, NY 10003.

8.     Prior to August 2006, Plaintiffs owned 100% of the shares of UOA. Plaintiffs spent most of their working lives at UOA. Plaintiff Edwin Hertzoff worked at UOA for 54 years, from 1952 to 2006. Plaintiff Beverly Hertzoff worked at UOA for 34 years, from 1972 to 2006. Plaintiff Clayton has worked at UOA for most of his adult life, from the late 1970's to the present.

9.     In 2006, plaintiffs were approached by Martin Diaz and his wife, defendant Noreen Diaz, about the purchase of UOA. In August, 2006, the parties entered into a Stock Purchase Agreement, effective as of August 20, 2006, a copy of which is annexed hereto as Exhibit A (the "Agreement"). The Agreement did not provide for any payment directly to plaintiffs. Rather, the Agreement provided plaintiff Clayton Hertzoff with an employment agreement and provided that defendants would bill and collect certain accounts receivable and that "*each dollar*" so collected would be applied, on a priority basis, only to three designated accounts payables set forth in Schedule 1.3 of the Agreement.

10.     Specifically, Section 1.3 of the Agreement provides as follows:

> 1.3. Accounts Receivable. Purchaser shall cause the "Net Accounts Receivable" to be billed and collected, to the extent reasonably collectable, in the normal course of the Corporation's operations. For purposes of this payment, "Net Accounts Receivable" shall be calculated as the accounts receivable of the Corporation earned prior to and collected during the twenty-four (24) month period

3

immediately following the Closing Date less any refunds or repayments. Each dollar of the Net Accounts Receivable actually collected will be allocated to discharge the Accounts Payable in the following order of priority: (i) an amount equal to the outstanding amount of the HSBC line of credit on the Effective Date (provided the expenses for which the HSBC line of credit was utilized were expenses incurred in the ordinary operation of the Corporation) collected, to the extent such amount is actually collected, shall be applied against and discharge the HSBC Line of Credit (as such term is defined on Schedule 1.2); (ii) the next One Hundred Thousand Dollars ($100,000) collected, to the extent such amount is actually collected, shall be applied against and discharge the Outstanding Rental Amounts (as such term is defined on Schedule 1.2); and (iii) the next One Hundred Forty Five Thousand Dollars ($145,000) collected, to the extent such amount is actually collected, shall be applied against and discharge the Seller Loan Amount (as such term is defined on Schedule 1.2). To the extent that the Corporation's Net Accounts Receivable exceed the Accounts Payable, such excess amount shall be distributed to the Sellers within thirty (30) days of the second annual anniversary of this Agreement. In the event that the Corporation's Net Accounts Receivable are less than the Accounts Payable, Purchaser shall fund such shortfall (the "Net Accounts Receivable Shortfall") up to a maximum amount of One Hundred Thousand Dollars ($100,000), and apply such funds to discharge the Accounts Payable, to the extent that Purchaser is responsible to fund the Net Accounts Receivable Shortfall hereunder, in the order of priority set forth above in this Section 1.3. Such payment by the Purchaser shall fully and completely discharge the Corporation's and the Purchaser's obligations to pay the Accounts Payable hereunder and, notwithstanding any provision to the contrary, the Sellers shall be jointly and severally responsible for discharging and paying the Accounts Payable, to the extent that the Net Accounts Receivable Shortfall exceeds the sum of (a) the Net Accounts Receivable; plus (b) One Hundred Thousand Dollars ($100,000). Any accounts receivables generated by the Company from and after the Effective Date shall be the property of the Company and no Seller shall have any right or interest in adnd [sic] to the same. Notwithstanding any provision to the contrary, the Purchaser shall ensure that the Corporation shall not borrow any additional amounts, as of the Effective Date, under the HSBC Line of Credit. Sellers shall execute

and deliver any and all documents or instruments necessary to terminate the HSBC Line of Credit and to cause the removal of any liens or encumbrances related thereto after the HSBC Line of Credit has been repaid as aforesaid.

11.    The three designated accounts payables set forth in Schedule 1.3 of the Agreement are as follows:

> 1.    The outstanding amount as of the Effective Date under the Business Revolving Line of Credit of up to $250,000, dated August 14, 2005, from HSBC Bank USA, N.A. in favor of the Corporation and the related General Security Agreement, dated the same date, between HSBC Bank USA, N.A. and the Corporation.

> 2.    Promissory Note from the Company to Beverly Hertzoff in the amount of $145,000.00 relating to monies loaned to the Company to repair damages from a fire in the Company premises.

> 3.    Accrued and unpaid rent in the amount of $100,000.00 payable by the Company to Beverly Hertzoff and Edwin Hertzoff, as landlord.

12.    Defendants have failed to fulfill their contractual obligation to cause all "Net Accounts Receivable" to be billed and collected and have failed to allocate each dollar of the Net Accounts Receivable actually collected to discharge the designated Accounts Payable.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

13.    Plaintiffs repeat paragraphs 1 through 12 as if fully set forth herein.

14.    Defendants have breached their contractual obligations to plaintiff under the Agreement.

## SECOND CLAIM FOR RELIEF
(Non-Payment of Rent)

15.    Plaintiffs repeat paragraphs 1 through 14 as if fully set forth herein.

16.    Plaintiffs Edwin Hertzoff and Beverly Hertzoff are the owners and landlords of the premises located at 791 Broadway, New York, NY 10003. Defendant UOA is the tenant of said premises, and it entered into possession thereof under an Agreement of Lease made as of August 23, 2006 between plaintiffs and UOA, pursuant to which UOA promised to pay to landlord as fixed rent $10,000 each month in advance on the first day of each month. Pursuant to said agreement there was due to landlord from UOA fixed rent as follows:

| | |
|---|---|
| March 1, 2007 | $10,000 |
| April 17, 2007 | $10,000 |

17.    Plaintiffs have given notice to UOA of their defaults. Annexed hereto as Exhibit B are copies of Notices of Default that were personally delivered to defendants.

18.    As of today's date, the fixed rent that remains in arrears is $10,000.00.

19.    UOA continues in possession of premises.

20.    Plaintiffs Edwin Hertzoff and Beverly Hertzoff request a judgment awarding possession of premises to them, judgment for all rent in arrears, the fair

value of use and occupancy, interest, costs, disbursements and reasonable legal fees.

### THIRD CLAIM FOR RELIEF
(Breach of Employment Agreement)

21.    Plaintiffs repeat paragraphs 1 through 20 as if fully set forth herein.

22.    A principal consideration received by plaintiffs for the sale of UOA was a 10-year employment contract for plaintiff Clayton Hertzoff at UOA as a Prosthetist and Manager of UOA's Orthotics & Prosthetics shop . A copy of his Employment Agreement dated as of August 20, 2006 ("Employment Agreement") is annexed hereto as Exhibit C. Pursuant to section 3(b) of the Employment Agreement, defendant UOA is obligated to pay a quarterly bonus to plaintiff Clayton Hertzoff equal to 5% of his "Personal Sales Collection." This bonus was due on March 30 1, 2007, but has not been paid despite repeated requests for payment.

23.    Annexed hereto as Exhibit D. is a written demand for the payment of this bonus that plaintiff Clayton Hertzoff delivered to defendants by facsimile on April 16, 2007.

24.    Defendant UOA is in breach of its contractual obligations under the Employment Agreement.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully demand judgment as follows:

7

a) That plaintiffs be awarded damages in an amount to be determined at

   trial;

b) Costs and disbursements of this action, including reasonable attorneys

   fees, and pre- and post-judgment interest; and

c) Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiffs

demand a trial by jury in this action.


Dated:      New York, New York
            April 19 , 2007

                              TRAIGER & HINCKLEY LLP

                              *George Hinckley Jr.*

                              By: George R. Hinckley Jr.  (GH-7511)

                              880 Third Avenue 9th Floor
                              New York, NY 10022-4730
                              Tel. (212) 759-4933
                              Fax  (212) 656-1531
                              Attorneys for Plaintiffs


8

# Exhibit A

STOCK PURCHASE AGREEMENT

by and among

BEVERLY HERTZOFF, EDWIN HERTZOFF, CLAYTON HERTZOFF,

and

NOREEN DIAZ

Prepared By:

Garfunkel, Wild & Travis, P.C.
111 Great Neck Road, Suite 503
Great Neck, NY 11021
(516) 393-2200

439987.06

## TABLE OF CONTENTS

PAGE

ARTICLE I
    SALE AND PURCHASE OF STOCK..............................................................1

ARTICLE II
    THE CLOSING AND TRANSFER OF STOCK ..............................................3

ARTICLE III
    REPRESENTATIONS AND WARRANTIES OF SELLERS...........................4

ARTICLE IV
    REPRESENTATIONS AND WARRANTIES BY PURCHASER ....................9

ARTICLE V
    SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS............10

ARTICLE VI
    INDEMNIFICATION.....................................................................................10

ARTICLE VII
    GENERAL PROVISIONS .............................................................................12

439987.06

## STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (the "Purchase Agreement") is made effective as of the 20th day of August, 2006 (the "Effective Date") by and among Beverly Hertzoff ("B. Hertzoff"), Edwin Hertzoff ("E. Hertzoff") and Clayton Hertzoff ("C. Hertzoff," together with B. Hertzoff and E. Hertzoff, sometimes referred to herein as "Sellers") and Noreen Diaz ("Purchaser").

## W I T N E S S E T H:

WHEREAS, Sellers own the shares of the issued and outstanding capital stock of United Orthopaedic Appliances Co., Inc. (the "Corporation") set forth on Schedule A hereto, which shares represent one hundred percent (100%) of the issued and outstanding capital stock of the Corporation;

WHEREAS, Sellers have agreed to sell to Purchaser and Purchaser has agreed to purchase from the Sellers that number of shares of capital stock of the Corporation necessary to cause Purchaser to own one hundred percent (100%) of the issued and outstanding capital stock of the Corporation; and

WHEREAS, in furtherance of the foregoing, Sellers desire to sell to Purchaser and Purchaser desires to purchase from Sellers, an aggregate of one hundred (100.00) shares of capital stock of the Corporation (the "Stock"); and

WHEREAS, C. Hertzoff is presently employed by the Corporation and will remain employed subsequent to Closing Date, as defined at Article II hereof, pursuant to an employment agreement made effective as of Closing Date (the "Employment Agreement").

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I

## SALE AND PURCHASE OF STOCK

1.1.    **Purchase and Sale.**  On the Closing Date, as defined at Article II hereof, subject to and upon the terms and conditions set forth herein, Sellers will sell, convey, transfer, assign and deliver the Stock to Purchaser and Purchaser shall purchase and accept from Sellers, all right, title and interest of Sellers in and to the Stock.

1.2.    **Accounts Payable.**  Notwithstanding any provision to the contrary, but subject to the terms of Section 1.3 below, the Corporation shall, as of the Closing Date, assume and remain liable only for the accounts payable set forth in Schedule 1.2 attached hereto ("Accounts Payable").  The parties agree that, except for the Accounts Payable, (i) the Sellers shall assume and remain jointly and severally liable for any and all outstanding debts, loans, obligations or

439987.06

liabilities of the Corporation as of the Effective Date which obligations shall be paid, performed and/or discharged by the Sellers when due, other than those debts, loans, obligations or liabilities of the Corporation which were incurred in the normal operation of the Corporation prior to the Effective Date which obligations shall remain with the Corporation; and (ii) the Corporation shall not assume and shall not be responsible for any of the outstanding debts, loans, obligations or liabilities of the Corporation as of the Closing Date or relating to the operations of the Corporation prior to the Closing Date. The parties acknowledge and agree that, notwithstanding the fact that certain of the Corporation's liabilities and obligations assumed by the Sellers hereunder may not be expressly assignable (or may prohibit assignment), the Sellers shall satisfy such liabilities and obligations when due.

1.3.    <u>Accounts Receivable</u>.  Purchaser shall cause the "Net Accounts Receivable" to be billed and collected, to the extent reasonably collectable, in the normal course of the Corporation's operations.  For purposes of this payment, "Net Accounts Receivable" shall be calculated as the accounts receivable of the Corporation earned prior to and collected during the twenty-four (24) month period immediately following the Closing Date less any refunds or repayments. Each dollar of the Net Accounts Receivable actually collected will be allocated to discharge the Accounts Payable in the following order of priority: (i) an amount equal to the outstanding amount of the HSBC line of credit on the Effective Date (provided the expenses for which the HSBC line of credit was utilized were expenses in incurred in the ordinary operation of the Corporation) collected, to the extent such amount is actually collected, shall be applied against and discharge the HSBC Line of Credit (as such term is defined on Schedule 1.2); (ii) the next One Hundred Thousand Dollars ($100,000) collected, to the extent such amount is actually collected, shall be applied against and discharge the Outstanding Rental Amounts (as such term is defined on Schedule 1.2); and (iii) the next One Hundred Forty Five Thousand Dollars ($145,000) collected, to the extent such amount is actually collected, shall be applied against and discharge the Seller Loan Amount (as such term is defined on Schedule 1.2).  To the extent that the Corporation's Net Accounts Receivable exceed the Accounts Payable, such excess amount shall be distributed to the Sellers within thirty (30) days of the second annual anniversary of this Agreement.  In the event that the Corporation's Net Accounts Receivable are less than the Accounts Payable, Purchaser shall fund such shortfall (the "Net Accounts Receivable Shortfall") up to a maximum amount of One Hundred Thousand Dollars ($100,000), and apply such funds to discharge the Accounts Payable, to the extent that Purchaser is responsible to fund the Net Accounts Receivable Shortfall hereunder, in the order of priority set forth above in this Section 1.3.  Such payment by the Purchaser shall fully and completely discharge the Corporation's and the Purchaser's obligations to pay the Accounts Payable hereunder and, notwithstanding any provision to the contrary, the Sellers shall be jointly and severally responsible for discharging and paying the Accounts Payable, to the extent that the Net Accounts Receivable Shortfall exceeds the sum of (a) the Net Accounts Receivable; plus (b) One Hundred Thousand Dollars ($100,000).  Any accounts receivables generated by the Company from and after the Effective Date shall be the property of the Company and no Seller shall have any right or interest in adnd to the same.  Notwithstanding any provision to the contrary, the Purchaser shall ensure that the Corporation shall not borrow any additional amounts, as of the Effective Date, under the HSBC Line of Credit.  Sellers shall execute and deliver any and all documents or instruments necessary

2

to terminate the HSBC Line of Credit and to cause the removal of any liens or encumbrances related thereto after the HSBC Line of Credit has been repaid as aforesaid.

## ARTICLE II

### THE CLOSING AND TRANSFER OF STOCK

2.1.    Closing.    The Closing of the transaction contemplated by this Agreement (the "Closing") shall occur as of August 8, 2006 (the "Closing Date") unless otherwise extended by the mutual agreement of the parties hereto.

2.2.    Purchaser Delivery.    At the Closing, the Purchaser shall deliver to the Sellers:

2.2.1.    An executed Lease by and among the Sellers and the Corporation for the property located at 791 Broadway, New York, NY, in the form attached hereto as Schedule 2.2(b).

2.2.2.    An executed Employment Agreement by and between C. Hertzoff and the Corporation effective the Closing Date, in the form attached hereto as Schedule 2.2(c).

2.3.    Seller Delivery.    At the Closing, the Sellers shall deliver or cause to be delivered:

2.3.1.    Lost Stock Affidavits from each of the Sellers for all the stock issued by the Company, other than the Stock being sold hereunder;

2.3.2.    New stock certificates representing all of the Stock being sold hereunder;

2.3.3.    Stock Transfer Powers representing the Stock, duly endorsed for transfer;

2.3.4.    All books and records of the Corporation; and

2.3.5.    All documents which counsel for the Purchaser shall reasonably deem necessary or advisable in order to accomplish a complete transfer of the shares of Stock to the Purchaser.

2.3.6.    An opinion of counsel to Seller in the form attached hereto as Schedule 2.3.6.

3

# ARTICLE III

## REPRESENTATIONS AND WARRANTIES OF SELLERS

Sellers represent and warrant to Purchaser as of the date hereof, and as of Closing, as follows:

3.1. **Authority.** Sellers have the full legal power and authority, and the right, without the consent of any other person, to execute and deliver this Agreement and to carry out the transactions contemplated hereby. Sellers own the Stock being transferred hereunder free and clear of any claims, liens and encumbrances.

3.2. **Validity.** This Agreement has been, and the documents to be delivered at Closing will be, duly executed and delivered by Sellers and will constitute lawful, valid and legally binding obligations of Sellers enforceable in accordance with their respective terms.

3.3. **Ownership of Stock.** Sellers own one hundred percent (100%) of the issued and outstanding shares of capital stock of the Corporation, and no party other than the Sellers possess any rights, title or interest in the capital stock or other form of capital or ownership interest of the Corporation. Sellers' will, on the Closing Date, convey good and marketable title to the Stock from the Sellers, free and clear of any liens, encumbrances, restrictions on transfer, charges or claims.

3.4. **Conflicts.** Neither the execution of this Agreement by Sellers, nor the consummation of the transactions contemplated hereby will result in (i) the creation of any lien, charge, pledge, security interest or encumbrance of any nature, whatsoever, on any Seller, the Corporation, or on the Stock, or (ii) a breach, default, or violation of, or conflict with (A) any document, instrument, agreement, contract or obligation to which the Corporation or any Seller is a party, or (B) any judgment, order, decree, ruling, law, rule, or regulation of any court, governmental body or arbitrator in proceedings to which the Corporation or any Seller is a party. Sellers affirm that they have not impermissibly issued any stock to some other party that is not a party to this Agreement.

3.5. **Organization and Existence of the Corporations.** The Corporation is a corporation that is duly organized, validly existing and in good standing under the laws of the State of New York. The Corporation is in compliance with all federal, state and local laws, regulations and ordinances, including, without limitation, the regulations of governmental agencies or authorities having jurisdiction over the Corporation's business where the failure to be in compliance would have a material adverse effect on the Corporation as a whole. The Corporation possesses all necessary licenses, permits, credentials, certifications, qualifications, and approvals that the Corporation reasonably believes is required by applicable federal and state laws, regulations and ordinances, and that are necessary for the conduct of the Corporation's business in the manner presently conducted.

4

3.6.    Litigation.  Except as set forth on Schedule 3.6, there are no claims, complaints, causes of action, suits, litigation, any administrative, arbitration, or enforcement actions, whether before any court or any federal, state, or other governmental or professional bureau, agency, authority or instrumentality of any kind or nature or otherwise (each individually and collectively referred to as an "Action"), pending against or, threatened against, the Sellers or the Corporation. No Action has been asserted against the Sellers or the Corporation, nor have the Sellers or the Corporation been a party to an Action as a defendant.

3.7.    Taxes.  The Corporation has or will have by the date of this Agreement (i) paid all income, sales, use, occupancy, property, real estate, excise, payroll, withholding taxes and all license fees imposed upon the Corporation, and its properties and assets, and (ii) timely filed all federal, state and local tax returns and related documents heretofore, required to be filed by the Corporation, or has a valid extension of time to file.  All tax returns and related documents filed by the Corporation have been prepared in accordance with all applicable laws and requirements and accurately reflect the taxable income of the Corporation.

3.8.    Judgments.  Neither the Sellers nor the Corporation are subject to, or in violation or default of, any judgment, order, writ, injunction or ruling of any court or any federal state, or municipal commission, bureau, agency, authority or instrumentality.

3.9.    Truthful and Accurate.  All representations and warranties of the Sellers and the Corporation contained in this Agreement, or in any document, instrument or agreement delivered pursuant to the provisions of this Agreement shall be true and accurate when made and on the Closing Date.  No representation or warranty by the Sellers or the Corporation in this Agreement contains or will contain any untrue statement of fact or omits or will omit any fact required to be stated therein or necessary in order to make the statements contained therein not misleading.

3.10.    Qualification of the Corporation.  The Corporation is duly qualified and authorized to do business and is in good standing under the laws of each jurisdiction in which the character of the properties owned or leased or the nature of the activities conducted by it make such qualification necessary, except where failure to so qualify does not have a material adverse effect on the assets, financial condition, results of operations or business of the Corporation.

3.11.    Consents and Approvals.  No consent, order, approval or authorization or permit of, or the exemption by or registration or filing with, or notification to (any such consent, approval, authorization, permit, exemption, registration, filing or notification being a "Consent"), any governmental, regulatory or administrative agency, commission or authority, domestic or foreign (a "Governmental Entity"), is necessary or required to be obtained or given or waiting period required to expire as a condition to the execution, delivery and performance of this Agreement by any of the Sellers or the consummation by the Sellers of the sale of the Stock.  No consent, approval, waiver or other action by any person under any contract, agreement, indenture, lease, instrument or other document to which any of the Sellers, or the Corporation, or any of their respective properties are bound or affected, is required or necessary for the execution, delivery and performance of this Agreement by Sellers or the consummation by Sellers of the sale of the Stock where the failure to obtain such consent, approval, waiver or other

5

439987.06

action will have a material adverse effect on the assets, financial condition, results of operations or business of the Corporation .

    3.12.  <u>No Other Stock Purchase Agreements</u>.  There are no options, agreements, contracts or other rights in existence involving Sellers, the Corporation to purchase or acquire the Stock, in whole or in part, or any other shares of stock in the Corporation, whether now or hereafter authorized or issued.  Additionally there are no options, agreements, contracts or other rights in existence to purchase or acquire from the Corporation or any of its or their material assets.

    3.13.  <u>Employee Plans and Agreements</u>.

      (a)  *Plans and Related Documents.*  <u>Schedule 3.13</u> of this Agreement lists the 401K Plan (the "401K Plan") and the medical, dental and all other employee benefit plans, including any deferred compensation or top-hat plans to a select group of management and highly compensated employees (the "Employee Plans") for the Corporation, such plans being the only employee benefit plans supplied and/or sponsored by the Corporation, as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Except for the Employee Plans listed on <u>Schedule 3.13</u>, there are no other employee benefit plans, programs, arrangements or agreements, whether formal or informal, whether in writing or not, to which the Corporation is a party, with respect to which the Corporation has or is reasonably likely to incur any obligations or liability or which are maintained, contributed to, or sponsored by the Corporation for the benefit of any current or former employee, officer or director, including any deferred compensation or top-hat plans to a select group of management and highly compensated employees.  The Corporation does not have any commitment (1) to create, incur liability with respect to, or cause to exist, any other employee benefit plan, program or arrangement, (2) to enter into any contract or agreement to provide compensation or benefits to any individual or (3) to modify, change or terminate any Employee Plan, other than with respect to a modification, change or termination required by ERISA or the Internal Revenue Code of 1986, as amended (the "Code"), except as required by law.

      (b)  *Absence of Certain Types of Plans.*  None of the Employee Plans is a multiemployer plan (within the meaning of Section 3(37) or 4001 (a)(3) or ERISA) (a "Multiemployer Plan") or a single employer pension plan (within the meaning of Section 4001 (a)(15) or ERISA) for which the Corporation is reasonably likely to incur liability under Section 4063 or 4064 of ERISA (a "Multiple Employer Plan"). None of the Employee Plans obligates the Corporation to pay separation, severance, termination or similar-type benefits solely as a result of any transaction contemplated by this Agreement or as a result of a "change in control" with respect to the Corporation, within the meaning of such terms under Section 280G of the Code.  None of the Employee Plans provides for or promises retiree medical or life insurance benefits to any current or former employee, officer or director of the Corporation.

      (c)  *Compliance with Applicable Law.*  Each Employee Plan has been operated in all material respects in accordance with the requirement of all applicable laws, including, without limitation, ERISA and the Code. The Corporation has performed all material obligations

6

required to be performed by such entity, are not in any respect in material default under or in violation of, and have no knowledge of any material default or violation by any party to, any Employee Plan. No legal action, suit or claim is pending or threatened with respect to any Employee Plan.

(d)    *Qualification of Plans.*   Each Employee Plan which is intended to be qualified under Section 401(a) of the Code or Section 401(k) of the Code has received a favorable determination letter of the Internal Revenue Service (the "IRS") that it is so qualified and each trust established in connection with any Employee Plan which is intended to be exempt from federal income taxation under Section 501(a) of the Code has received a favorable determination letter from the IRS that it is so exempt, and no fact or event has occurred since the date of such determination letter from the IRS to materially adversely affect the qualified status of any such Employee Plan or the exempt status of any such trust.

(e)    *Absence of Certain Liabilities and Events.*   There has been no prohibited transaction (within the meaning of Section 406 of ERISA or Section 4975 of the Code) with respect to any Employee Plan. The Corporation has not incurred any liability for any excise tax arising under Sections 4971, 4972, 4976, 4977, 4979, 4980, 4980B or 5000 of the Code. The Corporation has not incurred any liability under, arising out of, or by operation of, Title IV of ERISA, including, without limitation, any liability in connection with (1) the termination or reorganization of any employee benefit plan subject to Title IV of ERISA, or (2) the withdrawal from any Multiemployer Plan or Multiple Employer Plan. No complete or partial termination has occurred within the five years preceding the date hereof with respect to any Employee Plan governed by or subject to ERISA. No reportable event (within the meaning of Section 4043 of ERISA) has occurred or is expected to occur with respect to any Employee Plan subject to Title IV of ERISA. No Employee Plan had an accumulated funding deficiency (within the meaning of Section 302 of ERISA or Section 412 of the Code), whether or not waived, as of the most recently audited plan year of such Employee Plan. None of the assets of the Corporation is the subject of any Lien arising under Section 302(f) of ERISA or Section 412(n) of the Code. The Corporation has not been required to post any security under Section 307 of ERISA or Section 401(a)(29) of the Code.

(f)    *Plan Contributions and Funding.*   All contributions, premiums, or payments required to be made with respect to any Employee Plan have been made, and all such contributions, premiums, or payments have been made on or before their due dates, except where the failure to make such contributions, premiums or payments on or before such due dates does not have a material adverse effect on the Stock, or the assets, financial condition, results of operations or business of the Corporation. All such contributions have been fully deducted for income tax purposes and no such deduction has been challenged or disallowed by any Governmental Entity and no fact or event exists which could give rise to any such challenge or disallowance. As of the Closing, no Employee Plan which is subject to Title IV of ERISA will have an "unfunded benefit liability" (within the meaning of Section 4001(a)(18) of ERISA).

7

439987.06

3.14.   Environmental Matters

(a)    The Corporation has obtained all permits, licenses and other authorizations which are required with respect of the operation of its respective business under all applicable federal, state or local law, statute, ordinance, rule, regulation, code, permit, consent, approval, license, judgment, order, writ, decree, injunction, agreement or other authorization or mandate by any Governmental Entity relating to (1) pollution, waste disposal (including, but not limited to biohazard medical waste), or the protection, preservation or restoration of the environment, and (2) the use, treatment, storage, release or disposal, recycling, generation, processing, labeling, manufacture, production, sale, transportation or shipment of any hazardous or toxic waste, material, substances, products or by-products.

(b)    The Corporation is in substantial compliance with all environmental laws.

(c)    There is no civil, criminal or administrative action, suit, demand, claim, hearing, notice of violation, investigation, proceeding, or demand letter pending or threatened in writing relating to the businesses of the Corporation or any real property or facility owned, leased or operated by the Corporation or by Sellers under any environmental law by Governmental Entity or other person and neither Sellers nor the Corporation have received any written notification that any of them is a responsible party under any environmental law, including, without limitation, any written notice from the owner of any real property or other facility leased or operated by Sellers, or the Corporation , of any violation of any environmental law, or requiring Sellers or the Corporation to take remedial action with respect to the presence of any hazardous substance on any part of the real properties or other facilities, owned, leased or operated by the Corporation or Sellers.

3.15.   Employees.   Schedule 3.16 of this Agreement lists all of the officers, directors, employees and independent contractors (other than physicians performing independent medical exams) employed or retained by the Corporation by entity, and sets forth the following information for each employee:  (a) name and job title; (b) current compensation paid or payable; (c) vacation and service credited for vesting in any pension, retirement, profit sharing, deferred compensation, stock option, cash bonus, savings, employee stock ownership, insurance, medical, welfare, vacation, and other employee benefit plans; and (d) current employment status, indicating whether such employee is actively employed, on leave of absence, on disability, or on workers' compensation.   Sellers represent warrant and covenant that the Company has discharged and paid in full any and all liabilities, obligations and funds (including, without limitation, any accrued benefits, vacation days, sick days and holidays) due to the employees listed on Schedule 3.16 through the Closing Date.

3.16.   Licenses and Permits.   The Corporation has all licenses and permits required to operate its respective business in substantial compliance with all federal, state and local statutes and regulations and in accordance with its current practice.

3.17.   Absence of Encumbrances .   Except as set forth on Schedule 3.17, as of the Closing Date, neither the Company nor the Sellers on behalf of the Company has:

439987.06

(a)    incurred any obligation or liability, absolute, accrued, contingent or otherwise, whether due or to become due, in excess of $15,000 in the aggregate, except liabilities or obligations incurred in the ordinary course of business and consistent with prior practice which do not exceed $50,000 in the aggregate;

(b)    mortgaged, pledged or subjected to lien, restriction or any other encumbrance any of the property, businesses or assets, tangible or intangible, of the Company, except for purchase money liens;

(c)    made any loans to or guaranteed any loans for any officer, director, shareholder or other affiliate of the Company,

(d)    cancelled, waived, released or otherwise compromised any debt or claim other than in the ordinary course of business, or any material right;

(e)    instituted or threatened any litigation, action or proceeding before any court, governmental or regulatory body, administrative agency or arbitrator relating to it or its property; or

(f)    issued, authorized for issuance or sold any capital stock, notes, bonds or other securities, or any option, warrant or other right to acquire the same, of the Company, or declared or paid any dividend or made any other payment or distribution in respect of its capital stock, or directly or indirectly redeemed, purchased or otherwise acquired any of its capital stock or any option, warrant or other right to acquire such capital stock.

3.18.    Compliance with Laws.  The Corporation is in compliance in all material aspects and not in violation of any federal, state, or local statutes, regulations and administrative orders.

3.19.    No Questionable Practices.  Neither any of the Sellers nor the Corporation nor any officer, director, employee, or agent of the Corporation has directly, or indirectly, made, promised to make, or authorized the making of an offer, payment or gift of money or anything of value to any governmental official, political party or official thereof, candidate for political office or employee, agent or fiduciary of a customer or client, to obtain a contract for or to influence a decision in favor of the Corporation where such offer, payment or gift was or would be, if made, in violation of any applicable law or regulation, or any policy of any such customer.

ARTICLE IV

REPRESENTATIONS AND WARRANTIES BY PURCHASER

Purchaser hereby represents and warrants to Sellers as of the date hereof, and as of the closing, as follows:

4.1.    Authority; Financial Ability.  Purchaser has the full legal right, power and authority, without consent of any other person, to execute and deliver this Agreement and to

9

439987.06

carry out the transactions contemplated hereby. Purchaser has and will continue to have adequate financial ability to perform any and all of his obligations to Sellers.

4.2.    <u>Validity</u>.  This Agreement has been, and the documents to be delivered at Closing will be, duly executed and delivered by Purchaser and will constitute lawful, valid and legally binding obligations of Purchaser, enforceable in accordance with their respective terms.

4.3.    <u>Conflicts</u>.  To Purchaser's knowledge, neither the execution of this Agreement by Purchaser, nor the consummation of the transactions contemplated hereby will result in (i) the creation of any lien, charge, pledge, security interest or encumbrance of any nature, whatsoever, on Purchaser, or (ii) a breach, default, or violation of, or conflict with (A) any document, instrument, agreement, contract or obligation to which Purchaser is a party, or (B) any judgment, order, decree, ruling, law, rule, or regulation of any court, governmental body or arbitrator in proceedings to which Purchaser is a party.

4.4.    <u>Judgments</u>.  To Purchaser's knowledge, Purchaser is not subject to, or in violation or default of, any judgment, order, writ, injunction or ruling of any court or any federal, state, or municipal commission, bureau, agency, authority or instrumentality.

4.5.    <u>Truthful and Accurate</u>.  All representations and warranties of Purchaser contained in this Agreement, or in any document, instrument or agreement delivered pursuant to the provisions of this Agreement shall be true and accurate when made and on the Closing Date. No representation or warranty by Purchaser in this Agreement contains or will contain any untrue statement of a material fact or omits or will omit any material fact required to be stated therein or necessary in order to make the statements contained therein not misleading.

ARTICLE V

<u>SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS</u>

5.1.    <u>Survival</u>.    All representations, warranties and covenants contained in this Agreement or in any document delivered pursuant hereto shall be deemed to be material and to have been relied upon by the parties hereto, and shall survive the Closing for a period of three (3) year; provided, however, that the three (3) year limitation on the survival of the representations, warranties and covenants contained in this Agreement or in any documents delivered pursuant hereto shall be void and inapplicable in any instance in which (i) any of the Sellers had or should have had knowledge, prior to or at the Closing Date, of the falsity of any such representation, warranty or covenant; (ii) any of the Sellers had knowledge of and failed to disclose to Purchaser, prior to or at the Closing Date, a material liability of the Corporation; or (iii) any liability or obligation in existence prior to the Closing Date results in personal liability to the Corporation's shareholders.

ARTICLE VI

<u>INDEMNIFICATION</u>

10

439987.06

6.1.    Indemnification of Purchaser.

6.1.1.    Each of the Sellers and his/her respective estate and each of their heirs, successors and assigns agrees, jointly and severally, to indemnify and hold harmless Purchaser and the Corporation from and against any and all liabilities, obligations, contingencies, damages, costs, expenses (including, without limitation, all court costs and reasonable attorneys' fees and experts' fees and expenses), losses, and amounts paid in settlement (collectively, a "Loss" or "Losses"), whether incurred by Purchaser or Corporation in connection with any suit, claim, demand, action, proceeding or investigation, whether civil, criminal, administrative or investigative, arising out of or pertaining to

(a)    any breach or inaccuracy of any representation or warranty of Sellers contained in or made pursuant to this Agreement or in any document, instrument or certificate delivered in connection with and contemplated by this Agreement; or

(b)    a breach or default in the performance of any covenant, agreement or obligation that Sellers are required to perform under this Agreement or in any document, instrument, or certificate delivered in connection with any contemplated by this Agreement, or

(c)    any and all liabilities and obligations of Sellers or the Corporation incurred prior to the Closing date or arising from the operations of the Corporation prior to Closing; or

(d)    any claims of (i) Sellers' or the Corporation's past or current clients including without limitation, claims alleging malpractice or grounded on or arising out of medical equipment provided by Sellers, or (ii) taxing or other governmental authorities for periods prior to the Closing Date; or

(e)    Any and all actions, suits, proceedings, demands, assessments, judgments, costs and reasonable legal and other third party expenses incident to the foregoing.

6.2.    Medicare/Medicaid; Taxes.    Notwithstanding anything to the contrary contained in this Agreement, Sellers and their respective estate and heirs, successors and assigns, jointly and severally, covenant and agree to fully defend, indemnify and hold harmless Purchaser and the Corporation from and against any and all claims, liabilities, losses, costs, expenses or damages of any kind, nature or amount whatsoever, together with reasonable legal fees, costs and expenses incurred in defense thereof, which arise out of, result from or relate to (i) any audit, assessment, deficiency or other liability asserted by Medicare and/or Medicaid attributable to services rendered by the Corporation on or before the Closing Date, including without limitation any claims or liabilities related to over-billing and/or recoupment of overpayments; and (ii) any audit, assessment, deficiency or other liability asserted by any federal, state or local taxing authority for income, profits, franchise, sales, use, occupation, property, excise, payroll or other taxes of the Corporation and/or Sellers attributable to or arising out of the period prior to the Closing Date.  Purchaser shall provide Sellers with such access to the Corporation's books and records as may be necessary and reasonable in order to defend any action or proceeding in

11

439987.06

connection with this Section 6.2, and shall fully cooperate with Sellers with respect to the defense of any such action or proceeding. This Section 6.2 shall survive the Closing forever.

6.3.    Survival.  The indemnification provisions contained in Section 6.1 and 6.2 of this Agreement or in any document delivered pursuant hereto shall be deemed to be material and to have been relied upon by the parties hereto, and shall survive the Closing for a period of three (3) year; provided, however, that the three (3) year limitation on the survival of the indemnification provisions contained in this Agreement or in any documents delivered pursuant hereto shall be void and inapplicable in any instance in which (i) any of the Sellers had or should have had knowledge, prior to or at the Closing Date, of the falsity of any representation, warranty or covenant; (ii) any of the Sellers had knowledge and failed to disclose to Purchaser, prior to or at the Closing Date, a material liability of the Corporation; or (iii) any liability or obligation in existence prior to the Closing Date results in personal liability to the Corporation's shareholders.

ARTICLE VII

GENERAL PROVISIONS

7.1.    Waiver.  No amendment or waiver of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by the parties hereto, and then such waiver or consent shall be effective only in a specific instance for the specific purpose for which it is given.

7.2.    Notices.  All notices, demands, and requests required or permitted to be given under the provisions of this Agreement shall be (i) in writing; (ii) delivered by personal delivery or sent by commercial delivery service or registered or certified mail, return receipt requested; (iii) deemed to have been given on the date of personal delivery or the date set forth in the records of the delivery service or on the return receipt; and (iv) delivered to the address designated by each of the parties:

If to Sellers:                    Beverly Hertzoff
                                  Edwin Hertzoff
                                  and Clayton Hertzoff
                                  c/o Jay Fox, Esq.
                                  O'Donnell & Fox, P.C.
                                  880 Third Avenue
                                  New York, NY 10022
                                  Fax: (212) 319-3597


With Copy To:                     Jay Fox, Esq.
                                  O'Donnell & Fox, P.C.
                                  880 Third Avenue
                                  New York, NY 10022

439987.06                              12

Fax: (212) 319-3597

If to Purchaser:          Noreen Diaz
                          Complete Orthopedic Services, Inc.
                          2094 Front Street
                          East Meadow, NY 11554
                          Fax: (516) 478-4420

With Copy To:             Andrew E. Blustein, Esq.
                          Garfunkel, Wild & Travis, P.C.
                          111 Great Neck Road, Suite 503
                          Great Neck, NY 11021

    7.3.    <u>Expenses</u>. Except as otherwise expressly provided herein, each party to this Agreement shall pay its own costs and expenses in connection with the transactions contemplated hereby.

    7.4.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

    7.5.    <u>Entire Transaction</u>. This Agreement and the documents referred to herein contain the entire understanding among the parties with respect to the transactions contemplated hereby and supersede all other agreements and understandings among the parties on the subject matter hereof.

    7.6.    <u>Applicable Law</u>. This Agreement is a contract made and to be performed in the State of New York and shall in all respects be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of law rules, and shall be enforced in any court of competent jurisdiction in the State of New York.

    7.7.    <u>Successors and Assigns; No Third-Party Beneficiaries</u>. This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective successors, heirs, executors, administrators and assigns; provided, however, that no party shall assign or delegate any of the obligations created under this Agreement without the prior written consent of the other parties. Nothing in this Agreement shall confer upon any person or entity, other than the Corporation, not a party to this Agreement, or the legal representatives of such person or entity, any rights or remedies of any nature or kind whatsoever under or by reason of this Agreement.

    7.8.    <u>Severability</u>. This Agreement shall be deemed severable, and the invalidity or unenforceability of any term or provision hereof shall not affect the validity or enforceability of this Agreement or of any other term or provision hereof. Furthermore, in lieu of any such invalid or unenforceable term or provision, the parties hereto intend that there shall be added as part of

439987.06

13

this Agreement a provision as similar in terms to such invalid or unenforceable provision as may be possible and be valid and enforceable.

7.9.     Further Assurances.  Each party hereto agrees at any time or times and from time to time, to make, execute and deliver any and all such other and further instruments or documents and do any and all such acts and/or things as the other party hereto shall reasonably require for the purpose of giving full force and effect to this Agreement.

7.10.    Headings.  The section and other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

7.11.    Construction.  The parties have participated jointly in the negotiation and drafting of this Agreement, and they agree that any ambiguity or question of intent of interpretation that may arise shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

IN WITNESS WHEREOF, each of the parties hereto has entered into this Agreement as of the date first above written.

PURCHASER:                          SELLERS:


_____         _____
Noreen Diaz                         Beverly Hertzoff

                                    _____
                                    Edwin Hertzoff

                                    _____
                                    Clayton Hertzoff

14

# SCHEDULE A

| Shareholder | Stock |
|---|---|
| Beverly Hertzoff | 37.5 |
| Edwin Hertzoff | 37.5 |
| Clayton Hertzoff | 25.0 |

439987.06

<u>SCHEDULE 1.2</u>

Accounts Payable

1.      The outstanding amount as of the Effective Date under the Buisiness Revolving Line of Credit of up to $250,000, dated August 14, 2005, from HSBC Bank USA, N.A. in favor of the Corporation and the related General Security Agreement, dated the same date, between HSBC Bank USA, N.A. and the Corporation.

2.      Promissory Note from the Company to Beverly Hertzoff in the amount of $145,000.00 relating to monies loaned t the Company to repair damages from a fire in the Company premises.

3.      Accrued and unpaid rent in the amount of $100,000.00 payable by the Company to Beverly Hertzoff and Edwin Hertzoff, as landlord.

439987.06

## SCHEDULE 2.2(b)

Lease

## SCHEDULE 2.2(c)

Employment Agreement

## SCHEDULE 3.6

Litigation

None.

<u>SCHEDULE 3.13</u>

Employee Plans

1.    United Orthopaedic Appliances Co., Inc. Profit Sharing Plan managed by Allmerican Financial.

2.    Oxford Health Plan Insurance of United Orthopaedic Appliances Co., Inc.

439987.06

## SCHEDULE 3.17

Encumbrances

1.    Business Revolving Line of Credit of up to $250,000, dated August 14, 2005, from HSBC Bank USA, N.A. in favor of the Corporation and the related General Security Agreement, dated the same date, between HSBC Bank USA, N.A. and the Corporation. Outstanding balance of One Hundred Forty-Four Thousand Seven Hundred Forty-Two Dollars and Thirty-Two Cents ($144,742.32) Dollars on the Closing Date.

439987.06

# Exhibit **B**

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE
NEW YORK, NY 10022-4730

TELEPHONE 212-759-4933
FACSIMILE  212-656-1531

GEORGE R. HINCKLEY, JR.
GRH@HINCKLEY.ORG

March 2, 2007

<u>Via Federal Express</u>

Ms. Noreen Diaz
United Orthopaedic Appliances Co. Inc.
791 Broadway
New York, NY 10003-6809

<u>Re: 791 Broadway, New York, NY 10003-6809</u>

Dear Ms. Diaz:

We represent Edwin  Hertzoff and Beverly Hertzoff ("Landlord").

## <u>NOTICE OF DEFAULT</u>

PLEASE TAKE NOTICE that United Orthopaedic Appliances Co. Inc. ("Tenant")
is in default of its obligation to pay Fixed Rent,  under paragraph 1 and paragraph
37 of the Agreement of Lease made as of the 23rd day of August, 2006 (the
"Lease").

Landlord has not received the payment of Fixed  Rent of $10,000 due February 1,
2007 nor the payment of Fixed Rent of $10,000 due March 1, 2007. Demand is
hereby made for these payments.  Notice of Default is hereby given pursuant to
paragraph 47 of the Lease.

Sincerely,

*George Hinckley Jr.*

George R. Hinckley, Jr.

# Exhibit **B**

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE
NEW YORK, NY 10022-4730

TELEPHONE 212-759-4933
FACSIMILE    212-656-1531

GEORGE R. HINCKLEY, JR.
GRH@HINCKLEY.ORG

April 2, 2007

BY HAND

Ms. Noreen Diaz
United Orthopaedic Appliances Co. Inc.
791 Broadway
New York, NY 10003-6809

Re: 791 Broadway, New York, NY 10003-6809

Dear Ms. Diaz:

We represent Edwin Hertzoff and Beverly Hertzoff ("Landlord").

## NOTICE OF DEFAULT

PLEASE TAKE NOTICE that United Orthopaedic Appliances Co. Inc. ("Tenant")
is in default of its obligation to pay Fixed Rent, under paragraph 1 and paragraph
37 of the Agreement of Lease made as of the 23rd day of August, 2006 (the
"Lease").

Landlord has not received the payment of Fixed Rent of $10,000 due April 1,
2007 Demand is hereby made for this payment. Notice of Default is hereby given
pursuant to paragraph 47 of the Lease.

Sincerely,

George Hinckley Jr.

George R. Hinckley, Jr.

# Exhibit C

CLAYTON HERTZOFF
EMPLOYMENT AGREEMENT

AGREEMENT (the "Agreement"), entered into August 20, 2006, by and between United Orthopaedic Appliances, Co., Inc, a New York corporation with offices at 791 Broadway, New York, New York ("Company") and Clayton Hertzoff, residing at 58 Winthrop Road, Short Hills, New Jersey, 07078 ("Employee" or "You").

In consideration of the mutual covenants and agreements hereinafter set forth, Company and Employee agree as follows:

1.    Agreement Term.

The term of this Agreement shall commence on August 20, 2006 and continue for ten (10) years until July 31, 2016, unless sooner terminated in accordance with the terms hereof (the "Agreement Term"). During the Agreement Term, the period beginning August 20, 2006 and ending December 31, 2006 shall be referred to as the "Initial Period" and each subsequent twelve (12) month period beginning January 1st and ending December 31st (or earlier upon any termination or expiration of the Agreement) shall be referred to a "Calendar Year."

2.    Employment.

a.    *Employment by Company.*    Company agrees to employ Employee for the Agreement Term upon the terms and subject to the conditions set forth in this Agreement. Employee shall be employed as a Prosthetist (working in the field of orthotics and prosthetics) and Manager of the Orthotics & Prosthetics Shop ("O&P Shop") and shall report to the Chief Executive Officer or his designee. Employee's duties and responsibilities shall be consistent with Employee's position as the Chief Executive Officer of Company or his designee may from time to time designate. Employee's duty shall include, but not be limited to, overseeing production of the staff of Company and the O&P Shop.

b.    *Performance of Duties.*    Throughout the Agreement Term, Employee shall faithfully and diligently perform his duties. Employee shall provide services on a full-time basis and shall devote Employee's entire working time to the business and affairs of Company, subject to vacations and sick leave in accordance with policies established by Company. During Employee's term of employment hereunder, Employee shall not, without the prior written consent of Company, which may be withheld in Company's sole discretion, engage in any other business or professional activity (other than as a passive investor), whether or not such business or professional activity is pursued for gain, profit or other pecuniary advantage.

1

3.    <u>Compensation and Benefits.</u>

a.    *Base Salary.*

    i.    Subject to the requirements of Subsection 3(a)(ii) below, Company agrees to pay to Employee for his services hereunder, a salary (the "Base Salary") in respect of each Calendar Year during the Agreement Term at the annual rate of one hundred twenty thousand ($120,000) dollars per year in the aggregate, prorated for any portion thereof and for the Initial Period. The Base Salary is payable in bi-weekly installments in accordance with the general practice of Company, less appropriate and customary payroll deductions.

    ii.    During Agreement Term, Employee shall be required to maintain a level of "Personal Sales Collection" greater than six hundred thousand ($600,000) dollars for each Calendar Year (prorated for the Initial Period) ("Minimum Sales"). For purposes of this Agreement, Company shall measure "Personal Sales Collection" of Employee, within ninety (90) days of the end of each Calendar Year or the Initial Period, based upon net collections of Company from sales solely initiated and completed by Employee on behalf of Company in any Calendar Year or the Initial Period without giving effect to collection failures related solely to Company billing failures. If, for any Calendar Year or the Initial Period, Company determines that Minimum Sales will not be achieved by Employee, Company's continued employment of Employee shall be conditioned upon the parties agreeing upon a revised mutually acceptable reduced Base Salary.

b.    *Incentive Bonus.* For the Agreement Term, Company shall pay to Employee an Incentive Bonus consisting of a portion of Employee's Personal Sales Collection (measures as set forth in Subsection 3(a)(ii) above). In the Initial Period, the Incentive Bonus shall be calculated as follows: three percent (3%) of the Personal Sales Collection in the Initial Period. In each subsequent Calendar Year, the Incentive Bonus shall be calculated as follow: (i) five percent (5%) of the Personal Sales Collection in any Calendar Year less than or equal to five hundred thousand ($500,000) dollars plus (ii) ten percent (10%) of the Personal Sales Collection in any Calendar Year greater than five hundred thousand ($500,000) dollars. For example purposes only, if Employee's Personal Sales Collection in a Calendar Year is $650,000, his Incentive Bonus for such Calendar Year shall be $40,000 calculated as ($500,000 * .05) + ($150,000 * .10). Employee's Incentive Bonus for each Calendar Year or the Initial Period shall be paid to him on a quarterly basis during the Calendar Year or Initial Period based upon monthly collections of the applicable Personal Sales Collection during such Calendar Year or Initial Period and in accordance with the general practice of Company, less appropriate and customary payroll deductions.

c.    *Discretionary Bonus.* For the Agreement Term, Company shall pay Employee an discretionary bonus of twenty-five thousand ($25,000) dollars per Calendar Year. The discretionary bonus shall be paid within ninety (90) days of the end of the applicable Calendar Year in accordance with the general practice of Company, less appropriate and customary payroll deductions.

440096.05

d.    *Other Benefits.*

i.     Employee shall receive health insurance benefits for himself and his dependents and life insurance benefits for himself as such benefits are customarily provided to other full-time employees of Company, as amended or revised from time to time by Company in its sole discretion, subject to any waiting periods for benefits in accordance with Company's policies.   Employee shall further be provided with use of cellular telephone to be used solely in connection with his employment duties under this Agreement.

ii.     Employee shall be entitled, each Calendar Year, to five (5) weeks of paid leave, three (3) sick days and four (4) personal days, prorated as appropriate for any portion thereof and the Initial Period. Unused vacation, personal and sick days shall not carry over into the subsequent Calendar Year.   All leave shall be taken in accordance with the policies of Company and at times agreeable to and approved by Company.

iii.     Employee shall be entitled (1) a monthly car allowance of up to $500 per month; (2) reimbursement for his automobile insurance for the car used in connection with his employment hereunder; (3) reimbursement of bridge, tunnel and gas expense incurred in commuting to and from Company; and (4) reimbursement of the downpayment in connection with leasing the Employee's not to exceed $3,500.00. All reimbursement payment for expenses provided under this subsection shall be subject to and only be paid upon Employee's provision of written receipts to Company sufficient to satisfy Company and meet the requirements of the reimbursement policies of Company.  Company shall maintain of a parking space in garage near the 791 Broadway, New York, New York office location for use by Employee in connection with his performance of duties hereunder.

4.     Termination of Employment.

a.     *For Cause Termination.*  This Agreement, and the employment relationship between Company and Employee, shall be deemed immediately terminated upon the occurrence of any of the following: (a) Employee's breach of any material term or condition set forth in this Agreement; (b) Employee's failure or refusal to comply with the reasonable directions, policies, standards and regulations that Company may establish from time to time; (c) Employee willfully or intentionally undertakes or commits any conduct that is harmful to Company's business; (d) Company acquiring evidence of Employee's current illegal drug use, alcohol abuse, or other substance abuse; (e) Employee's commission of, indictment for, conviction of, or guilty or nolo contendere plea to, a felony or misdemeanor; (f) Employee's failure as a result of illness, injury or incapacity for a period in excess of ninety (90) days ("permanent disability); or (g) Employee's death.

b.     *Payments Upon Termination.*

i.     Upon termination of Employee's employment for any reason, Employee shall only be entitled to the Based Salary accrued but unpaid as of the date of the termination of Employee's employment with Company and the Severance Payment set forth in Section 4(b)

440096.05

below in the event such termination is the result of Employee's death or permanent disability. Employee shall not be entitled to any additional compensation from Company.

ii.    Should Employee's employment terminate or expire prior to the end of the Agreement Term solely as the result of Employee's death or permanent disability, Company agrees that it shall pay Employee (or his estate), annually for the remainder of the Agreement Term, a Severance Payment. The annual Severance Payment made to Employee shall be equal to the discretionary bonus paid to Employee for the Calendar Year immediately prior to his death or permanent disability.

5.    Assignment and Transfer.

Employee's duties and obligations under this Agreement shall not be transferable by Employee by assignment or otherwise, and any purported assignment, transfer or delegation thereof shall be void.

6.    Employer's Authority

a.    Employee agrees to observe and comply with the rules and regulations of Company, as adopted from time to time, whether orally or in writing.

b.    Employee acknowledges that Company shall have final authority over its acceptance or refusal to service customers and over the amount of the fees to be charged customers for professional services.

c.    All files and records of every type pertaining to customers of Company for whom Employee shall render services hereunder shall belong to Company and Employee shall not, without the express written consent of Company, remove them from Company's office, copy them, allow them to be removed from Company's office, or allow them to be copied, except as reasonably required in the ordinary course of services provided by Employee as an employee of Company.

7.    Disclosure of Information; Non-Solicitation

a.    Employee acknowledges that the names of the clients and referral sources of Company, as may exist from time to time, and the financial statements, business plans, internal memoranda, reports, audits, patient surveys, employee surveys, operating policies, quality assurance materials, fees, and other such materials or records of proprietary nature of Company (collectively, the "Confidential Information") are valuable, special and unique assets of Company and are deemed to be trade secrets.

b.    Employee agrees that he will not, after the date hereof and for so long as any such Confidential Information may remain confidential, secret, or otherwise wholly or partially protectable:  (i) use the Confidential Information, except in connection with his retention by

4

440096.05

Company, or (ii) divulge any such Confidential Information to any third party, unless Company gives its prior written consent to such use or divulgence.

c. In the event of a breach or threatened breach by Employee of the provisions of this Section 7, Company shall be entitled to an injunction restraining Employee from (i) disclosing, in whole or in part, any such Confidential Information; (ii) interfering with Company's relationships with its employees, customers and referral sources, or with any hospital or managed care entity with which Company has a contractual relationship; and/or (iii) rendering any professional services to (A) any customer of Company who has been solicited by Employee in violation of this Agreement, or (B) any person, firm, corporation, association, or other entity to whom any such Confidential Information, in whole or in part, has been disclosed by Employee or is threatened to be disclosed by him.

d. Nothing contained herein shall be construed as prohibiting Company from pursuing any other remedies available to Company for such breach or threatened breach, including the recovery of damages from Employee.

8.  Non-Compete and Non-Solicitation

a. Employee shall not, either directly or indirectly, at any time during the term of his employment and for twelve (12) months following the termination of this Agreement, except with the written consent of Company: (i) solicit, interfere with or endeavor to entice away from Company, any of its employees, agent, contractor, customer, or referral sources; (ii) for his own account or for the account of others, induce any customers to patronize any competing billing service provider, request or advise any customer to withdraw, curtail, or cancel such customer's relationship with Company or disclose to any other person, partnership, firm, corporation or other entity the names or addresses of any customers of Company.

b. Employee shall not, at any time during the term of his employment under this Agreement and for twelve (12) months after the termination of this Agreement: (i) engage in the sale of orthotics and prosthetics as an employee, independent contractor, shareholder, partner, or otherwise and whether separately or in conjunction with any other entity or individual within a three (3) mile radius of Company's location; and/or (ii) operate or have any financial or other interest in any entity involved in the business of providing orthotics and prosthetics within a three (3) mile radius of Company's location.

c. In the event of a breach by Employee of the provisions of this Section 8, Company shall also be entitled to an injunction restraining Employee from violating the terms of the restrictive covenant set forth herein (without the necessity of securing a bond) and any other legal or equitable remedies available for such breach or threatened breach.

d. Employee agrees that damages at law would be an insufficient remedy for Company in the event Employee violates these provisions, and that Company shall be entitled to, among other remedies, make an application to a court of competent jurisdiction, to obtain injunctive relieve of any such action by Employee.

5

440096.05

e.    If Employee violates this restrictive covenant and Company brings legal action for injunctive or other relief, Company shall not, as a result of the time involved in obtaining the relief, be deprived of the benefit of the full period of the restrictive covenant. Accordingly, the restrictive covenant shall be deemed to have the duration specified herein, computed from the date the relief is granted but reduced by the time between the period when the restriction began to run and the date of the first violation of the covenant by Employee.

f.    Employee acknowledges that (i) the terms contained in this Section 8 are necessary for the reasonable and proper protection of Company's interests, (ii) each and every covenant and restriction is reasonable in respect of such matter, length of time and geographical area; (iii) Company. has been induced to enter into this transaction with Employee in part due to the representation by Employee that he will abide by and be bound by each of the aforesaid covenants and restraints.

g.    If any court or tribunal of competent jurisdiction determines that the duration, geographical limit or any other aspect of the above non competition covenants is unenforceable in accordance with its terms in a particular jurisdiction, such covenant shall not terminate; instead, such covenant shall be deemed amended to the extent required to render it valid and enforceable in such jurisdiction and such court or tribunal is hereby authorized and directed to amend this agreement only to the extent that such court or tribunal determines such an amendment is necessary to make it valid and enforceable in said jurisdiction.

h.    Whenever possible, each provision shall be construed so as to be interpreted in such manner as to be effective and valid under applicable law. If any provision of this Agreement or the application thereof to any party or circumstance shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition without invalidating the remainder of such provision or any other provision of this Agreement or the application of such provisions to other parties or circumstances. If any restriction contained in this Section 8 shall be deemed to be invalid, illegal or unenforceable by reason of the extent, duration or geographical scope thereof, or otherwise, then the court making such determination may reduce such extent, duration, geographical scope, or other provisions hereof, and in its reduced form, such restriction shall then be enforceable in the manner contemplated hereby.

i.    In the event Company is successful in judicial proceedings to enforce its rights under this Section 8, then Employee agrees to reimburse Company for the legal fees, costs, and disbursements which it incurs as a result of such proceedings. The terms of this Section 8 shall survive the expiration or termination of this Agreement.

9.    <u>Compliance</u>

a.    You acknowledge that Company is fully committed to ensuring its compliance, and the compliance of its employees, with all applicable rules, regulations and laws promulgated by the state and federal governments and by third party payors relating to the provision of billing services.

6

440096.05

b.    You agree to cooperative fully with Company's compliance activities regarding the O&P Shop, including cooperation with Company's efforts to educate and train all employees and staff of the O&P Shop; to conduct audits of records or other appropriate compliance reviews or inquiries; and to institute any appropriate corrective actions when compliance issues are identified.  Your failure to cooperate with Company's compliance activities and efforts, as determined in the sole discretion of Company, will constitute grounds for discipline.

10.    Miscellaneous.

a.    *Governing Law.*    This Agreement, including the validity, interpretation, construction and performance of this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of law.

b.    *Venue and Acceptance of Service of Process.*  Each party to this Agreement hereby agrees and consents that any legal action or proceedings with respect to this Agreement shall only be brought in the courts of the State of New York in New York County.  By execution and delivery of this Agreement, each such party hereby (i) accepts the jurisdiction of the aforesaid courts; (ii) waives, to the fullest extent permitted by law, any objection which it may now hereafter have to the venue set forth above; and (iii) further waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. .

c.    *Entire Agreement.*    This Agreement contains the entire agreement and understanding between the parties hereto in respect of the subject matter hereof.

d.    *Amendment.*  This Agreement may be amended only by a written amendment which is signed by Employee and, on behalf of Company, by a director or officer other than Employee.

e.    *Severability.*  If any term, provision or covenant of this Agreement or part thereof, or the application thereof to any person, place or circumstance, shall be held to be invalid, unenforceable or void by a court of competent jurisdiction, the remainder of this Agreement and such term, provision or covenant shall remain in full force and effect, and any such invalid, unenforceable or void term, provision or covenant shall be deemed, without further action on the part of the parties hereto, modified, amended and limited, and the court shall have the power to modify, amend and limit any such term, provision or covenant, to the extent necessary to render the same and the remainder of this Agreement valid, enforceable and lawful.

f.    *Construction.*  The headings and captions of this Agreement are provided for convenience only and are intended to have no effect in construing or interpreting this Agreement. The use herein of the word "including" when following any general provision, sentence, clause, statement, term or matter, shall be deemed to mean "including, without limitation".  As used herein, the words "day" or "days" shall mean a calendar day or days.

7

g.    *Non-waiver.*  Neither any course of dealing nor any failure or neglect of either party hereto in any instance to exercise any right, power or privilege hereunder or under law shall constitute a waiver of any other right, power or privilege or of the same right, power or privilege in any other instance.  All waivers by either party hereto must be contained in a written instrument signed by the party to be charged and, in the case of Company, by its duly authorized officer.

h.    *Remedies Cumulative.*  The rights and remedies of the parties hereto are cumulative and shall not be exclusive, and each such party shall be entitled to pursue all legal and equitable rights and remedies and to secure performance of the obligations and duties of the other under this Agreement, and the enforcement of one or more of such rights and remedies by a party shall in no way preclude such party from pursuing, at the same time or subsequently, any and all other rights and remedies available to it.

i.    *Prevailing Authority.*  In the event and to the extent of any inconsistencies between this Agreement and any Company employee or procedural manual, the terms of this Agreement shall prevail.

j.    *Notices.*  All notices, requests, demands and other communications required or permitted to be given hereunder shall be in writing, and shall be deemed duly given: (i) when personally delivered; (ii) when receipt is acknowledged, if sent by facsimile, telecopy or other electronic transmission device; provided, however, that if receipt is acknowledged after normal business hours of the recipient, notice shall be deemed to have been given on the next business day; (iii) one day after deposit with a nationally recognized overnight courier, specifying "next day delivery"; or (iv) three days after being sent by registered or certified mail, postage prepaid, return receipt requested.  Any notice, demand or other communication given by a party in connection with this Agreement shall be sent to the other party at the address set forth above for such other party.

k.    *Disclosure.*  Employee agrees that during the term of his employment with Company, he will disclose solely to Company all ideas, methods, plans, or improvements known by you which relate, directly or indirectly to, the practice of Company, whether acquired by Employee before or during his employment with Company; provided, however, that nothing in this paragraph shall be construed as requiring any such communication where the idea, method, plan or improvement is lawfully protected from disclosure as a trade secret of a third party or by any other lawful prohibition against such communication.

l.    *Authority to Contract.*  Employee shall have no authority to nor shall be entitled enter into any contracts, other than this Agreement or any amendments hereto, which shall be binding upon Company, or otherwise create any obligations on the part of Company.

8

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first written above.

Clayton Hertzoff

United Orthopaedic Appliances, Co., Inc.

By: _____

Name: Noreen Diaz

Title: President

9

# Exhibit D

April 16, 2007

<u>BY HAND AND BY FACSIMILE</u>

    TO:  Mr. Martin Diaz,  Ms. Noreen Diaz, United Orthopaedic Appliances Company

FROM:  Clayton Hertzoff

RE:   Quarterly Bonus Payment Due March 31, 2007

Pursuant to section 3 (b) of my Employment Agreement of August 20, 2006, Orthopaedic Appliances Company is obligated to pay to me a bonus equal to 5% of my "Personal Sales Collection."  I have not yet received this payment, despite my repeated requests for it to be made.

Formal demand is hereby made for the payment of this bonus.

I expressly reserve all of my rights under the Employment Agreement and otherwise.

Sincerely,

Clayton Hertzoff

```
*****************************************************************
*                                                               *
*                    TRANSACTION REPORT                         *
*                                          APR-16-2007 04:22 PM *
*          FOR: UNITED.ORTHOPAFIC        212 473 0658           *
*  _____ *
*                                                               *
*     SEND                                                      *
*                                                               *
*  DATE   START     RECEIVER            PAGES    TIME    NOTE    *
*  _____ *
*  APR-16 04:16 PM 915164784420            1      40"    OK     *
*  _____ *
*                                                               *
*****************************************************************
```

# GARFUNKEL, WILD & TRAVIS, P.C.

ATTORNEYS AT LAW

111 GREAT NECK ROAD
GREAT NECK, NEW YORK 11021
TEL (516) 393-2200
FAX (516) 466-5964

ROBERT ANDREW WILD ∗
NORTON L. TRAVIS ∗
FREDRICK I. MILLER ∗
JUDITH A. BISIN ∗
LEONARD M. ROSENBERG ∗
JEFFREY B. BROWN ∗◊†
ANDREW B. BLUSTEIN ∗◊†
BURTON S. WESTON ∗
DAVID J. BIEHL ∗
MICHAEL J. KEANE ∗†
HAYDEN S. WOOL ∗
GREG B. BLOOM ∗♦
JEFFRY ADEST ∗†
STEVEN R. ANTICO ∗◊†
ROY W. BREITENBACH ∗
STEVEN J. CHANANIE ∗
PHILIP C. CHRONAKIS ∗†
SEAN P. LYDDEN ∗♦
PETER B. MARTINO ∗
DORIS L. MARTIN ∗
LOURDES MARTINEZ ∗†
PATRICK J. MONAHAN II ♦
GREGG D. REISMAN ∗
ANDREW J. SCHULSON ∗
CHRISTINA VAN VORT ∗
ANDREW L. ZWERLING ∗

OF COUNSEL
GEORGE M. GARFUNKEL ∗
DAVID E. STECKLER ∗
STUART M. HOCHRON, M.D. ♦

∗   LICENSED IN NEW YORK
♦   LICENSED IN NEW JERSEY
◊   LICENSED IN CONNECTICUT
Ω   LICENSED IN DELAWARE
Ξ   LICENSED IN MASSACHUSETTS
†   LICENSED IN PENNSYLVANIA
×   LICENSED IN SOUTH CAROLINA
•   LICENSED IN DISTRICT OF COLUMBIA
†   RESPONSIBLE PARTNERS FOR NEW JERSEY OFFICE

LARA JEAN ANCONA ∗
NATHAN BRILL ∗♦
WILHELMINA A. DE HARDER ∗
KEVIN G. DONOGHUE ∗Ξ
REBECCA A. HOBLMAN ∗Ξ
PETER A. EGAN ∗♦
THERESA A. BULE ∗
JACQUELINE H. FINNIGAN ∗
JORDAN M. FREUNDLICH ∗
RANDI H. FRIEDMAN ∗
NICOLE GADE ∗†
STACEY L. GULICK ∗†
R. SCOTT HIGGINS ∗†
JASON Y. HSI ∗
LAURIE B. JOHNSON ∗
KIMBERLY KEMPTON-SERRA †
JOHN P. KRALJIC ∗
LAUREN M. LIVINII ∗†
COLLEEN MCMAHON ∗
MARIANNE MONROY ∗†
RAYMOND P. MULKY ∗†
KARIN L. RODGERS ∗
COURTNEY A. ROGERS ∗ Ξ
MOLLY M. RUSH ∗
APSHEEN A. SHAH ∗
PETER G. SIACHOS ∗†♦
GREGORY R. SMITH ∗
COLLEEN M. TARPHY ∗
GERARD H. TONER ∗
CAROLINE P. WALLITT ∗
ALICIA M. WILSON ∗

SENIOR ATTORNEYS
SUZANNE M. AVENA ∗
BARBARA D. KNOTHE ∗♦
EVE GREEN KOOPERSMITH ∗
ALAN H. PERLING ∗
TERENCE A. RUSSO ∗
DEBRA A. SILVERMAN ∗

411 HACKENSACK AVENUE
HACKENSACK, NEW JERSEY 07601
TEL (201) 883-1030
FAX (201) 883-1031

350 BEDFORD STREET
STAMFORD, CONNECTICUT 06901
TEL (203) 316-0483
FAX (203) 316-0493

www.gwtlaw.com
WRITER'S EMAIL: ctarpey@gwtlaw.com
WRITER'S DIRECT DIAL: (516) 393-2536

June 1, 2007

FILE NO.: 10654.0002
REPLY TO: New York

## BY FACSIMILE AND FEDERAL EXPRESS

George R. Hinckley, Jr., Esq.
Traiger & Hinckley LLP
880 Third Avenue, 9th Floor
New York, New York 10022-4730

Re:    *Beverly Hertzoff, Edwin Hertzoff & Clayton Hertzoff v. Noreen Diaz and United*
       *Orthopedic Appliances Co., Inc. - SDNY 07/3157 (CM)*

Dear George:

As you are aware, this firm represents defendants Noreen Diaz ("Mrs. Diaz") and United Orthopedic Appliances Co., Inc. ("UOA") (collectively, "Defendants") in the above proceeding. We write pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") to notify you of Defendants' intention to seek sanctions with respect to the complaint filed in the referenced litigation (the "Complaint"). This letter satisfies the "safe harbor" requirement of Rule 11. *See, e.g., Jeffreys v. P.O. Rossi*, 275 F. Supp.2d 463, 480 n. 27 (S.D.N.Y. 2003).

The Complaint is frivolous and subject to Rule 11 for the following reasons:

I.     The Action For Breach Of The Stock Purchase Agreement Is Premature

The Complaint alleges that "Defendants have failed to fulfill their contractual obligation to cause all 'Net Accounts Receivable' to be billed and collected and have failed to allocate each dollar of the Net Accounts Receivable actually collected to discharge designated Accounts Payable."

484222.01

George R. Hinckley, Jr., Esq.
June 1, 2007
Page 2

As a threshold matter, the provision of the Stock Purchase Agreement relied upon by your clients, Beverly Hertzoff, Edwin Hertzoff & Clayton Hertzoff (collectively, "Plaintiffs"), specifically states that the "'Net Accounts Receivable' shall be calculated as the accounts receivable of the Corporation earned prior to and collected during the twenty-four (24) month period immediately following the Closing Date less any refunds or repayments." *See* Stock Purchase Agreement, 1.3. The "Closing Date" is defined as August 8, 2006. *See* Stock Purchase Agreement, 2.1. Accordingly, the Defendants have until up to and including August 8, 2008 in which to bill for and collect the Net Accounts Receivable and apply it to the outstanding Accounts Payable set forth in the Stock Purchase Agreement.

Clearly, this lawsuit, initiated 14 months prior to the date upon which Defendant's time to bill and collect the Net Accounts Receivable has expired, is premature and Plaintiff's claim for breach of contract as asserted in the Complaint's First Cause of Action is not yet ripe for adjudication.

Because this claim is frivolous, it must be withdrawn within 21 days of the date of this letter, or we will move the Court for Rule 11 sanctions on this basis.

II.    The Rent Claim Is Moot

The Complaint Alleges a claim for non-payment of rent. However, UOA has paid all outstanding rent due, as the annexed checks indicate. Accordingly, this claim is moot.

Because this claim is frivolous, it must be withdrawn within 21 days of the date of this letter, or we will move the Court for Rule 11 sanctions on this basis.

III.    The Claim for Breach of Employment Agreement Is Meritless

The Complaint alleges a claim for breach of Clayton Hertzoff's Employment Agreement with UOA relating to UOA's alleged failure to pay Mr. Hertzoff a bonus of 5% of collections attributable to Mr. Hertzoff's services each quarter. The total amount due to Mr. Herzoff as a commission on his first quarter of employment with UOA was $8,163.26. We understand that UAO deducted $4,163.26 with Mr. Herztoff's acknowledgement, as set forth in the annexed letter from my client to yours, dated May 22, 2007. The remaining $4,000 left to be paid to Mr. Hertzoff was, indeed, paid, as your April 27, 2007 letter to Defendants acknowledges. Accordingly, nothing further is owed to Mr. Hertzoff with regard to his first quarter commission.

Because this claim is frivolous, it must be withdrawn within 21 days of the date of this letter, or we will move the Court for Rule 11 sanctions on this basis.

IV.    The Amount In Controversy Does Not Meet The Jurisdictional
       Threshold Sufficient To Sustain A Diversity Action In Federal Court

Because Plaintiff's first cause of action is premature, all outstanding rent owed has been paid, and because Mr. Hertzoff was already paid $4,000 toward the $8,163.26 alleged to be owed to him in commissions, the amount in controversy in this matter is no more than $4163.26. Clearly, this matter does not even begin to approach the jurisdictional threshold amount of $75,000 required to sustain a diversity action in Federal Court, pursuant to 28 USC §1332(a).

GARFUNKEL, WILD & TRAVIS, P.C.

484222.01

George R. Hinckley, Jr., Esq.
June 1, 2007
Page 3

Accordingly, the Court lacks subject matter jurisdiction over the Complaint and the Complaint must be withdrawn.

In addition to the foregoing, it has come to our attention that your firm recently served third party subpoenas in this case on a host of what appear to be third-party insurers, seeking documents regarding paid claims to our client on the accounts receivable. Particularly given the lack of merit in this lawsuit, this tactic is highly improper.

I am also in receipt of a facsimile from your office today, which purports to advise us of service of a subpoena upon North Fork Bank, seeking documentation that is not related to the alleged dispute between our clients, including the personal banking information of Noreen Diaz, and her husband, Martin Diaz. This subpoena is clearly improper, and we demand that you immediately notify North Fork Bank that you are withdrawing same.

The service of these subpoenas prior to the service of an answer in this matter and a Rule 26(f) conference with the Court is **prohibited** by Rule 26(d), which states that "a party may not seek discovery **from any source** before the parties have conferred as required by Rule 26(f)." Accordingly, we view the service of these subpoenas as an attempt to harass and annoy our clients and as a bad-faith litigation tactic. We ask that you immediately forward letters to all subpoenaed parties withdrawing your subpoenas until such time as issue is joined in this case and a Rule 26 conference with the Court has been scheduled. Should this firm be forced to file a Rule 11 motion with regard to this matter, this issue will be raised to demonstrate the bad-faith nature of your client's claims and litigation tactics thus far. Please be guided accordingly.

I ask that you call me to advise of your client's intentions with regard to the contents of this letter on or before June 8, 2007, given that our time to respond to the Complaint in this matter expires on June 15, 2007.

Regards,

Colleen M. Tarpey

Enclosures

cc:    Andrew Zwerling, Esq.

GARFUNKEL, WILD & TRAVIS, P.C.

484222.01

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BEVERLY HERTZOFF, EDWIN
HERTZOFF, AND CLAYTON HERTZOFF

Plaintiffs,

v.

NOREEN DIAZ, and UNITED
ORTHOPAEDIC APPLIANCES CO. INC.

Defendant.

RECEIVED

JUN 1 3 2007

GARFUNKEL WILD & TRAVIS

**AMENDED
COMPLAINT**

No. 07 CV 3157

Plaintiffs, by their undersigned attorneys, allege as follows:

**NATURE OF THIS ACTION**

1.     This is a diversity action for: (1) breach of contract by the sellers of

an orthopedic appliances company against the purchaser of the company; (2)

breach of a ten-year Employment Agreement that was consideration for the sale of

the company; and (3) an action for unpaid rent. Pursuant to the parties' Stock

Purchase Agreement, Defendants are obligated to bill and collect certain

designated accounts receivable and to allocate each dollar of those funds to

discharge specifically designated accounts payable. Defendants have failed to do

so. In addition, Defendant United Orthopaedic Appliances Co. Inc. has breached its

Employment Agreement plaintiff Clayton Hertzoff. Defendants have

constructively discharged plaintiff Clayton Hertzoff by repeatedly requesting that

he engage in wrongful and deceptive billing practices with insurance carriers,

Medicare and Medicaid, as well as by moving its offices away and leaving plaintiff

virtually alone in its prior office space without any telephone service, computer, records and with inadequate supplies, parts, and administrative support. Defendants have also made it impossible for plaintiff to properly perform his job by failing to pay numerous suppliers of the component parts needed to fabricate prostheses, resulting in their refusal to ship component parts. Defendants have also materially breached and repudiated plaintiff Clayton Hertzoff's Employment Agreement by making improper and illegal deductions from his wages, wrongfully attempting to shift to its employee the risk of nonpayment by UOA's customers.

## THE PARTIES

2.    Plaintiffs Edwin Hertzoff and Beverly Hertzoff, husband and wife, are citizens of New Jersey, residing at 2 Rippling Brook Drive, Short Hills, NJ 07078. Plaintiff Clayton Hertzoff, the son of Edwin and Beverly, is also a citizen of New Jersey, residing at 58 Winthrop Rd, Short Hills, NJ 07078.

3.    Defendant Noreen Diaz is a citizen of the State of New York and is the wife of Mr. Martin Diaz.

4.    Defendant United Orthopaedic Appliances Co. Inc. ("UOA") is a corporation organized under the laws of the State of New York with its principal place of business located at 791 Broadway, New York, NY 10003. Although contracts are made in his wife's name, Mr. Martin Diaz in fact acts as the primary executive officer and owner of UOA.

2

## JURISDICTION AND VENUE

5.     This Court has jurisdiction under 28 U.S.C. § 1332.  The amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs, and complete diversity of citizenship exists between the plaintiffs and defendants.

6.     Venue in this judicial district is proper under 28 U.S.C. § 1391.

## FACTS

7.     UOA was founded in 1907 by plaintiff Beverly Hertzoff's grandfather. It designs, manufactures, and fits orthopedic appliances, braces, and artificial limbs.  UOA's offices are located at 791 Broadway New York, NY 10003.

8.     Prior to August 2006, Plaintiffs owned 100% of the shares of UOA. Plaintiffs spent most of their working lives at UOA. Plaintiff Edwin Hertzoff worked at UOA for 54 years, from 1952 to 2006. Plaintiff Beverly Hertzoff worked at UOA for 34 years, from 1972 to 2006. Plaintiff Clayton has worked at UOA for most of his adult life, from the late 1970's to the present.

9.     In 2006, plaintiffs were approached by Martin Diaz and his wife, defendant Noreen Diaz, about the purchase of UOA. In August, 2006, the parties entered into a Stock Purchase Agreement, effective as of August 20, 2006, a copy of which is annexed hereto as Exhibit A (the "Agreement"). The Agreement did not provide for any payment directly to plaintiffs. Instead, (1) plaintiff Clayton

3

Hertzoff received a ten-year employment agreement; and (2) the Agreement

provided that defendants would bill and collect certain accounts receivable and that

"*each dollar*" so collected would be applied, as collected, on a priority basis, only

to three designated accounts payables set forth in Schedule 1.3 of the Agreement.

10.     Specifically, Section 1.3 of the Agreement provides as follows:

1.3. Accounts Receivable. Purchaser shall cause the "Net Accounts Receivable" to be billed and collected, to the extent reasonably collectable, in the normal course of the Corporation's operations. For purposes of this payment, "Net Accounts Receivable" shall be calculated as the accounts receivable of the Corporation earned prior to and collected during the twenty-four (24) month period immediately following the Closing Date less any refunds or repayments. Each dollar of the Net Accounts Receivable actually collected will be allocated to discharge the Accounts Payable in the following order of priority: (i) an amount equal to the outstanding amount of the HSBC line of credit on the Effective Date (provided the expenses for which the HSBC line of credit was utilized were expenses incurred in the ordinary operation of the Corporation) collected, to the extent such amount is actually collected, shall be applied against and discharge the HSBC Line of Credit (as such term is defined on Schedule 1.2); (ii) the next One Hundred Thousand Dollars ($100,000) collected, to the extent such amount is actually collected, shall be applied against and discharge the Outstanding Rental Amounts (as such term is defined on Schedule 1.2); and (iii) the next One Hundred Forty Five Thousand Dollars ($145,000) collected, to the extent such amount is actually collected, shall be applied against and discharge the Seller Loan Amount (as such term is defined on Schedule 1.2). To the extent that the Corporation's Net Accounts Receivable exceed the Accounts Payable, such excess amount shall be distributed to the Sellers within thirty (30) days of the second annual anniversary of this Agreement. In the event that the Corporation's Net Accounts Receivable are less than the Accounts Payable, Purchaser shall fund such shortfall (the "Net Accounts Receivable Shortfall") up to a maximum amount of One Hundred Thousand Dollars ($100,000), and apply such funds to discharge the

4

Accounts Payable, to the extent that Purchaser is responsible to fund the Net Accounts Receivable Shortfall hereunder, in the order of priority set forth above in this Section 1.3. Such payment by the Purchaser shall fully and completely discharge the Corporation's and the Purchaser's obligations to pay the Accounts Payable hereunder and, notwithstanding any provision to the contrary, the Sellers shall be jointly and severally responsible for discharging and paying the Accounts Payable, to the extent that the Net Accounts Receivable Shortfall exceeds the sum of (a) the Net Accounts Receivable; plus (b) One Hundred Thousand Dollars ($100,000). Any accounts receivables generated by the Company from and after the Effective Date shall be the property of the Company and no Seller shall have any right or interest in adnd [sic] to the same. Notwithstanding any provision to the contrary, the Purchaser shall ensure that the Corporation shall not borrow any additional amounts, as of the Effective Date, under the HSBC Line of Credit. Sellers shall execute and deliver any and all documents or instruments necessary to terminate the HSBC Line of Credit and to cause the removal of any liens or encumbrances related thereto after the HSBC Line of Credit has been repaid as aforesaid.

11.    The three designated accounts payables set forth in Schedule 1.3 of the Agreement are as follows:

1.    The outstanding amount as of the Effective Date under the Business Revolving Line of Credit of up to $250,000, dated August 14, 2005, from HSBC Bank USA, N.A. in favor of the Corporation and the related General Security Agreement, dated the same date, between HSBC Bank USA, N.A. and the Corporation.

2.    Promissory Note from the Company to Beverly Hertzoff in the amount of $145,000.00 relating to monies loaned to the Company to repair damages from a fire in the Company premises.

3.   Accrued and unpaid rent in the amount of $100,000.00
payable by the Company to Beverly Hertzoff and Edwin
Hertzoff, as landlord.

12.   Defendants have failed to fulfill their current contractual obligation to

cause all "Net Accounts Receivable" to be billed and collected and have failed to

allocate each dollar of the Net Accounts Receivable actually collected to discharge

the designated Accounts Payable.

13.   A principal consideration received by plaintiffs for the sale of UOA

was a 10-year employment contract for plaintiff Clayton Hertzoff at UOA as a

Prosthetist and as a manager of UOA's Orthotics & Prosthetics shop. A copy of his

Employment Agreement dated as of August 20, 2006 ("Employment Agreement")

is annexed hereto as Exhibit C. The Employment Agreement provides for a base

salary of $120,000 per year, a bonus of $25,000 per calendar year, and quarterly

commissions based upon sales. UOA has materially breached its obligations under

the Employment Agreement.

### FIRST CLAIM FOR RELIEF
#### (Breach of Stock Purchase Agreement)

14.   Plaintiffs repeat paragraphs 1 through 13 as if fully set forth  herein.

15.   Defendants have breached their current contractual obligations to

plaintiff under the Agreement.

## SECOND CLAIM FOR RELIEF
### (Breach of Employment Agreement - Failure to Pay Commissions)

16.    Plaintiffs repeat paragraphs 1 through 15 as if fully set forth herein.

17.    Pursuant to section 3(b) of the Employment Agreement, defendant UOA is obligated to pay a quarterly sales commissions to plaintiff Clayton Hertzoff equal to 5% of his "Personal Sales Collection." These commissions were due on March 30 1, 2007, but have not been paid in full despite repeated requests for payment.

18.    Annexed hereto as Exhibit D. is a written demand for the payment of this bonus that plaintiff Clayton Hertzoff delivered to defendants by facsimile on April 16, 2007.

19.    Defendant UOA is in breach of its contractual obligations under the Employment Agreement.

## THIRD CLAIM FOR RELIEF
### (Violation of Section 191-c of the NY Labor Law)

20.    Plaintiffs repeat paragraphs 1 through 19 as if fully set forth herein.

21.    And all relevant times, plaintiff Clayton Hertzoff was an employee of defendant UOA. His principal activity was the selling of goods and services and his earnings were based in part on commissions. His principal activity was not of a supervisory, managerial, executive or administrative nature. Plaintiff Clayton Hertzoff was a "commission salesman" as defined in section 190 (6) of the New York Labor Law.

22.    Defendant UOA has failed to pay "wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment" in violation of Section 191(c) and 191-c of the NY Labor Law.

23.    Defendant UOA is liable to plaintiff Clayton Hertzoff, pursuant to Section 191-c of the NY Labor Law for "double damages" and "reasonable attorneys fees, court costs, and disbursements."

### FOURTH CLAIM FOR RELIEF
**(Violation of Section 193 of the NY Labor Law)**

24.    Plaintiffs repeat paragraphs 1 through 23 as if fully set forth herein.

25.    Defendants have intentionally and willfully deducted at least $4,163 from wages owed to plaintiff Clayton Hertzoff in violation of §193 of the New York Labor Law. According to a letter written to plaintiff Clayton Hertzoff by Defendant Noreen Diaz dated May 22, 2007 (written after plaintiff had brought suit in this Court to collect his wages), this deduction from wages was purportedly for the costs to UOA in "material and man hours" for alleged "lack of judgment" in supplying a prosthetic device to a patient that from which UOA was unable to obtain payment.

26.    The allegations of the May 22, 2007 letter are false. More significantly (and regardless truth or falsity of the allegations) this deduction from wages violates §193 of the New York Labor Law since it was not made "in

8

accordance with the provision of any law or any rule or regulation issued by any

government agency," nor was it "expressly authorized in writing by the employee

and for the benefit of the employee" (limited to "payments for insurance

premiums, pension or health and welfare benefits, contributions to charitable

organizations, payments for United States bonds, payments for dues or assessments

to a labor organization and similar payments for the benefit of the employee").

27.    Pursuant to section 198 of the New York Labor Law, defendants are

liable for reasonable attorneys fees and liquidated damages equal to 25% of the

total amount of the wages found to be due.

### FIFTH CLAIM FOR RELIEF
### (Material Breach of Employment Contract)

28.    Plaintiffs repeat paragraphs 1 through 27 as if fully set forth  herein.

29.    Defendants have materially breached the Employment Agreement by

their willful failure to pay plaintiff Clayton Hertzoff as agreed.  This attempt to

shift to its employee the risk of loss for nonpayment by UOA's customers is a

material, substantial breach that strikes at the essence of the contract.

30.    Defendants have further materially breached the Employment

Agreement by repeatedly requesting that plaintiff Clayton Hertzoff participate in

wrongful, deceptive billing practices. Defendants have, on numerous occasions,

requested that plaintiff Clayton Hertzoff bill insurance carriers in full for work

prior to the actual delivery of orthopedic appliances. Defendants have been

systematically billing insurance carriers, including Medicare and Medicaid, for

work prior to the actual delivery of prostheses. Upon information and belief,

defendants are wrongfully billing insurance carriers, including Medicare and

Medicaid, under UOA's contracts and using UOA's tax identification number, for

work that was actually performed by a different company, Complete Orthopedic

Services Inc. Defendants have also requested that plaintiff Clayton Hertzoff over-

bill and over-provide services. For example, defendants have requested that

plaintiff Clayton Hertzoff use billing code "L Code 1832," which denotes

adjustable range of motion joints, for all knee braces, whether or not the brace

contains or requires an adjustable range of motion joint. Single axis joints are

substantially less expensive than adjustable range of motion joints. Defendants

have requested that plaintiff Clayton Hertzoff improperly supply adjustable range

of motion joints when they are not medically necessary or prescribed and that he

bill insurance carriers for adjustable range of motion joints even when they were

not provided to a patient. On one occasion, when plaintiff Clayton Hertzoff told

Martin Diaz that he refused to improperly bill for an adjustable range of motion

joint, Mr. Diaz responded: "what's the difference -- the joints are hidden."

### SIXTH CLAIM FOR RELIEF
### (Constructive Discharge)

31.    Plaintiffs repeat paragraphs 1 through 30 as if fully set forth herein.

32.    Defendants have deliberately made the working conditions of plaintiff Clayton Hertzoff intolerable.

33.    Defendants have failed to pay plaintiff Clayton Hertzoff sales commissions that are unquestionably due him, improperly attempting to shift to plaintiff the risk of nonpayment by UOA's customers.

34.    As set forth above in paragraph 30, Defendants have repeatedly requested that plaintiff engage in wrongful, fraudulent billing practices.

35.    Plaintiff's working conditions have also become intolerable, and his patients have suffered, because Defendants have failed to pay the suppliers of the component parts needed to fabricate prostheses. As a result, these suppliers have ceased shipping component parts, making it impossible for plaintiff to properly perform his job. These suppliers include Otto Bock, Ossur hf., Generation II, and Pel Supply Co..

36.    Furthermore, Defendants have now left the plaintiff Clayton Hertzoff virtually alone at their offices at 791 Broadway, without any telephone service, computer, fax, records and with little administrative assistance. Defendants have apparently acquired new office space and moved most personnel and equipment to new office space but have not given any office to plaintiff Clayton Hertzoff.

37.    Defendants have constructively discharged plaintiff Clayton Hertzoff, in breach of the Employment Agreement.

## SEVENTH CLAIM FOR RELIEF
### (Anticipatory Repudiation and Breach)

38.     Plaintiffs repeat paragraphs 1 through 37 as if fully set forth  herein.

39.     Defendants, by their letter of May 22, 2007 and by their actions and statements to plaintiff Clayton Hertzoff, have declared their intention not to perform their obligations under the Employment Agreement. Defendants are in breach of their obligations under the Employment Agreement.

## EIGHTH CLAIM FOR RELIEF
### (Non-Payment of Rent)

40.     Plaintiffs repeat paragraphs 1 through 39 as if fully set forth  herein.

41.     Plaintiffs Edwin Hertzoff and Beverly Hertzoff are the owners and landlords of the premises located at 791 Broadway, New York, NY 10003. Defendant UOA is the tenant of said premises, and it entered into possession thereof under an Agreement of Lease made as of August 23, 2006  between plaintiffs and UOA, pursuant to which UOA promised to pay to landlord as fixed rent $10,000 each month in advance on the first day of each month. Pursuant to said agreement there was due to landlord from UOA fixed rent as follows:

| | |
|---|---|
| March 1, 2007 | $10,000 |
| April 1, 2007 | $10,000 |
| May 1, 2007 | $10,000 |
| June 1, 2007 | $10,000 |

42.    Plaintiffs have given notice to UOA of their repeated defaults. Annexed hereto as Exhibit B are copies of Notices of Default that were delivered to defendants.

43.    As of today's date, the fixed rent that remains in arrears is $10,000.00. Defendant UOA continues in possession of premises.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully demand judgment as follows:

a)  That plaintiffs be awarded damages for breach of the Agreement in an amount to be determined at trial;

b)  That plaintiff Clayton Hertzoff be awarded damages for constructive discharge, for the breach of his ten-year Employment Agreement and for defendants' violations of the NY Labor Law in an amount to be determined at trial;

c)  That plaintiffs Edwin Hertzoff and Beverly Hertzoff be awarded damages for defendant UOA's nonpayment rent.

d)  Costs and disbursements of this action, including reasonable attorneys fees, and pre- and post-judgment interest; and

e)  Such other and further relief as the Court deems just and proper.

42.    Plaintiffs have given notice to UOA of their repeated defaults.
Annexed hereto as Exhibit B are copies of Notices of Default that were delivered
to defendants.

43.    As of today's date, the fixed rent that remains in arrears is $10,000.00.
Defendant UOA continues in possession of premises.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully demand judgment as follows:

a) That plaintiffs Edwin Hertzoff and Beverly Hertzoff be awarded damages
   for breach of the Agreement in an amount to be determined at trial;

b) That plaintiff Clayton Hertzoff be awarded damages for constructive
   discharge, for the breach of his ten-year Employment Agreement and for
   defendants' violations of the NY Labor Law  in an amount to be
   determined at trial;

c) That plaintiffs Edwin Hertzoff and Beverly Hertzoff be awarded damages
   for defendant UOA's nonpayment rent.

d) Costs and disbursements of this action, including reasonable attorneys
   fees, and pre- and post-judgment interest; and

e) Such other and further relief as the Court deems just and proper.

13

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiffs

demand a trial by jury in this action.


Dated:        New York, New York
              June 8, 2007

                                   TRAIGER & HINCKLEY LLP

                                   *George Hinckley Jr.*

                                   By: George R. Hinckley Jr.  (GH-7511)

                                   880 Third Avenue 9th Floor
                                   New York, NY 10022-4730
                                   Tel. (212) 759-4933
                                   Fax  (212) 656-1531
                                   Attorneys for Plaintiffs

14

# Exhibit A

STOCK PURCHASE AGREEMENT

by and among

BEVERLY HERTZOFF, EDWIN HERTZOFF, CLAYTON HERTZOFF,

and

NOREEN DIAZ

Prepared By:

Garfunkel, Wild & Travis, P.C.
111 Great Neck Road, Suite 503
Great Neck, NY 11021
(516) 393-2200

439987.06

# TABLE OF CONTENTS

PAGE

ARTICLE I
    SALE AND PURCHASE OF STOCK.............................................................................1

ARTICLE II
    THE CLOSING AND TRANSFER OF STOCK ..............................................................3

ARTICLE III
    REPRESENTATIONS AND WARRANTIES OF SELLERS.............................................4

ARTICLE IV
    REPRESENTATIONS AND WARRANTIES BY PURCHASER ......................................9

ARTICLE V
    SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS ............10

ARTICLE VI
    INDEMNIFICATION................................................................................................10

ARTICLE VII
    GENERAL PROVISIONS .......................................................................................12

439987.06

## STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (the "Purchase Agreement") is made effective as of the 20th day of August, 2006 (the "Effective Date") by and among Beverly Hertzoff ("B. Hertzoff"), Edwin Hertzoff ("E. Hertzoff") and Clayton Hertzoff ("C. Hertzoff," together with B. Hertzoff and E. Hertzoff, sometimes referred to herein as "Sellers") and Noreen Diaz ("Purchaser").

## W I T N E S S E T H :

WHEREAS, Sellers own the shares of the issued and outstanding capital stock of United Orthopaedic Appliances Co., Inc. (the "Corporation") set forth on Schedule A hereto, which shares represent one hundred percent (100%) of the issued and outstanding capital stock of the Corporation;

WHEREAS, Sellers have agreed to sell to Purchaser and Purchaser has agreed to purchase from the Sellers that number of shares of capital stock of the Corporation necessary to cause Purchaser to own one hundred percent (100%) of the issued and outstanding capital stock of the Corporation; and

WHEREAS, in furtherance of the foregoing, Sellers desire to sell to Purchaser and Purchaser desires to purchase from Sellers, an aggregate of one hundred (100.00) shares of capital stock of the Corporation (the "Stock"); and

WHEREAS, C. Hertzoff is presently employed by the Corporation and will remain employed subsequent to Closing Date, as defined at Article II hereof, pursuant to an employment agreement made effective as of Closing Date (the "Employment Agreement").

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I

## SALE AND PURCHASE OF STOCK

1.1.    Purchase and Sale. On the Closing Date, as defined at Article II hereof, subject to and upon the terms and conditions set forth herein, Sellers will sell, convey, transfer, assign and deliver the Stock to Purchaser and Purchaser shall purchase and accept from Sellers, all right, title and interest of Sellers in and to the Stock.

1.2.    Accounts Payable. Notwithstanding any provision to the contrary, but subject to the terms of Section 1.3 below, the Corporation shall, as of the Closing Date, assume and remain liable only for the accounts payable set forth in Schedule 1.2 attached hereto ("Accounts Payable"). The parties agree that, except for the Accounts Payable, (i) the Sellers shall assume and remain jointly and severally liable for any and all outstanding debts, loans, obligations or

439987.06

liabilities of the Corporation as of the Effective Date which obligations shall be paid, performed and/or discharged by the Sellers when due, other than those debts, loans, obligations or liabilities of the Corporation which were incurred in the ordinary operation of the Corporation prior to the Effective Date which obligations shall remain with the Corporation; and (ii) the Corporation shall not assume and shall not be responsible for any of the outstanding debts, loans, obligations or liabilities of the Corporation as of the Closing Date or relating to the operations of the Corporation prior to the Closing Date. The parties acknowledge and agree that, notwithstanding the fact that certain of the Corporation's liabilities and obligations assumed by the Sellers hereunder may not be expressly assignable (or may prohibit assignment), the Sellers shall satisfy such liabilities and obligations when due.

1.3.    Accounts Receivable. Purchaser shall cause the "Net Accounts Receivable" to be billed and collected, to the extent reasonably collectable, in the normal course of the Corporation's operations. For purposes of this payment, "Net Accounts Receivable" shall be calculated as the accounts receivable of the Corporation earned prior to and collected during the twenty-four (24) month period immediately following the Closing Date less any refunds or repayments. Each dollar of the Net Accounts Receivable actually collected will be allocated to discharge the Accounts Payable in the following order of priority: (i) an amount equal to the outstanding amount of the HSBC line of credit on the Effective Date (provided the expenses for which the HSBC line of credit was utilized were expenses in incurred in the ordinary operation of the Corporation) collected, to the extent such amount is actually collected, shall be applied against and discharge the HSBC Line of Credit (as such term is defined on Schedule 1.2); (ii) the next One Hundred Thousand Dollars ($100,000) collected, to the extent such amount is actually collected, shall be applied against and discharge the Outstanding Rental Amounts (as such term is defined on Schedule 1.2); and (iii) the next One Hundred Forty Five Thousand Dollars ($145,000) collected, to the extent such amount is actually collected, shall be applied against and discharge the Seller Loan Amount (as such term is defined on Schedule 1.2). To the extent that the Corporation's Net Accounts Receivable exceed the Accounts Payable, such excess amount shall be distributed to the Sellers within thirty (30) days of the second annual anniversary of this Agreement. In the event that the Corporation's Net Accounts Receivable are less than the Accounts Payable, Purchaser shall fund such shortfall (the "Net Accounts Receivable Shortfall") up to a maximum amount of One Hundred Thousand Dollars ($100,000), and apply such funds to discharge the Accounts Payable, to the extent that Purchaser is responsible to fund the Net Accounts Receivable Shortfall hereunder, in the order of priority set forth above in this Section 1.3. Such payment by the Purchaser shall fully and completely discharge the Corporation's and the Purchaser's obligations to pay the Accounts Payable hereunder and, notwithstanding any provision to the contrary, the Sellers shall be jointly and severally responsible for discharging and paying the Accounts Payable, to the extent that the Net Accounts Receivable Shortfall exceeds the sum of (a) the Net Accounts Receivable; plus (b) One Hundred Thousand Dollars ($100,000). Any accounts receivables generated by the Company from and after the Effective Date shall be the property of the Company and no Seller shall have any right or interest in adnd to the same. Notwithstanding any provision to the contrary, the Purchaser shall ensure that the Corporation shall not borrow any additional amounts, as of the Effective Date, under the HSBC Line of Credit. Sellers shall execute and deliver any and all documents or instruments necessary

2

to terminate the HSBC Line of Credit and to cause the removal of any liens or encumbrances related thereto after the HSBC Line of Credit has been repaid as aforesaid.

## ARTICLE II

## THE CLOSING AND TRANSFER OF STOCK

2.1.    Closing.  The Closing of the transaction contemplated by this Agreement (the "Closing") shall occur as of August 8, 2006 (the "Closing Date") unless otherwise extended by the mutual agreement of the parties hereto.

2.2.    Purchaser Delivery.  At the Closing, the Purchaser shall deliver to the Sellers:

2.2.1.  An executed Lease by and among the Sellers and the Corporation for the property located at 791 Broadway, New York, NY, in the form attached hereto as Schedule 2.2(b).

2.2.2.  An executed Employment Agreement by and between C. Hertzoff and the Corporation effective the Closing Date, in the form attached hereto as Schedule 2.2(c).

2.3.    Seller Delivery.  At the Closing, the Sellers shall deliver or cause to be delivered:

2.3.1.  Lost Stock Affidavits from each of the Sellers for all the stock issued by the Company, other than the Stock being sold hereunder;

2.3.2.  New stock certificates representing all of the Stock being sold hereunder;

2.3.3.  Stock Transfer Powers representing the Stock, duly endorsed for transfer;

2.3.4.  All books and records of the Corporation; and

2.3.5.  All documents which counsel for the Purchaser shall reasonably deem necessary or advisable in order to accomplish a complete transfer of the shares of Stock to the Purchaser.

2.3.6.  An opinion of counsel to Seller in the form attached hereto as Schedule 2.3.6.

439987.06

ARTICLE III

REPRESENTATIONS AND WARRANTIES OF SELLERS

Sellers represent and warrant to Purchaser as of the date hereof, and as of Closing, as follows:

3.1.  Authority. Sellers have the full legal power and authority, and the right, without the consent of any other person, to execute and deliver this Agreement and to carry out the transactions contemplated hereby. Sellers own the Stock being transferred hereunder free and clear of any claims, liens and encumbrances.

3.2.  Validity. This Agreement has been, and the documents to be delivered at Closing will be, duly executed and delivered by Sellers and will constitute lawful, valid and legally binding obligations of Sellers enforceable in accordance with their respective terms.

3.3.  Ownership of Stock. Sellers own one hundred percent (100%) of the issued and outstanding shares of capital stock of the Corporation, and no party other than the Sellers possess any rights, title or interest in the capital stock or other form of capital or ownership interest of the Corporation. Sellers' will, on the Closing Date, convey good and marketable title to the Stock from the Sellers, free and clear of any liens, encumbrances, restrictions on transfer, charges or claims.

3.4.  Conflicts. Neither the execution of this Agreement by Sellers, nor the consummation of the transactions contemplated hereby will result in (i) the creation of any lien, charge, pledge, security interest or encumbrance of any nature, whatsoever, on any Seller, the Corporation, or on the Stock, or (ii) a breach, default, or violation of, or conflict with (A) any document, instrument, agreement, contract or obligation to which the Corporation or any Seller is a party, or (B) any judgment, order, decree, ruling, law, rule, or regulation of any court, governmental body or arbitrator in proceedings to which the Corporation or any Seller is a party. Sellers affirm that they have not impermissibly issued any stock to some other party that is not a party to this Agreement.

3.5.  Organization and Existence of the Corporations. The Corporation is a corporation that is duly organized, validly existing and in good standing under the laws of the State of New York. The Corporation is in compliance with all federal, state and local laws, regulations and ordinances, including, without limitation, the regulations of governmental agencies or authorities having jurisdiction over the Corporation's business where the failure to be in compliance would have a material adverse effect on the Corporation as a whole. The Corporation possesses all necessary licenses, permits, credentials, certifications, qualifications, and approvals that the Corporation reasonably believes is required by applicable federal and state laws, regulations and ordinances, and that are necessary for the conduct of the Corporation's business in the manner presently conducted.

439987.06

3.6.   Litigation.  Except as set forth on Schedule 3.6, there are no claims, complaints, causes of action, suits, litigation, any administrative, arbitration, or enforcement actions, whether before any court or any federal, state, or other governmental or professional bureau, agency, authority or instrumentality of any kind or nature or otherwise (each individually and collectively referred to as an "Action"), pending against or, threatened against, the Sellers or the Corporation. No Action has been asserted against the Sellers or the Corporation, nor have the Sellers or the Corporation been a party to an Action as a defendant.

3.7.   Taxes.  The Corporation has or will have by the date of this Agreement (i) paid all income, sales, use, occupancy, property, real estate, excise, payroll, withholding taxes and all license fees imposed upon the Corporation, and its properties and assets, and (ii) timely filed all federal, state and local tax returns and related documents heretofore, required to be filed by the Corporation, or has a valid extension of time to file.  All tax returns and related documents filed by the Corporation have been prepared in accordance with all applicable laws and requirements and accurately reflect the taxable income of the Corporation.

3.8.   Judgments.  Neither the Sellers nor the Corporation are subject to, or in violation or default of, any judgment, order, writ, injunction or ruling of any court or any federal state, or municipal commission, bureau, agency, authority or instrumentality.

3.9.   Truthful and Accurate.  All representations and warranties of the Sellers and the Corporation contained in this Agreement, or in any document, instrument or agreement delivered pursuant to the provisions of this Agreement shall be true and accurate when made and on the Closing Date.  No representation or warranty by the Sellers or the Corporation in this Agreement contains or will contain any untrue statement of fact or omits or will omit any fact required to be stated therein or necessary in order to make the statements contained therein not misleading.

3.10.  Qualification of the Corporation.  The Corporation is duly qualified and authorized to do business and is in good standing under the laws of each jurisdiction in which the character of the properties owned or leased or the nature of the activities conducted by it make such qualification necessary, except where failure to so qualify does not have a material adverse effect on the assets, financial condition, results of operations or business of the Corporation.

3.11.  Consents and Approvals.  No consent, order, approval or authorization or permit of, or the exemption by or registration or filing with, or notification to (any such consent, approval, authorization, permit, exemption, registration, filing or notification being a "Consent"), any governmental, regulatory or administrative agency, commission or authority, domestic or foreign (a "Governmental Entity"), is necessary or required to be obtained or given or waiting period required to expire as a condition to the execution, delivery and performance of this Agreement by any of the Sellers or the consummation by the Sellers of the sale of the Stock.  No consent, approval, waiver or other action by any person under any contract, agreement, indenture, lease, instrument or other document to which any of the Sellers, or the Corporation, or any of their respective properties are bound or affected, is required or necessary for the execution, delivery and performance of this Agreement by Sellers or the consummation by Sellers of the sale of the Stock where the failure to obtain such consent, approval, waiver or other

5

439987.06

action will have a material adverse effect on the assets, financial condition, results of operations or business of the Corporation .

3.12. <u>No Other Stock Purchase Agreements</u>.  There are no options, agreements, contracts or other rights in existence involving Sellers, the Corporation to purchase or acquire the Stock, in whole or in part, or any other shares of stock in the Corporation, whether now or hereafter authorized or issued.  Additionally there are no options, agreements, contracts or other rights in existence to purchase or acquire from the Corporation or any of its or their material assets.

3.13. <u>Employee Plans and Agreements</u>.

(a)  *Plans and Related Documents*.  <u>Schedule 3.13</u> of this Agreement lists the 401K Plan (the "401K Plan") and the medical, dental and all other employee benefit plans, including any deferred compensation or top-hat plans to a select group of management and highly compensated employees (the "Employee Plans") for the Corporation, such plans being the only employee benefit plans supplied and/or sponsored by the Corporation, as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  Except for the Employee Plans listed on <u>Schedule 3.13</u>, there are no other employee benefit plans, programs, arrangements or agreements, whether formal or informal, whether in writing or not, to which the Corporation is a party, with respect to which the Corporation has or is reasonably likely to incur any obligations or liability or which are maintained, contributed to, or sponsored by the Corporation for the benefit of any current or former employee, officer or director, including any deferred compensation or top-hat plans to a select group of management and highly compensated employees.  The Corporation does not have any commitment (1) to create, incur liability with respect to, or cause to exist, any other employee benefit plan, program or arrangement, (2) to enter into any contract or agreement to provide compensation or benefits to any individual or (3) to modify, change or terminate any Employee Plan, other than with respect to a modification, change or termination required by ERISA or the Internal Revenue Code of 1986, as amended (the "Code"), except as required by law.

(b)  *Absence of Certain Types of Plans.*  None of the Employee Plans is a multiemployer plan (within the meaning of Section 3(37) or 4001 (a)(3) or ERISA) (a "Multiemployer Plan") or a single employer pension plan (within the meaning of Section 4001 (a)(15) or ERISA) for which the Corporation is reasonably likely to incur liability under Section 4063 or 4064 of ERISA (a "Multiple Employer Plan").  None of the Employee Plans obligates the Corporation to pay separation, severance, termination or similar-type benefits solely as a result of any transaction contemplated by this Agreement or as a result of a "change in control" with respect to the Corporation, within the meaning of such terms under Section 280G of the Code.  None of the Employee Plans provides for or promises retiree medical or life insurance benefits to any current or former employee, officer or director of the Corporation.

(c)  *Compliance with Applicable Law.*  Each Employee Plan has been operated in all material respects in accordance with the requirement of all applicable laws, including, without limitation, ERISA and the Code.  The Corporation has performed all material obligations

6

439987.06

required to be performed by such entity, are not in any respect in material default under or in violation of, and have no knowledge of any material default or violation by any party to, any Employee Plan. No legal action, suit or claim is pending or threatened with respect to any Employee Plan.

(d)    *Qualification of Plans.* Each Employee Plan which is intended to be qualified under Section 401(a) of the Code or Section 401(k) of the Code has received a favorable determination letter of the Internal Revenue Service (the "IRS") that it is so qualified and each trust established in connection with any Employee Plan which is intended to be exempt from federal income taxation under Section 501(a) of the Code has received a favorable determination letter from the IRS that it is so exempt, and no fact or event has occurred since the date of such determination letter from the IRS to materially adversely affect the qualified status of any such Employee Plan or the exempt status of any such trust.

(e)    *Absence of Certain Liabilities and Events.* There has been no prohibited transaction (within the meaning of Section 406 of ERISA or Section 4975 of the Code) with respect to any Employee Plan. The Corporation has not incurred any liability for any excise tax arising under Sections 4971, 4972, 4976, 4977, 4979, 4980, 4980B or 5000 of the Code. The Corporation has not incurred any liability under, arising out of, or by operation of, Title IV of ERISA, including, without limitation, any liability in connection with (1) the termination or reorganization of any employee benefit plan subject to Title IV of ERISA, or (2) the withdrawal from any Multiemployer Plan or Multiple Employer Plan. No complete or partial termination has occurred within the five years preceding the date hereof with respect to any Employee Plan governed by or subject to ERISA. No reportable event (within the meaning of Section 4043 of ERISA) has occurred or is expected to occur with respect to any Employee Plan subject to Title IV of ERISA. No Employee Plan had an accumulated funding deficiency (within the meaning of Section 302 of ERISA or Section 412 of the Code), whether or not waived, as of the most recently audited plan year of such Employee Plan. None of the assets of the Corporation is the subject of any Lien arising under Section 302(f) of ERISA or Section 412(n) of the Code. The Corporation has not been required to post any security under Section 307 of ERISA or Section 401(a)(29) of the Code.

(f)    *Plan Contributions and Funding.* All contributions, premiums, or payments required to be made with respect to any Employee Plan have been made, and all such contributions, premiums, or payments have been made on or before their due dates, except where the failure to make such contributions, premiums or payments on or before such due dates does not have a material adverse effect on the Stock, or the assets, financial condition, results of operations or business of the Corporation. All such contributions have been fully deducted for income tax purposes and no such deduction has been challenged or disallowed by any Governmental Entity and no fact or event exists which could give rise to any such challenge or disallowance. As of the Closing, no Employee Plan which is subject to Title IV of ERISA will have an "unfunded benefit liability" (within the meaning of Section 4001(a)(18) of ERISA).

7

3.14.  Environmental Matters

(a)     The Corporation has obtained all permits, licenses and other authorizations which are required with respect of the operation of its respective business under all applicable federal, state or local law, statute, ordinance, rule, regulation, code, permit, consent, approval, license, judgment, order, writ, decree, injunction, agreement or other authorization or mandate by any Governmental Entity relating to (1) pollution, waste disposal (including, but not limited to biohazard medical waste), or the protection, preservation or restoration of the environment, and (2) the use, treatment, storage, release or disposal, recycling, generation, processing, labeling, manufacture, production, sale, transportation or shipment of any hazardous or toxic waste, material, substances, products or by-products.

(b)     The Corporation is in substantial compliance with all environmental laws.

(c)     There is no civil, criminal or administrative action, suit, demand, claim, hearing, notice of violation, investigation, proceeding, or demand letter pending or threatened in writing relating to the businesses of the Corporation or any real property or facility owned, leased or operated by the Corporation or by Sellers under any environmental law by Governmental Entity or other person and neither Sellers nor the Corporation have received any written notification that any of them is a responsible party under any environmental law, including, without limitation, any written notice from the owner of any real property or other facility leased or operated by Sellers, or the Corporation , of any violation of any environmental law, or requiring Sellers or the Corporation to take remedial action with respect to the presence of any hazardous substance on any part of the real properties or other facilities, owned, leased or operated by the Corporation or Sellers.

3.15.  Employees.  Schedule 3.16 of this Agreement lists all of the officers, directors, employees and independent contractors (other than physicians performing independent medical exams) employed or retained by the Corporation by entity, and sets forth the following information for each employee: (a) name and job title; (b) current compensation paid or payable; (c) vacation and service credited for vesting in any pension, retirement, profit sharing, deferred compensation, stock option, cash bonus, savings, employee stock ownership, insurance, medical, welfare, vacation, and other employee benefit plans; and (d) current employment status, indicating whether such employee is actively employed, on leave of absence, on disability, or on workers' compensation.   Sellers represent warrant and covenant that the Company has discharged and paid in full any and all liabilities, obligations and funds (including, without limitation, any accrued benefits, vacation days, sick days and holidays) due to the employees listed on Schedule 3.16 through the Closing Date.

3.16.  Licenses and Permits.  The Corporation has all licenses and permits required to operate its respective business in substantial compliance with all federal, state and local statutes and regulations and in accordance with its current practice.

3.17.  Absence of Encumbrances .  Except as set forth on Schedule 3.17, as of the Closing Date, neither the Company nor the Sellers on behalf of the Company has:

8

439987.06

(a)    incurred any obligation or liability, absolute, accrued, contingent or otherwise, whether due or to become due, in excess of $15,000 in the aggregate, except liabilities or obligations incurred in the ordinary course of business and consistent with prior practice which do not exceed $50,000 in the aggregate;

(b)    mortgaged, pledged or subjected to lien, restriction or any other encumbrance any of the property, businesses or assets, tangible or intangible, of the Company, except for purchase money liens;

(c)    made any loans to or guaranteed any loans for any officer, director, shareholder or other affiliate of the Company,

(d)    cancelled, waived, released or otherwise compromised any debt or claim other than in the ordinary course of business, or any material right;

(e)    instituted or threatened any litigation, action or proceeding before any court, governmental or regulatory body, administrative agency or arbitrator relating to it or its property; or

(f)    issued, authorized for issuance or sold any capital stock, notes, bonds or other securities, or any option, warrant or other right to acquire the same, of the Company, or declared or paid any dividend or made any other payment or distribution in respect of its capital stock, or directly or indirectly redeemed, purchased or otherwise acquired any of its capital stock or any option, warrant or other right to acquire such capital stock.

3.18.   Compliance with Laws.  The Corporation is in compliance in all material aspects and not in violation of any federal, state, or local statutes, regulations and administrative orders.

3.19.   No Questionable Practices.  Neither any of the Sellers nor the Corporation nor any officer, director, employee, or agent of the Corporation has directly, or indirectly, made, promised to make, or authorized the making of an offer, payment or gift of money or anything of value to any governmental official, political party or official thereof, candidate for political office or employee, agent or fiduciary of a customer or client, to obtain a contract for or to influence a decision in favor of the Corporation where such offer, payment or gift was or would be, if made, in violation of any applicable law or regulation, or any policy of any such customer.

ARTICLE IV

REPRESENTATIONS AND WARRANTIES BY PURCHASER

Purchaser hereby represents and warrants to Sellers as of the date hereof, and as of the closing, as follows:

4.1.   Authority; Financial Ability.  Purchaser has the full legal right, power and authority, without consent of any other person, to execute and deliver this Agreement and to

9

439987.06

carry out the transactions contemplated hereby. Purchaser has and will continue to have adequate financial ability to perform any and all of his obligations to Sellers.

4.2.   Validity.   This Agreement has been, and the documents to be delivered at Closing will be, duly executed and delivered by Purchaser and will constitute lawful, valid and legally binding obligations of Purchaser, enforceable in accordance with their respective terms.

4.3.   Conflicts.   To Purchaser's knowledge, neither the execution of this Agreement by Purchaser, nor the consummation of the transactions contemplated hereby will result in (i) the creation of any lien, charge, pledge, security interest or encumbrance of any nature, whatsoever, on Purchaser, or (ii) a breach, default, or violation of, or conflict with (A) any document, instrument, agreement, contract or obligation to which Purchaser is a party, or (B) any judgment, order, decree, ruling, law, rule, or regulation of any court, governmental body or arbitrator in proceedings to which Purchaser is a party.

4.4.   Judgments.   To Purchaser's knowledge, Purchaser is not subject to, or in violation or default of, any judgment, order, writ, injunction or ruling of any court or any federal, state, or municipal commission, bureau, agency, authority or instrumentality.

4.5.   Truthful and Accurate.   All representations and warranties of Purchaser contained in this Agreement, or in any document, instrument or agreement delivered pursuant to the provisions of this Agreement shall be true and accurate when made and on the Closing Date. No representation or warranty by Purchaser in this Agreement contains or will contain any untrue statement of a material fact or omits or will omit any material fact required to be stated therein or necessary in order to make the statements contained therein not misleading.

ARTICLE V

SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS

5.1.   Survival.   All representations, warranties and covenants contained in this Agreement or in any document delivered pursuant hereto shall be deemed to be material and to have been relied upon by the parties hereto, and shall survive the Closing for a period of three (3) year; provided, however, that the three (3) year limitation on the survival of the representations, warranties and covenants contained in this Agreement or in any documents delivered pursuant hereto shall be void and inapplicable in any instance in which (i) any of the Sellers had or should have had knowledge, prior to or at the Closing Date, of the falsity of any such representation, warranty or covenant; (ii) any of the Sellers had knowledge of and failed to disclose to Purchaser, prior to or at the Closing Date, a material liability of the Corporation; or (iii) any liability or obligation in existence prior to the Closing Date results in personal liability to the Corporation's shareholders.

ARTICLE VI

INDEMNIFICATION

10

6.1.    <u>Indemnification of Purchaser.</u>

6.1.1. Each of the Sellers and his/her respective estate and each of their heirs, successors and assigns agrees, jointly and severally, to indemnify and hold harmless Purchaser and the Corporation from and against any and all liabilities, obligations, contingencies, damages, costs, expenses (including, without limitation, all court costs and reasonable attorneys' fees and experts' fees and expenses), losses, and amounts paid in settlement (collectively, a "Loss" or "Losses"), whether incurred by Purchaser or Corporation in connection with any suit, claim, demand, action, proceeding or investigation, whether civil, criminal, administrative or investigative, arising out of or pertaining to

(a)    any breach or inaccuracy of any representation or warranty of Sellers contained in or made pursuant to this Agreement or in any document, instrument or certificate delivered in connection with and contemplated by this Agreement; or

(b)    a breach or default in the performance of any covenant, agreement or obligation that Sellers are required to perform under this Agreement or in any document, instrument, or certificate delivered in connection with any contemplated by this Agreement, or

(c)    any and all liabilities and obligations of Sellers or the Corporation incurred prior to the Closing date or arising from the operations of the Corporation prior to Closing; or

(d)    any claims of (i) Sellers' or the Corporation's past or current clients including without limitation, claims alleging malpractice or grounded on or arising out of medical equipment provided by Sellers, or (ii) taxing or other governmental authorities for periods prior to the Closing Date; or

(e)    Any and all actions, suits, proceedings, demands, assessments, judgments, costs and reasonable legal and other third party expenses incident to the foregoing.

6.2.    <u>Medicare/Medicaid; Taxes.</u>  Notwithstanding anything to the contrary contained in this Agreement, Sellers and their respective estate and heirs, successors and assigns, jointly and severally, covenant and agree to fully defend, indemnify and hold harmless Purchaser and the Corporation from and against any and all claims, liabilities, losses, costs, expenses or damages of any kind, nature or amount whatsoever, together with reasonable legal fees, costs and expenses incurred in defense thereof, which arise out of, result from or relate to (i) any audit, assessment, deficiency or other liability asserted by Medicare and/or Medicaid attributable to services rendered by the Corporation on or before the Closing Date, including without limitation any claims or liabilities related to over-billing and/or recoupment of overpayments; and (ii) any audit, assessment, deficiency or other liability asserted by any federal, state or local taxing authority for income, profits, franchise, sales, use, occupation, property, excise, payroll or other taxes of the Corporation and/or Sellers attributable to or arising out of the period prior to the Closing Date.  Purchaser shall provide Sellers with such access to the Corporation's books and records as may be necessary and reasonable in order to defend any action or proceeding in

11

connection with this Section 6.2, and shall fully cooperate with Sellers with respect to the defense of any such action or proceeding. This Section 6.2 shall survive the Closing forever.

6.3. <u>Survival</u>. The indemnification provisions contained in Section 6.1 and 6.2 of this Agreement or in any document delivered pursuant hereto shall be deemed to be material and to have been relied upon by the parties hereto, and shall survive the Closing for a period of three (3) year; provided, however, that the three (3) year limitation on the survival of the indemnification provisions contained in this Agreement or in any documents delivered pursuant hereto shall be void and inapplicable in any instance in which (i) any of the Sellers had or should have had knowledge, prior to or at the Closing Date, of the falsity of any representation, warranty or covenant; (ii) any of the Sellers had knowledge of and failed to disclose to Purchaser, prior to or at the Closing Date, a material liability of the Corporation; or (iii) any liability or obligation in existence prior to the Closing Date results in personal liability to the Corporation's shareholders.

ARTICLE VII

<u>GENERAL PROVISIONS</u>

7.1. <u>Waiver.</u> No amendment or waiver of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by the parties hereto, and then such waiver or consent shall be effective only in a specific instance for the specific purpose for which it is given.

7.2. <u>Notices.</u> All notices, demands, and requests required or permitted to be given under the provisions of this Agreement shall be (i) in writing; (ii) delivered by personal delivery or sent by commercial delivery service or registered or certified mail, return receipt requested; (iii) deemed to have been given on the date of personal delivery or the date set forth in the records of the delivery service or on the return receipt; and (iv) delivered to the address designated by each of the parties:

If to Sellers:

> Beverly Hertzoff
> Edwin Hertzoff
> and Clayton Hertzoff
> c/o Jay Fox, Esq.
> O'Donnell & Fox, P.C.
> 880 Third Avenue
> New York, NY 10022
> Fax: (212) 319-3597

With Copy To:

> Jay Fox, Esq.
> O'Donnell & Fox, P.C.
> 880 Third Avenue
> New York, NY 10022

12

Fax: (212) 319-3597

If to Purchaser:

Noreen Diaz
Complete Orthopedic Services, Inc.
2094 Front Street
East Meadow, NY 11554
Fax: (516) 478-4420

With Copy To:

Andrew E. Blustein, Esq.
Garfunkel, Wild & Travis, P.C.
111 Great Neck Road, Suite 503
Great Neck, NY 11021

7.3.  Expenses.  Except as otherwise expressly provided herein, each party to this Agreement shall pay its own costs and expenses in connection with the transactions contemplated hereby.

7.4.  Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

7.5.  Entire Transaction.  This Agreement and the documents referred to herein contain the entire understanding among the parties with respect to the transactions contemplated hereby and supersede all other agreements and understandings among the parties on the subject matter hereof.

7.6.  Applicable Law.  This Agreement is a contract made and to be performed in the State of New York and shall in all respects be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of law rules, and shall be enforced in any court of competent jurisdiction in the State of New York.

7.7.  Successors and Assigns; No Third-Party Beneficiaries.  This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective successors, heirs, executors, administrators and assigns; provided, however, that no party shall assign or delegate any of the obligations created under this Agreement without the prior written consent of the other parties.  Nothing in this Agreement shall confer upon any person or entity, other than the Corporation, not a party to this Agreement, or the legal representatives of such person or entity, any rights or remedies of any nature or kind whatsoever under or by reason of this Agreement.

7.8.  Severability.  This Agreement shall be deemed severable, and the invalidity or unenforceability of any term or provision hereof shall not affect the validity or enforceability of this Agreement or of any other term or provision hereof.  Furthermore, in lieu of any such invalid or unenforceable term or provision, the parties hereto intend that there shall be added as part of

439987.06

13

this Agreement a provision as similar in terms to such invalid or unenforceable provision as may be possible and be valid and enforceable.

    7.9.   Further Assurances. Each party hereto agrees at any time or times and from time to time, to make, execute and deliver any and all such other and further instruments or documents and do any and all such acts and/or things as the other party hereto shall reasonably require for the purpose of giving full force and effect to this Agreement.

    7.10.   Headings. The section and other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

    7.11.   Construction. The parties have participated jointly in the negotiation and drafting of this Agreement, and they agree that any ambiguity or question of intent of interpretation that may arise shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

    IN WITNESS WHEREOF, each of the parties hereto has entered into this Agreement as of the date first above written.

PURCHASER:               SELLERS:

_____      _____
Noreen Diaz                  Beverly Hertzoff

                              _____
                              Edwin Hertzoff

                              _____
                              Clayton Hertzoff

439987.06

## SCHEDULE A

| Shareholder | Stock |
|---|---|
| Beverly Hertzoff | 37.5 |
| Edwin Hertzoff | 37.5 |
| Clayton Hertzoff | 25.0 |

439987.06

SCHEDULE 1.2

Accounts Payable

1.    The outstanding amount as of the Effective Date under the Buisiness Revolving Line of Credit of up to $250,000, dated August 14, 2005, from HSBC Bank USA, N.A. in favor of the Corporation and the related General Security Agreement, dated the same date, between HSBC Bank USA, N.A. and the Corporation.

2.    Promissory Note from the Company to Beverly Hertzoff in the amount of $145,000.00 relating to monies loaned t the Company to repair damages from a fire in the Company premises.

3.    Accrued and unpaid rent in the amount of $100,000.00 payable by the Company to Beverly Hertzoff and Edwin Hertzoff, as landlord.

<u>SCHEDULE 2.2(b)</u>

Lease

439987.06

<u>SCHEDULE 2.2(c)</u>

Employment Agreement

439987.06

<u>SCHEDULE 3.6</u>

Litigation

None.

439987.06

<u>SCHEDULE 3.13</u>

Employee Plans

1.    United Orthopaedic Appliances Co., Inc. Profit Sharing Plan managed by Allmerican Financial.

2.    Oxford Health Plan Insurance of United Orthopaedic Appliances Co., Inc.

439987.06

SCHEDULE 3.17

Encumbrances

1.   Business Revolving Line of Credit of up to $250,000, dated August 14, 2005, from HSBC Bank USA, N.A. in favor of the Corporation and the related General Security Agreement, dated the same date, between HSBC Bank USA, N.A. and the Corporation. Outstanding balance of One Hundred Forty-Four Thousand Seven Hundred Forty-Two Dollars and Thirty-Two Cents ($144,742.32) Dollars on the Closing Date.

# Exhibit **B**

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE
NEW YORK, NY 10022-4730

TELEPHONE 212-759-4933
FACSIMILE  212-656-1531

GEORGE R. HINCKLEY, JR.
GRH@HINCKLEY.ORG

June 5, 2007

<u>BY HAND AND FACSIMILE</u>

Ms. Noreen Diaz
United Orthopaedic Appliances Co. Inc.
791 Broadway
New York, NY 10003-6809

<u>Re: 791 Broadway, New York, NY 10003-6809</u>

Dear Ms. Diaz:

We represent Edwin Hertzoff and Beverly Hertzoff ("Landlord").

**<u>NOTICE OF DEFAULT</u>**

PLEASE TAKE NOTICE that United Orthopaedic Appliances Co. Inc. ("Tenant") is in default of its obligation to pay Fixed Rent, under paragraph 1 and paragraph 37 of the Agreement of Lease made as of the 23rd day of August, 2006 (the "Lease").

Landlord has not received the payment of Fixed Rent of $10,000 due June 1, 2007. Demand is hereby made for this payment. Notice of Default is hereby given pursuant to paragraph 47 of the Lease.

Sincerely,

*George Hinckley Jr.*

George R. Hinckley, Jr.

cc: Colleen M. Tarpey, Esq. (Garfunkel, Wild & Travis, P.C.)

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE
NEW YORK, NY 10022-4730

TELEPHONE 212-759-4933
FACSIMILE   212-656-1531

GEORGE R. HINCKLEY, JR.
GRH@HINCKLEY.ORG

May 7, 2007

## BY HAND AND FACSIMILE

Ms. Noreen Diaz
United Orthopaedic Appliances Co. Inc.
791 Broadway
New York, NY 10003-6809

Re: 791 Broadway, New York, NY 10003-6809

Dear Ms. Diaz:

We represent Edwin Hertzoff and Beverly Hertzoff ("Landlord").

### NOTICE OF DEFAULT

PLEASE TAKE NOTICE that United Orthopaedic Appliances Co. Inc. ("Tenant") is in default of its obligation to pay Fixed Rent, under paragraph 1 and paragraph 37 of the Agreement of Lease made as of the 23rd day of August, 2006 (the "Lease").

Landlord has not received the payment of Fixed Rent of $10,000 due May 1, 2007. Demand is hereby made for this payment. Notice of Default is hereby given pursuant to paragraph 47 of the Lease.

### NOTICE OF TERMINATION

PLEASE TAKE FURTHER NOTICE that Landlord is hereby exercising its Termination Option pursuant to paragraph 46 of the Lease.

Sincerely,

George Hinckley Jr.

George R. Hinckley, Jr.

cc: Colleen M. Tarpey, Esq. (Garfunkel, Wild & Travis, P.C.)

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE
NEW YORK, NY 10022-4730

TELEPHONE 212-759-4933
FACSIMILE   212-656-1531

GEORGE R. HINCKLEY, JR.
GRH@HINCKLEY.ORG

March 2, 2007

<u>Via Federal Express</u>

Ms. Noreen Diaz
United Orthopaedic Appliances Co. Inc.
791 Broadway
New York, NY 10003-6809

<u>Re: 791 Broadway, New York, NY 10003-6809</u>

Dear Ms. Diaz:

We represent Edwin Hertzoff and Beverly Hertzoff ("Landlord").

## <u>NOTICE OF DEFAULT</u>

PLEASE TAKE NOTICE that United Orthopaedic Appliances Co. Inc. ("Tenant") is in default of its obligation to pay Fixed Rent, under paragraph 1 and paragraph 37 of the Agreement of Lease made as of the 23rd day of August, 2006 (the "Lease").

Landlord has not received the payment of Fixed Rent of $10,000 due February 1, 2007 nor the payment of Fixed Rent of $10,000 due March 1, 2007. Demand is hereby made for these payments. Notice of Default is hereby given pursuant to paragraph 47 of the Lease.

Sincerely,

*George Hinckley Jr.*

George R. Hinckley, Jr.

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE
NEW YORK, NY 10022-4730

TELEPHONE 212-759-4933
FACSIMILE  212-656-1531

GEORGE R. HINCKLEY, JR.
GRH@HINCKLEY.ORG

April 2, 2007

BY HAND

Ms. Noreen Diaz
United Orthopaedic Appliances Co. Inc.
791 Broadway
New York, NY 10003-6809

Re: 791 Broadway, New York, NY 10003-6809

Dear Ms. Diaz:

We represent Edwin Hertzoff and Beverly Hertzoff ("Landlord").

## NOTICE OF DEFAULT

PLEASE TAKE NOTICE that United Orthopaedic Appliances Co. Inc. ("Tenant") is in default of its obligation to pay Fixed Rent, under paragraph 1 and paragraph 37 of the Agreement of Lease made as of the 23rd day of August, 2006 (the "Lease").

Landlord has not received the payment of Fixed Rent of $10,000 due April 1, 2007 Demand is hereby made for this payment. Notice of Default is hereby given pursuant to paragraph 47 of the Lease.

Sincerely,

George Hinckley Jr.

George R. Hinckley, Jr.

# Exhibit C

CLAYTON HERTZOFF
EMPLOYMENT AGREEMENT

AGREEMENT (the "Agreement"), entered into August 20, 2006, by and between United Orthopaedic Appliances, Co., Inc, a New York corporation with offices at 791 Broadway, New York, New York ("Company") and Clayton Hertzoff, residing at 58 Winthrop Road, Short Hills, New Jersey, 07078 ("Employee" or "You").

In consideration of the mutual covenants and agreements hereinafter set forth, Company and Employee agree as follows:

1.    Agreement Term.

The term of this Agreement shall commence on August 20, 2006 and continue for ten (10) years until July 31, 2016, unless sooner terminated in accordance with the terms hereof (the "Agreement Term"). During the Agreement Term, the period beginning August 20, 2006 and ending December 31, 2006 shall be referred to as the "Initial Period" and each subsequent twelve (12) month period beginning January 1st and ending December 31st (or earlier upon any termination or expiration of the Agreement) shall be referred to a "Calendar Year."

2.    Employment.

a.    *Employment by Company.*   Company agrees to employ Employee for the Agreement Term upon the terms and subject to the conditions set forth in this Agreement. Employee shall be employed as a Prosthetist (working in the field of orthotics and prosthetics) and Manager of the Orthotics & Prosthetics Shop ("O&P Shop") and shall report to the Chief Executive Officer or his designee. Employee's duties and responsibilities shall be consistent with Employee's position as the Chief Executive Officer of Company or his designee may from time to time designate. Employee's duty shall include, but not be limited to, overseeing production of the staff of Company and the O&P Shop.

b.    *Performance of Duties.*   Throughout the Agreement Term, Employee shall faithfully and diligently perform his duties. Employee shall provide services on a full-time basis and shall devote Employee's entire working time to the business and affairs of Company, subject to vacations and sick leave in accordance with policies established by Company. During Employee's term of employment hereunder, Employee shall not, without the prior written consent of Company, which may be withheld in Company's sole discretion, engage in any other business or professional activity (other than as a passive investor), whether or not such business or professional activity is pursued for gain, profit or other pecuniary advantage.

1

440096.05

3.  <u>Compensation and Benefits.</u>

a.  *Base Salary.*

i.  Subject to the requirements of Subsection 3(a)(ii) below, Company agrees to pay to Employee for his services hereunder, a salary (the "Base Salary") in respect of each Calendar Year during the Agreement Term at the annual rate of one hundred twenty thousand ($120,000) dollars per year in the aggregate, prorated for any portion thereof and for the Initial Period. The Base Salary is payable in bi-weekly installments in accordance with the general practice of Company, less appropriate and customary payroll deductions.

ii.  During Agreement Term, Employee shall be required to maintain a level of "Personal Sales Collection" greater than six hundred thousand ($600,000) dollars for each Calendar Year (prorated for the Initial Period) ("Minimum Sales"). For purposes of this Agreement, Company shall measure "Personal Sales Collection" of Employee, within ninety (90) days of the end of each Calendar Year or the Initial Period, based upon net collections of Company from sales solely initiated and completed by Employee on behalf of Company in any Calendar Year or the Initial Period without giving effect to collection failures related solely to Company billing failures. If, for any Calendar Year or the Initial Period, Company determines that Minimum Sales will not be achieved by Employee, Company's continued employment of Employee shall be conditioned upon the parties agreeing upon a revised mutually acceptable reduced Base Salary.

b.  *Incentive Bonus.* For the Agreement Term, Company shall pay to Employee an Incentive Bonus consisting of a portion of Employee's Personal Sales Collection (measures as set forth in Subsection 3(a)(ii) above). In the Initial Period, the Incentive Bonus shall be calculated as follows: three percent (3%) of the Personal Sales Collection in the Initial Period. In each subsequent Calendar Year, the Incentive Bonus shall be calculated as follow: (i) five percent (5%) of the Personal Sales Collection in any Calendar Year less than or equal to five hundred thousand ($500,000) dollars plus (ii) ten percent (10%) of the Personal Sales Collection in any Calendar Year greater than five hundred thousand ($500,000) dollars. For example purposes only, if Employee's Personal Sales Collection in a Calendar Year is $650,000, his Incentive Bonus for such Calendar Year shall be $40,000 calculated as ($500,000 * .05) + ($150,000 * .10). Employee's Incentive Bonus for each Calendar Year or the Initial Period shall be paid to him on a quarterly basis during the Calendar Year or Initial Period based upon monthly collections of the applicable Personal Sales Collection during such Calendar Year or Initial Period and in accordance with the general practice of Company, less appropriate and customary payroll deductions.

c.  *Discretionary Bonus.* For the Agreement Term, Company shall pay Employee an discretionary bonus of twenty-five thousand ($25,000) dollars per Calendar Year. The discretionary bonus shall be paid within ninety (90) days of the end of the applicable Calendar Year in accordance with the general practice of Company, less appropriate and customary payroll deductions.

2

d. *Other Benefits.*

i.      Employee shall receive health insurance benefits for himself and his dependents and life insurance benefits for himself as such benefits are customarily provided to other full-time employees of Company, as amended or revised from time to time by Company in its sole discretion, subject to any waiting periods for benefits in accordance with Company's policies.   Employee shall further be provided with use of cellular telephone to be used solely in connection with his employment duties under this Agreement.

ii.      Employee shall be entitled, each Calendar Year, to five (5) weeks of paid leave, three (3) sick days and four (4) personal days, prorated as appropriate for any portion thereof and the Initial Period.  Unused vacation, personal and sick days shall not carry over into the subsequent Calendar Year.  All leave shall be taken in accordance with the policies of Company and at times agreeable to and approved by Company.

iii.      Employee shall be entitled (1) a monthly car allowance of up to $500 per month; (2) reimbursement for his automobile insurance for the car used in connection with his employment hereunder; (3) reimbursement of bridge, tunnel and gas expense incurred in commuting to and from Company; and (4) reimbursement of the downpayment in connection with leasing the Employee's not to exceed $3,500.00.  All reimbursement payment for expenses provided under this subsection shall be subject to and only be paid upon Employee's provision of written receipts to Company sufficient to satisfy Company and meet the requirements of the reimbursement policies of Company.  Company shall maintain of a parking space in garage near the 791 Broadway, New York, New York office location for use by Employee in connection with his performance of duties hereunder.

4.      Termination of Employment.

a.      *For Cause Termination.*  This Agreement, and the employment relationship between Company and Employee, shall be deemed immediately terminated upon the occurrence of any of the following: (a) Employee's breach of any material term or condition set forth in this Agreement; (b) Employee's failure or refusal to comply with the reasonable directions, policies, standards and regulations that Company may establish from time to time; (c) Employee willfully or intentionally undertakes or commits any conduct that is harmful to Company's business; (d) Company acquiring evidence of Employee's current illegal drug use, alcohol abuse, or other substance abuse; (e) Employee's commission of, indictment for, conviction of, or guilty or nolo contendere plea to, a felony or misdemeanor; (f) Employee's failure as a result of illness, injury or incapacity for a period in excess of ninety (90) days ("permanent disability); or (g) Employee's death.

b.      *Payments Upon Termination.*

i.      Upon termination of Employee's employment for any reason, Employee shall only be entitled to the Based Salary accrued but unpaid as of the date of the termination of Employee's employment with Company and the Severance Payment set forth in Section 4(b)

3

below in the event such termination is the result of Employee's death or permanent disability. Employee shall not be entitled to any additional compensation from Company.

ii.    Should Employee's employment terminate or expire prior to the end of the Agreement Term solely as the result of Employee's death or permanent disability, Company agrees that it shall pay Employee (or his estate), annually for the remainder of the Agreement Term, a Severance Payment. The annual Severance Payment made to Employee shall be equal to the discretionary bonus paid to Employee for the Calendar Year immediately prior to his death or permanent disability.

5.    Assignment and Transfer.

Employee's duties and obligations under this Agreement shall not be transferable by Employee by assignment or otherwise, and any purported assignment, transfer or delegation thereof shall be void.

6.    Employer's Authority

a.    Employee agrees to observe and comply with the rules and regulations of Company, as adopted from time to time, whether orally or in writing.

b.    Employee acknowledges that Company shall have final authority over its acceptance or refusal to service customers and over the amount of the fees to be charged customers for professional services.

c.    All files and records of every type pertaining to customers of Company for whom Employee shall render services hereunder shall belong to Company and Employee shall not, without the express written consent of Company, remove them from Company's office, copy them, allow them to be removed from Company's office, or allow them to be copied, except as reasonably required in the ordinary course of services provided by Employee as an employee of Company.

7.    Disclosure of Information; Non-Solicitation

a.    Employee acknowledges that the names of the clients and referral sources of Company, as may exist from time to time, and the financial statements, business plans, internal memoranda, reports, audits, patient surveys, employee surveys, operating policies, quality assurance materials, fees, and other such materials or records of proprietary nature of Company (collectively, the "Confidential Information") are valuable, special and unique assets of Company and are deemed to be trade secrets.

b.    Employee agrees that he will not, after the date hereof and for so long as any such Confidential Information may remain confidential, secret, or otherwise wholly or partially protectable:  (i) use the Confidential Information, except in connection with his retention by

4

440096.05

Company, or (ii) divulge any such Confidential Information to any third party, unless Company gives its prior written consent to such use or divulgence.

c.    In the event of a breach or threatened breach by Employee of the provisions of this Section 7, Company shall be entitled to an injunction restraining Employee from (i) disclosing, in whole or in part, any such Confidential Information; (ii) interfering with Company's relationships with its employees, customers and referral sources, or with any hospital or managed care entity with which Company has a contractual relationship; and/or (iii) rendering any professional services to (A) any customer of Company who has been solicited by Employee in violation of this Agreement, or (B) any person, firm, corporation, association, or other entity to whom any such Confidential Information, in whole or in part, has been disclosed by Employee or is threatened to be disclosed by him.

d.    Nothing contained herein shall be construed as prohibiting Company from pursuing any other remedies available to Company for such breach or threatened breach, including the recovery of damages from Employee.

8.    <u>Non-Compete and Non-Solicitation</u>

a.    Employee shall not, either directly or indirectly, at any time during the term of his employment and for twelve (12) months following the termination of this Agreement, except with the written consent of Company: (i) solicit, interfere with or endeavor to entice away from Company, any of its employees, agent, contractor, customer, or referral sources; (ii) for his own account or for the account of others, induce any customers to patronize any competing billing service provider, request or advise any customer to withdraw, curtail, or cancel such customer's relationship with Company or disclose to any other person, partnership, firm, corporation or other entity the names or addresses of any customers of Company.

b.    Employee shall not, at any time during the term of his employment under this Agreement and for twelve (12) months after the termination of this Agreement: (i) engage in the sale of orthotics and prosthetics as an employee, independent contractor, shareholder, partner, or otherwise and whether separately or in conjunction with any other entity or individual within a three (3) mile radius of Company's location; and/or (ii) operate or have any financial or other interest in any entity involved in the business of providing orthotics and prosthetics within a three (3) mile radius of Company's location.

c.    In the event of a breach by Employee of the provisions of this Section 8, Company shall also be entitled to an injunction restraining Employee from violating the terms of the restrictive covenant set forth herein (without the necessity of securing a bond) and any other legal or equitable remedies available for such breach or threatened breach.

d.    Employee agrees that damages at law would be an insufficient remedy for Company in the event Employee violates these provisions, and that Company shall be entitled to, among other remedies, make an application to a court of competent jurisdiction, to obtain injunctive relieve of any such action by Employee.

5

440096.05

e.    If Employee violates this restrictive covenant and Company brings legal action for injunctive or other relief, Company shall not, as a result of the time involved in obtaining the relief, be deprived of the benefit of the full period of the restrictive covenant. Accordingly, the restrictive covenant shall be deemed to have the duration specified herein, computed from the date the relief is granted but reduced by the time between the period when the restriction began to run and the date of the first violation of the covenant by Employee.

f.    Employee acknowledges that (i) the terms contained in this Section 8 are necessary for the reasonable and proper protection of Company's interests, (ii) each and every covenant and restriction is reasonable in respect of such matter, length of time and geographical area; (iii) Company. has been induced to enter into this transaction with Employee in part due to the representation by Employee that he will abide by and be bound by each of the aforesaid covenants and restraints.

g.    If any court or tribunal of competent jurisdiction determines that the duration, geographical limit or any other aspect of the above non competition covenants is unenforceable in accordance with its terms in a particular jurisdiction, such covenant shall not terminate; instead, such covenant shall be deemed amended to the extent required to render it valid and enforceable in such jurisdiction and such court or tribunal is hereby authorized and directed to amend this agreement only to the extent that such court or tribunal determines such an amendment is necessary to make it valid and enforceable in said jurisdiction.

h.    Whenever possible, each provision shall be construed so as to be interpreted in such manner as to be effective and valid under applicable law. If any provision of this Agreement or the application thereof to any party or circumstance shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition without invalidating the remainder of such provision or any other provision of this Agreement or the application of such provisions to other parties or circumstances. If any restriction contained in this Section 8 shall be deemed to be invalid, illegal or unenforceable by reason of the extent, duration or geographical scope thereof, or otherwise, then the court making such determination may reduce such extent, duration, geographical scope, or other provisions hereof, and in its reduced form, such restriction shall then be enforceable in the manner contemplated hereby.

i.    In the event Company is successful in judicial proceedings to enforce its rights under this Section 8, then Employee agrees to reimburse Company for the legal fees, costs, and disbursements which it incurs as a result of such proceedings. The terms of this Section 8 shall survive the expiration or termination of this Agreement.

9.    Compliance

a.    You acknowledge that Company is fully committed to ensuring its compliance, and the compliance of its employees, with all applicable rules, regulations and laws promulgated by the state and federal governments and by third party payors relating to the provision of billing services.

6

440096.05

b.     You agree to cooperative fully with Company's compliance activities regarding the O&P Shop, including cooperation with Company's efforts to educate and train all employees and staff of the O&P Shop; to conduct audits of records or other appropriate compliance reviews or inquiries; and to institute any appropriate corrective actions when compliance issues are identified.   Your failure to cooperate with Company's compliance activities and efforts, as determined in the sole discretion of Company, will constitute grounds for discipline.

10.     <u>Miscellaneous.</u>

a.     *Governing Law.*   This Agreement, including the validity, interpretation, construction and performance of this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of law.

b.     *Venue and Acceptance of Service of Process.*   Each party to this Agreement hereby agrees and consents that any legal action or proceedings with respect to this Agreement shall only be brought in the courts of the State of New York in New York County. By execution and delivery of this Agreement, each such party hereby (i) accepts the jurisdiction of the aforesaid courts; (ii) waives, to the fullest extent permitted by law, any objection which it may now hereafter have to the venue set forth above; and (iii) further waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. .

c.     *Entire Agreement.*   This Agreement contains the entire agreement and understanding between the parties hereto in respect of the subject matter hereof.

d.     *Amendment.*   This Agreement may be amended only by a written amendment which is signed by Employee and, on behalf of Company, by a director or officer other than Employee.

e.     *Severability.*   If any term, provision or covenant of this Agreement or part thereof, or the application thereof to any person, place or circumstance, shall be held to be invalid, unenforceable or void by a court of competent jurisdiction, the remainder of this Agreement and such term, provision or covenant shall remain in full force and effect, and any such invalid, unenforceable or void term, provision or covenant shall be deemed, without further action on the part of the parties hereto, modified, amended and limited, and the court shall have the power to modify, amend and limit any such term, provision or covenant, to the extent necessary to render the same and the remainder of this Agreement valid, enforceable and lawful.

f.     *Construction.*   The headings and captions of this Agreement are provided for convenience only and are intended to have no effect in construing or interpreting this Agreement. The use herein of the word "including" when following any general provision, sentence, clause, statement, term or matter, shall be deemed to mean "including, without limitation".   As used herein, the words "day" or "days" shall mean a calendar day or days.

7

440096.05

g.    *Non-waiver.*  Neither any course of dealing nor any failure or neglect of either party hereto in any instance to exercise any right, power or privilege hereunder or under law shall constitute a waiver of any other right, power or privilege or of the same right, power or privilege in any other instance.  All waivers by either party hereto must be contained in a written instrument signed by the party to be charged and, in the case of Company, by its duly authorized officer.

h.    *Remedies Cumulative.*   The rights and remedies of the parties hereto are cumulative and shall not be exclusive, and each such party shall be entitled to pursue all legal and equitable rights and remedies and to secure performance of the obligations and duties of the other under this Agreement, and the enforcement of one or more of such rights and remedies by a party shall in no way preclude such party from pursuing, at the same time or subsequently, any and all other rights and remedies available to it.

i.    *Prevailing Authority.*  In the event and to the extent of any inconsistencies between this Agreement and any Company employee or procedural manual, the terms of this Agreement shall prevail.

j.    *Notices.*  All notices, requests, demands and other communications required or permitted to be given hereunder shall be in writing, and shall be deemed duly given: (i) when personally delivered; (ii) when receipt is acknowledged, if sent by facsimile, telecopy or other electronic transmission device; provided, however, that if receipt is acknowledged after normal business hours of the recipient, notice shall be deemed to have been given on the next business day; (iii) one day after deposit with a nationally recognized overnight courier, specifying "next day delivery"; or (iv) three days after being sent by registered or certified mail, postage prepaid, return receipt requested.   Any notice, demand or other communication given by a party in connection with this Agreement shall be sent to the other party at the address set forth above for such other party.

k.    *Disclosure.*  Employee agrees that during the term of his employment with Company, he will disclose solely to Company all ideas, methods, plans, or improvements known by you which relate, directly or indirectly to, the practice of Company, whether acquired by Employee before or during his employment with Company; provided, however, that nothing in this paragraph shall be construed as requiring any such communication where the idea, method, plan or improvement is lawfully protected from disclosure as a trade secret of a third party or by any other lawful prohibition against such communication.

l.    *Authority to Contract.*  Employee shall have no authority to nor shall be entitled enter into any contracts, other than this Agreement or any amendments hereto, which shall be binding upon Company, or otherwise create any obligations on the part of Company.

8

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first written above.

Clayton Hertzoff

United Orthopaedic Appliances, Co., Inc.

By: _____

Name: Noreen Diaz

Title: President

9

# Exhibit D

April 16, 2007

<u>BY HAND AND BY FACSIMILE</u>

> TO:  Mr. Martin Diaz,  Ms. Noreen Diaz, United Orthopaedic Appliances Company

FROM:  Clayton Hertzoff

RE:   Quarterly Bonus Payment Due March 31, 2007

Pursuant to section 3 (b) of my Employment Agreement of August 20, 2006, Orthopaedic Appliances Company is obligated to pay to me a bonus equal to 5% of my "Personal Sales Collection."  I have not yet received this payment, despite my repeated requests for it to be made.

Formal demand is hereby made for the payment of this bonus.

I expressly reserve all of my rights under the Employment Agreement and otherwise.

Sincerely,

Clayton Hertzoff

```
***********************************************************************
*                                                                    *
*                    TRANSACTION REPORT                              *
*                                            APR-16-2007 04:22 PM    *
*           FOR: UNITED.ORTHOPAFIC          212 473 0658             *
*   ────────────────────────────────────────────────────────────    *
*     SEND                                                           *
*                                                                    *
*   DATE   START      RECEIVER              PAGES    TIME    NOTE     *
*   ─────────────────────────────────────────────────────────────   *
*   APR-16 04:16 PM 915164784420              1      40"    OK        *
*   ─────────────────────────────────────────────────────────────   *
***********************************************************************
```

# CLAYTON HERTZOFF
## EMPLOYMENT AGREEMENT

AGREEMENT (the "Agreement"), entered into August 20, 2006, by and between United Orthopaedic Appliances, Co., Inc, a New York corporation with offices at 791 Broadway, New York, New York ("Company") and Clayton Hertzoff, residing at 58 Winthrop Road, Short Hills, New Jersey, 07078 ("Employee" or "You").

In consideration of the mutual covenants and agreements hereinafter set forth, Company and Employee agree as follows:

1.     Agreement Term.

The term of this Agreement shall commence on August 20, 2006 and continue for ten (10) years until July 31, 2016, unless sooner terminated in accordance with the terms hereof (the "Agreement Term"). During the Agreement Term, the period beginning August 20, 2006 and ending December 31, 2006 shall be referred to as the "Initial Period" and each subsequent twelve (12) month period beginning January 1st and ending December 31st (or earlier upon any termination or expiration of the Agreement) shall be referred to a "Calendar Year."

2.     Employment.

a.     *Employment by Company.*  Company agrees to employ Employee for the Agreement Term upon the terms and subject to the conditions set forth in this Agreement. Employee shall be employed as a Prosthetist (working in the field of orthotics and prosthetics) and Manager of the Orthotics & Prosthetics Shop ("O&P Shop") and shall report to the Chief Executive Officer or his designee. Employee's duties and responsibilities shall be consistent with Employee's position as the Chief Executive Officer of Company or his designee may from time to time designate. Employee's duty shall include, but not be limited to, overseeing production of the staff of Company and the O&P Shop.

b.     *Performance of Duties.*  Throughout the Agreement Term, Employee shall faithfully and diligently perform his duties. Employee shall provide services on a full-time basis and shall devote Employee's entire working time to the business and affairs of Company, subject to vacations and sick leave in accordance with policies established by Company. During Employee's term of employment hereunder, Employee shall not, without the prior written consent of Company, which may be withheld in Company's sole discretion, engage in any other business or professional activity (other than as a passive investor), whether or not such business or professional activity is pursued for gain, profit or other pecuniary advantage.

1

440096.05

3.    Compensation and Benefits.

a.    *Base Salary.*

i.    Subject to the requirements of Subsection 3(a)(ii) below, Company agrees to pay to Employee for his services hereunder, a salary (the "Base Salary") in respect of each Calendar Year during the Agreement Term at the annual rate of one hundred twenty thousand ($120,000) dollars per year in the aggregate, prorated for any portion thereof and for the Initial Period. The Base Salary is payable in bi-weekly installments in accordance with the general practice of Company, less appropriate and customary payroll deductions.

ii.    During Agreement Term, Employee shall be required to maintain a level of "Personal Sales Collection" greater than six hundred thousand ($600,000) dollars for each Calendar Year (prorated for the Initial Period) ("Minimum Sales"). For purposes of this Agreement, Company shall measure "Personal Sales Collection" of Employee, within ninety (90) days of the end of each Calendar Year or the Initial Period, based upon net collections of Company from sales solely initiated and completed by Employee on behalf of Company in any Calendar Year or the Initial Period without giving effect to collection failures related solely to Company billing failures. If, for any Calendar Year or the Initial Period, Company determines that Minimum Sales will not be achieved by Employee, Company's continued employment of Employee shall be conditioned upon the parties agreeing upon a revised mutually acceptable reduced Base Salary.

b.    *Incentive Bonus.* For the Agreement Term, Company shall pay to Employee an Incentive Bonus consisting of a portion of Employee's Personal Sales Collection (measures as set forth in Subsection 3(a)(ii) above). In the Initial Period, the Incentive Bonus shall be calculated as follows: three percent (3%) of the Personal Sales Collection in the Initial Period. In each subsequent Calendar Year, the Incentive Bonus shall be calculated as follow: (i) five percent (5%) of the Personal Sales Collection in any Calendar Year less than or equal to five hundred thousand ($500,000) dollars plus (ii) ten percent (10%) of the Personal Sales Collection in any Calendar Year greater than five hundred thousand ($500,000) dollars. For example purposes only, if Employee's Personal Sales Collection in a Calendar Year is $650,000, his Incentive Bonus for such Calendar Year shall be $40,000 calculated as ($500,000 * .05) + ($150,000 * .10). Employee's Incentive Bonus for each Calendar Year or the Initial Period shall be paid to him on a quarterly basis during the Calendar Year or Initial Period based upon monthly collections of the applicable Personal Sales Collection during such Calendar Year or Initial Period and in accordance with the general practice of Company, less appropriate and customary payroll deductions.

c.    *Discretionary Bonus.* For the Agreement Term, Company shall pay Employee an discretionary bonus of twenty-five thousand ($25,000) dollars per Calendar Year. The discretionary bonus shall be paid within ninety (90) days of the end of the applicable Calendar Year in accordance with the general practice of Company, less appropriate and customary payroll deductions.

2

    d.    *Other Benefits.*

        i.    Employee shall receive health insurance benefits for himself and his dependents and life insurance benefits for himself as such benefits are customarily provided to other full-time employees of Company, as amended or revised from time to time by Company in its sole discretion, subject to any waiting periods for benefits in accordance with Company's policies. Employee shall further be provided with use of cellular telephone to be used solely in connection with his employment duties under this Agreement.

        ii.    Employee shall be entitled, each Calendar Year, to five (5) weeks of paid leave, three (3) sick days and four (4) personal days, prorated as appropriate for any portion thereof and the Initial Period. Unused vacation, personal and sick days shall not carry over into the subsequent Calendar Year. All leave shall be taken in accordance with the policies of Company and at times agreeable to and approved by Company.

        iii.    Employee shall be entitled (1) a monthly car allowance of up to $500 per month; (2) reimbursement for his automobile insurance for the car used in connection with his employment hereunder; (3) reimbursement of bridge, tunnel and gas expense incurred in commuting to and from Company; and (4) reimbursement of the downpayment in connection with leasing the Employee's not to exceed $3,500.00. All reimbursement payment for expenses provided under this subsection shall be subject to and only be paid upon Employee's provision of written receipts to Company sufficient to satisfy Company and meet the requirements of the reimbursement policies of Company. Company shall maintain of a parking space in garage near the 791 Broadway, New York, New York office location for use by Employee in connection with his performance of duties hereunder.

    4.    <u>Termination of Employment.</u>

    a.    *For Cause Termination.* This Agreement, and the employment relationship between Company and Employee, shall be deemed immediately terminated upon the occurrence of any of the following: (a) Employee's breach of any material term or condition set forth in this Agreement; (b) Employee's failure or refusal to comply with the reasonable directions, policies, standards and regulations that Company may establish from time to time; (c) Employee willfully or intentionally undertakes or commits any conduct that is harmful to Company's business; (d) Company acquiring evidence of Employee's current illegal drug use, alcohol abuse, or other substance abuse; (e) Employee's commission of, indictment for, conviction of, or guilty or nolo contendere plea to, a felony or misdemeanor; (f) Employee's failure as a result of illness, injury or incapacity for a period in excess of ninety (90) days ("permanent disability"); or (g) Employee's death.

    b.    *Payments Upon Termination.*

        i.    Upon termination of Employee's employment for any reason, Employee shall only be entitled to the Based Salary accrued but unpaid as of the date of the termination of Employee's employment with Company and the Severance Payment set forth in Section 4(b)

3

440096.05

below in the event such termination is the result of Employee's death or permanent disability. Employee shall not be entitled to any additional compensation from Company.

ii.    Should Employee's employment terminate or expire prior to the end of the Agreement Term solely as the result of Employee's death or permanent disability, Company agrees that it shall pay Employee (or his estate), annually for the remainder of the Agreement Term, a Severance Payment. The annual Severance Payment made to Employee shall be equal to the discretionary bonus paid to Employee for the Calendar Year immediately prior to his death or permanent disability.

5.    Assignment and Transfer.

Employee's duties and obligations under this Agreement shall not be transferable by Employee by assignment or otherwise, and any purported assignment, transfer or delegation thereof shall be void.

6.    Employer's Authority

a.    Employee agrees to observe and comply with the rules and regulations of Company, as adopted from time to time, whether orally or in writing.

b.    Employee acknowledges that Company shall have final authority over its acceptance or refusal to service customers and over the amount of the fees to be charged customers for professional services.

c.    All files and records of every type pertaining to customers of Company for whom Employee shall render services hereunder shall belong to Company and Employee shall not, without the express written consent of Company, remove them from Company's office, copy them, allow them to be removed from Company's office, or allow them to be copied, except as reasonably required in the ordinary course of services provided by Employee as an employee of Company.

7.    Disclosure of Information; Non-Solicitation

a.    Employee acknowledges that the names of the clients and referral sources of Company, as may exist from time to time, and the financial statements, business plans, internal memoranda, reports, audits, patient surveys, employee surveys, operating policies, quality assurance materials, fees, and other such materials or records of proprietary nature of Company (collectively, the "Confidential Information") are valuable, special and unique assets of Company and are deemed to be trade secrets.

b.    Employee agrees that he will not, after the date hereof and for so long as any such Confidential Information may remain confidential, secret, or otherwise wholly or partially protectable: (i) use the Confidential Information, except in connection with his retention by

4

440096.05

Company, or (ii) divulge any such Confidential Information to any third party, unless Company gives its prior written consent to such use or divulgence.

c.      In the event of a breach or threatened breach by Employee of the provisions of this Section 7, Company shall be entitled to an injunction restraining Employee from (i) disclosing, in whole or in part, any such Confidential Information; (ii) interfering with Company's relationships with its employees, customers and referral sources, or with any hospital or managed care entity with which Company has a contractual relationship; and/or (iii) rendering any professional services to (A) any customer of Company who has been solicited by Employee in violation of this Agreement, or (B) any person, firm, corporation, association, or other entity to whom any such Confidential Information, in whole or in part, has been disclosed by Employee or is threatened to be disclosed by him.

d.      Nothing contained herein shall be construed as prohibiting Company from pursuing any other remedies available to Company for such breach or threatened breach, including the recovery of damages from Employee.

8.    Non-Compete and Non-Solicitation

a.      Employee shall not, either directly or indirectly, at any time during the term of his employment and for twelve (12) months following the termination of this Agreement, except with the written consent of Company: (i) solicit, interfere with or endeavor to entice away from Company, any of its employees, agent, contractor, customer, or referral sources; (ii) for his own account or for the account of others, induce any customers to patronize any competing billing service provider, request or advise any customer to withdraw, curtail, or cancel such customer's relationship with Company or disclose to any other person, partnership, firm, corporation or other entity the names or addresses of any customers of Company.

b.      Employee shall not, at any time during the term of his employment under this Agreement and for twelve (12) months after the termination of this Agreement: (i) engage in the sale of orthotics and prosthetics as an employee, independent contractor, shareholder, partner, or otherwise and whether separately or in conjunction with any other entity or individual within a three (3) mile radius of Company's location; and/or (ii) operate or have any financial or other interest in any entity involved in the business of providing orthotics and prosthetics within a three (3) mile radius of Company's location.

c.      In the event of a breach by Employee of the provisions of this Section 8, Company shall also be entitled to an injunction restraining Employee from violating the terms of the restrictive covenant set forth herein (without the necessity of securing a bond) and any other legal or equitable remedies available for such breach or threatened breach.

d.      Employee agrees that damages at law would be an insufficient remedy for Company in the event Employee violates these provisions, and that Company shall be entitled to, among other remedies, make an application to a court of competent jurisdiction, to obtain injunctive relieve of any such action by Employee.

5

440096.05

e.    If Employee violates this restrictive covenant and Company brings legal action for injunctive or other relief, Company shall not, as a result of the time involved in obtaining the relief, be deprived of the benefit of the full period of the restrictive covenant. Accordingly, the restrictive covenant shall be deemed to have the duration specified herein, computed from the date the relief is granted but reduced by the time between the period when the restriction began to run and the date of the first violation of the covenant by Employee.

f.    Employee acknowledges that (i) the terms contained in this Section 8 are necessary for the reasonable and proper protection of Company's interests, (ii) each and every covenant and restriction is reasonable in respect of such matter, length of time and geographical area; (iii) Company has been induced to enter into this transaction with Employee in part due to the representation by Employee that he will abide by and be bound by each of the aforesaid covenants and restraints.

g.    If any court or tribunal of competent jurisdiction determines that the duration, geographical limit or any other aspect of the above non competition covenants is unenforceable in accordance with its terms in a particular jurisdiction, such covenant shall not terminate; instead, such covenant shall be deemed amended to the extent required to render it valid and enforceable in such jurisdiction and such court or tribunal is hereby authorized and directed to amend this agreement only to the extent that such court or tribunal determines such an amendment is necessary to make it valid and enforceable in said jurisdiction.

h.    Whenever possible, each provision shall be construed so as to be interpreted in such manner as to be effective and valid under applicable law. If any provision of this Agreement or the application thereof to any party or circumstance shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition without invalidating the remainder of such provision or any other provision of this Agreement or the application of such provisions to other parties or circumstances. If any restriction contained in this Section 8 shall be deemed to be invalid, illegal or unenforceable by reason of the extent, duration or geographical scope thereof, or otherwise, then the court making such determination may reduce such extent, duration, geographical scope, or other provisions hereof, and in its reduced form, such restriction shall then be enforceable in the manner contemplated hereby.

i.    In the event Company is successful in judicial proceedings to enforce its rights under this Section 8, then Employee agrees to reimburse Company for the legal fees, costs, and disbursements which it incurs as a result of such proceedings. The terms of this Section 8 shall survive the expiration or termination of this Agreement.

9.    <u>Compliance</u>

a.    You acknowledge that Company is fully committed to ensuring its compliance, and the compliance of its employees, with all applicable rules, regulations and laws promulgated by the state and federal governments and by third party payors relating to the provision of billing services.

6

440096.05

b.    You agree to cooperative fully with Company's compliance activities regarding the O&P Shop, including cooperation with Company's efforts to educate and train all employees and staff of the O&P Shop; to conduct audits of records or other appropriate compliance reviews or inquiries; and to institute any appropriate corrective actions when compliance issues are identified.  Your failure to cooperate with Company's compliance activities and efforts, as determined in the sole discretion of Company, will constitute grounds for discipline.

10.    Miscellaneous.

a.    *Governing Law.*  This Agreement, including the validity, interpretation, construction and performance of this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of law.

b.    *Venue and Acceptance of Service of Process.*  Each party to this Agreement hereby agrees and consents that any legal action or proceedings with respect to this Agreement shall only be brought in the courts of the State of New York in New York County.  By execution and delivery of this Agreement, each such party hereby (i) accepts the jurisdiction of the aforesaid courts; (ii) waives, to the fullest extent permitted by law, any objection which it may now hereafter have to the venue set forth above; and (iii) further waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. .

c.    *Entire Agreement.*  This Agreement contains the entire agreement and understanding between the parties hereto in respect of the subject matter hereof.

d.    *Amendment.*  This Agreement may be amended only by a written amendment which is signed by Employee and, on behalf of Company, by a director or officer other than Employee.

e.    *Severability.*  If any term, provision or covenant of this Agreement or part thereof, or the application thereof to any person, place or circumstance, shall be held to be invalid, unenforceable or void by a court of competent jurisdiction, the remainder of this Agreement and such term, provision or covenant shall remain in full force and effect, and any such invalid, unenforceable or void term, provision or covenant shall be deemed, without further action on the part of the parties hereto, modified, amended and limited, and the court shall have the power to modify, amend and limit any such term, provision or covenant, to the extent necessary to render the same and the remainder of this Agreement valid, enforceable and lawful.

f.    *Construction.*  The headings and captions of this Agreement are provided for convenience only and are intended to have no effect in construing or interpreting this Agreement. The use herein of the word "including" when following any general provision, sentence, clause, statement, term or matter, shall be deemed to mean "including, without limitation".  As used herein, the words "day" or "days" shall mean a calendar day or days.

7

440096.05

g.    *Non-waiver.* Neither any course of dealing nor any failure or neglect of either party hereto in any instance to exercise any right, power or privilege hereunder or under law shall constitute a waiver of any other right, power or privilege or of the same right, power or privilege in any other instance. All waivers by either party hereto must be contained in a written instrument signed by the party to be charged and, in the case of Company, by its duly authorized officer.

h.    *Remedies Cumulative.* The rights and remedies of the parties hereto are cumulative and shall not be exclusive, and each such party shall be entitled to pursue all legal and equitable rights and remedies and to secure performance of the obligations and duties of the other under this Agreement, and the enforcement of one or more of such rights and remedies by a party shall in no way preclude such party from pursuing, at the same time or subsequently, any and all other rights and remedies available to it.

i.    *Prevailing Authority.* In the event and to the extent of any inconsistencies between this Agreement and any Company employee or procedural manual, the terms of this Agreement shall prevail.

j.    *Notices.* All notices, requests, demands and other communications required or permitted to be given hereunder shall be in writing, and shall be deemed duly given: (i) when personally delivered; (ii) when receipt is acknowledged, if sent by facsimile, telecopy or other electronic transmission device; provided, however, that if receipt is acknowledged after normal business hours of the recipient, notice shall be deemed to have been given on the next business day; (iii) one day after deposit with a nationally recognized overnight courier, specifying "next day delivery"; or (iv) three days after being sent by registered or certified mail, postage prepaid, return receipt requested. Any notice, demand or other communication given by a party in connection with this Agreement shall be sent to the other party at the address set forth above for such other party.

k.    *Disclosure.* Employee agrees that during the term of his employment with Company, he will disclose solely to Company all ideas, methods, plans, or improvements known by you which relate, directly or indirectly to, the practice of Company, whether acquired by Employee before or during his employment with Company; provided, however, that nothing in this paragraph shall be construed as requiring any such communication where the idea, method, plan or improvement is lawfully protected from disclosure as a trade secret of a third party or by any other lawful prohibition against such communication.

l.    *Authority to Contract.* Employee shall have no authority to nor shall be entitled enter into any contracts, other than this Agreement or any amendments hereto, which shall be binding upon Company, or otherwise create any obligations on the part of Company.

8

440096.05

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first written above.

_Clayton Hertzoff_
Clayton Hertzoff

United Orthopaedic Appliances, Co., Inc.

By: _Noreen Diaz_

Name: Noreen Diaz
Title: President

9

440096.05

**United Orthopaedic Appliances Co., Inc.**
326 2ND Ave.
New York, NY 10003
Tel: 212-674-2366

June 18, 2007

Clay Hertzoff
58 Winthrop Road
Short Hills, NJ 07078

Re:    Termination of Employment

Mr. Hertzoff:

This letter is to notify you that your employment with United Orthopeacdic Appliances, Co., Inc. ("UOA") is hereby terminated, effective immediately, for cause pursuant to Paragraph 4.a. of the employment agreement executed between you and UOA on August 20, 2006 (the "Agreement").

UOA fully anticipated your return to work today following your vacation last week. Indeed, you were called by UOA's office manager, Lori, on Sunday June 17, 2007, and advised that, during the week you were out on vacation UOA had completed its move from its previous space, and that you should report for work at UOA's new offices located at 326 2nd Avenue, New York, New York. This morning, however, you failed to report for work, and failed to respond to numerous phone calls to your cell phone inquiring as to why you failed to report. UOA later discovered that you showed up today at the clinic at Metropolitan Hospital, falsely claimed that you had been terminated by UOA and proceeded to see several patients who were scheduled to see a UOA practitioner today on behalf of your new employer. These actions are a direct breach of various provisions of the Agreement and support UAO's for cause termination of your employment.

Further, UAO hereby demands that you immediately return any company property including, without limitation, any customer lists or other proprietary information regarding referral sources, and the American Express card that you were issued by UOA. UOA also demands that you surrender possession of the car leased for your benefit to UOA's offices immediately. Commencing today, UOA will charge you per day for every day that the car leased for your benefit by UOA remains in your possession.

Finally, please be advised that, effective immediately, all benefits provided to you by UOA are terminated, including health and life insurance policies.

You are again reminded that you have an affirmative contractual obligation to refrain from interfering with UOA's business in any way, including the disclosure to third parties of any proprietary information as set forth in the Agreement. This letter is sent in complete and full reservation of any and all rights and claims, whether legal or equitable, now held by UOA or

489328.02

which shall arise in future and shall not be construed to waive any legal right or remedy. Please be guided accordingly.


Sincerely,

Noreen Diaz

Noreen Diaz

# GARFUNKEL, WILD & TRAVIS, P.C.
### ATTORNEYS AT LAW

ROBERT ANDREW WILD *
NORTON L. TRAVIS *
FREDRICK I. MILLER *
JUDITH A. EISEN *
LEONARD M. ROSENBERG *
JEFFREY S. BROWN †*†
ANDREW E. BLUSTEIN †*†
BURTON S. WESTON *
DAVID J. BIEHL *
MICHAEL J. KEANE *†
HAYDEN S. WOOL *
GREG E. BLOOM *#
JEFFRY ADEST *†
STEVEN R. ANTICO †*†
ROY W. BREITENBACH *
STEVEN J. CHANANIE *
PHILIP C. CHRONAKIS *†
PETER M. HOFFMAN *
SEAN P. LEYDEN *#
PETER B. MANCINO *
DORIS L. MARTIN *
LOURDES MARTINEZ *†
PATRICK J. MONAHAN II #
ALAN H. PERZLEY *†
GREGO D. REISMAN *
TERHNCH A. RUSSO *
ANDREW J. SCHULSON *
DEBRA A. SILVERMAN *
CHRISTINA VAN VORT *
ANDREW L. ZWERLING *

OF COUNSEL
GEORGE M. GARFUNKEL *
DAVID E. STECKLER *
STUART M. HOCHRON, M.D. †

*   LICENSED IN NEW YORK
‡   LICENSED IN NEW JERSEY
#   LICENSED IN CONNECTICUT
Σ   LICENSED IN MASSACHUSETTS
∇   LICENSED IN PENNSYLVANIA
♦   LICENSED IN SOUTH CAROLINA
§   LICENSED IN DISTRICT OF COLUMBIA
†   RESPONSIBLE PARTNERS FOR NEW JERSEY OFFICE

NATHAN BRILL *‡
WILHELMINA A. DE HARDER *
REBECCA A. EDELMAN *‡
THERESA A. BILH *
JACQUELINE H. FINNEGAN *
JORDAN M. FREUNDLICH *
RANDI E. FRIEDMAN *
NICOLE GADH *‡
STACEY L. GULICK *‡
JASON Y. HSI *
LAURIE E. JOHNSON *
KIMBERLY KEMPTON-SERRA ‡
JOHN P. KRALJIC *
LAUREN M. LEVINE *†
RAYMOND P. MULRY *†
COURTNEY A. ROGERS *Σ
MOLLY M. RUSH *
AFSHEEN A. SHAH *
PETER O. SIACHOS *‡♦*
GREGORY R. SMITH *
COLLEEN M. TARPEY *
GERARD H. TONER *
CAROLINE P. WALLITT *
ALICIA M. WILSON *

SENIOR ATTORNEYS
LARA JEAN ANCONA *
SUZANNE M. AVENA *
KEVIN G. DONOGHUE * Σ
PETER A. EGAN *#
B. SCOTT HIGGINS *∇
BARBARA D. KNOTHE *#
EVE GREEN KOOPERSMITH *
MARIANNE MONROY *‡
KAREN L. RODGERS *

111 GREAT NECK ROAD
GREAT NECK, NEW YORK 11021
TEL. (516) 393-2200
FAX (516) 466-5964

411 HACKENSACK AVENUE
HACKENSACK, NEW JERSEY 07601
TEL. (201) 883-1030
FAX (201) 883-1031

350 BEDFORD STREET
STAMFORD, CONNECTICUT 06901
TEL. (203) 316-0483
FAX (203) 316-0493

www.gwtlaw.com
WRITER'S EMAIL: ctarpey@gwtlaw.com
WRITER'S DIRECT DIAL: (516) 393-2536

July 2, 2007

FILE NO.:  10654.0002
REPLY TO:  New York

## BY FEDERAL EXPRESS

New England Orthotic and Prosthetic Systems, LLC
469 W. Main Street
Branford, CT 06405

235 East 38th Street
New York, NY 10016

350 Northern Boulevard
Suite 201
Great Neck, NY 11021

**Re:    Cease and Desist and Notice to Preserve Documents and
Electronic Data Re:  Employment of Clayton Hertzoff**

Dear Sir or Madam,

This firm represents United Orthopaedic Appliances, Co., Inc. ("UOA") in connection with New England Orthotic and Prosthetic Systems, LLC's ("NEO") employment of Clayton Hertzoff, which we understand commenced shortly after or simultaneously with his termination from UOA.  UOA has asked us to take appropriate legal action to protect its rights in connection with Mr. Hertzoff's misuse and misappropriation of UOA's confidential, proprietary information for his benefit, and consequently for the benefit of NEO, all in violation of UOA's employment agreement with Mr. Hertzoff (the Agreement).

NEW ENGLAND ORTHOTIC AND PROSTHETIC SYSTEMS, LLC
July 2, 2007
Page 2

In case Mr. Hertzoff has not made you aware, Mr. Hertzoff entered into the Agreement with Mr. Hertzoff at the time he commenced his employment. The Agreement prohibits Mr. Hertzoff, for a period of at least one year following his departure from UOA from, among other things:

(a)     divulging any of UOA's financial statements, business plans, internal memoranda, reports, audits, patient surveys, employee surveys, operating policies, quality assurance materials, fees, and other such materials or records of proprietary nature to UOA (the "Confidential Information") to any third party;

(b)     interfering with UOA's relationships with its employees, customers and referral sources, or with any hospital or managed care entity with which Company has a contractual relationship;

(c)     rendering any professional services to any customer of UOA who has been solicited by Mr. Hertzoff in violation of this Agreement, or to any person, firm, corporation, association, or other entity to whom any such Confidential Information, in whole or in part, has been disclosed by Mr. Hertzoff or is threatened to be disclosed by him;

(d)     soliciting, interfering with or endeavoring to entice away from UOA, any of its employees, agents, contractors, customers, or referral sources, whether for his own account or for the account of others;

(e)     inducing any of UOA's customers to patronize any competing billing service provider, requesting or advising any customer to withdraw, curtail, or cancel such customer's relationship with UOA or disclosing to any other person, partnership, firm, corporation or other entity the names or addresses of any UOA's customers;

(f)     engaging in the sale of orthotics and prosthetics as an employee, independent contractor, shareholder, partner, or otherwise and whether separately or in conjunction with any other entity or individual within a three (3) mile radius of UOA's location in Manhattan; and/or

(g)     operating or having any financial or other interest in any entity involved in the business of providing orthotics and prosthetics within a three (3) mile radius of UOA's location.

Mr. Hertzoff is in direct violation of one or more of the above provisions of the Agreement. In addition, Mr. Hertzoff has breached his common law obligations to UOA, including, but not limited to, his duty of loyalty and his duty not to misappropriate or misuse UOA's confidential, proprietary business information. In particular, we understand that Mr. Hertzoff has used (and continues to use) UOA's confidential patient information and referral sources, which were obtained solely through his employment with UOA, to identify and solicit potential patients for NEO.

GARFUNKEL, WILD & TRAVIS, P.C.

NEW ENGLAND ORTHOTIC AND PROSTHETIC SYSTEMS, LLC
July 2, 2007
Page 3

Accordingly, UOA demands that NEO immediately:

1.      CEASE AND DESIST from using and/or disclosing any of UOA's confidential, proprietary business information, including but not limited to any customer/patient/referral source information or other confidential business information, whether contained in documents or stored in electronic format;

2.      CEASE AND DESIST from any and all contacts with and/or solicitation of any of UOA's customers, patients, and/or referral sources prohibited by common law, statutory law, or the obligations contained in the Agreement;

3.      CEASE AND DESIST from tortiously interfering with Mr. Hertzoff's obligations to UOA and from any and all conduct which is in violation of the Agreement or the common law;

4.      Promptly produce to UOA any and all confidential, proprietary business information in your possession, custody, or control that belong to UOA, including but not limited to patient/customer information.

NOTICE OF DUTY TO PRESERVE: We further advise you that NEO and its agents, employees, and/or affiliates are not to destroy, conceal or alter any paper or electronic files, data stored on NEO's computer systems and storage media (e.g. hard disks, floppy disks, backup tapes, etc.) or other electronic data such as voicemail. This includes, but is not limited to, email and other electronic communications, word processing documents, spreadsheets, databases, calendars, telephone log books, information contained on laptops and other portable devices and/or network access information.

Please be advised that the destruction of this type of evidence may warrant the imposition of sanctions or other penalties. The law and rule prohibiting the destruction of evidence apply equally to electronically stored information. Inasmuch as electronic information is easily deleted, modified or corrupted, NEO must take any and all reasonable steps to ensure the this information is preserved. This includes the obligation to discontinue all data destruction and backup tape recycling destruction policies.

Finally, UOA demands that NEO immediately provide a detailed description of Mr. Hertzoff's activities since joining your company, including but not limited to the identification of all patients/customers to whom he has provided professional services, and that you provide adequate assurances that he will abide by his obligations to UOA both under the Agreement and under the common law.

GARFUNKEL, WILD & TRAVIS, P.C.

NEW ENGLAND ORTHOTIC AND PROSTHETIC SYSTEMS, LLC
July 2, 2007
Page 4

   Please notify us of your intent to comply with all of the demands set forth herein by close of business on July 9, 2007. We sincerely hope that there will be no cause to take action against NEO, but please be advised the UOA is prepared to take any and all legal action to protect its business interests.

                              Very truly yours,

                              Colleen M. Tarpey

cc:    Andrew Zwerling, Esq.

499998.02

Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (MT-7572)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200
Attorneys for Defendants Noreen Diaz and
United Orthopaedic Appliances Co., Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BEVERLY HERTZOFF, EDWIN HERTZOFF,    :    **NOTICE OF MOTION TO DISMISS**
and CLAYTON HERTZOFF,                :
                                     :
                    Plaintiffs,      :    07 CV 3157 (CM)(MHD)
                                     :
        -against-                    :    ECF CASE
                                     :
NOREEN DIAZ and UNITED ORTHOPAEDIC   :
APPLIANCES CO., INC.                 :
                                     :
                    Defendants.      :
                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PLEASE TAKE NOTICE, that upon the annexed declaration of Noreen Diaz, dated July 13, 2007; the exhibits annexed thereto; and, the supporting memorandum of law, and upon all of the pleadings and proceedings heretofore had herein, the undersigned will move this Court at the United States Courthouse, 500 Pearl Street, New York, New York, 10007, on the 3rd day of August, 2007 at 9:30 o'clock in the forenoon of that day or as soon thereafter as counsel may be heard, for an order on behalf of defendants Noreen Diaz and United Orthopaedic Appliances Co., Inc., pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, dismissing certain counts in the Amended Complaint based upon lack of subject matter jurisdiction and a failure to state a claim upon which relief can be granted, and granting defendants such other and further relief as this Court may deem just and proper.

512672.01

Pursuant to Rule 6.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, any opposing affidavits and answering memoranda shall be served within ten business days after service of the moving papers, and any reply affidavits and memoranda of law shall be served within five business days after service of the answering papers.

Dated: Great Neck, New York
      July 13, 2007

GARFUNKEL, WILD & TRAVIS, P.C.

BY: _____
      Andrew L. Zwerling (AZ-5455)
      Colleen M. Tarpey (CT-7572)
Attorneys for Defendants
111 Great Neck Road
Great Neck, New York   11021
(516) 393-2200

TO:    George R. Hinckley, Jr., Esq.
       Traiger & Hinckley LLP
       *Attorneys for Plaintiffs*
       880 Third Ave. 9th Floor
       New York, NY   10022-4730

Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (MT-7572)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200
Attorneys for Defendants Noreen Diaz and
United Orthopaedic Appliances Co., Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| BEVERLY HERTZOFF, EDWIN HERTZOFF, and CLAYTON HERTZOFF, :<br><br>Plaintiffs, :<br><br>-against- :<br><br>NOREEN DIAZ and UNITED ORTHOPAEDIC APPLIANCES CO., INC. :<br><br>Defendants. : | **DEFENDANT NOREEN DIAZ' DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>07 CV 3157 (CM)(MHD) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK    )
                     )ss.:
COUNTY OF NEW YORK   )

NOREEN DIAZ, being duly sworn, deposes and says:

1.    I am a defendant in the captioned proceeding and am the current sole shareholder and President of defendant United Orthopaedic Appliances Co., Inc. ("UOA").  I submit this affidavit for the limited purpose of providing the Court with true and complete copies of two documents referenced by and incorporated into Plaintiffs' Amended Complaint in this proceeding, but not attached to that pleading.

510419.01

2.      The first document, annexed hereto as Exhibit 1, is the parties' Agreement of Lease, dated August 23, 2006, and relied upon by Plaintiffs in support of their allegations contained in Paragraph 41 of the Amended Complaint.

3.      The second document, annexed hereto as Exhibit 2, is a letter from me to Plaintiff Clayton Hertzoff dated May 22, 2007, and relied upon by Plaintiffs in support of their allegations contained in Paragraphs 25, 26, and 39 of the Amended Complaint.

4.      Because Defendants' Motion to Dismiss certain of Plaintiffs' claims cannot be fully understood without providing the Court with copies of the documents referenced in, but not appended to, the Amended Complaint, they are respectfully provided with this Declaration for the Court's convenience and consideration.

_Noreen Diaz_
NOREEN DIAZ

Sworn to before me
this _13_ day of July, 2007

_Frederick Marshall_
Notary Public

FREDERICK MARSHALL
Notary Public, State of New York
No. 4976533
Qualified in Nassau County
Term Expires Jan. 14, 2011

510419.01

# STANDARD FORM OF OFFICE LEASE
## The Real Estate Board of New York, Inc.

**294**

*AGREEMENT OF LEASE*, made as of this 23 day of AUGUST 2006,

between EDWIN HERTZOFF and BEVERLY HERTZOFF, individuals residing at 2

Ripley Brook N. Short Hills, NJ party of the first part, hereinafter referred to collectively as "Owner" or "Landlord", and UNITED ORTHOPAEDIC APPLIANCES CO., INC., a New York corporation, having an address at 2091 Front Street East, Maspeth, N.Y. 11554 party of the second part, hereinafter referred to as "Tenant".

**WITNESSETH:** Owner hereby leases to Tenant and Tenant hereby hires from Owner the premises (hereinafter collectively called "premises", "demised premises", "Premises" or "Demised Premises") consisting of the entire first (1ˢᵗ) and second (2ⁿᵈ) floors and the entire basement space, substantially shown as hatched on the floor plans annexed hereto as Exhibit 'A' and made a part hereof, in the building known as 791 Broadway, New York, New York (hereinafter called "building" or "Building") for the term (hereinafter called "term" or "Term") to commence on the date hereof (the "Commencement Date"), and to end on the last day of the month on which the two (2) year anniversary of "Commencement Date occurs (the "Expiration Date"), or until such term shall sooner cease and expire as hereinafter provided, both dates inclusive, and at an annual rental rate (hereinafter called "rent", "fixed rent" or "fixed annual rent"), as set forth in Article 37 hereof, together with all other sums of money as shall become due and payable by Tenant under this Lease (hereinafter called "additional rent" or "Additional Rent"), which Tenant agrees to pay in lawful money of the United States by check drawn on a bank or trust company which is a member of the New York Clearing House Association, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment on the execution hereof.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1.     Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy:** 2.     Tenant shall use and occupy the demised premises for office for the production, fitting and sale of prosthetics, orthotics and other similar items and for any other legal use.

*(Body columns — rotated legal text, reproduced below)*

**Tenant Alterations:**

3.     Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner...

**Maintenance and Repairs:**

4.     Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein. Tenant shall be responsible for all damage or injury to the demised premises or any other part of the building and systems and equipment thereof...

**Window Cleaning:**

5.     Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance, Floor Loads:**

6.     Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters, Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises...

**Page 1 of 6**

Subordination:

Property Loss, Damage, Indemnification:

Destruction, Fire and Other Casualty:

Eminent Domain:

Assignment, Mortgage, Etc.:

Electric Current:

Access to Premises:

Twelve

**Vault, Vault Space, Area:**

**14.**

**Occupancy:**

**15.**

**Bankruptcy:**

**16. (a)**

(b)

**Default:**

**17. (1)**

(2)

**Remedies of Owner and Waivers of Redemption:**

**18.**

**Fees and Expenses:**

**19.**

**Building Alterations and Management:**

**20.**

**No Representations by Owner:**

**21.**

**End of Term:**

22. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear and damages which Tenant is not required to repair as provided in Article 4 excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this Lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding business day.

**Quiet Enjoyment:**

23. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 31 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:**

24. If Owner is unable to give possession of the demised premises at the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for Owner's inability to obtain possession or complete construction) until after Owner shall have given Tenant notice that the premises are substantially ready for Tenant's occupancy. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease except as to the covenant to pay rent. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:**

25. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations, set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation...

**Waiver of Trial by Jury:**

26. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease...

**Inability to Perform:**

27. This Lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment or fixtures if Owner is prevented or delayed from so doing by reason of strike or labor troubles or any cause whatsoever including, but not limited to, government preemption or restrictions or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of supply and demand which have been or are affected by war or other emergency.

**Bills and Notices:**

28. Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, or at such other address as Tenant shall designate...

---

**Services Provided by Owner:**

29. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease, Owner shall provide: (a) necessary elevator facilities on business days from 8 a.m. to 6 p.m. and have one elevator subject to call at all other times; (b) heat to the demised premises when and as required by law, on business days from 8 a.m. to 6 p.m.; (c)...

**Captions:**

30. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:**

31. The term "office," or "offices," wherever used in this lease, shall not be construed to mean premises used as a store or stores, for the sale of merchandise, of any kind, or for any purpose other than that of offices...

**Adjacent Excavation – Shoring:**

32. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work...

**Rules and Regulations:**

33. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with, the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt...

**Rider to be added if necessary.**

In the lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

Security: §   34.—Tenant has deposited with Owner the sum of ...

SEE RIDER ANNEXED HERETO CONTAINING ARTICLES 37 THROUGH 48 HEREOF.

Estoppel Certificate.  35. Tenant, at any time, and from time to time, upon at least 10 days' prior notice by Owner, shall execute, acknowledge and deliver to Owner ...

Successors and Assigns.  34. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, ...

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner: ..................................

UNITED ORTHOPAEDIC APPLIANCES CO., INC.

EDWIN HERTZOFF
BEVERLY HERTZOFF

Witness for Tenant: ..................................

By: [signature]
Name: Loreen Diaz
Title: President

ACKNOWLEDGEMENTS

CORPORATE OWNER
STATE OF NEW YORK,   ss.:
County of

On this         day of                  , 19   ,
before me personally came
to me known, who being by me duly sworn, did depose and say that
he resides in
that he is the
of
the corporation described in and which executed the foregoing instrument; as OWNER; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

INDIVIDUAL OWNER,
STATE OF NEW YORK,   ss.:
County of

On this         day of                  , 19   ,
before me personally came
to be known, and known to me to be the individual described in and who, as OWNER, executed the foregoing instrument and acknowledged to me that
executed the same.

CORPORATE TENANT
STATE OF NEW YORK,   ss.:
County of

On this         day of                  , 19   ,
before me personally came
to me known, who being by me duly sworn, did depose and say that
he resides in
that he is the
of
the corporation described in and which executed the foregoing instrument, as TENANT; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

INDIVIDUAL TENANT
STATE OF NEW YORK,   ss.:
County of

On this         day of                  , 19   ,
before me personally came
to be known, and known to me to be the individual described in and who, as TENANT, executed the foregoing instrument and acknowledged to me that
executed the same.

## GUARANTY

FOR VALUE RECEIVED, and in consideration for and as an inducement to Owner to make the within lease with Tenant, the undersigned guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the covenants, conditions and agreements, therein provided to be performed and observed by Tenant, ...

Guarantor's Residence ................................

Firm Name ................................

Business Address ................................

Dated: ................................ 19____

Witness ................................

Guarantor ................................

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF             )

On this _____ day of _____, 19__, before me personally came _____ to me known and known to me to be the individual described in, and who executed the foregoing Guaranty and acknowledged to me that he executed the same.

................................ Notary

---

## IMPORTANT - PLEASE READ

RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 33.

1. The sidewalks, entrances, driveways, passages, courts, ...

14. Tenant shall not move any safe, heavy machinery, heavy equipment, bulky matter, or fixtures into or out of the building without Owner's prior written consent. ...

16. ................................

---

## STANDARD FORM OF

## Office Lease



The Real Estate Board of New York, Inc.
© Copyright 1994. All rights Reserved.
Reproduction in whole or in part prohibited.

TO

................................

Dated _____ 19____

Rent Per Year ................................

Rent Per Month ................................

From ................................

To ................................

Term ................................

Drawn by ................................

Checked by ................................

Entered by ................................

Approved by ................................

Page 6 of 6

Printed using pcFORMideas™ Software, v. 40k, (408) 345-3107

RIDER ANNEXED TO AGREEMENT OF LEASE
BETWEEN EDWIN HERTZOFF AND BEVERLY HERTZOFF (LANDLORD),
AND UNITED ORTHOPAEDIC APPLIANCES CO., INC. (TENANT)

**FIXED RENT AND
PRORATION OF
FIXED RENT:**

37.    A.    The Fixed Rent shall be payable as follows:

(a)    for the period from the Commencement Date through the last day
at a rental rate of $120,000 per annum, and

(b)    for the period from the first day of the month immediately
following the month in which the first anniversary of the Commencement Date shall occur
through the last day of the month in which the second anniversary of the Commencement Date
shall occur (the "Expiration Date") at a rental rate of $144,000.00 per annum.

B.    If the Commencement Date shall not be the first or last day of a
month (as the case may be), Fixed Rent shall be prorated on a per diem basis, and any excess
amount paid on the execution of this Lease shall be credited to the Fixed Rent for the next
calendar month.

**ADJUSTMENTS OF RENT:**

38.    A.    Definitions as used herein:

(a)    "Taxes" shall mean (1) the amount finally determined to be legally
payable, by legal proceedings or otherwise, of all real estate taxes or other taxes imposed in
substitution thereof, assessments (including any Business Improvement District), and other
governmental impositions and charges which shall be levied, assessed or imposed, or become due
and payable or become liens upon, or arise in connection with the use, occupancy or possession
of, the Building or any part thereof or interest therein during the term of this Lease "Taxes" shall
not include (i) any succession, gains, recording income, franchise, transfer, inheritance, capital
stock, excise, excess profits, occupancy or rent, gift, estate, foreign ownership or control, payroll
or stamp tax of Landlord or any superior party, (ii) any other tax, assessment, charge or levy on
the rent reserved under this Lease, (iii) any charges and/or taxes which are paid by individual
tenants, which shall be the obligation of such tenants as applicable or (iv) any penalties or late
charges imposed against Landlord or any superior party with respect to real estate taxes,
assessments and the like.

(b)    "Tax Base" shall mean the Taxes for the July 1, 2006 to June 30,
2007 Tax Year.

(c)    "Tenant's Proportionate Share" shall mean 58.7%.

(d)    "Tax Year" shall mean each period of twelve months, commencing
on the first day of July, in which occurs any part of the Term or such other period as may
hereafter be adopted as the fiscal year for real estate tax purposes of The City of New York.

"Landlord's Tax Statement" shall mean an annual statement setting forth the amount of Tenant's
Tax Payment payable by Tenant for a specified Tax Year pursuant to this Article.

B.    If Taxes payable in any Tax Year shall exceed the Tax Base,
Tenant shall pay as additional rent a sum (hereinafter referred to as "Tenant's Tax Payment")
equal to Tenant's Proportionate Share of the amount by which the Taxes for such Tax Year
exceed the Tax Base.

C.    Tenant's Tax Payment for each Tax Year shall be due and payable
in installments in the same manner that Taxes for such Tax Year are due and payable by Landlord
to the City of New York. Tenant shall pay each such installment of Tenant's Tax Payment within
twenty (20) days after the rendering of a Landlord's Tax Statement by Landlord to Tenant, which
statement shall be rendered so as to require Tenant's Tax Payment to be paid by Tenant no more

than thirty (30) days prior to the date such Taxes first become due. Landlord's Tax Statement shall set forth in reasonable detail the computation of Tenant's Tax Payment with respect to the particular installment(s) being billed, and shall accurately reflect the amount of Taxes owed by Landlord with respect to the Property. A copy of the relevant tax bill shall accompany each statement or if such bill is not then available, Landlord shall deliver a copy thereof to Tenant promptly after Landlord's receipt thereof. If Landlord shall receive a refund or credit of Taxes for any Tax Year for which Tenant has made a Tenant's Tax Payment, Landlord shall either promptly pay to Tenant, or, at Landlord's election, credit against subsequent payments by Tenant of Rent hereunder, Tenant's Proportionate Share of the refund or credit, in either event not to exceed Tenant's Tax Payment paid for such Tax Year.

D.     At Tenant's request, Landlord shall commence a protest, action or proceeding to reduce the assessment applicable to Property. In the event Landlord fails to commence such protest, action or proceeding within thirty (30) days after request by Tenant, Tenant shall be permitted to commence the same as Landlord's agent and Tenant shall be entitled to reimbursement of any costs and expenses incurred by Tenant in connection with such protest, action or proceeding as well as Tenant's proportionate share of any refund with respect to Taxes previously paid by Tenant.

UTILITIES:

39.     Modifying the provisions of Articles 12 and 29 of this Lease, Tenant shall obtain and pay for all electric current, heating oil, gas, water and other fuels and utilities supplied to, used in connection with or servicing the Premises and all mechanical systems therein, including without limitation, the heating, ventilation and air-conditioning system and lighting equipment and systems, by direct application to and arrangement with the utility company or companies providing such servicing and utilities to the Premises. Notwithstanding anything to the contrary contained herein, all building systems servicing the Premises shall be delivered to Tenant in good working order on the Commencement Date and Tenant's sole responsibility for the maintenance of such systems shall be limited to the fees payable for a maintenance contract for the same throughout the term of this Lease.

BROKERAGE:

40.     Landlord and Tenant each represents that in the negotiation of this Lease it dealt with no broker or brokers. Landlord and Tenant each hereby agrees to indemnify and hold the other harmless from and against any and all claims, liabilities, suits, costs and expenses including reasonable attorneys' fees and disbursements arising out of any inaccuracy or alleged inaccuracy of the above representation. The provisions of this Article shall survive the expiration or sooner termination of this Lease.

ASSIGNMENT AND SUBLETTING:

41.     INTENTIONALLY OMITTED.

SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT:

42.     Landlord shall obtain from all present and future ground leases, superior leases, and grants of term of the land on which the Building stands, all mortgages and building loan agreements, including leasehold mortgages and spreader and consolidation agreements, which may now or hereafter affect the land, the Building or any superior lease and all advances made thereunder, and all amendments, modifications, supplements, renewals, substitutions, refinancings and extensions thereto or thereof an agreement in recordable form between Tenant and any superior mortgagee or superior lessor, as the case may be, which shall provide in substance that, as long as Tenant is not then in default under this Lease after notice and the expiration of all applicable cure periods, if any, such superior mortgagee or superior lessor, as the case may be, will not name or join Tenant as a party defendant or otherwise in any suit, action or proceeding to enforce any such superior mortgage or superior lease, as the case may be, nor will this Lease be terminated by enforcement of any rights given to any such superior mortgage or superior lessor, as the case may be, pursuant to the terms, covenants or conditions contained in any such superior mortgage or superior lease, as the case may be.

## INDEMNIFICATION:

43.    Landlord shall indemnify and save harmless Tenant against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Tenant shall not be reimbursed by insurance, including reasonable attorneys' fees actually incurred by Tenant, if and to the extent caused by or arising from (i) any breach by Landlord, Landlord's agents, contractors, employees, invitees, or licensees, or (ii) any covenant or condition of this Lease, or (ii) the negligence or willful misconduct of Landlord, Landlord's agents, contractors, employees, invitees or licensees, or (iii) any acts, omissions or negligence of Landlord, or the contractors, agents, employees, invitees or licensees of Landlord, in or about the Premises or the Property.

## ALTERATIONS:

44.    Supplementing the provisions of Article 3, Tenant shall be permitted to make all non-structural alterations that do not materially adversely effect the Building utility systems or the exterior of the Building, provided that Tenant delivers plans and specifications (to the extent plans and specifications are traditionally prepared for such alteration) and Landlord shall approve the same, which approval shall be unreasonably withheld, conditioned ore delayed. All Alterations shall upon installation become the property of Landlord and be surrendered on the expiration date or sooner termination of the Term hereof.

## HAZARDOUS MATERIALS

45.    A.    Tenant hereby represents, warrants and covenants that it shall not install or permit any Hazardous Materials (as hereinafter defined) to be placed or stored in or about the Premises (other than Hazardous Materials installed, placed, stored or placed in the Premises or the Building by Tenant). Tenant shall indemnify and hold Landlord harmless from and against any claims, demands, losses, liabilities, penalties and damages arising out of, or in any way connected with the installation, placement, storage or release of Hazardous Materials used or installed by Tenant, Tenant's employees, contractors or agents upon the Premises. As used herein, the term "Hazardous Materials" shall be any petroleum product, asbestos product, or any other material, substance or waste that is now, or hereafter during the Term, recognized as being hazardous or dangerous to health or the environment by any federal, state or local agency having jurisdiction over the Building of which the Premises is a part.

B.    Landlord represents, warrants and covenants that (i) to the best of Landlord's knowledge, there are no discharges of Hazardous Materials at or about the Building or the Land in violation of any Legal Requirement and (ii) Landlord has complied, as of the date hereof, and Landlord shall, at Landlord's sole cost and expense, continue to comply (or to cause compliance), with all legal requirements that concern the management, control, discharge, treatment and/or removal of Hazardous Materials at or about the Building or the land. Landlord shall indemnify and hold Tenant harmless from and against any claims, demands, losses, liabilities, penalties and damages arising out of, or in any way connected with the installation, placement, storage or release of Hazardous Materials in or about the Building or the land in violation of applicable legal requirements. Landlord shall be responsible, at Landlord's expense, for compliance with any applicable legal requirements, relating to the removal, encapsulation or other treatment of any Hazardous Material located within the Premises, unless such Hazardous Material shall have been placed in the Premises by Tenant or by any of Tenant's agents, employees or contractors. This covenant shall survive the expiration or earlier termination of this Lease.

## TERMINATION OPTION:

46.    Landlord or Tenant shall each have the right at any time after the first (1st) anniversary of the Commencement Date to cancel and terminate this Lease (the "Termination Option"), provided that the terminating party shall give at least ninety (90) days' prior written notice to the other of it's exercise of the Termination Option (the "Termination Notice"). In the event either party shall deliver the Termination Notice pursuant to the provisions of this Article, this Lease shall terminate and expire on the later of the date set forth in the Termination Notice as the termination date, if applicable, or ninety (90) days after the delivery of the Termination Notice, with the same force and effect as though said date were the expiration date and neither party shall have any liability to the other with respect to this Lease, except pursuant to those provisions which expressly survive its expiration or sooner termination.

- 3 -

441745.02

**DEFAULT:**

47.    Notwithstanding anything contained herein to the contrary, Tenant shall have the right to cure: (i) monetary defaults within fifteen (15) days after receiving notice of such a default from Landlord; and (ii) non-monetary defaults within thirty (30) days after receiving notice of such a default from Landlord. Notwithstanding anything contained herein to the contrary, it shall not be considered an event of default under this lease if Tenant shall have commenced to cure a non-monetary event of default within the time periods specified above and if Tenant shall thereafter proceed with due diligence and good faith to complete the curing of such breach within a reasonable period of time.

**MISCELLANEOUS PROVISIONS:**

48.    A.    If any of the provisions of this Lease, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

B.    Notwithstanding anything to the contrary contained in Article 9 or elsewhere in this Lease, if (i) an independent architect determines that the Premises cannot be restored in sixty (60) days after the fire or other casualty or (ii) the Premises or access thereto are damaged or rendered untenantable by fire or other casualty at any time during the last year of the term (whether or not any specified percentage of the Premises are damaged or rendered untenantable), Tenant shall have the right to terminate this Lease upon ten (10) days prior written notice to Landlord.

C.    Notwithstanding anything to the contrary contained in this Lease, including without limitation, Article 6, it is specifically understood that it shall be Landlord's obligation to make any and all repairs and/or alterations required to be performed in order to cure any violations of any federal, state, or local laws, ordinances, rules, regulations or requirements (collectively, "requirements") arising from or relating to conditions existing in the Premises prior to the commencement of the lease term, and any and all requirements governing (a) the installation of sprinklers and compliance with any fire safety regulations and (b) the removal or encapsulation of asbestos. Landlord further represents that the common areas of the Building and the means of egress and ingress thereto are in compliance with the Americans With Disabilities Act of 1990 as well as any other similar state and local and legal requirements currently exists. Tenant's responsibility for compliance with requirements shall be limited to non-structural alterations which are required as a result of Tenant's particular use of the Premises.

D.    Except as otherwise provided for in this Lease, Landlord shall provide Tenant with access to the Premises twenty-four (24) hours per day, seven (7) days per week, throughout the term of this Lease.

E.    All exhibits to this Lease and any and all rider provisions attached to this Lease are hereby incorporated into this Lease. If any provision contained in any rider hereto is inconsistent or in conflict with any printed provision of this Lease, the provision contained in such rider shall supersede said printed provision and shall control.

F.    This Lease may be executed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same instrument.

G.    Tenant shall be permitted to install signage and/or awnings on the exterior of the Building with Landlord's consent, which consent shall not be unreasonably withheld, conditioned or delayed, provided that the same comply with all applicable legal requirements.

H.    Tenant shall name Landlord as an additional insured on the insurance required to be carried by Tenant hereunder.

- 4 -

441745.02

**United Orthopaedic Appliances Co., Inc.**
791 Broadway
New York, NY 10003
Tel: 212-674-2366
Fax: 212-473-0658

May 22, 2007

Clayton Herztoff
791 Broadway
New York, NY 10003

Dear Clayton,

This letter serves as a formal notification regarding your employment agreement and commission with United Orthopaedic Appliances Co., Inc. Commission is based on collected monies for each quarter and is dispensed after management reviews all reports. Payment of commission will be paid in accordance with the general policy of U.O.A./C.O.S.I.

Commission for the time period of January 1, 2007 through March 31, 2007 was $8163.26 less $4,163.26, which represents the cost to U.O.A. Inc. parts and labor for a case that was mishandled by you, employee of United Orthopaedic Appliances Co., Inc. You, never properly maintained the case of Isaiah Johnson ID # 5062, and this led to a deficit of receivables in the amount of $25,000.00. You the O&P manager verbally acknowledged the lack of judgment during a company meeting held on April 30, 2007 regarding the character and integrity of patient, Isaiah Johnson in the presence of Martin Diaz and General Manager, Laurie M. Smith You blatantly admitted your poor judgment and incompetence for dispensing the prosthetic devices to Isaiah Johnson. You also admitted to the owners you take full responsibility for your actions and believed Isaiah Johnson was trustworthy and felt confident he would forward the insurance checks to United Orthopaedic Appliances Co.

Clayton, you also admitted this patient had been seen while being under the influence of alcohol and was not exactly a "model citizen". After more than twenty years in this field, clearly you should be able to make conscientious decisions regarding reimbursement from a non-participating insurance company. You acknowledged that you were aware that Isaiah Johnson was going to receive the insurance checks directly to his home. Therefore, the full liability of this case, which included material and man-hours, consisting over $4163.00, belongs to you, the practitioner.

Sincerely,

Noreen Diaz
President

Cc. Colleen

Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (MT-7572)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200
*Attorneys for Defendants Noreen Diaz and*
*United Orthopaedic Appliances Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BEVERLY HERTZOFF, EDWIN HERTZOFF,     :
and CLAYTON HERTZOFF,                                  :
                                                                           :
                              Plaintiffs,                      :
                                                                           :
          -against-                                              :          07 CV 3157 (CM)(MHD)
                                                                           :
NOREEN DIAZ and UNITED ORTHOPAEDIC     :
APPLIANCES CO., INC.                                      :
                                                                           :
                              Defendants.                    :
                                                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS


GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendants*
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

*Of Counsel:*
*Andrew L. Zwerling (AZ-5455)*
*Colleen M. Tarpey (CT-7572)*

510417.03

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................................ ii

Preliminary Statement ..................................................................................... 1

Factual Background ......................................................................................... 3

POINT I

    PLAINTIFFS' CLAIM FOR BREACH OF THE STOCK  PURCHASE
    AGREEMENT IS WOEFULLY PREMATURE .................................................. 7

POINT II

    PLAINTIFF CLAYTON HERTZOFF'S CLAIMS FOR VIOLATION OF
    NEW YORK LABOR LAW 191-C AND FOR  BREACH OF HIS
    EMPLOYMENT AGREEMENT AND CONSTRUCTIVE DISCHARGE
    FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE
    GRANTED AND MUST BE DISMISSED ........................................................ 10

    A.    The Claim Under New York Labor Law 191-c Is Improperly Pled .......... 11

    B.    Plaintiff Clayton Hertzoff Has Failed To Allege A "Material"
         Breach  Of The Employment Agreement Because His Allegations
         Of "Breach" Do Not State A Claim As They Fail To Correspond
         To Any Contractual Obligation Of UOA .................................................. 12

    C.    Plaintiff Clayton Hertzoff's Claim For Constructive Discharge
         Fails To Allege, Nor Can It, That He Was Forced To Resign, And
         Thus Fails To State A Claim .................................................................... 14

    D.    Plaintiff Clayton Hertzoff's Claim For "Anticipatory" Breach Of
         The Employment Agreement Must Be Dismissed For Failure To
         Plead That The Alleged Breach Anticipated Rendered His
         Performance Under The Agreement Impossible Or That It
         Adequately Demonstrated UOA's Intention Not To Continue As
         His Employer ......................................................................................... 15

POINT III

    PLAINTIFFS' CLAIM FOR NON-PAYMENT OF RENT
    DELIBERATELY MISLEADS THIS COURT AND MUST BE
    DISMISSED ............................................................................................... 16

Conclusion ..................................................................................................... 17

508835.01

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Auerbach v. Board of Education of the Harborfields Central School District,*
  136 F.3d 104 (2d Cir., 1998)..................................................................7, 17

*Harsco Corp. v. Segui,*
  91 F.3d 337 (2d Cir., 1996)..................................................................10, 13

*Mina Investment Holdings, Ltd. v. Lefkowitz,*
  51 F. Supp. 2d 486 (S.D.N.Y., 1999)......................................................14, 16

*Parker v. Chrysler Corp.,*
  929 F. Supp. 162 (S.D.N.Y. 1996) ..............................................................14

*Pena v. Brattleboro Retreat,*
  702 F.2d 322 (2d Cir., 1983)........................................................................14

*Teachers Insurance and Annuity Association of America v. Coaxial
  Communications of Central Ohio, Inc.,*
  807 F. Supp. 1155 (S.D.N.Y. 1992)..............................................................15

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,*
  103 F. Supp. 2d 711 (S.D.N.Y., 2000)..........................................................13

*Unique Medium, LLC v. Town of Perth,*
  309 F. Supp. 2d 338 (N.D.N.Y., 2004)............................................................7

### STATE CASES

*American Insurance Association v. Chu,*
  64 N.Y.2d 379, 487 N.Y.S.2d 311 (1985) ....................................................8

*Cuomo v. Long Island Lighting Company,*
  71 N.Y.2d 349, 525 N.Y.S.2d 828 (1988) ....................................................8

*Espada 2001 v. New York City Campaign Finance Board,*
  302 A.D.2d 299, 754 N.Y.S.2d 544 (1st Dep't 2003)....................................9

*Fischetto v. LB 745 LLC,*
  36 A.D.3d 538, 829 N.Y.S.2d 54 (1st Dep't, 2007)......................................12

*In re Guardianship of Chantel Nicole R..,*
  34 A.D.3d 99, 821 N.Y.S.2d 194 (1st Dep't 2006)........................................8

*Mount Sinai Hospital v. Allstate Insurance Co.,*
  25 A.D.3d 673, 811 N.Y.S.2d 726 (2d Dep't 2006)........................................8

ii

*Murphy v. D'Apice,*
    123 A.D.2d 415, 506 N.Y.S.2d 605 (2d Dep't 1986).......................................................9

*NYPIRG v. Carey,*
    42 N.Y.2d 527, 399 N.Y.S.2d 621, 369 N.E.2d 1155 (1977)........................................8

*Nyack Hospital v. General Motors Acceptance Corp.,*
    27 A.D.3d 96, 808 N.Y.S.2d 399 (2d Dep't 2005).........................................................8

*Ocean Diagnostic Imaging, P.C. v. Nationwide Mutual Insurance Company,*
    2006 WL. 796973 (App. Term, 2nd and 11th Jud. Dts. 2006).....................................9

*Pirog v. Cockburn,*
    34 A.D.3d 819, 823 N.Y.S.2d 899 (2d Dep't 2006).......................................................8

*Richbell Information Services, Inc. v. Jupiter Partners, L.P.,*
    309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003).....................................................9

*Suffolk County v. Long Island Power Authority,*
    177 Misc. 2d 208, 673 N.Y.S.2d 545 (Sup. Ct. Nas. Co. 1998)....................................8

*Vista Surgical Supplies, Inc. v. General Assurance Company,*
    2006 WL. 1540358 (App. Term, 2nd and 11th Jud. Dts. 2006)....................................9

*Zink v. Heiser,*
    109 Misc. 2d 354, 438 N.Y.S.2d 209 (Sup. Ct. Queens Co. 1981).................................9

## FEDERAL STATUTES

28 U.S.C. §1332(a) ..................................................................................................5, 10

## PRELIMINARY STATEMENT

Parties and their attorneys who intend to file a lawsuit are obligated to investigate the viability of the claims prior to commencement of the action. This is because the filing of frivolous claims clogs congested court dockets and imposes a needless expenditure of time, resources and money on the judicial system and the defendants who are named in such lawsuits. Parties and their counsel must therefore preliminarily probe the strength of the allegations underlying their claims in a realistic and objective manner, and also ensure that there are no procedural impediments to filing suit. There is a strong incentive to taking these steps: severe sanctions can be imposed where a party fails in fulfilling these obligations.

As will be shown, in their lawsuit, Plaintiffs Beverly, Edwin and Clayton Hertzoff ("Plaintiffs") have tossed these principles by the wayside.

This matter involves the sale of the stock of Plaintiffs' family owned and operated orthopedic appliances company – Defendant United Orthopaedic Appliances, Inc. ("UOA") – to Defendant Noreen Diaz ("Ms. Diaz"). At the time of the sale of UOA to Ms. Diaz, the parties entered into the two agreements, each of which are annexed to and incorporated by reference into the Amended Complaint in this matter, dated June 8, 2007. The first agreement was a "Stock Purchase Agreement" entered into between Ms. Diaz as the purchaser and the Hertzoffs as the sellers, dated August 20, 2006, which transferred the stock of UOA to Ms. Diaz. *See*, Amended Complaint dated June 8, 2007 (hereinafter, "Am. Cmplt."), Exhibit A. The second was an Employment Agreement, dated August 20, 2006, between UOA, under Ms. Diaz' control as the

1

employer, and Clayton Hertzoff, Beverly and Edwin Hertzoffs' son, as the employee. *See*, Am. Cmplt., Exhibit C.

Plaintiffs now claim breaches of both agreements and the "constructive discharge" of Clayton Hertzoff from his position as a prosthetist at UOA. They are also pursuing a claim for unpaid rent. The claims alleged, however, must be dismissed.

As a threshold matter, this Court lacks subject matter jurisdiction over the claim for the alleged breach of the Asset Purchase Agreement. Even accepting the facts as alleged in the Amended Complaint as true, this claim is not yet ripe for adjudication. As will be shown, the monies allegedly due Plaintiffs under this contract are not due until *August 20, 2008,* making this claim woefully premature and subject to dismissal. Remarkably, despite being put on notice of this fact in a Rule 11 letter, counsel for Plaintiffs has refused to withdraw this premature claim.

Further, Plaintiffs fail to state a claim upon which relief can be granted with regard to the alleged breach of the Employment Agreement and Clayton Hertzoff's claim for "constructive discharge" from his employment with UOA. For example, Clayton's claim under Labor Law § 191-c for an alleged unpaid bonus fails to plead that he had been terminated prior to the commencement of that claim as required by that statute; to the contrary, Plaintiffs assert that Clayton was employed by Defendants at the time of the alleged failure to pay the bonus. Similarly, for example, Clayton's claim of constructive discharge fails as a matter of law because Plaintiffs fail to allege, nor can they, that Clayton was forced to resign from UOA.[1]

---

[1] Clayton Hertzoff's violations of the Employment Agreement are the subject of a separate Order To Show Cause seeking injunctive relief that is before the Court.

2

As for the claim of unpaid rent, that too is premature. (In any event, the rent has since been paid, rendering this claim moot.)

Accordingly, and for the reasons set forth herein, the causes of action in the Amended Complaint for breach of the Asset Purchase Agreement and Clayton Hertzoff's claims for breach of the Employment Agreement and his constructive discharge from UOA must be dismissed.

## FACTUAL BACKGROUND

Plaintiffs sold UOA to Ms. Diaz in August, 2006. *See*, Am. Cmplt., ¶9. As consideration for the sale of the stock to Ms. Diaz, UOA agreed to attempt to bill for and collect certain outstanding accounts receivable accrued prior to the sale from UOA's customers during the two year period immediately following the transfer of the stock, and to apply those accounts receivable to certain pre-sale debts of the company. *See*, Am. Cmplt., Exhibit A, ¶1.3.

The "Net Accounts Receivable" that UOA is obligated to collect and apply to the accounts payable are defined by the Stock Purchase Agreement as "the accounts receivable of [UOA] earned prior to and collected during the twenty-four (24) month period immediately following the Closing Date [of August 8, 2006] less any refunds or repayments." Am. Cmplt., Exhibit A, ¶ 1.3. The Stock Purchase Agreement requires UOA to then pay the "Net Accounts Receivable" (hereinafter, the "A/R") to three accounts payable – an HSBC line of credit, back rent owed by UOA to the Hertzoffs as landlords, and a promissory note owed by UOA to Beverly Hertzoff -- each of these items to be paid off in that order from the A/R actually collected. *See*, Am. Cmplt., Exhibit A, ¶ 1.3; Schedule 1.2.

3

In the event that the A/R collected exceeds the amount of the three accounts payable, the surplus is to be paid to the Hertzoffs within thirty days of the second annual anniversary of the agreement, *i.e., August 20, 2008. See*, Am. Cmplt., Exhibit A, ¶ 1.3. In the event of a shortfall between the A/R actually collected and the amount of the accounts payable, UOA is obligated to fund the shortfall and pay off the accounts payable, up to the maximum amount of the A/R actually collected plus $100,000. *See*, Am. Cmplt., Exhibit A, ¶ 1.3. Accordingly, by definition as set forth in the parties' Stock Purchase Agreement, the amount of the A/R cannot be calculated until the 24 month period in which UOA is entitled to collect the A/R is completed, *i.e,* on *August 8, 2008*. Further, no surplus or shortfall between the A/R and the accounts payable can be ascertained until the collection period ends on *August 8, 2008*.

In addition to the Stock Purchase Agreement, UOA also entered into an Employment Agreement with Clayton Hertzoff, presumably in consideration for his sale of his share of UOA stock to Ms. Diaz. Pursuant to the terms of the Employment Agreement, Clayton Hertzoff would provide services to UOA as a prosthetist and be expected to maintain a certain personal net sales amount each year for a period of ten years, in exchange for a base salary, commissions on his net sales, the possibility of a discretionary bonus, life and health insurance benefits, and certain other perquisites, such as a company car and five weeks of paid vacation plus sick and personal days. *See*, Am. Cmplt., Exhibit C, Section 3.

Plaintiffs filed their initial complaint on or about April 19, 2007 (the "Complaint"), which pleading essentially three claims against Defendants. The first claim involved the breach of the Stock Purchase Agreement, as set forth above. *See*, Complaint, ¶¶ 10-14. The second claim was for UOA's alleged non-payment of rent to the Hertzoffs in their capacity as landlords to UOA. *See*, Complaint, ¶¶ 15-20. The third and final claim was for alleged breach of the

4

Employment Agreement premised upon UOA's alleged failure to pay Clayton Hertzoff a "bonus" due to him. *See*, Complaint, ¶¶ 21-24.

On June 1, 2007, Defendants (through their legal counsel) sent a letter to Plaintiffs' counsel stating that the claim for the "breach" of the Asset Purchase Agreement was not yet ripe for adjudication because the outstanding monies were not due until August 20, 2008, and that all back rent had been paid (and enclosing copies of checks). In addition, Defendants advised Plaintiffs and their legal counsel that the dispute involving Clayton Hertzoff's bonus appeared to be valued at no more than $4,163 and that, as a result, this Court could not exercise jurisdiction over the matter, because the amount failed to meet the minimum jurisdictional threshold for diversity jurisdiction pursuant to 28 USC §1332(a).

By the June 1, 2007 letter, Plaintiffs and their counsel were advised that Defendants would seek sanctions against them as appropriate pursuant to Rule 11 of the Federal Rules of Civil Procedure ("FRCP") should Plaintiffs fail to withdraw the Complaint. In response, however, Plaintiffs amended the Complaint rather than withdraw it.

The Amended Complaint, dated June 8, 2007, restates the premature cause of action for "breach" of the Stock Purchase Agreement." The Amended Complaint also recasts the original unpaid rent claim for the months of March through May 2007 as now including claim for unpaid rent for June 2007, and for a total amount of unpaid rent in the amount of $10,000. *See*, Declaration of Noreen Diaz, sworn to July 13, 2007 (hereinafter, "Diaz Dec."), Exhibit 1. Despite knowledge that the March through May rents were paid, those claims were maintained in the Amended Complaint. *See*, Am. Cmplt., ¶¶ 40-43. Moreover, the Amended Complaint intentionally misleads the Court regarding the viability of Plaintiffs' claim for unpaid rent in the

5

amount of $10,000 for June rent by simply omitting the Defendants' right to cure the alleged

default within 15 days of the Plaintiffs' June 5, 2007 notice of default for unpaid June rent, as set

forth in the Agreement of Lease between UOA and the Hertzoffs. *See*, Diaz Dec., Exhibit 1;

Rider ¶47. Since the Defendants' time to cure the alleged default had not yet elapsed, Plaintiffs

had no viable claim for unpaid rent as alleged as of the date of the Amended Complaint on June

8, 2007.

Finally, the Amended Complaint takes a different tack with regard to the $4,163 claim for

alleged "breach" of Clayton Hertzoff's Employment Agreement. It adds two state law causes of

action premised upon the New York Labor Law, one of which must be dismissed as improperly

pled. In apparent recognition that the claim for breach of the Employment Agreement premised

upon unpaid commissions would fail to sustain the jurisdictional amount required to maintain the

action in Federal Court, Clayton and his counsel added a claim for "constructive discharge,"

apparently hoping to allege damages in the amount of all salary and commissions he would have

earned over the ten-year period of the Employment Agreement. *See*, Am. Cmplt., ¶¶ 31-37. The

claim, however, fails to state a claim for relief as a result, among other things, of Clayton's

failure to allege (and inability to allege, since he was still working for UOA on June 8, 2007) that

he had resigned his position in light of the "intolerable" working conditions imposed upon him

by UOA.

Moreover, as set forth in the May 22, 2007 letter from Ms. Diaz to Clayton Hertzoff

referenced in the Amended Complaint, Clayton Diaz cannot claim a "material" breach of the

Employment Agreement on the sole grounds that UOA failed to pay him only one half of the

commissions he earned in one quarter, given that it indisputably fulfilled all other terms and

conditions of its employment of Clayton Hertzoff, including the paying of base salary, all other

6

commission amounts, health and life benefits as set forth in the Employment Agreement, paid

vacations, and the like. *See*, Diaz Dec., Exhibit 2.

Accordingly, and for the reasons detailed below, all but two claims in the Amended

Complaint must be dismissed.

<u>**POINT I**</u>

**PLAINTIFFS' CLAIM FOR BREACH OF THE STOCK**
<u>**PURCHASE AGREEMENT IS WOEFULLY PREMATURE**</u>

The first claim asserted by Plaintiffs in the Amended Complaint alleges a breach of the

Stock Purchase Agreement entered into between the parties. It states that "Defendants have

failed to fulfill their current contractual obligation cause all "Net Accounts Receivable" to be

billed and collected and have failed to allocate each dollar of the Net Accounts Receivable

actually collected to discharge the designated Accounts Payable." Am. Cmplt., ¶12.

This Court lacks subject matter jurisdiction over this claim, because it is not yet ripe for

adjudication. The ripeness doctrine prevents a federal court from considering a case in which the

dispute has not yet matured to a point that warrants decision. *See, Unique Medium, LLC v. Town*

*of Perth*, 309 F.Supp.2d 338, (N.D.N.Y., 2004). "When the events alleged in a plaintiff's cause

of action have not yet occurred, a federal court is precluded from exercising subject matter

jurisdiction because a real case or controversy does not exist..." *Auerbach v. Bd. of Educ. of the*

*Harborfields Cent. School Dist.*, 136 F.3d 104 (2d Cir., 1998).

New York State law provides likewise. It provides that a court "should not resolve

disputed legal questions unless this would have an immediate practical effect on the conduct of

the parties." *In re Guardianship of Chantel Nicole R.*. 34 A.D.3d 99, 107 821 N.Y.S.2d 194, 200

(1st Dep't 2006). *See also Cuomo v. Long Island Lighting Company*, 71 N.Y.2d 349, 354, 525

N.Y.S.2d 828 (1988). Consistent with this principle, "an action 'may not be maintained if the

issue presented for adjudication involves a future event beyond control of the parties which may

never occur.'" *American Ins. Assn. v. Chu*, 64 N.Y.2d 379, 385, 487 N.Y.S.2d 311 (1985);

*NYPIRG v. Carey*, 42 N.Y.2d 527, 531, 399 N.Y.S.2d 621, 369 N.E.2d 1155 (1977); *Suffolk

County v. Long Island Power Authority*, 177 Misc.2d 208, 673 N.Y.S.2d 545, 550-551 (Sup. Ct.

Nas. Co. 1998).

Here, the parties' Stock Purchase Agreement plainly defines the "Net Accounts

Receivable" as "the accounts receivable of [UOA] earned prior to and collected during the

twenty-four (24) month period immediately following the Closing Date [of August 8, 2006] less

any refunds or repayments." Am. Cmplt., Exhibit A, ¶ 1.3. Because UOA has until 24 months

from the Closing Date of the Stock Purchase Agreement, or until *August 8, 2008*, to bill for and

collect the Net Accounts Receivable, Plaintiff cannot assert that UOA has "breached" the Stock

Purchase Agreement by its failure to do so until after that date! Plainly, Plaintiffs' claim is

premature until the time in which UOA has to bill for and collect the Net Accounts Receivable

expires on *August 8, 2008* and must be dismissed for this Court's lack of subject matter

jurisdiction over same. *See Pirog v. Cockburn*, 34 A.D.3d 819, 823 N.Y.S.2d 899 (2d Dep't

2006)(court properly dismissed the causes of action concerning the adoption of the

Comprehensive Plan for the Town of Montgomery as those causes of action were not ripe for

judicial review); *Mount Sinai Hosp. v. Allstate Ins. Co.*, 25 A.D.3d 673, 811 N.Y.S.2d 726 (2d

Dep't 2006)(until it is established when the 30-day period within which Allstate was required to

respond began to run, any claim for payment was premature); *Nyack Hosp. v. General Motors*

8

*Acceptance Corp.*, 27 A.D.3d 96, 808 N.Y.S.2d 399 (2d Dep't 2005)(time period for no-fault

insurer to either pay or deny hospital's claim did not begin to run until insurer received

additional verification from hospital in response to its request, and hospital's claim for payment

was premature prior to that date); *Richbell Information Services, Inc. v. Jupiter Partners, L.P.*,

309 A.D.2d 288, 306 765 N.Y.S.2d 575 (1st Dep't 2003)(cause of action was not ripe for

adjudication until the wronged party was injured); *Espada 2001 v. New York City Campaign*

*Finance Bd.*, 302 A.D.2d 299, 754 N.Y.S.2d 544 (1st Dep't 2003)(any claim for post-election

payment of matching funds was premature since there had been no final audit of petitioners'

campaign and no final determination of petitioners' eligibility); *Murphy v. D'Apice*, 123 A.D.2d

415, 506 N.Y.S.2d 605 (2d Dep't 1986)(issue raised in proceeding to invalidate petition

nominating independent candidate in general election was not justiciable in light of fact that

board of elections had not yet ruled on validity of nominating petition); *Vista Surgical Supplies,*

*Inc. v. General Assurance Company*, 2006 WL 1540358 (App. Term, 2nd and 11th Jud. Dts.

2006)(action dismissed as premature where defendant's time to pay or deny claim had not yet

elapsed); *Ocean Diagnostic Imaging, P.C. v. Nationwide Mutual Insurance Company*, 2006 WL

796973 (App. Term, 2nd and 11th Jud. Dts. 2006)(where period within which defendants were

required to respond to plaintiff's claims had not yet begun, any claim for payment was

premature); *Zink v. Heiser*, 109 Misc.2d 354, 438 N.Y.S.2d 209 (Sup. Ct. Queens Co.

1981)(employee's action against trustees of employer's pension plan to recover "vested" monies

due him was dismissed as premature, where action was commenced before date employee

reached his sixty-fifth birthday and was entitled to commence receiving benefits under plan).


Beyond this breach of contract claim being premature, it is improperly and fatally pled.

9

508835.01

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir., 1996). Because the amount of the Net Accounts Receivable is not yet known, nor is UOA yet required to have collected the same, Plaintiffs tellingly plead no damages with regard to their first cause of action, stating as their entire claim for relief only that, "Defendants have breached their current contractual obligations to plaintiff (sic) under the Agreement." Am. Cmplt., ¶ 15. Of course, given that Defendants have until August 20, 2008 to fulfill this obligation, and that the amount in dispute may vary between today and that date, it is not possible for Plaintiffs to prove damages underlying this claim.

Accordingly, because the claim is prematurely brought and Plaintiffs cannot state a cause of action upon which relief can be granted by this Court, the Plaintiffs' first claim for "Breach of Stock Purchase Agreement" must be dismissed in its entirety.

## POINT II

### PLAINTIFF CLAYTON HERTZOFF'S CLAIMS FOR VIOLATION OF NEW YORK LABOR LAW 191-C AND FOR BREACH OF HIS EMPLOYMENT AGREEMENT AND CONSTRUCTIVE DISCHARGE FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND MUST BE DISMISSED

Plaintiff Clayton Hertzoff tries to keep this matter in the Federal Courts by asserting various breaches of the Employment Agreement in a transparent attempt to maintain the minimum monetary amount required to sustain diversity jurisdiction pursuant to 28 USC §1332(a). However, as set forth below, his claims too, must be dismissed for failure to state a claim.

10

A.      **The Claim Under New York Labor Law 191-c Is Improperly Pled**

Plaintiffs third claim for relief purports to state a claim pursuant to New York Labor Law §191-c.  That section states that:

> **When a contract between a principal and a sales representative is terminated,** all earned commissions shall be paid within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated.... A principal who fails to comply with the provisions of this section concerning timely payment of all earned commissions shall be liable to the sales representative in a civil action for double damages. The prevailing party in any such action shall be entitled to an award of reasonable attorney's fees, court costs, and disbursements.

New York Labor Law §191-c(1) and (3)(emphasis added).   Clearly, the statute is meant to protect the worker whose employment contract has been terminated from an unscrupulous employer's failure to pay commissions otherwise due and owing to the worker despite the termination of the employment contract.

In this matter, however, Clayton Hertzoff does not and cannot allege that his Employment Agreement was terminated prior to his commencement of suit against the Defendants for, among other things, an alleged violation of the above provisions of the New York Labor Law.  Indeed, the Amended Complaint instead pleads that "[a]t all relevant times, plaintiff Clayton Hertzoff was an employee of Defendant UOA." Am. Cmplt., ¶21. Accordingly, Plaintiff Clayton Hertzoff's cause of action against Defendants for the alleged violation of the above-cited section must be dismissed for failure to state a claim.

It would seem axiomatic that, where the plain language of a statute requires a certain condition precedent to the relief afforded therein, a plaintiff asserting a claim for that relief must

11

508835.01

have pled all conditions precedent. *See, e.g., Fischetto v. LB 745 LLC*, 36 A.D.3d 538, 829 N.Y.S.2d 54 (1st Dep't, 2007)(dismissing plaintiff's claim because defendant was a landowner and not an "employer" to whom section of New York Labor Law invoked by plaintiff would apply). Because he cannot and does not allege that his Employment Agreement was terminated prior to bringing the claim for relief under New York Labor Law 191-c, Clayton Hertzoff has failed to make out an essential element of a cause of action pursuant to that statute.

**B.      Plaintiff Clayton Hertzoff Has Failed To Allege A "Material" Breach Of The Employment Agreement Because His Allegations Of "Breach" Do Not State A Claim As They Fail To Correspond To Any Contractual Obligation Of UOA**

Plaintiff Clayton Hertzoff's fifth claim for relief states that Defendant UOA has "materially" breached the Employment Agreement in two ways. The first allegation of material breach relates back to the unpaid commissions as set forth in second, third, and fourth claims, the underlying circumstances of which are set forth in the referenced May 22, 207 letter from Noreen Diaz to Clayton Hertzoff. *See*, Diaz Dec., Exhibit 2. The second allegation of material breach alleges that UOA breached Clayton Hertzoff's Employment Agreement by "requesting" that Plaintiff Clayton Hertzoff engage in certain allegedly "deceptive" insurance billing practices.

As for the first allegation, Plaintiff Clayton Hertzoff has failed to allege a "material" breach of the Employment Agreement relating to UOA's failure to pay him one half of one annual quarter's worth of commissions. Plaintiff does not allege, nor can he, that UOA failed to pay his base salary or the commissions due to him for the remainder of the time he worked for UOA. Neither does Clayton Hertzoff allege that he was not paid for or allowed to take any of

12

the five weeks of vacation or the sick or personal days to which he was entitled, that UOA failed to provide him with the appropriate life insurance and health insurance benefits specified in the Employment Agreement or that he did not receive every other benefit of employment as described therein. As a matter of law, these facts undermine Clayton's breach of contract claims.

"Materiality goes to the essence of the contract. That is, a breach is material if it defeats the object of the parties in making the contract and deprives the injured party of the benefit that it justifiably expected." *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F.Supp.2d 711 (S.D.N.Y., 2000). To the extent that Clayton Hertzoff wishes to rely upon the non-payment of one-half of one annual quarter's worth of commissions, without more, as a *material* breach sufficient to warrant total recission of the Employment Agreement, he cannot do so. Indeed, he has failed to plead that UOA's failure in this regard, even if true, "defeated" the object of the parties in making the Employment Agreement. Moreover, Clayton Hertzoff fails to allege, as is required to plead a claim for breach of contract, that he performed adequately under the agreement prior to Defendants' alleged breach. *See, Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir., 1996).

With regard to the other "material" breaches alleged, while the allegations are certainly salacious -- that UOA engages in and "requests" that its employees engage in deceptive insurance billing practices -- the claim fails to point to any provision of the Employment Agreement that is "breached" by virtue of UOA's alleged "requests." Indeed, even taking the allegations as true as this Court is required on a motion to dismiss the pleading, Clayton Hertzoff fails to plead anything more than a "request" from UOA to engage in such practices, and further fails to allege that any adverse employment action was taken against him by UOA for his refusal to grant the alleged "request."

13

To survive a motion to dismiss, a complaint "must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." *Mina Inv. Holdings, Ltd. v. Lefkowitz*, 51 F.Supp.2d 486 (S.D.N.Y., 1999). Accordingly, as the allegations fail to allege any "breach" of any specific provision of the Employment Agreement, let alone a "material" breach of same, the Plaintiffs' fifth claim for relief must be dismissed.

C.    **Plaintiff Clayton Hertzoff's Claim For Constructive Discharge Fails To Allege, Nor Can It, That He Was Forced To Resign, And Thus Fails To State A Claim**

A constructive discharge occurs when the employer, rather than acting directly, "deliberately makes an employee's working conditions so intolerable that the employee *is forced into an involuntary resignation.*" *Pena v. Brattleboro Retreat*, 702 F.2d 322 (2d Cir., 1983) (emphasis added). In this matter, unlike the *Pena* case cited above, Clayton Hertzoff simply does not and cannot allege that he resigned as a result of the "intolerable" working conditions alleged in the Amended Complaint.

Indeed, as is alleged earlier in the Amended Complaint, at all relevant times Plaintiff Clayton Hertzoff was an employee of UOA. *See*, Am. Cmplt., ¶ 21. How is it possible to sustain a claim for constructive discharge without any discharge of the employee? *See, e.g.*, *Parker v. Chrysler Corp.*, 929 F.Supp. 162 (S.D.N.Y. 1996) (holding that, in the analysis of the "constructive discharge" element of Title VII claim, the court determines whether the employee's *resignation* was forced so as to be treated as an actual discharge by the employer). Plaintiff provides the Court with a laundry list of allegedly "intolerable" working conditions, but fails to allege an essential element of the claim -- that he resigned from employment because of them. As a result, even taking all of the facts alleged in the Amended Complaint as true and

14

providing Plaintiff Clayton Hertzoff with the benefit of every possible inference in his favor, he has simply failed to allege an element essential to make out a *prima facie* claim for constructive discharge. As a result, this claim too, must be dismissed.

**D.    Plaintiff Clayton Hertzoff's Claim For "Anticipatory" Breach Of The Employment Agreement Must Be Dismissed For Failure To Plead That The Alleged Breach Anticipated Rendered His Performance Under The Agreement Impossible Or That It Adequately Demonstrated UOA's Intention Not To Continue As His Employer**

In a final attempt to plead some cause of action with regard to the Employment Agreement worth more than $4,163 in lost commissions, Plaintiff Clayton Hertzoff alleges hat UOA's statements in the May 22, 2007 letter from Noreen Diaz to Clayton Hertzoff evidence UOA's "intention not to perform their obligations under the Employment Agreement." Am. Cmplt., ¶ 39. Nowhere in that letter does UOA ever state, through Ms. Diaz, that it does not intend to continue to employ Clayton Hertzoff. *See*, Diaz Dec., Exhibit 2. The letter merely chastises an employee for what UOA's President apparently felt was poor judgment and performance on that employee's part. *Id*.

"Repudiation or anticipatory breach of a contract occurs when there has been an overt communication of intention or an action which renders performance [by the other party] impossible or demonstrates a clear determination not to continue with performance." *Teachers Ins. and Annuity Ass'n of America v. Coaxial Communications of Cent. Ohio, Inc.*, 807 F.Supp. 1155 (S.D.N.Y. 1992). Here, Plaintiff Clayton Hertzoff does not allege that his performance under the Employment Agreement was rendered impossible (*i.e.*, that he could not continue to be a prosthetist) as a result of UOA's statements in the May 22, 2007 letter or by the other

15

508835.01

unspecified "actions and statements" to Plaintiff. Moreover, mere conclusory allegations, without factual support, that the May 22, 2007 letter and other unspecified "actions and statements" by UOA were sufficient to evidence UOA's intention not to perform under the Employment Agreement renders the pleading insufficient, even under the liberal standards afforded to pleadings on a motion to dismiss pursuant to FRCP 12(b)(6). *See*, *Mina Inv. Holdings, Ltd. v. Lefkowitz*, 51 F.Supp.2d 486 (S.D.N.Y., 1999).

Here, Plaintiff Clayton Hertzoff's claim for alleged "anticipatory breach" of the Employment Agreement by UOA is nothing if not conclusory, and as a result, fails to state a claim upon which relief can be granted.

## POINT III

### PLAINTIFFS' CLAIM FOR NON-PAYMENT OF RENT DELIBERATELY MISLEADS THIS COURT AND MUST BE DISMISSED

Finally, Plaintiff asserts an eighth claim for relief, alleging that certain rent has been left unpaid by UOA. The amount of damages alleged is for $10,000 — one month of unpaid rent. *See*, Am. Cmplt., ¶¶ 41 - 43. A careful reading of the allegations reveals, however, that only the June rent allegedly remains unpaid.

But a claim for unpaid rent for June, 2007 was not yet ripe for adjudication by this Court as of the date of the Amended Complaint, yet it was nevertheless, included in the Amended Complaint merely as a transparent attempt to make Plaintiffs' meritless claims seem more substantial in monetary value.

16

508835.01

Indeed, the Notice of Default for unpaid rent in June is dated June 5, 2007. Am. Cmplt., Exhibit B. Pursuant to the terms of the Agreement of Lease referenced in the Amended Complaint, however, UOA had fifteen days to cure any default in payment of rent from the date of UOA's receipt of the default notice from the Hertzoffs. *See*, Am. Cmplt., ¶41; *cf.* Diaz Dec., Exhibit 2, Rider at ¶47.[2]  As demonstrated by a plain reading of the allegations and the documents referenced therein, no "breach" of the Agreement of Lease had occurred as of the June 8, 2007 service date of the Plaintiffs' Amended Complaint.   This claim for alleged "non-payment of rent," therefore, was not yet ripe for adjudication and the Court has no subject-matter jurisdiction over same. *See, Auerbach v. Bd. of Educ. of the Harborfields Cent. School Dist.*, 136 F.3d 104 (2d Cir., 1998).

## CONCLUSION

As a result of the foregoing, on the basis of a plain reading of the allegations in the Amended Complaint and the documents annexed thereto and referenced therein, Plaintiffs First, Third, Fifth, Sixth, Seventh, and Eighth "claims for relief" are subject to dismissal by this Court pursuant to either FRCP 12(b)(1) or 12(b)(6).  Accordingly, Defendants respectfully request that this Court dismiss the deficiently plead and premature causes of action from Plaintiffs' Amended Complaint and see the Amended Complaint for what it is – an utterly frivolous attempt to make a "federal case" out of some bad blood between the parties resulting from a negotiated arms-length transaction with which Plaintiffs (11 months after signing the agreements) now find themselves unhappy.

---

[2] Moreover, the June rent was paid by UOA within the cure period.

508835.01

Dated: Great Neck, New York
     July 12, 2007

GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendants*

By _____

     Andrew L. Zwerling
     Colleen M. Tarpey
111 Great Neck Road
Great Neck, NY 11021
(516) 393-2200

18

508835.01

# INGENIX.

Tuesday July 3, 2007

United Orthopedic
Attn: Medical Records
326 2ⁿᵈ Avenue
New York, NY 10003

RE:     Notification of the Retention of Ingenix

Please be advised that Ingenix has been contracted by MetroPlus Health Plan to perform a proprietary review of medical records. Ingenix is authorized to request medical records from Providers, on behalf of MetroPlus Health Plan for the purposes of performing claim and medical record reviews.

In addition, Ingenix is considered a HIPAA "Business Associate", who has access to Provider and/or Member's Protected Health Information (a.k.a. PHI).

If you have any questions concerning this matter, please call Cassandra Andrews at (212)908-8550.

Sincerely,

Cassandra Andrews

# INGENIX.

United Orthopedic
Attn: Medical Records
326 2nd Avenue
New York, NY 10003

## REQUEST FOR MEDICAL RECORDS

**Date**: Tuesday July 3, 2007

**Patient:** See Attached Sheet

**ID:** See Attached Sheet

**Dates of Service:** See Attached Sheet

**Submit Records to:**    Ingenix
Government and Case Affairs
Attn: Sr. Inv. Katie Kalka
12125 Technology Drive
MN002-0265
Eden Prairie MN  55344
800-967-5920 ext 6220
**Fax 1-877-285-9098**

**Additional Comments:**

Please submit all record related to the dates of service being requested by **fax** to
include prescriptions, shipping and receiving receipts.

**Reference #** 1090

Date: 6/11/07

Subject: United Orthopedic Appliance Company


To Whom It May Concern,

United Orthopedic Appliance Company is a valued customer of ours. Their payments are continuous and their business is much appreciated. They have been a great customer of PEL Supply Company's since 1994 and we look forward to continuing business with them in the future.


Sincerely,

Bev Barnhardt
Accounts Receivable/Customer Service Manager



**QUALITY FOR LIFE**

6/26/07

RE:   United Orthopaedic Appliance
      791 Broadway
      New York, NY  10003

      Otto Bock Account # 10143890

To whom it concerns:

I have been working closely with Martin Diaz and United Orthopaedic Appliance since this company was acquired in 2006 and I look forward to working with this company in the future.

Sincerely,

Kristi Stafford, CBA
Credit Assistant
Otto Bock Health Care
800-328-4058 x 5132

Otto Bock Health Care
Corporate Headquarters; Two Carlson Parkway North ● Suite 100 ● Plymouth ● MN ● 55447
General Customer Service Phone: 763-553-9464 ● Toll Free: 800-328-4058
General Customer Service Fax: 763-519-6153 ● Toll Free: 800-655-4963
Web Site Address: www.ottobockus.com ● General E-Mail Address: usa.customerservice@ottobock.com

# Airprene® Knee Supports

## Model 638   L1832 $138.00

Airprene® Action Knee Orthosis. Action brace for ACL and PCL management. Model 638 has three strapping systems for control of ACL or PCL or combined instabilities. Adjustable lightweight polycentric hinges of anodized aluminum have seven extension stops and six flexion stops. This brace offers proper support and control for grade 1 and grade 2 strains of the anterior or posterior cruciate ligaments and is an ideal support for post-op rehab when controlled range of motion is indicated (allows graduation to full range of motion). Popliteal area is open for comfort. Finger pulls assist application. Total brace length is 17". Cushioned sports covers for hinges are available upon request. Sized according to knee center with joint extended.

Sizes: X-Small (11½"-12¾")
Small (12½"-13¼")
Medium (13¼"-14¾")
Large (14½"-16")
X-Large (15½"-17")
2X-Large (16½"-18¼")
3X-Large (17½"-19½")



638



634

## Model 634   L1832 $132.00

Airprene® Wraparound Action Knee Orthosis. Similar to Model 638 but shorter and with wraparound design. Brace length: 14¾". Same sizes.

**NEW** *at Freeman*



639

### (XS-3XL) $57.50
### (4XL) $64.00
## Model 639   L1832 (5XL) $70.00

Airprene® Extension Control Knee Support. Provides medial-lateral support with adjustable extension control as an option. Extension stops can be set at 0°, 15°, 30°, or 45° by insertion of a hinge pin. Hinges are stainless steel and are fully encased in Airprene pockets. Open patella has adjustable horseshoe patella pad of ¼" exposed orthopedic felt. Two 2"-wide hook 'n pile wraparound control straps provide encircling compression. Total brace length is 13". Sized according to knee circumference.

Sizes: X-Small (11½"-12¾")
Small (12½"-13¾")
Medium (13½"-14¾")
Large (14½"-16")
X-Large (15½"-17")
2X-Large (16½"-18¼")
3X-Large (17½"-19½")
4X-Large (18¼"-20¼")
5X-Large (19½"-21½")

**NEW** *at Freeman*



633

## Model 633   L1832 $140.00

Pneu® Knee Wraparound Action Orthosis. Black perforated neoprene knee buttress is an adjustable dual air bladder designed to give comfort and protection from impact during active sports. Adjustable lightweight polycentric hinges of anodized aluminum have seven extension stops and six flexion stops. Other features include: open patella, open popliteal and two hook 'n pile control straps. Aspirator bulb included. Brace length: 14¾". Sized according to knee circumference.

Sizes: X-Small (11"-12")
Small (12"-13")
Medium (13"-14")
Large (14"-15")
X-Large (15"-16")
2X-Large (16"-18")
3X-Large (18"-19¼")



637

### (XS-3XL) $57.50
### (4XL) $64.00
## Model 637   L1832 (5XL) $70.00

Airprene® Wraparound Extension Control Knee Support. Same as Model 639 but with wraparound design, same sizes.

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE   (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

MONTEFIORE MEDICAL CENTER
111 East 210th Street
Bronx, NY 10467-2490
    Attn: Custodian of Records

    Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

    This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

    Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

    Thank you in advance for your cooperation.

                                        Regards,

                                        George Hinckley

                                        George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

Southern _____  DISTRICT OF _____ New York

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-cv-3157

TO:  MONTEFIORE MEDICAL CENTER
111 East 210th Street
Bronx, NY 10467-2490

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE      Traiger & Hinckley LLP 880 Third Avenue, New York, New York 10022 | DATE AND TIME 6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _George R. Hinckley_  Atty for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

| Invoice | Amount |
|---------|--------|

Carrier Code: EIKS   Name: MONTEFIORE MEDICAL CENTER
21633    1   05/17/06 4183   07/26/2006  191      537.90                                    537.90  1

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE   (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

EMPIRE BLUE CROSS BLUE SHIELD
PO Box 3993
Church Street Station
New York, NY 10008-3993
   Attn: Custodian of Records

Re:   *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- Southern
      **District of New York (07-CV-3157)**

Dear Custodian of Records:

   This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

   Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

   Thank you in advance for your cooperation.

Regards,

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Southern                                    DISTRICT OF                                    New York

Beverly Hertzoff, Edwin Hertzoff, et al.

V.                                    **SUBPOENA IN A CIVIL CASE**

Noreen Diaz, and United Orthopaedic Appliances Co

Case Number:[1]  07-cv-3157

TO:  EMPIRE BLUE CROSS BLUE SHIELD
Church Street Station

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE | Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| George R. Hinckley  CCH          Atty for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.  All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.  All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.  All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.  All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.  All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.  All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

```
Carrier Code: BCBS12 Name: EMPIRE BLUE CROSS BLUE SHIELD    800-221-6331
21803    1  07/25/06 92219  07/25/2006  192        680.07                                                              680.07   I
21756    1  08/03/06 92244  08/03/2006  193        187.96                                                              187.96   I
                                                   ------                                                             --------
(subtotal for BCBS12)        Ave Days:287.50        868.03                                                              868.03
                                                   -------   ----------  ----------  ----------  ----------  ----------  --------
```

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE  9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE  (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

MANAGED HEALTH INSURANCE
25 Broadway
4th Floor
New York, NY 10274
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

_____Southern_____ **DISTRICT OF** _____New York_____

| Beverly Hertzoff, Edwin Hertzoff, et al. | |
|---|---|
| **V.** | **SUBPOENA IN A CIVIL CASE** |
| Noreen Diaz, and United Orthopaedic Appliances Co | Case Number:[1] 07-cv-3157 |

TO:   MANAGED HEALTH INSURANCE
       25 Broadway 4th Floor
       New York, NY 10274

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE     Traiger & Hinckley LLP | DATE AND TIME |
|---|---|
| 880 Third Avenue, New York, New York 10022 | 6/28/2007 10:00 am |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| George R. Hinckley   cert     Atty for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE                                    SIGNATURE OF SERVER

                                                               ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ),  its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.  All documents concerning any claims,  bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.  All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.  All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.  All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.  All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.  All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

| Invoice | | | | | | Amount | | | | | | |
|---------|---|---|---|---|---|--------|---|---|---|---|---|---|

Carrier Code: MHN    Name: MANAGED HEALTH INSURANCE        800-566-2678

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19441 | 1 | 01/04/05 | 7473 | 12/09/2004 | 785 | | 775.53 | | | | | 775.53 | I |
| 20765 | 1 | 09/07/05 | 8253 | 09/07/2005 | 513 | | 733.71 | | | | | 733.71 | I |

** OVR AGING THAN 103 DAYS **

| Invoice Number | Loc | D.O.S. | Guar. Code | Invoice Date | Days Elapsed | Re- Status | Amount Due | 0-30 | 31-60 | 61-90 | 91-120 | 121+ | Type |
|----------------|-----|--------|------------|--------------|--------------|-----------|------------|------|-------|-------|--------|------|------|

Carrier Code: MHN    Name: MANAGED HEALTH INSURANCE        800-566-2678

| 20880 | 1 | 10/11/05 | 2775 | 10/12/2005 | 478 | | 167.16 | | | | ✓ | 167.16 | I |
| 21145 | 1 | 12/23/05 | 1161 | 12/23/2005 | 406 | | 1631.32 | | | | | 1631.32 | I |
| 21655 | 1 | 06/19/06 | 7357 | 06/19/2006 | 228 | | 127.26 | | | | | 127.26 | I |

(subtotal for MHN  )    Ave Days:482.00    3434.98                3434.98

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE  (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

GHI MEDICARE + CHOICE
P.O. BOX 4295
Kingston, NY 12402
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co. -- Southern District of New York (07-CV-3157)*

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

*George Hinckley* ceH

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT

| Southern | DISTRICT OF | New York |
|---|---|---|

| | |
|---|---|
| Beverly Hertzoff, Edwin Hertzoff, et al. | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| Noreen Diaz, and United Orthopaedic Appliances Co | Case Number:[1]  07-cv-3157 |

TO:   GHI MEDICARE + CHOICE
Kingston, NY 12402

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George R. Hinckley*  CCH    Atty for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing, or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.  All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.  All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.  All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.  All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.  All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.  All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                          Amount

Carrier Code: GHINC+ Name: GHI MEDICARE + CHOICE          866-557-7300
21005    1   03/29/06 6572   03/30/2006  309        793.31                                    793.31   i

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE   (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

THE EQUITABLE / FINANCIAL COMPANIES
P.O. Box 2481
New York, NY 12402
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co. -- Southern District of New York (07-CV-3157)*

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley /ccH

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Southern _____    DISTRICT OF    _____ New York

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07-cv-3157

TO:   THE EQUITABLE / FINANCIAL COMPANIES
      New York, NY 12402

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED EXHIBIT A

| PLACE       Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George R. Hinckley* CCH        Atty for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____      _____
              DATE                                SIGNATURE OF SERVER

                                                  _____
                                                  ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.  All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.  All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.  All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.  All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.  All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.  All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                          Amount

Carrier Code: EQU    Name: THE EQUITABLE/ FINANCIAL COMPANIES
  21912    1  08/15/06 4496   08/18/2006  168        130.24                                      130.24   2

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE    (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

EMPIRE HEALTHCHOICE
PO BOX 5012
Middletown, NY 10940
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

○AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Southern _____ DISTRICT OF _____ New York

| Beverly Hertzoff, Edwin Hertzoff, et al. | |
|---|---|
| V. | **SUBPOENA IN A CIVIL CASE** |
| Noreen Diaz, and United Orthopaedic Appliances Co | Case Number:[1] 07-cv-3157 |

TO:  EMPIRE HEALTHCHOICE
Middletown, NY 10940

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George Hinckley* Cett     Atty for Plaintiff | 5·22·07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.  All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.  All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.  All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.  All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.  All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.  All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

**Invoice**                                                    **Amount**

Carrier Code: BCBS-1 Name: EMPIRE HEALTHCHOICE              800-552-6630

| | | | | | |
|---|---|---|---|---|---|
| 10377 | 1 | 02/01/00 85067 | 02/01/2000 2558 | -574.26 | -574.26 I |
| 13940 | 1 | 01/23/02 87411 | 01/29/2002 1830 | -54.12 | -54.12 I |
| 14416 | 1 | 03/18/02 88278 | 03/18/2002 1782 | -57.12 | -57.12 I |
| 15091 | 1 | 07/08/02 88278 | 07/08/2002 1670 | -5.00 | -5.00 I |

Carrier Code: BCBS-1 Name: EMPIRE HEALTHCHOICE              800-552-6630

| | | | | | |
|---|---|---|---|---|---|
| 16268 | 1 | 02/24/03 89963 | 02/24/2003 1439 | -22.70 | -22.70 I |
| 17253 | 1 | 09/05/03 90111 | 09/05/2003 1246 | -162.42 | -162.42 I |
| 17658 | 1 | 01/06/04 89298 | 01/06/2004 1123 | -45.56 | -45.56 I |
| 18414 | 1 | 04/27/04 91391 | 04/27/2004 1011 | -1119.88 | -1119.88 I |
| 18844 | 2 | 07/30/04 89266 | 07/30/2004 917 | -344.51 | -344.51 I |
| 18859 | 1 | 08/06/04 91678 | 08/06/2004 910 | -80.91 | -80.91 I |
| 18943 | 1 | 08/06/04 89987 | 08/06/2004 910 | -263.60 | -263.60 I |
| 19084 | 1 | 09/10/04 86755 | 09/10/2004 875 | -235.72 | -235.72 I |
| 19763 | 1 | 02/17/05 91394 | 02/17/2005 715 | 1659.97 | 1659.97 I |
| 19867 | 1 | 03/11/05 5369 | 03/11/2005 693 | -44.00 | -44.00 I |
| 20400 | 1 | 05/31/05 6487 | 05/31/2005 612 | -0.10 | -0.10 I |

| (subtotal for BCBS-1) | Ave Days:715.00 | -1349.93 | -1349.93 |
|---|---|---|---|

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE, 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE   (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

COMMUNITY PREMIER PLUS
PO Box 6014
Hauppauge, NY 11788
   Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co. -- Southern
        District of New York (07-CV-3157)*

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Eastern _____ DISTRICT OF _____ Ohio

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-cv-3157 Southern D.NY

TO:  COMMUNITY PREMIER PLUS
Hauppauge, NY 11788

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George Hinckley* ceh        Atty for Plaintiff | 5·22·07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
            DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

## SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                          Amount

```
Carrier Code: CPP   Name: COMMUNITY PREMIER PLUS    800-867-5885BEN
20501  1  06/27/05 7629  08/02/2005  549    270.00                                         270.00  I
21422  1  03/28/06 7011  03/29/2006  310    161.49                                         161.49  I
21672  1  06/08/06 75i3  06/08/2006  239    220.00                                         220.00  I
21431  1  06/20/06 7171  06/21/2006  226    120.00                                         120.00  I
                                            --------                                       --------
(subtotal for CPP  )    Ave Days:331.00     771.49                                         771.49
                                            --------  ---------  ---------  ---------  ---------  ---------
```

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE  (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

CENTERCARE
P.O. Box 898
Amherst, NY 14226-0898
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co. -- Southern District of New York (07-CV-3157)*

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic").  The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena.  Accordingly, we are required to subpoena from you the records relating to those accounts.  As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena.  Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Western _____ DISTRICT OF _____ Ohio

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-cv-3157 Southern D.NY

TO:   CENTERCARE
      Amherst, NY 14226-0898

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP
880 Third Avenue, New York, New York 10022 | DATE AND TIME
6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| George Hinckley  CaH        Attorney for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
   (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
   (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
   (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
   (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
   (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
   (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                                    Amount

| Carrier Code: CENTER Name: CENTERCARE | | | | | | | 212-293-9200 | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 17763 | 1 | 01/14/04 | 08791 | 01/14/2004 | 1115 | 116.72 | | 116.72 | I |
| 18288 | 1 | 04/20/04 | 91299 | 04/20/2004 | 1018 | -62.20 | | -62.20 | I |
| 18790 | 1 | 07/31/04 | 91642 | 07/31/2004 | 916 | -27.86 | | -27.86 | I |
| 19146 | 1 | 11/08/04 | 91899 | 11/08/2004 | 816 | -62.25 | | -62.25 | I |
| 20433 | 1 | 09/15/05 | 8537 | 09/15/2005 | 505 | 220.00 | | 220.00 | I |
| 20774 | 1 | 20/10/05 | 9386 | 11/10/2005 | 449 | 220.00 | | 220.00 | I |
| 23497 | 1 | 04/28/06 | 7519 | 05/01/2006 | 277 | 220.00 | | 220.00 | I |

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE   (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

POINT HEALTH CENTER- MAGNACARE
7061 Corporate Way
Dayton, OH 45459
   Attn: Custodian of Records

   Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

   This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

   Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

   Thank you in advance for your cooperation.

   Regards,

   *George Hinckley*  cef

   George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Southern _____ **DISTRICT OF** _____ Ohio

Beverly Hertzoff, Edwin Hertzoff, et al.

**V.**

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-cv-3157 Southern D.NY

TO:    POINT HEALTH CENTERS OF AMERICA
       7061 Corporate Way
       Dayton, OH 45459

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| George Hinckley    CCH    Attorney for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
   (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
   (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
   (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
   (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
   (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
   (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                                                          Amount

Carrier Code: P-MAG  Name: POINT HEALTH CTR.- MAGNACARE        (800)-929-9812

| 11653 | 1 | 09/22/00 | 86712 | 09/22/2000 | 2324 | 118.50 | | | | | 118.50 | I |
| 17284 | 1 | 11/03/03 | 90635 | 11/03/2003 | 1187 | 639.78 | | | | | 639.78 | I |
| 18658 | 1 | 06/18/04 | 91563 | 06/18/2004 | 959 | -353.14 | | | | | -353.14 | I |
| 18760 | 1 | 06/18/04 | 91563 | 06/18/2004 | 959 | -1.55 | | | | | -1.55 | I |
| 18781 | 1 | 08/05/04 | 91634 | 08/05/2004 | 911 | -358.66 | | | | | -358.66 | I |
| 19458 | 1 | 12/09/04 | 87701 | 12/13/2004 | 781 | 620.76 | | | | | 620.76 | I |
| 21478 | 1 | 05/16/06 | 88375 | 05/16/2006 | 262 | 355.50 | | | | | 355.50 | I |
| 21631 | 1 | 06/01/06 | 92088 | 06/01/2006 | 246 | 821.90 | | | | | 821.90 | I |

|subtotal for P-MAG )        Ave Days:960.00        1843.09                                    1843.09

Carrier Code: P-MUL  Name: POINT HEALTH CTR.- MULTIPLAN       (800)-929-9812

| 13047 | 1 | 10/17/01 | 86769 | 10/17/2001 | 1934 | 80.00 | | | | | 80.00 | I |
| 18606 | 1 | 04/01/04 | 89390 | 04/01/2004 | 1037 | 251.87 | | | | | 251.87 | I |
| 18352 | 1 | 05/21/04 | 91355 | 05/21/2004 | 987 | -38.10 | | | | | -38.10 | I |
| 21797 | 1 | 07/26/06 | 92247 | 07/26/2006 | 191 | 399.58 | | | | | 399.58 | I |
| 21860 | 1 | 08/22/06 | 3022 | 08/23/2006 | 163 | -55.20 | | | | | -55.20 | I |

|subtotal for P-MUL )        Ave Days:1054.0        639.15                                    639.15

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                                     Amount

Carrier Code: P-PHCS Name: POINT HEALTH CENTERS OF AMERICA

| Invoice | | Date | | Date | Days | Amount | | | | | | | | Amount | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15909 | 1 | 12/03/02 | 89712 | 12/03/2002 | 1522 | -250.00 | | | | | | | | -250.00 | I |
| 18054 | 1 | 02/11/04 | 91151 | 02/11/2004 | 1087 | 40.65 | | | | | | | | 40.65 | I |
| (subtotal for P-PHCS) | | | Ave Days:1087.0 | | | -209.35 | | | | | | | | -209.35 | |

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                                          Amount

| Carrier Code: P-PHS | Name: POINT HEALTH CTR.- HEALTHNET OF NEW | | | | |
|---|---|---|---|---|---|
| 12630 | 1 | 02/26/01 87436 | 02/26/2001 2167 | -10.36 | -10.36 I |
| 27740 | 1 | 02/25/04 86934 | 02/25/2004 1073 | -0.01 | -0.01 I |
| 18347 | 1 | 06/22/04 91349 | 06/22/2004 955 | -773.26 | -773.26 I |
| 18549 | 1 | 06/29/04 91491 | 06/29/2004 948 | -773.26 | -773.26 I |
| 18701 | 1 | 07/30/04 91589 | 07/30/2004 917 | -293.54 | -293.54 I |

| (subtotal for P-PHS ) | Ave Days: 0.00 | -1850.43 | -1850.43 |
|---|---|---|---|

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

1199 National Benefit Fund
330 W. 42nd St.
New York, NY 10036
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co. -- Southern District of New York (07-CV-3157)*

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley cen

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Southern _____ DISTRICT OF _____ New York

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-cv-3157

TO:   1199 National Benefit Fund
      330 W. 42nd St.
      New York, NY 10036
      NY Tel. 646-473-9200

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE       Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _George R. Hinckley_ att    Atty for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE                                    SIGNATURE OF SERVER

                                                            ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.  All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.  All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.  All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.  All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.  All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.  All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                                          Amount

```
Carrier Code: 1199    Name: 1199 NATIONAL BENEFIT FUND         307-7500
  14077   1  12/13/01 88418   12/13/2001 1877        -3.24                                              -3.24  [
  14181   1  02/19/02 3502    02/19/2002 1809         0.91                                               0.91  [
  17321   1  09/19/03 90661   09/19/2003 1232       -71.61                                             -71.61  [
  17951   1  03/31/04 90611   03/31/2004 1038      -230.32                                            -230.32  [
  19589   1  03/21/05 9208    03/30/2005  674      2201.66                                            2201.66  [
  20375   1  12/07/05 92168   12/07/2005  422      -897.64                                            -897.64  [
  21567   1  05/31/06 92230   05/31/2006  247      1026.62                                            1026.62  [
  21432   1  07/26/06 88038   07/26/2006  191       777.24                                             777.24  [
                                                   ------                                            --------
  (subtotal for 1199 )    Ave Days:730.25          2803.62                                            2803.62
                                                   ------                                            --------
```

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933                          GEORGE R. HINCKLEY
FACSIMILE   (212) 656-1531                        GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

UNITED HEALTHCARE – EMPIRE PLAN
P.O. Box 1600
Kingston, NY 12402
    Attn: Custodian of Records

Re:     *Hertzoff v. Diaz and United Orthopaedic Appliances, Co. -- Southern District of New York (07-CV-3157)*

Dear Custodian of Records:

    This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic").  The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

    Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts.  As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena.  Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

    Thank you in advance for your cooperation.

Regards,

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

___Southern___    ·DISTRICT OF    ___New York___

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07-cv-3157

TO:  UNITED HEALTHCARE -- EMPIRE PLAN
· Kingston, NY 12402

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE     Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George R. Hinckley*  GRH          Aty for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing, or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

| Invoice | | | | | | Amount | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Carrier Code: UH-EP  Name: UNITED HEALTHCARE-EMPIRE PLAN | | | | | | 800-942-4610 | | | | |
| 18606 | 1 | 07/29/04 91655 | 07/29/2004 | 918 | -240.00 | | | | -240.00 | I |
| 19437 | 1 | 12/09/04 9201D | 12/13/2004 | 781 | 1716.40 | | | | 1716.49 | I |
| 20575 | 1 | 06/14/05 92136 | 06/14/2005 | 598 | 155.00 | | | | 155.00 | I |
| 20725 | 1 | 09/06/05 92144 | 09/06/2005 | 514 | -7.18 | | | | -7.18 | I |
| 21203 | 1 | 01/17/06 2134 | 01/18/2006 | 380 | -14.00 | | | | -14.00 | I |
| 21746 | 1 | 06/01/06 88676 | 06/19/2006 | 228 | -5.97 | | | | -5.97 | I |
| 21753 | 1 | 06/28/06 92098 | 06/28/2006 | 219 | 1290.00 | | | | 1290.00 | I |
| (subtotal) for UH-EP ) | | | Ave Days:532.67 | | 2894.25 | | | | 2894.25 | |

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE   (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

INDEPENDENCE CARE SYSTEM
257 Park Avenue South
2nd Floor
New York, NY 10159
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Southern _____ DISTRICT OF _____ New York

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07-cv-3157

TO:  INDEPENDENCE CARE SYSTEM
257 Park Avenue South
2nd Floor
New York, NY 10159

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE     Traiger & Hinckley LLP
880 Third Avenue, New York, New York 10022 | DATE AND TIME
6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George R. Hinckley* cw   Atty for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.   All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.   All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.   All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.   All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.   All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.   All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Carrier Code: ICS    Name: INDEPENDENCE CARE SYSTEM        212-584-2500
21723    1  06/07/06 3965   06/07/2006  240        700.00                    700.00   I

## SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                          Amount

Carrier Code: ICS-2  Name: INDEPENDENCE CARE SYSTEM
21506    1  08/17/06 90939  08/18/2006  168      2462.56                                      2462.56   I

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

HEBREW HOSPITAL HOME
801 Co-Op City Blvd.
Bronx, NY 10475
    Attn: Custodian of Records

Re:     *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

   This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

   Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

   Thank you in advance for your cooperation.

                    Regards,

                    George Hinckley

                    George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Southern _____ **DISTRICT OF** _____ New York

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07-cv-3157

TO:  HEBREW HOSPITAL HOME
801 Co-Op City Blvd.
Bronx, NY 10475
1-718-678-1642

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   *George R. Hinckley  CGH*     *Atty for Plaintiff* | DATE<br>5·22·07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                    DATE                              SIGNATURE OF SERVER

                                                 _____
                                                 ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

| Invoice | | | | | | Amount | |
|---|---|---|---|---|---|---|---|
| Carrier Code: HEBREW Name: HEBREW HOSPITAL HOME | | | | | 718-678-1642 | | |
| 26518 | 1 | 08/05/05 91101 | 08/10/2005 | 541 | | 159.34 | |
| | | | | | | 159.34 | I |

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE  (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

HEALTHFIRST
Barbara Tenant, Claims Dept.
25 Broadway, 9th Floor
New York, New York 10004
    Attn: Custodian of Records

Re:     *Hertzoff v. Diaz and United Orthopaedic Appliances, Co. -- Southern*
        *District of New York (07-CV-3157)*

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley ccu

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

| Southern | DISTRICT OF | New York |
|---|---|---|

| | |
|---|---|
| Beverly Hertzoff, Edwin Hertzoff, et al. | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| Noreen Diaz, and United Orthopaedic Appliances Co | Case Number:[1] 07-cv-3157 |

TO:  HEALTHFIRST
Barbara Tenant, Claims Dept.
25 Broadway, 9th Floor
New York, New York 10004

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE   Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George R Hinckley* Cert.    Atty for Plantff | 5.22.07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                        DATE                                              SIGNATURE OF SERVER

                                                                            _____
                                                                            ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.  All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.  All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.  All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.  All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.  All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.  All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

| Invoice | | | | | | | Amount | | | | | | | |
|---------|---|---|---|---|---|---|--------|---|---|---|---|---|---|---|

Carrier Code: HEALTH Name: HEALTHFIRST     888-801-1660

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17745 | 1 | 12/32/03 | 90945 | 12/02/2003 | 1158 | | -36.12 | | | | | | -36.12 | I |
| 18169 | 1 | 03/04/04 | 86942 | 03/04/2004 | 1065 | | -110.24 | | | | | | -110.24 | I |
| 18484 | 1 | 04/30/04 | 90781 | 04/30/2004 | 1008 | | 167.63 | | | | | | 167.63 | I |
| 18826 | 1 | 08/11/04 | 91663 | 08/11/2004 | 905 | | 44.31 | | | | | | 44.31 | I |
| 19270 | 1 | 09/22/04 | 91961 | 09/22/2004 | 863 | | 1562.00 | | | | | | 1562.00 | I |
| 19907 | 1 | 05/23/05 | 89486 | 05/23/2005 | 620 | | 250.00 | | | | | | 250.00 | I |
| 20511 | 1 | 07/22/05 | 1121 | 07/22/2005 | 560 | | 175.00 | | | | | | 175.00 | I |
| 20635 | 1 | 08/12/05 | 91487 | 08/12/2005 | 539 | | 375.00 | | | | | | 375.00 | I |
| 21123 | 1 | 01/09/06 | 8745 | 01/09/2006 | 389 | | 390.86 | | | | | | 390.86 | I |
| 21227 | 1 | 01/27/06 | 6855 | 01/27/2006 | 371 | | 586.13 | | | | | | 586.13 | I |
| 21398 | 1 | 04/10/06 | 7215 | 04/25/2006 | 283 | | 21.88 | | | | | | 21.88 | I |
| 21719 | 1 | 06/13/06 | 7913 | 06/13/2006 | 234 | | -56.20 | | | | | | -56.20 | I |
| 21726 | 2 | 06/21/06 | 8255 | 06/21/2006 | 226 | | 127.55 | | | | | | 127.55 | I |

| Invoice Number | Loc | D.O.S. | Guar. Code | Invoice Date | Days Elapsed | Re- Status | Amount Due | 0-30 | 31-60 | 61-90 | 91-120 | | 121+ | Type |
|---------|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Carrier Code: HEALTH Name: HEALTHFIRST     888-801-1660

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21786 | 1 | 06/27/06 | 9117 | 06/27/2006 | 220 | | 242.23 | | | | | | 242.23 | I |
| 21811 | 1 | 06/28/06 | 89120 | 06/30/2006 | 217 | | 1463.50 | | | | | | 1463.50 | I |
| 21796 | 1 | 07/12/06 | 7623 | 07/13/2006 | 204 | | 242.23 | | | | | | 242.23 | I |
| 21934 | 1 | 07/25/06 | 92080 | 07/25/2006 | 192 | | 95.35 | | | | | | 95.35 | I |
| 21915 | 1 | 08/07/06 | 91423 | 08/07/2006 | 179 | | 303.33 | | | | | | 303.33 | I |
| 21954 | 1 | 08/11/06 | 2176 | 08/14/2006 | 172 | | 82.50 | | | | | | 82.50 | I |
| 21828 | 1 | 08/18/06 | 90612 | 08/18/2006 | 168 | | 82.50 | | | | | | 82.50 | I |
| 21846 | 1 | 08/21/06 | 1756 | 08/22/2006 | 164 | | 242.23 | | | | | | 242.23 | I |

| | | | | | | |
|---|---|---|---|---|---|---|
| [subtotal for HEALTH] | Ave Days:404.44 | | 6251.67 | | | 6251.67 |

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

AFFINITY
2500 Halsey Street
Bronx, NY 10461
1-866-247-5678
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| Southern | DISTRICT OF | New York |

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-cv-3157

TO:  AFFINITY
2500 Halsey Street
Bronx, NY 10461
1-866-247-5678

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE     Traiger & Hinckley LLP | DATE AND TIME |
|---|---|
| 880 Third Avenue, New York, New York 10022 | 6/28/2007 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George R. Hinckley* CCH    Atty for Plaint ff | 5·22·07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.  All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.  All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.  All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.  All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.  All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.  All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

## SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                                    Amount

```
 Carrier Code; AFF    Name: AFFINITY              866-247-5678
 20004    1  04/01/05 5704   04/01/2005   672      164.00                                                              164.00    I
 20242    1  06/03/05 7714   06/03/2005   609       96.72                                                               96.72    I
 20584    1  07/27/05 6061   07/27/2005   555       32.80                                                               32.80    I
 70512    1  08/04/05 6383   08/04/2005   547    -1497.99                                                            -1497.99    I
 21211    1  02/03/06 7631   02/03/2006   364       10.80                                                               10.80    I
 21342    1  03/17/06 1360   03/20/2006   319      322.98                                                              322.98    I
 21873    1  08/04/06 8216   08/04/2006   182      322.98                                                              322.98    I
                                                 ----                                                                  
 (subtotal for AFF   )       Ave Days:450.17     -547.71                                                             -547.71    
```

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

| Invoice | | | | | Amount | |
|---|---|---|---|---|---|---|
| Carrier Code: P-BHP | Name: POINT - AFFINITY HEALTH PLAN | | | | (800)-929-9812 | |
| 10690 | 1 | 03/24/00 86017 | 03/24/2000 2506 | -665.20 | -665.20 | I |
| 11063 | 1 | 05/12/00 86300 | 05/12/2000 2457 | -412.51 | -412.51 | I |
| 18655 | 1 | 06/28/04 91560 | 06/28/2004 949 | -1.34 | -1.34 | I |
| 19413 | 1 | 12/03/04 2684 | 12/03/2004 791 | -316.82 | -316.82 | I |
| 19369 | 1 | 05/13/05 6297 | 05/13/2005 630 | 89.68 | 89.68 | I |
| | | | | | | |
| (subtotal for P-BHP ) | Ave Days:630.00 | | | -1306.19 | -1306.19 | |

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE  (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

VNS CHOICE
5 Penn Plaza
11th Floor
New York, NY 10001
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

    This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

    Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

    Thank you in advance for your cooperation.

Regards,

George Hinckley  *cc/*
George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| Southern | DISTRICT OF | New York |
|---|---|---|

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07-cv-3157

TO:  VNS CHOICE
5 Penn Plaza
11th Floor
New York, NY 10001

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*George R. Hinckley* CCH  Atty for Plaintiff | DATE<br>5-22-07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

## SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                               Amount

Carrier Code: VHS-2  Name: VHS CHOICE
20040    1   04/19/05 2447   04/20/2005  653       3148.10                              3148.10   I

## SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

| Invoice | | | | | | Amount | | |
|---|---|---|---|---|---|---|---|---|
| Carrier Code: VNS-3  Name: VN3 CHOICE | | | | | 212-609-5693 | | | |
| 17594 | 1 | 04/02/04 2157 | 04/02/2004 | 1036 | | -28.02 | -28.02 | I |
| 18868 | 1 | 07/20/04 3658 | 07/20/2004 | 927 | | 106.20 | 106.20 | I |
| [subtotal for VNS-3 ] | | | Ave Days:927.00 | | | 78.18 | 78.18 | |

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

| Invoice | Amount |
|---|---|
| Carrier Code: VNS-4  Name: VNS CHOICE | 718-724-8713 |
| 19061    1   08/31/04 91833  08/31/2004  885 | 79.32 |

79.32   I

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE  (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

GHI – PPO
PO Box 2874
New York, NY 10116
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley  *cc:H*

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Southern _____ DISTRICT OF _____ New York

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-cv-3157

TO:   GHI – PPO
      New York, NY 10116

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE   Traiger & Hinckley LLP
880 Third Avenue, New York, New York 10022 | DATE AND TIME
6/28/2007 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| George R. Hinckley   CCH     Atty for Plaintiff | 5.22.07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

_____          _____
DATE                                      SIGNATURE OF SERVER

                                          _____
                                          ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                              Amount

Carrier Code: GHIPPO Name: G.H.I. - P.P.O.          212-501-4444

| 12994 | 1 | 05/30/01 87684 | 05/30/2001 2074 | -20.00 | | | -20.00 | 1 |
| 14096 | 1 | 12/22/01 87469 | 12/22/2001 1868 | -357.99 | | | -357.99 | 1 |
| 14318 | 1 | 01/21/02 88393 | 01/21/2002 1838 | -33.86 | | | -33.86 | 2 |

Carrier Code: GHIPPO Name: G.H.I. - P.P.O.          212-501-4444

| 14231 | 1 | 03/08/02 88522 | 03/08/2002 1792 | -87.47 | | | -87.47 | 1 |
| 14257 | 1 | 05/10/02 88536 | 05/10/2002 1729 | -474.56 | | | -474.56 | 1 |
| 14761 | 1 | 05/23/02 88896 | 05/23/2002 1716 | -128.83 | | | -128.83 | 1 |
| 15170 | 1 | 07/24/02 89680 | 07/24/2002 1654 | -100.00 | | | -100.00 | 1 |
| 15352 | 1 | 09/03/02 87410 | 09/03/2002 1613 | -39.80 | | | -39.80 | 1 |
| 16140 | 1 | 02/24/03 89870 | 02/24/2003 1439 | -17.95 | | | -17.95 | 1 |
| 16113 | 1 | 03/06/03 87684 | 03/06/2003 1429 | -77.52 | | | -77.52 | 1 |
| 16163 | 1 | 03/20/03 89679 | 03/20/2003 1415 | -100.00 | | | -100.00 | 1 |
| 16620 | 2 | 05/07/03 90200 | 05/07/2003 1367 | -25.00 | | | -25.00 | 2 |
| 16613 | 1 | 05/29/03 88271 | 05/29/2003 1345 | -37.22 | | | -37.22 | 1 |
| 19486 | 1 | 01/12/05 3176 | 01/12/2005 751 | -79.08 | | | -79.08 | 1 |
| 20056 | 1 | 03/29/05 1856 | 03/29/2005 675 | -31.44 | | | -31.44 | 1 |
| 20049 | 1 | 04/13/05 92002 | 04/13/2005 660 | -302.78 | | | -302.78 | 1 |
| 20093 | 1 | 04/21/05 92098 | 04/21/2005 652 | 438.00 | | | 438.00 | 2 |
| 20365 | 1 | 06/21/05 8124 | 06/21/2005 591 | -16.90 | | | -16.90 | 1 |
| 20399 | 1 | 08/22/05 1664 | 08/25/2005 526 | 39.88 | | | 39.88 | 1 |
| 21230 | 1 | 01/31/06 6764 | 01/31/2006 367 | 48.45 | | | 48.45 | 1 |
| 21799 | 1 | 06/29/06 92248 | 07/13/2006 204 | 388.42 | | | 388.42 | 1 |
| 21349 | 1 | 08/03/06 1813 | 08/03/2006 183 | 6836.54 | | | 6836.54 | 1 |

{subtotal for GHIPPO}        Avg Days:386.40    5820.89                5820.89

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE   (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

HEALTHFIRST 65 PLUS
P.O. Box 5196
New York, NY 10274-5196
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley
George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| Southern | DISTRICT OF | New York |

| | |
|---|---|
| Beverly Hertzoff, Edwin Hertzoff, et al. | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| Noreen Diaz, and United Orthopaedic Appliances Co | Case Number:[1] 07-cv-3157 |

TO:  HEALTHFIRST 65 PLUS
New York, NY 10274-5196

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED EXHIBIT A

| PLACE  Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George R. Hinckley* Cest    Atty for Plaintiff | 5·22·07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.  All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.  All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.  All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.  All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.  All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.  All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

**Invoice**                                        **Amount**

| | Carrier Code: | HF65 | Name: | HEALTHFIRST 65 PLUS | | 212-801-1696 | | |
|---|---|---|---|---|---|---|---|---|
| 19005 | 1 | 09/15/04 | 91788 | 09/15/2004 | 870 | -37.80 | -37.80 | I |
| 19274 | 1 | 11/15/04 | 91966 | 11/15/2004 | 809 | -19.63 | -19.63 | I |
| 19739 | 1 | 02/14/05 | 4826 | 02/14/2005 | 710 | -49.10 | -49.10 | I |
| 19748 | 1 | 03/16/05 | 6653 | 03/16/2005 | 688 | -128.55 | -128.55 | I |
| 20395 | 1 | 06/14/05 | 2095 | 06/14/2005 | 598 | 114.53 | 114.53 | I |
| 21836 | 1 | 08/15/06 | 6278 | 08/15/2006 | 171 | 166.20 | 166.20 | I |
| (subtotal for HF65 | | | | Ava Days:384.50 | | 45.65 | 45.65 | |

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE  (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

METROPLUS HEALTHPLAN
P.O. Box 1966
New York, NY 10116-1966
  Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co. -- Southern
         District of New York (07-CV-3157)*

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley cm
George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

&AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| Southern | | New York |
|---|---|---|
| | DISTRICT OF | |

Beverly Hertzoff, Edwin Hertzoff, et al.

**SUBPOENA IN A CIVIL CASE**

V.

Noreen Diaz, and United Orthopaedic Appliances Co

Case Number:[1]  07-cv-3157

TO:  METROPLUS HEALTHPLAN
New York, NY 10116-1966

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE      Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| George R. Hinckley  CCH        Atty for Plaintiff | 5·22·07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                                    Amount

| Carrier Code: METRO Name: METROPLUS HEALTHPLAN | | | | | | 212-908-8600 | | |
|---|---|---|---|---|---|---|---|---|
| 14492 | 1 | 04/04/02 | 87422 | 04/04/2002 | 1765 | -52.00 | -52.00 | I |
| 14791 | 1 | 06/04/02 | 88918 | 06/04/2002 | 1704 | -12.00 | -52.00 | I |
| 14901 | 1 | 06/11/02 | 89005 | 06/11/2002 | 1697 | 306.00 | 306.00 | I |
| 14878 | 1 | 06/14/02 | 88983 | 06/14/2002 | 1694 | -306.00 | -306.00 | I |
| 15465 | 1 | 09/24/02 | 89386 | 09/24/2002 | 1592 | -7.00 | -7.00 | I |
| 15522 | 1 | 10/08/02 | 89425 | 10/08/2002 | 1578 | -11.25 | -11.25 | I |
| 15587 | 1 | 10/24/02 | 87047 | 10/24/2002 | 1562 | -687.20 | -687.20 | I |
| 15969 | 1 | 01/14/03 | 89752 | 12/16/2002 | 1509 | -14.40 | -14.40 | I |
| 16047 | 1 | 02/04/03 | 89801 | 02/04/2003 | 1458 | -14.40 | -14.40 | I |
| 16135 | 1 | 02/06/03 | 89866 | 02/06/2003 | 1457 | -1.80 | -1.80 | I |
| 16292 | 1 | 03/18/03 | 89981 | 03/18/2003 | 1417 | -11.48 | -11.48 | I |
| 16663 | 1 | 05/06/03 | 90220 | 05/06/2003 | 1368 | -14.40 | -14.40 | I |
| 16944 | 1 | 07/21/03 | 89202 | 07/21/2003 | 1292 | -11.50 | -11.50 | I |
| 17310 | 1 | 09/16/03 | 89801 | 09/16/2003 | 1235 | -49.50 | -49.50 | I |
| 17390 | 1 | 12/23/03 | 89598 | 12/23/2003 | 1137 | -11.47 | -11.47 | I |
| 18049 | 1 | 03/08/04 | 91148 | 03/08/2004 | 1062 | 189.23 | 189.23 | I |
| 18311 | 1 | 04/13/04 | 91319 | 04/13/2004 | 1025 | -31.12 | -31.12 | I |
| 18712 | 1 | 06/22/04 | 89172 | 06/22/2004 | 955 | -6.56 | -6.56 | I |
| 18686 | 1 | 08/02/04 | 91579 | 08/02/2004 | 914 | -36.75 | -36.75 | I |
| 19858 | 1 | 02/28/05 | 7173 | 02/28/2005 | 704 | -6.56 | -6.56 | I |
| 19860 | 1 | 02/28/05 | 3014 | 02/28/2005 | 704 | -6.56 | -6.56 | I |
| 20079 | 1 | 04/19/05 | 4744 | 04/19/2005 | 654 | 225.00 | 225.00 | I |
| 20298 | 1 | 05/24/05 | 6244 | 05/24/2005 | 619 | -6.56 | -6.56 | I |
| 20496 | 1 | 08/22/05 | 9698 | 08/22/2005 | 525 | 18.00 | 18.00 | I |
| 20830 | 1 | 02/16/06 | 8525 | 02/21/2006 | 343 | 198.00 | 198.00 | I |
| 21928 | 1 | 08/03/06 | 6294 | 08/04/2006 | 182 | 108.00 | 108.00 | I |
| 21966 | 1 | 08/17/06 | 2117 | 08/17/2006 | 169 | 198.00 | 198.00 | I |

(subtotal for METRO )          Ave Days: 662.14          -56.28          -56.28

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE    (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

RWDSU/UFCW LOCAL 338
97-45 Queens Blvd.
Rego Park, NY 11374
   Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley *CCH*

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

⸺AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| Southern | | New York |
|---|---|---|
| | DISTRICT OF | |

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

### SUBPOENA IN A CIVIL CASE

Case Number:[1] 07-cv-3157

TO:   RWDSU/UFCW LOCAL 338
      97-45 Queens Blvd.
      Rego Park, NY 11374
      516-694-1656

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE      Traiger & Hinckley LLP | DATE AND TIME |
|---|---|
| 880 Third Avenue, New York, New York 10022 | 6/28/2007 10:00 am |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| George R. Hinckley   Atty for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Carrier Code: LOC338 Name: RWDSU/UFCW LOCAL 338          516-694-1656
37472     1   10/24/03 90259   10/24/2003 1197          236.00                                        236.00   I

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE    (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

SAINT VINCENTS HOSPITAL
450 West 33rd Street, 12th Floor
New York, NY 10001
    Attn: Custodian of Records

    Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

    This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

    Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

    Thank you in advance for your cooperation.

                    Regards,

                    George Hinckley CtH

                    George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Southern      DISTRICT OF      New York

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-cv-3157

TO:    SAINT VINCENTS HOSPITAL
       450 West 33rd Street, 12th Floor
       New York, NY 10001
       212-356-4715

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

     Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *George R. Hinckley*  cch    Atty for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | | |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |

| | | |
|---|---|---|
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                         DATE

SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                              Amount

Carrier Code: SVH    Name: SAINT VINCENTS HOSPITAL    212-356-4715
20694    1    08/18/05 5621    08/18/2006    533        53.45                                                          53.45    I
21461    1    03/21/06 5985    03/21/2006    318      1441.00                                                        1441.00    I
                                                      ----
(subtotal for SVH   )    Ave Days: 425.50              1494.45                                                        1494.45

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE    (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

MAGNACARE
825 East Gate Blvd.
Garden City, NY 11530
   Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley CCH

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Eastern                    DISTRICT OF                    Ohio

Beverly Hertzoff, Edwin Hertzoff, et al.

**SUBPOENA IN A CIVIL CASE**

V.

Noreen Diaz, and United Orthopaedic Appliances Co

Case Number:[1] 07-cv-3157 Southern D.NY

TO:    MAGNACARE
       825 East Gate Blvd.
       Garden City, NY 11530

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _George R Hinckley_ CCH    Atty for Plaintiff | 5-22-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                    DATE                              SIGNATURE OF SERVER

                                                 _____
                                                 ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.  All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.  All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.  All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.  All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.  All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.  All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                                    Amount

Carrier Code: MAGNA  Name: MAGNACARE                    800-235-7267
20503    1   06/04/05 90677  08/04/2005  547      741.85                           741.85   E

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE  (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

Aetna Inc.
151 Farmington Avenue
Hartford, CT 06156
    Attn: Custodian of Records

        Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern
               District of New York (07-CV-3157)**

Dear Custodian of Records:

    This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners
of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic").  The Hertzoffs are in
litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street,
East Meadow, NY 11554 (516) 478-4420.

    Among the issues involved in the case is United Orthopaedic's collection efforts with
respect to certain accounts, identified on the schedule attached to the subpoena.  Accordingly, we
are required to subpoena from you the records relating to those accounts.  As a courtesy, I am
enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by
June 6, 2007 whether you will accept service of the subpoena.  Please contact me at the above
address if you are authorized to accept service of the enclosed subpoena.

    Thank you in advance for your cooperation.

                    Regards,

                    George Hinckley cev

                    George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ Connecticut

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07-cv-3157 (S.D.N.Y.)

TO:  Aetna, Inc.
151 Farmington Avenue
Hartford, CT 06156

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED EXHIBIT A

| PLACE  Traiger & Hinckley LLP   880 Third Avenue, New York, New York 10022 | DATE AND TIME   6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE   5/22/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                      DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.  All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.  All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.  All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.  All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.  All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.  All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

| Invoice | Amount |
|---------|--------|
| Carrier Code: AET09  Name: AETNA US HEALTHCARE | 1-800-545-5862 |
| 19861    1  03/31/05 80772  03/31/2005  673 | 953.46 |
| | 953.49  [ |

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933                                    GEORGE R. HINCKLEY
FACSIMILE  (212) 656-1531                          GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

AARP HEALTHCARE OPTIONS
P.O. Box 74-819
Atlanta, GA 30374-0819
     Attn: Custodian of Records

> Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley, *CCH*

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| Northern | DISTRICT OF | Georgia |
|---|---|---|

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-cv-3157 (S.D.N.Y.)

TO:  AARP HEALTHCARE OPTIONS
Atlanta, GA 30374-0819

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP | DATE AND TIME |
|---|---|
| 880 Third Avenue, New York, New York 10022 | 6/28/2007 10:00 am |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| | 5/22/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ),  its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1.    All documents concerning any claims,  bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2.    All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3.    All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4.    All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5.    All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6.    All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

| Invoice | | | | | Amount | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Carrier Code: AARP | | Name: AARP HEALTHCARE OPTIONS | | | 1-800-AARP-789 | | | | |
| 19615 | 1 | 01/11/05 2924 | 01/11/2005 | 752 | 122.06 | | | 122.06 | I |
| 21299 | 1 | 04/12/06 0732 | 04/17/2006 | 291 | 6.33 | | | 6.33 | I |
| 21708 | 1 | 05/25/06 8428 | 05/25/2006 | 253 | 33.90 | | | 33.90 | I |
| 21726 | 1 | 07/14/06 2386 | 07/14/2006 | 203 | 13.13 | | | 13.13 | I |
| (subtotal for AARP ) | | Ave Days:374.75 | | | 175.42 | | | 175.42 | |

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE    (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

OXFORD HEALTH PLAN
P.O. Box 7082
Bridgeport, CT 06601
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley CCH

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF _____ Connecticut

Beverly Hertzoff, Edwin Hertzoff, et al.

**V.**

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07-cv-3157 (S.D.N.Y.)

TO:  Oxford Health Plan
      Bridgeport, CT 06601

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>5/22/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                    DATE                                    SIGNATURE OF SERVER

                                                      _____
                                                      ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

## SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

| Invoice Number | Loc | D.O.S. | Guar. Code | Invoice Date | Days Elapsed | Re-Status | Amount Due | 0-30 | 31-60 | 61-90 | 91-120 | 121+ | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Carrier Code: OXF | | | Name: OXFORD HEALTH PLAN | | | | | | | | | | |
| 14689 | 1 | 05/21/02 | 88850 | 05/21/2002 | 1718 | | -385.20 | | | | | -385.26 | I |
| 15340 | 1 | 09/18/02 | 87148 | 09/10/2002 | 1606 | | -185.92 | | | | | -185.92 | I |
| 15394 | 1 | 09/26/02 | 89332 | 09/26/2002 | 1590 | | -325.40 | | | | | -325.40 | I |
| 15520 | 1 | 10/22/02 | 87225 | 10/22/2002 | 1564 | | -0.01 | | | | | -0.01 | I |
| 15698 | 1 | 10/29/02 | 89534 | 10/29/2002 | 1557 | | -18.06 | | | | | -18.06 | I |
| 15662 | 1 | 12/19/02 | 87662 | 12/19/2002 | 1506 | | -535.74 | | | | | -535.74 | I |
| 16037 | 1 | 01/23/03 | 89793 | 01/23/2003 | 1471 | | -138.26 | | | | | -138.26 | I |
| 17769 | 1 | 12/09/03 | 90962 | 12/09/2003 | 1151 | | -119.59 | | | | | -119.59 | I |
| 17679 | 1 | 12/10/03 | 89937 | 12/10/2003 | 1150 | | -336.58 | | | | | -336.58 | I |
| 17826 | 1 | 12/23/03 | 90994 | 12/23/2003 | 1137 | | -12.97 | | | | | -12.97 | I |
| 17838 | 1 | 01/29/04 | 87446 | 01/29/2004 | 1100 | | -419.18 | | | | | -419.18 | I |
| 18020 | 1 | 03/11/04 | 91040 | 03/11/2004 | 1058 | | 249.07 | | | | | 249.07 | I |
| 19329 | 1 | 11/09/04 | 91990 | 11/09/2004 | 815 | | -1348.14 | | | | | -1348.14 | I |
| 20098 | 1 | 04/05/05 | 86892 | 04/05/2005 | 668 | | 109.44 | | | | | 109.44 | I |
| 20721 | 1 | 09/16/05 | 9832 | 09/16/2005 | 504 | | 579.07 | | | | | 579.07 | I |
| 21282 | 1 | 03/02/06 | 92202 | 03/02/2006 | 337 | | 287.39 | | | | | 287.39 | I |
| 21309 | 1 | 03/08/06 | 92204 | 03/08/2006 | 331 | | 287.39 | | | | | 287.39 | I |
| 21529 | 1 | 04/27/06 | 4186 | 04/27/2006 | 281 | | 392.10 | | | | | 392.10 | I |
| 21711 | 1 | 06/02/06 | 4186 | 06/02/2006 | 245 | | 7994.81 | | | | | 7994.81 | I |
| 21880 | 1 | 08/03/06 | 92259 | 08/03/2006 | 183 | | 1153.83 | | | | | 1153.83 | I |
| (subtotal for OXF ) | | | | Avg Days:450.88 | | | 7228.95 | | | | | 7228.95 | |

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE  (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

SAG – PRODUCERS HEALTH PLAN
P.O. Box 7830
Burbank, CA 91510-7830
   Attn: Custodian of Records

Re:   *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

George Hinckley cct

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF      Connecticut

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07-cv-3157 (S.D.N.Y.)

TO:  SAG- PRODUCERS HEALTH PLAN
     3601 West Olive Avenue
     Burbank, CA 91505

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>5/22/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing, or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ),  its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims,  bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

# SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Carrier Code: SAG    Name: SAG - PRODUCERS HEALTH PLAN    800-777-4013
20244    1  07/14/05 1434    07/14/2005  56B          315.82                                    315.82   1

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE    (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

UNITED HEALTHCARE
P.O. Box 740800
Atlanta, GA 30374
    Attn: Custodian of Records

Re:    *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic"). The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena. Accordingly, we are required to subpoena from you the records relating to those accounts. As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena. Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

*George Hinckley ccr*

George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

Northern _____ DISTRICT OF _____ Georgia

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-cv-3157 (S.D.N.Y.)

TO:    United Healthcare Group
       4170 Ashford Dunwoody NE #100
       Atlanta, Georgia 30319

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED EXHIBIT A

| PLACE    Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>5/22/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

## SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                                              Amount

| Carrier Code: UH | | | Name: UNITED HEALTHCARE | | | 877-842-3210 | | |
|---|---|---|---|---|---|---|---|---|
| 13605 | 1 | 09/25/01 | 88101 | 09/25/2001 | 1956 | -36.53 | -36.53 | I |
| 17603 | 1 | 07/08/03 | 90461 | 07/08/2003 | 1305 | -422.80 | -422.80 | I |
| 20879 | 1 | 10/14/05 | 7444 | 09/29/2005 | 491 | 9.93 | 9.93 | I |
| 20906 | 1 | 11/04/05 | 92158 | 11/04/2005 | 455 | 943.00 | 943.00 | I |

| Carrier Code: UH | | | Name: UNITED HEALTHCARE | | | 877-842-3210 | | |
|---|---|---|---|---|---|---|---|---|
| 21214 | 1 | 01/05/06 | 4525 | 02/20/2006 | 378 | 310.26 | 310.26 | I |
| 21244 | 1 | 02/14/06 | 91652 | 02/14/2006 | 353 | -240.04 | -240.04 | I |
| [subtotal for UH | ] | | Avg Days:441.33 | | | 563.82 | 563.82 | |

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 759-4933
FACSIMILE  (212) 656-1531

GEORGE R. HINCKLEY
GHINCKLEY@TRAIGERLAW.COM

May 22, 2007

**BY U.S. MAIL**

HOMELINK
P.O. Box 1860
Waterloo, IA 50704
    Attn: Custodian of Records

Re:  *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* -- **Southern District of New York (07-CV-3157)**

Dear Custodian of Records:

This firm represents Mrs. Beverly Hertzoff and Mr. Edwin Hertzoff, the former owners of United Orthopaedic Appliances Co., Inc. ("United Orthopaedic").  The Hertzoffs are in litigation against the new owners of United Orthopaedic, Ms. Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420.

Among the issues involved in the case is United Orthopaedic's collection efforts with respect to certain accounts, identified on the schedule attached to the subpoena.  Accordingly, we are required to subpoena from you the records relating to those accounts.  As a courtesy, I am enclosing a copy of the subpoena that we will serve upon you, and request that you advise us by June 6, 2007 whether you will accept service of the subpoena.  Please contact me at the above address if you are authorized to accept service of the enclosed subpoena.

Thank you in advance for your cooperation.

Regards,

*George Hinckley* ccH
George R. Hinckley, Jr.

Enc.
cc: Colleen Tarpey

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Northern      DISTRICT OF      Iowa

Beverly Hertzoff, Edwin Hertzoff, et al.

V.

Noreen Diaz, and United Orthopaedic Appliances Co

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-cv-3157 (S.D.N.Y.)

TO:    VGM Homelink
       1111 E San Marnan Dr
       Waterloo, IA 50702

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE   Traiger & Hinckley LLP<br>880 Third Avenue, New York, New York 10022 | DATE AND TIME<br>6/28/2007 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| | 5/22/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
George R. Hinckley, 880 Third Avenue, New York, NY 10022 (212) 759-4933

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"Accounts" shall mean those invoices listed in the attached SCHEDULE OF "ACCOUNTS".

"COSI" shall mean Complete Orthopedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113

"United Orthopaedic" shall mean United Orthopaedic Appliances Company, Inc., 791 Broadway, New York, NY 1000 (Tax ID No. 13-5458442 ), its officers, directors, and agents, including, but not limited to its officers Martin Diaz and Noreen Diaz, 2094 Front Street, East Meadow, NY 11554 (516) 478-4420, or COSI.

1. All documents concerning any claims, bills, invoices, forms, submissions or follow-up correspondence or other communications by United Orthopaedic on the Accounts since August 20, 2006.

2. All documents concerning any Explanation Of Benefits ("EOBs"), responses, forms, correspondence or other communications, or notice of action provided to United Orthopeaedic on the Accounts since August 20, 2006.

3. All documents (including copies of checks and front and back of canceled checks) showing or evidencing payments, credits or reimbursements made to United Orthopaedic on the Accounts since August 20, 2006.

4. All documents concerning any efforts at collection by United Orthopedic or COSI of the Accounts.

5. All documents showing the account(s) at United Orthopaedic into which payments were made since August 20, 2006.

6. All documents concerning any payments on claims submitted by COSI since January 1, 2006 (including copies of checks and front and back of canceled checks).

## SCHEDULE OF "ACCOUNTS"

The "Accounts" shall mean the following accounts.

Invoice                                    Amount

Carrier Code: HOXELN Name: HOXELINK                    800-842-1993
21135    1   07/18/06 91124   07/26/2006  191    1123.24                                    1123.24   I

# TRAIGER & HINCKLEY LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 9TH FLOOR
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE (212) 845-9094
FACSIMILE   (212) 656-1531

CHRISTOPH HEISENBERG
CHEISENBERG@TRAIGERLAW.COM

June 1, 2007

**BY FACSIMILE (516) 466-5964**

Colleen Tarpey, Esq.
Garfunkel, Wild & Travis, PC
111 Great Neck Road, Suite 503
Great Neck, NY 12402

Re:  *Hertzoff v. Diaz and United Orthopaedic Appliances, Co.* — **Southern District of New York (07-CV-3157)**

Dear Ms. Tarpey:

Enclosed please find a copy of a subpoena being served by Plaintiffs in the above captionedmatter.

Regards,

Christoph C. Heisenberg

Enc.

%AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT·

Eastern               DISTRICT OF            New York

| | |
|---|---|
| Beverly Hertzoff, Edwin Hertzoff, et al. | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| Noreen Diaz, and United Orthopaedic Appliances Co | Case Number:[1]  07-cv-3157 (S.D.N.Y.) |

TO:   NORTH FORK BANK
       275 Broadhollow Road, Melville, NY 11747

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A

| PLACE   Traiger & Hinckley LLP  880 Third Avenue, New York, New York 10022 | DATE AND TIME  6/28/2007 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

     Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF ⬤⬤⬤⬤⬤⬤⬤⬤⬤) | DATE |
|---|---|
| *Chris Heisenberg* | 6/1/2007 |
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |
| Christoph C. Heisenberg, 880 Third Avenue, New York, NY 10022 (212) 759-4933 | |

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | | |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |

| | | |
|---|---|---|
| SERVED BY (PRINT NAME) | | TITLE |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

"United Orthopaedic" shall mean United Orthopaedic Application Company, Inc., 791 Broadway, New York, NY.

"COSI" shall mean Complete Orthopaedic Services Co., Inc., 2094 Front Street, East Meadow, NY 11554 (516) 357-9113 (Tax ID No. 13-5458442)

1.    All bank statements for United Orthopaedic since August 1, 2006.

2.    All documents relating to any deposits into the United Orthopaedic bank accounts since August 1, 2006, including, but not limited to, copies of any deposit slips, checks deposited, wire transfers, account credits, or other documentation to identify the source of the deposit.

3.    All documents relating to any transfers from United Orthopaedic to COSI, Martin Diaz or Noreen Diaz since August 1, 2006, including, but not limited to, copies of checks, transfer instructions, wire transfers, or credits.