Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (CT-7572)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200
Attorneys for Defendants Noreen Diaz and
United Orthopaedic Appliances Co., Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BEVERLY HERTZOFF, EDWIN HERTZOFF, : **DEFENDANT NOREEN DIAZ'**
and CLAYTON HERTZOFF, : **REPLY AFFIDAVIT IN FURTHER**
: **SUPPORT OF DEFENDANTS'**
Plaintiffs, : **MOTION FOR INJUNCTIVE**
: **RELIEF**
-against- :
: 07 CV 3157 (CM)(MHD)
NOREEN DIAZ and UNITED ORTHOPAEDIC :
APPLIANCES CO., INC. :
:
Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK    )
                    )ss.:
COUNTY OF NEW YORK  )

NOREEN DIAZ, being duly sworn, deposes and says:

**Introduction**

1.  I am a defendant in the captioned proceeding and am the current sole shareholder and President of defendant United Orthopaedic Appliances Co., Inc. ("UOA"), and submit this reply affidavit in further support of UOA's application for injunctive relief against plaintiff Clayton Hertzoff.

525546.01

2.  The papers submitted by Plaintiffs in opposition to this request for preliminary injunctive relief reveal three facts that bolster, rather than refute the obvious need for injunctive relief in this case. The first is the unbelievable contention by Clayton Hertzoff – unsupported by the plain language of the Employment Agreement that he signed – that, following the sale of the company, UOA would continue to employ him on the same terms, in the same capacity, and doing the same work (or lack thereof) that he had done for his parents for the previous thirty years. Every allegation of "breach" of the Employment Agreement leveled at Defendants in this matter is either unsupported by the plain language of the Employment Agreement, is an utter fabrication, or else is tied into Clayton Hertzoff's erroneous (and non-actionable) assumption that I would run UOA in the same manner as his parents, and allow him to do whatever he pleased as an employee of my company, as he had while working for his family.

3.  The second fact revealed by Plaintiffs opposition papers is that Defendants' suspicions with regard to the real motives behind this litigation were correct. This litigation is part of a larger fraud designed to strip the value out of the company Plaintiffs sold to Defendants. Indeed, Plaintiffs attempt to tie together all three contracts, the Lease Agreement, the Stock Purchase Agreement, and Clayton's Employment Agreement, in a transparent effort to keep this Court from doing the one thing it could do to prevent Plaintiffs' fraud from succeeding – granting Defendants the injunctive relief sought herein.

4.  Instead, Plaintiffs expect this Court to allow Clayton Hertzoff to work for UOA's competitor no more than 2 miles from UOA's offices in direct contravention of the terms of the Employment Agreement, on the basis of vague, unsupported, and utterly false allegations of "breaches" of "the agreements," because Plaintiffs realize that UOA has committed no breach of the Employment Agreement and that, without tying all three agreements together, they will be

2

525546.01

unable to otherwise justify Clayton Hertzoff's continued employment in breach of the restrictive covenant.

5. Finally, the third fact revealed by Clayton Hertzoff's affidavit submitted in opposition to this request for injunctive relief is that the Defendants are utterly justified in their fears that Clayton Hertzoff has used UOA's Confidential Information for the benefit of his new employer, has taken that information from UOA's offices without UOA consent, and is in a position to do real damage to the company, to the extent that the has not already done so.

**Clayton Hertzoff Admits That He Had UOA's Confidential Information In His Possession At The Time Of And Since His Departure From UOA And Has Failed To Rebut UOA's Other Allegations Regarding The Irreparable Harm That He Has And Can Cause To UOA**

6. I was most concerned to learn, from a letter received by my lawyers the day before Clayton Hertzoff's submission of his opposition affidavit in this matter, and as confirmed by that affidavit, that Clayton Hertzoff was in possession of patient account information for over 100 [VERIFY] customers served by UOA in the months preceding his departure from UOA. In fact, Clayton Hertzoff, through his legal counsel, sent the documents back to UOA's legal counsel just last week. (See, Exhibit 1.)[1]

7. The account information was all printed from UOA's system in early April, just nine days prior to Plaintiff's commencement of this action, and could easily have been disclosed by Clayton Hertzoff to any third party since then, particularly as he has admitted that, since that time, he has been in search of new employment.

---

[1] I have not submitted to this Court the actual patient account information returned by Mr. Hertzoff, so as to protect those patients' rights to privacy pursuant to State and Federal law, but am willing to do so should the Court establish an appropriate protocol to review the information without its becoming part of the public record.

3

8. The Employment Agreement states that:

> All files and records of every type pertaining to customers of Company for whom Employee shall render services hereunder shall belong to Company and Employee shall not, without the express written consent of Company, remove them from Company's office, copy them, allow them to be removed from Company's office, or allow them to be copied, except as reasonably required in the ordinary course of services provided by Employee as an employee of Company.

Employment Agreement, annexed to my previously submitted Affidavit as Exhibit 5, ¶6.c. Neither I nor anyone under my direction ever gave Clayton Hertzoff written permission, or any permission, to remove the records returned to UOA from UOA's offices, to retain them for a period of months, or to retain them for almost a month after beginning work for a direct competitor of UOA!

9. Moreover, Clayton's claims that taking such a huge number of UOA patient files home is "reasonably required in the ordinary course of services provided by Employee" is utter fabrication. These files were all printed on the same date just shortly before the initiation of litigation against UOA, and clearly with knowledge that litigation was about to start. Further, Clayton would not, under any circumstances, be working with such a vast number of patients at any given moment, was not responsible for billing patient accounts, and has no legitimate excuse for having been in possession of the returned files.

10. I have no idea what damage Clayton Hertzoff has done to UOA with the materials that he has returned, but UOA will conduct an investigation (now that we know, at least in part, which patients' information he stole) to determine whether Clayton ever contacted

those patients to entice them or solicit them away from UOA, as we can only surmise he that must have done.

11. Finally, Clayton Hertzoff's reassurances that he has not otherwise breached the non-disclosure or non-compete provisions of the Employment Agreement simply are not to be believed.

12. He states, for example, that he has not solicited any patients away from UOA by virtue of working for his new employer in the same hospital clinics where he previously worked for UOA. However, he materially misrepresents the events of June 18, 2007 to hide the fact that he has done just that.

13. As stated in his affidavit, Clayton Hertzoff failed to return to work at UOA following a one week paid vacation, instead commencing work with his new employer on June 18, 2007 (the day he was supposed to return from vacation). As he further admits, he showed up at the clinic at Metropolitan Hospital that day, after UOA had tried and failed to reach him about patient appointments, and serviced patients previously scheduled to be seen by UOA practitioners on behalf of his new employer.

14. That the new employer may have previously been allowed access to the clinic at Metropolitan Hospital is not the point – the fact is that Clayton Hertzoff went to Metropolitan Hospital, where patients were scheduled to see UOA practitioners, and saw those same patients on behalf of his new employer.

15. My other employees' actions in going to the clinic that day to try to ascertain which patients Clayton was seeing were in an effort to determine how many and which specific

patients he was in the process of stealing from UOA for his new employer's benefit. Contrary to Mr. Hertzoff's "story," they were not asked to leave the clinic for causing a "ruckus" in the Hospital.

16.   Instead, because Clayton had interfered with UOA's relationship with the Metropolitan Hospital clinic by telling the doctors and administrators there that he had been fired from UOA, that UOA was no longer run by the same people, and that UOA could no longer be relied upon to provide quality service, the administrator at Metropolitan Hospital asked UOA to re-credential its practitioners.

17.   Further, since Clayton's departure from UOA, we found a facsimile addressed to Clayton Hertzoff at UOA dated May 3, 2007, from Metropolitan Hospital bearing an "Urgent" legend, advising UOA that Metropolitan Hospital required UOA to submit a "request for proposal" regarding UOA's servicing of Metropolitan's patients on or before May 29, 2007. Clayton hid this document, never showed it to UOA management, and as a result, Metropolitan may not allow UOA to continue servicing its patients. (Exhibit 2.)

18.   UOA lost two weeks of time at Metropolitan – translating into thousands of dollars of lost sales. Moreover, we are in jeopardy of losing the entire account.

19.   Clayton's interference cost UOA weeks of seeing patients at Metropolitan Hospital and will be the subject of appropriate counterclaims when Defendants are required to submit a pleading in this action.[2]

---

[2] Bafflingly, Clayton Hertzoff and his legal counsel make repeated statements in their papers that UOA has not plead certain things against Plaintiffs. However, as Plaintiffs and this Court are aware, the Amended Complaint in this matter is the subject of a pending motion to dismiss which I understand to mean that Defendants are not yet required

6

525546.01

20. Finally, the Court should be aware that Clayton Hertzoff has appeared at some hospital clinics where his new employer does not regularly solicit referrals. For example, Montefiore Medical Center's purchasing department recently informed UOA that it checked its records and discovered that it has no agreement with Clayton or his new employer that allows either of them to see Montefiore patients, but that Clayton had been showing up at the clinic there and seeing patients, apparently cashing in on his previous relationship with that UOA referral source for the benefit of his new employer.

21. Montefiore has advised UOA that, now that it is aware that Clayton Hertzoff is no longer affiliated with UOA, it may putting an end to Clayton Hertzoff's ability to see patients there, but that rather than get involved with the parties' dispute, it may discontinue its relationship with either or both of the parties.

22. Kingsbrook Jewish Medical Center and Kings County Hospital have also raised issues with UOA based upon Clayton's statement to personnel at those facilities that UOA is no longer able to provide services.

## UOA Has Not Breached The Employment Agreement Or Any Other Agreement

23. Following his unbelievable "assurances" that he did not improperly utilize or disclose any UOA Confidential Information to any third party or for the benefit of his new employer, Clayton Hertzoff next tries to convince this Court that the restrictive covenant in his Employment Agreement cannot be enforced because UOA "breached" the "agreements."

---

to submit a responsive pleading to the Amended Complaint. Of course, at the appropriate time, Defendants will plead all appropriate counterclaims against Plaintiffs for their intentional interference with UOA and their breaches of the agreements underlying this suit.

24. Here, his tactic is two-fold. First, he tries to convince the Court that the three agreements underlying the sale of UOA to me are somehow linked and dependent upon one another such that a breach of one is a breach of the others. As I understand it, however, this contention is without merit both in fact and law, as explained by my legal counsel in the accompanying Memorandum of Law.

25. While it is true that the Stock Purchase Agreement required UOA to employ Clayton Hertzoff, his Employment Agreement is separate and apart from any other agreement underlying the sale of the business. His attempts to relate an alleged and fabricated breach of the Asset Purchase Agreement or an alleged but false breach of the Lease Agreement to his Employment Agreement is plainly an attempt to confuse the Court in the hopes that the Court will fail to enforce the otherwise enforceable restrictive covenant.

26. Next, Mr. Hertzoff fabricates breaches of the Employment Agreement and makes rank, unsupported, salacious allegations against UOA in an effort to explain why his breach of the restrictive covenant should be excused.

27. It is plain that this approach is designed to cover up one inescapable fact – at the time that Plaintiff commenced this litigation, Defendants were not in breach of any obligation under the Employment Contract.

28. For example, Clayton Hertzoff claims that he was not paid his full commissions for the first quarter of 2007 and that Defendants have violated the Employment Agreement and New York Labor Law by instituting a "general policy" seeking to hold Mr. Hertzoff responsible for the company's losses resulting from one patient's failure to turn insurance reimbursement checks over to UOA.

29. However, pursuant to the Employment Agreement, commissions on sales were to be paid to Mr. Hertzoff "on a quarterly basis," meaning that the commissions that he sued for on April 19, 2007 weren't even past-due until the expiration of the second quarter of the year – or at the end of June, 2007. *See*, Employment Agreement, ¶3.b.

30. Further, Mr. Hertzoff's commission are, according to the Employment Agreement, to be paid "in accordance with the general practice of" UOA, as stated in my letter to Mr. Hertzoff dated May 22, 2007. *See*, Employment Agreement, ¶3.b.

31. Mr. Hertzoff disingenuously tries to convince this Court that the general language of his Employment Agreement, as quoted by me in the May 22, 2007 letter, is proof that UOA had instituted an ongoing policy of holding him responsible whenever a patient refused or failed to pay for a prosthetic device or brace. No such general policy existed when Mr. Hertzoff worked for UOA, and no such general policy exists now.

32. The remaining allegations of breach of the Employment Agreement center around Mr. Hertzoff's accusations that UOA "materially changed" his job responsibilities, or that UOA requested that he participate in billing fraud.

33. With regard to billing "fraud" issues, UOA unequivocally denies any such wrongdoing, and Clayton Hertzoff has failed to present this Court with any proof of same. His accusations regarding the improper coding of braces, for example, are supported only by means of a single memo to my husband, relating to a single patient, and do not reference the specific type of brace being dispensed. Moreover, nowhere does Mr. Hertzoff state that, following his delivery of the memo to my husband, UOA nonetheless failed to code the brace as he, the practitioner, wrote it up.

9

34. Indeed, Mr. Hertzoff was responsible, as the practitioner actually delivering the goods to UOA's patients, to provide UOA's billing staff with the codes for the products he delivered. The only time my husband ever spoke to the practitioners regarding their coding of particular items was when the manufacturer of that item provided UOA with information indicating that the product could be or should be coded differently than the practitioner was, in fact, coding a given item. The sheet of manufacturer's specifications, including suggested billing codes, attached to my previous affidavit is but an example of the type of materials received by UOA that we pass along to practitioners to help them code appropriately and in a manner that obtains for UOA the benefit of the best possible reimbursement rate for the device provided.

35. Clayton Hertzoff's other accusations of "billing fraud" are likewise either unsupported or false, and are intentionally fabricated or inflated in an attempt to get him out of an otherwise enforceable restrictive covenant.

36. Most egregiously, Clayton Hertzoff attempts to convince this Court that UOA breached the Employment Agreement by failing to continue to employ him under the same conditions in which he had worked when the company was owned by him and his parents!

37. This is the real crux of Clayton's problems with me and my husband – that we treated him, after the sale of his family's business to us, just as we would any other practitioner working for UOA and expected him to do the work that would be expected of any other employee of our company, without the special consideration he had always received from his parents and as a part owner of the company prior to its sale.

38. But the Employment Agreement is clear – UOA hired Clayton Hertzoff as a Prosthetist, that is, one skilled in the manufacture and fitting of prosthetic devices. UOA did not

10

525546.01

promise to continue to employ other UOA employees after the sale. UOA did not promise that Clayton Hertzoff would only be handling sales and would not be required to do manufacturing work that a skilled Prosthetist could reasonably be expected to do. UOA did not promise that it would remain in the same location where his family had maintained the business. UOA did not promise to consult Clayton Hertzoff or get his permission to move the business or to ask his opinion as to what equipment might be necessary once it changed locations. UOA did not promise to do any of the things about which Mr. Hertzoff now complains.

39. UOA promised to employ Mr. Hertzoff as a Prosthetist for a period of years, with an annual salary, the possibility of a *discretionary* bonus,[3] commissions on his sales, a company car, and health and life insurance benefits. UOA made good on its promises and Mr. Hertzoff did not.

**Clayton Hertzoff And Plaintiffs Have Perpetrated A Fraud On UOA And Are Attempting To Get This Court To Sanction Same By Allowing <u>Clayton Hertzoff To Continue To Breach The Restrictive Covenant</u>**

40. It is patently clear from Clayton Hertzoff's affidavit what his real motives are. Having chosen to go to work for an employer clearly within the geographic scope of the restrictive covenant, having stolen, kept, and utilized UOA's patient information in contravention of the Employment Agreement, and having interfered with UOA's relationships with Hospital clinics and insurers as set forth in this and my previously submitted affidavit, he now seeks to make this Court a willing participant in the fraud he has perpetrated upon UOA.

---

[3] Mr. Hertzoff's claims that this "discretionary" bonus was meant to compensate him for his sale of shares in UOA is belied by the plain language of the Employment Agreement, and his statements to the contrary should be afforded no consideration. Further, such an allegation is illogical -- why would Mr. Hertzoff agree that his compensation for his shares in UOA would be "discretionary?" Why not include the payment as a condition in the Stock Purchase Agreement or increase his base compensation? The fact is, the discretionary bonus was just that, and nothing more.

41. Indeed, Clayton Hertzoff and his parents dropped an ailing and debt-ridden corporation on me, made the new UOA the uncompensated collection agent for all of its old accounts receivables that the Hertzoffs had been unable to collect, and had the audacity to sue when it became clear that I would not continue to run UOA in the same non-lucrative manner they had, despite UOA's fulfillment of its end of the bargain.

42. Now, through the actions of Clayton in breach of the restrictive covenant, Plaintiffs attempt to strip the last of the value out of UOA so that I will be left with no benefit of any bargain. Indeed, in the absence of this Court's enforcement of the restrictive covenant to prevent Clayton from directly competing with UOA, from telling insurers and anyone else that UOA is "dissolved," and from applying his knowledge of UOA's referral sources and customers for the benefit of his new employer, UOA will be (as Clayton Hertzoff already acknowledged in the Employment Agreement) irreparably harmed.

43. For these reasons and the reasons set forth in this Affidavit and the accompanying Memorandum of Law, I respectfully request that this Court grant UOA the preliminary injunctive relief to which it is entitled against Clayton Hertzoff for his breaches of the Employment Agreement.

_____
NOREEN DIAZ

Sworn to before me
this 23rd day of July, 2007

_____
Notary Public

MARILYN R. SALERNO
Notary Public, State of New York
No. 01SA6086324
Qualified in Nassau County
Commission Expires January 21, 2011

**TRAIGER & HINCKLEY LLP**

ATTORNEYS AT LAW
880 THIRD AVENUE
NEW YORK, NY 10022-4730
WWW.TRAIGERLAW.COM

TELEPHONE 212-759-4933
FACSIMILE 212-656-1531

GEORGE R. HINCKLEY, JR.
GRH@HINCKLEY.ORG

July 18, 2007

<u>Via Federal Express</u>

Colleen M. Tarpey, Esq.
Garfunkel, Wild & Travis, P.C.
111 Great Neck Rd.
Great Neck, New York 11021

<u>Re: Hertzoff v. United Orthopaedic Appliances Co. Inc., 07 Civ. 03157 (S.D.N.Y.)</u>

Dear Ms. Tarpey:

Enclosed please find documents that Clayton Hertzoff used in connection with his work for United Orthopaedic Appliances Co. ("UOA") while working from home. We are returning these documents to UOA via your office.

Please be advised that Mr. Hertzoff has not used or disclosed this information to anyone since leaving UOA.

Sincerely,

*George Hinckley Jr.*

George R. Hinckley, Jr.



# URGENT!

| Date and Time: | Thursday, May 03, 2007 11:17 AM |
| To: | CLAYTON HERTZOFF |
| Company: | UNITED ORTHOPEDICS |
| Fax No.: | 212-473-0658 |
| From: | Rodica Alexandrescu, M.D., Chief of Service |
| Company: | REHAB MEDICINE, Metropolitan Hospital Center |
| Phone No.: | 212-423-6448 |
| Fax No.: | |
| No. of Pages: | 2, including cover |
| Message: | |

PLEASE SEE ATTACHED NOTICE REGARDING REQUEST FOR PROPOSALS (RFP).
PLEASE MAKE SURE YOU RESPOND ON TIME SO THAT YOU MAY CONTINUE
ATTENDING OUR CLINICS AND PROVIDING OUR PATIENTS WITH DME.

IF YOU HAVE ANY QUESTIONS, PLEASE FEEL FREE TO CONTACT MY SECRETARY,
NORMA REYES AT THE ABOVE NUMBER.

THANK YOU.

Attachment B

GENERATIONS+/NORTHERN MANHATTAN HEALTH NETWORK
Member of New York City Health and Hospitals Corporation

RFP Announcement to Vendors

**REQUEST FOR PROPOSALS**

RFP Title: DURABLE MEDICAL EQUIPMENT/SUPPLIES & RESPIRATORY SERVICES

Document Control Number: DCN-MET-DURABLE-2007

Pre-Proposal Conference:
Date MONDAY, MAY 14, 2007

Time 11:00 A.M.

Location Conference Room #1B35, First Fl. Metropolitan Hospital Center, 1901 First Avenue, New York, NY 10029

Is the Conference Mandatory? NO
Proposal Due Date:
Proposal Due no later than 5:00 pm on May 29, 2007

Request for Proposal to provide durable medical equipment, supplies and respiratory services for the patients at Generations+/Northern Manhattan Health Network—Metropolitan Hospital Center, 1901 First Avenue, New York, NY 10029.

A copy of the RFP can be obtained on the HHC Web site (http://nyc.gov/hhc) under "Contracting Opportunities". Printed copies of the RFP may be obtained for $25, by visiting Purchasing Department, Lincoln Medical and Mental Health Center, 234 E. 149th Street, Room 2A2, Bronx, NY 10451
between the hours of 10:00 a.m. and 4:00 p.m. beginning May 7, 2007.

To request a copy of the RFP by postal mail, send a check or money order for $25, paid to the order of New York City Health and Hospitals Corporation
to the attention of Doris Boone, Purchasing Department, Room, 234 E. 149th Street, Room 2A2, Bronx, NY 10451