Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (CT-7572)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200
*Attorneys for Defendants Noreen Diaz and*
*United Orthopaedic Appliances Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BEVERLY HERTZOFF, EDWIN HERTZOFF, :
and CLAYTON HERTZOFF, :
  :
  :
                Plaintiffs, :
  :
    -against- :     07 CV 3157 (CM)(MHD)
  :
NOREEN DIAZ and UNITED ORTHOPAEDIC :
APPLIANCES CO., INC. :
  :
                Defendants. :
  :
  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' NOREEN DIAZ AND UNITED
ORTHOPAEDIC APPLIANCES CO., INC'S
MOTION FOR PRELIMINARY INJUNCTIVE RELIEF


GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendants*
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200


Of Counsel:
Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (CT-7572)

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

POINT I ........................................................................................................................... 5

DEFENDANTS ARE ENTITLED TO INJUNCTIVE RELIEF TO PREVENT
IRREPARABLE HARM TO UOA BY VIRTUE OF CLAYTON
HERTZOFF'S BREACH OF THE NON-COMPETE AND NON-
SOLICITATION PROVISIONS OF HIS EMPLOYMENT
AGREEMENT .................................................................................................... 5

A.    Defendant UOA Would Suffer Irreparable Harm In The Absence
      Of Injunctive Relief Enjoining Clayton Hertzoff's Breaches Of
      The Employment Agreement ................................................................... 5

      1.    Irreparable Harm Attributable To Breach Of Restrictive
            Covenant ..................................................................................... 5

      2.    Irreparable Harm Due To Misappropriation Of Proprietary
            Information .................................................................................. 7

B.    Injunctive Relief Is Necessary To Maintain The Status Quo ..................... 9

C.    The Claim Of Constructive Discharge Is Baseless And Does Not
      Constitute A Basis For Denying Enforcement Of The Restrictive
      Covenants .............................................................................................. 10

      1.    The Constructive Discharge Claim Is Not Credible ..................... 10

      2.    Plaintiff Clayton Hertzoff's Claim For Constructive
            Discharge Fails To Allege, Nor Can It, That He Was
            Forced To Resign, And Thus Fails To State A Claim ................... 11

      3.    Plaintiff Clayton Hertzoff's Claim For "Anticipatory"
            Breach Of The Employment Agreement Must Be
            Dismissed For Failure To Plead That The Alleged Breach
            Anticipated Rendered His Performance Under The
            Agreement Impossible Or That It Adequately
            Demonstrated UOA's Intention Not To Continue As His
            Employer ..................................................................................... 12

      4.    There Were No Breaches, Let Alone Material Breaches, Of
            The Employment Agreement By UOA .......................................... 14

D.    Should Defendants Prevail On This Application, They Are Entitled
      To Payment From Defendant Clayton Hertzoff Of Legal Fees,
      Costs And Disbursements ....................................................................... 16

CONCLUSION ............................................................................................................... 17

i

TABLE OF AUTHORITIES

FEDERAL CASES

*Bernard v. Las Americas Comm., Inc.,*
    84 F.3d 103 (2d Cir., 1996)................................................................................................15

*EarthWeb, Inc. v. Schlack,*
    71 F. Supp. 2d 299 (S.D.N.Y. 1999)..................................................................................8

*Estee Lauder Companies Inc. v. Batra,*
    430 F. Supp. 2d 158 (S.D.N.Y. 2006)............................................................................8, 9

*FMC Corp. v. Taiwan Tainan Giant Indus. Co,*
    730 F.2d 61 (2d Cir.1984)..................................................................................................8

*Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.,*
    323 F. Supp. 2d 525 (S.D.N.Y. 2004)................................................................................8

*Lavigne v. Hirsch,*
    114 F.3d 379 (2d Cir. 1997)..............................................................................................14

*Lichtenberg v. Besicorp Group Inc. BGI,*
    43 F. Supp. 2d 376 (S.D.N.Y. 1999)................................................................................10

*Markovits v. Venture Info Capital, Inc.,*
    129 F. Supp. 2d 647 (S.D.N.Y. 2001)................................................................................7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn,*
    73 F. Supp. 2d 425 (S.D.N.Y. 1999)..................................................................................7

*Mina Inv. Holdings, Ltd. v. Lefkowitz,*
    51 F. Supp. 2d 486 (S.D.N.Y., 1999)..............................................................................13

*Natsource LLC v. Paribello,*
    151 F. Supp. 2d 465 (S.D.N.Y. 2001)................................................................................7

*New York v. Shinnecock Indian Nation,*
    280 F. Supp. 2d 1 (E.D.N.Y. 2003) ....................................................................................9

*Parker v. Chrysler Corp.,*
    929 F. Supp. 162 (S.D.N.Y. 1996) ..................................................................................12

*Pena v. Brattleboro Retreat,*
    702 F.2d 322 (2d Cir., 1983)............................................................................................11

*Shred-It, USA, Inc. v. Mobile Data Shred, Inc.,*
    202 F. Supp. 2d 228 (S.D.N.Y. 2002)................................................................................7

*Sierra Club v. U.S. Army Corps of Engineers,*
        732 F.2d 253 (2d Cir. 1984)............................................................................9

*Teachers Ins. and Annuity Ass'n of America v. Coaxial Communications of Cent. Ohio,*
        *Inc.,*
        807 F. Supp. 1155 (S.D.N.Y. 1992)...............................................................13

*Ticor Title Ins. Co. v. Cohen,*
        173 F.3d 63 (2d Cir. 1999)..........................................................................7, 9

*Velo-Bind, Inc. v. Scheck,*
        485 F. Supp. 102 (S.D.N.Y. 1979) ..................................................................7

STATE CASES

*426 Realty Corp. v. 2147 Inc.,*
        180 Misc. 2d 298, 690 N.Y.S.2d 398 (App. Term, 2d Dep't 1999)...................14

*Ayromlooi v. St. Luke's Roosevelt Hospital Center,*
        2005 WL. 2205738 (Sup. Ct. N.Y. Co. 2005) ...............................................11

*Clark v. State,*
        302 A.D.2d 942, 754 N.Y.S.2d 814 (4th Dep't 2003) ....................................12

*Fitzgerald v. Hudson Nat'l Golf Club,*
        11 A.D.3d 426 (2d Dep't 2004).....................................................................15

*Jay's Custom Stringing, Inc. v. Yu,*
        2001 WL 761067 (S.D.N.Y. 2001)..................................................................8

*Luo v. Main Street Assoc.,*
        212 A.D.2d 675, 622 N.Y.S.2d 761 (2d Dep't 1995).......................................14

*Martinez v. State University of New York,*
        294 A.D.2d 650, 741 N.Y.S.2d 602 (3d Dep't 2002).......................................12

*Mascola v. City University of New York,*
        14 A.D.3d 409, 787 N.Y.S.2d 655 (1st Dep't 2005).........................................11

## PRELIMINARY STATEMENT

Defendants United Orthopaedic Appliances Co., Inc. ("UOA") and Noreen Diaz ("Ms. Diaz," collectively referred to as "Defendants"), are attempting to obtain injunctive relief that has commonly been afforded under conditions similar to those presented in this case: to prevent a former employee, who had voluntarily executed a restrictive covenant and agreed to the issuance of injunctive relief as a remedy for any breach of the restrictive covenant, from quitting his job and taking with him skill and knowledge to a direct competitor of the former employer.

In their effort to defeat Defendants' request for an injunction preventing Plaintiff Clayton Hertzoff from brazenly violating the terms of the restrictive covenant he freely signed, Plaintiffs Beverly, Edwin and Clayton Hertzoff ("Plaintiffs") adopt an approach of cloaking Clayton as the victim. They claim that Clayton was constructively discharged by Defendants and therefore was liberated from the need to comply with the restrictive covenant in his employment contract. Mucking this litigation with redundant and baseless claims of wrongs perpetrated against Clayton while employed at UOA, they portray him as an innocent hardworking man who is compelled to work for a direct competitor of UOA in violation of the restrictive covenant because, as he claims, this is the only way he can now support his family.

This claim of constructive discharge, however, is a pretext, and cannot and should not serve as the basis for not enforcing the restrictive covenant.

Although Plaintiffs strive hard to focus on alleged (and baseless) actions that purportedly made it "intolerable" for Clayton to continue working at UOA, they fail to address facts that are dispositive of the viability of Defendants' request for injunctive relief and reveal the claim of constructive discharge for the sham that it is. Specifically, although Clayton claims in his

affidavit that he had reached the breaking point of his ability to tolerate the working conditions at UOA in April 2007 (*see* paragraph 35), it is telling that the claim of constructive discharge was not made until two months later, on or about June 13, 2007, when Plaintiffs filed and served their Amended Complaint. Also conveniently ignored by Plaintiffs are the facts that the belated claim of constructive discharge 1) was not made until after Defendants served a Rule 11 letter on Plaintiffs, demanding that they withdraw the otherwise frivolous complaint; and 2) was made during the same week when Clayton was on a *paid* vacation from UOA and was still using a UOA company car! To state the obvious, these are not the actions of those legitimately forced from their place of employment due to intolerable working conditions.

Other facts, essentially sidestepped by Plaintiffs further reveal that Clayton not only is only is a violator of the restrictive covenant, but has likely breached the covenant against misappropriating proprietary information of Defendants. Harping on his self-portrayal as an individual "simply plying [his]trade" (*see* paragraph 72), Clayton insists that he is not working at UOA's competitor "based...on any confidential information in my possession" (*see* paragraph 72). But what the Court should know is that only the day before Plaintiffs' opposition papers were due, *i.e.*, on Thursday July 19, 2007, Clayton returned to Defendants hundreds of UOA documents that were printed out just days before Plaintiffs filed their lawsuit and that contained: 1) patient names; 2) patient addresses; 3) the sites at which the patients were serviced by UOA; 4) diagnosis codes; 5) descriptions of the products provided; and 6) other information. That Clayton saw fit to download and print this UOA information days before Plaintiffs filed their original complaint, and only returned it after Defendants moved for injunctive relief (and filed their motion to dismiss) and after he has been working at UOA's competitor for over a month gives rise to the strong inference that this UOA information was wrongfully used by Clayton. It is also disingenuous and misleading for Clayton to claim to this Court that he does not have "any

2

confidential information in my possession" given that he only returned such documents to Defendants the day before.

Also ignored by Plaintiffs is that the fact that Clayton never resigned from UOA. Rather, he simply stopped showing up for work after his paid vacation and immediately commenced working for UOA's direct competitor. But it is fundamental that an employee claiming constructive discharge must allege and prove the requisite fact that he was forced to *resign*.

In short, this Court should recognize the claim of constructive discharge for the fabrication that it is and enforce the restrictive covenant for which UOA bargained and provided consideration. Clayton's assertion of a constructive discharge claim is nothing more than an attempt to mask a brazen and wrongful attempt by Plaintiffs to seek full consideration under the Stock Purchase Agreement while concomitantly undermining UOA's financial viability for which Defendant Diaz bargained.

On that score, although Plaintiffs try hard to infuse merit in their other claims and to depict Defendants as deadbeats with respect to each and every one contractual obligations to Plaintiffs, that effort falls flat.

First, any claims that Defendants have failed to pay rent to Plaintiffs or certain other monies allegedly due under the Stock Purchase Agreement have nothing to do with the enforcement of the restrictive covenant provision in Clayton's Employment Agreement. There is no basis for Plaintiffs' claims that the agreements are inextricably intertwined and that a breach of the Stock Purchase Agreement permitted Clayton to ignore his obligations under the Employment Agreement.

3

Second, as demonstrated in Defendants' moving papers and herein, those claims are frivolous. The cause of action for breach of the Stock Purchase Agreement, based upon alleged upon alleged unpaid Accounts Receivable monies, is woefully premature, asserted as it is nearly 16 months prior to the deadline for making such payments. The claim for unpaid rent is moot, given the undisputed and indisputable fact that all rent due Plaintiffs has been paid. Finally, the claim of an unpaid bonus – amounting to approximately $4,163.26 is clearly insufficient to meet the jurisdictional threshold of this Court and its merits should properly be addressed in State court.[1]

---

[1] Plaintiffs repeatedly refer to the fact that Defendants have not "pleaded any claims against Mr. Hertzoff [Clayton] and have not sought any permanent injunctive relief." *See e.g.* Plaintiffs' Memorandum of Law, p.1; Affidavit of Clayton Hertzoff, paragraph 43. Plaintiffs mislead the Court in making such assertions, given that Defendants have not yet filed a responsive pleading, having filed instead a Rule 11 motion to dismiss the complaint. Incredibly, Plaintiffs do so despite Defendants' express statement in a footnote to their main memorandum of law referring to these facts.

524941.01

## POINT I

## DEFENDANTS ARE ENTITLED TO INJUNCTIVE RELIEF TO PREVENT IRREPARABLE HARM TO UOA BY VIRTUE OF CLAYTON HERTZOFF'S BREACH OF THE NON-COMPETE AND NON-SOLICITATION PROVISIONS OF HIS EMPLOYMENT AGREEMENT

Plaintiffs do not contest that Clayton's Employment Agreement contains covenants 1) proscribing Clayton's wrongful use or disclosure of UOA confidential or proprietary information; and 2) preventing Clayton from interfering with UOA's relationship with its customers and referral sources; and 3) preventing Clayton from working for a competitor within 12 months after he terminates employment with UOA and within a three-mile radius of UOA's location. Moreover, Plaintiffs do not argue that these restrictive covenants are inherently unenforceable as written.

Rather, Plaintiffs assert that UOA has no legitimate interest in having these covenants enforced and, because Clayton allegedly was constructively discharged, he no longer is bound by such covenants. The claims are specious and therefore Defendants should be afforded the injunctive relief they seek.

## A.     Defendant UOA Would Suffer Irreparable Harm In The Absence Of Injunctive Relief Enjoining Clayton Hertzoff's Breaches Of The Employment Agreement

### 1.     Irreparable Harm Attributable To Breach Of Restrictive Covenant

Plaintiffs claim that the restrictive covenants are not necessary to protect any legitimate interest of UOA because, in their view, the Employment Agreement of Clayton's was for his benefit, not UOA's. This misses the point. The fact remains that in exchange for a ten-year Employment Contract for which he was being compensated until he quit, Clayton agreed to the restrictive covenants therein which, by definition and their plain terms, were for the benefit of

UOA. It is not for him to make the self-serving observation that the restrictive covenants do not serve a legitimate UOA interest and therefore he is free to ignore such covenants. To the contrary, the restrictive covenants were obtained specifically so that Defendant Diaz could be assured that the value in the business that she had just purchased would not walk out the door should Clayton Hertzoff choose to stop working for UOA. As shown elsewhere by Defendants, the Courts in New York have specifically acknowledged that restrictive covenants tied to the sale of a business and used to lock up a valuable employee with knowledge of the company's underlying operations are enforceable. (Plaintiffs do not contest that irreparable injury would result in the absence of injunctive relief or that there exists an adequate legal remedy for UOA in the absence of injunctive relief.)

Also, statements of Clayton in his affidavit only reinforce the need to prevent him from working for UOA's competitor (New England Orthotic ["NEO"]). Clayton acknowledges that the decision by physicians concerning which orthotic and prosthetic companies to use are "based upon the provider's individual skills and abilities" (*see* paragraph 75). Given this statement, Plaintiffs cannot seriously and reasonably claim that UOA is not harmed by Clayton taking his connections with clinics and physicians to a competitor of UOA's.

Next, Plaintiffs rely on the unreported case of *East Coast Orthotic and Prosthetic Corp. v. Allen* ("East Coast") for the proposition that New York law rejects the issuance of preliminary injunctions in cases such as this where a company seeks to enforce a restrictive covenant against a former employee. Although the fact that *East Coast* involves an orthotic and prosthetic company gives it superficial appeal, the similarity to this case goes no further. In no way did the decision in *East Coast* undermine the firm body of decisional law, cited by Defendants, that firmly holds that when, as here, a party violates a non-compete clause, generally the ensuing loss of client relationships and customer good will built up over the years constitutes irreparable harm

6

to a legitimate interest of the former employer for which injunctive relief is appropriate. *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69-70 (2d Cir. 1999); *Natsource LLC v. Paribello*, 151 F.Supp.2d 465 (S.D.N.Y. 2001); *Velo-Bind, Inc. v. Scheck*, 485 F.Supp. 102, 109 (S.D.N.Y. 1979). *See also Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F.Supp.2d 228 (S.D.N.Y. 2002); *Natsource LLC v. Paribello*, 151 F.Supp.2d 465 (S.D.N.Y. 2001); *Markovits v. Venture Info Capital, Inc.*, 129 F.Supp.2d 647 (S.D.N.Y. 2001); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn*, 73 F.Supp.2d 425 (S.D.N.Y. 1999).

Moreover, East Coast is distinguishable for the additional following reasons:

- In *East Coast*, unlike here, the court found an insufficient showing by the movants of a likelihood of success on the merits, because 1) the former employee had been forced to sign the non-compete agreement without prior negotiation and only after uprooting his family from England, and 2) there was no geographical limitation set forth in the agreement

- Unlike this case, in *East Coast* the court found that there was an adequate legal remedy because plaintiffs had pleaded a specific amount of damages that would compensate them for losses due to breach of restrictive covenant

- In East Coast, the court held that the balance of equities fell in favor of the former employee because of the impermissibly wide scope of the restrictive covenant and because its enforcement would "prevent Allen from pursuing his livelihood." Here, there is no challenge by Plaintiffs to the scope of the restrictive covenant and no showing at all that Clayton can't adequately make a living if forced to seek employment outside the small three-mile radius of the restrictive covenant.

## 2.    Irreparable Harm Due To Misappropriation Of Proprietary Information

Plaintiffs also fail to refute the irreparable harm that Defendants will suffer in the absence of injunctive relief due to Clayton's misappropriation of UOA's proprietary information. *See*

7

*FMC Corp. v. Taiwan Tainan Giant Indus. Co*, 730 F.2d 61, 63 (2d Cir.1984).  *See also Estee Lauder Companies Inc. v. Batra*, 430 F.Supp.2d 158  (S.D.N.Y. 2006); *Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*, 323 F.Supp.2d 525, 533 (S.D.N.Y. 2004); *Jay's Custom Stringing, Inc. v. Yu*, 2001 WL 761067 at *8 (S.D.N.Y. 2001); *EarthWeb, Inc. v. Schlack*, 71 F.Supp.2d 299, 309-10 (S.D.N.Y. 1999).

Initially, Clayton himself admits that:

> "some customer materials might be deemed confidential to UOA. For example, over the course of my work for UOA, I was reasonably required to maintain information and customer histories, and to have ready access to that information, and therefore I maintained that information both in the office and away from the office."

Thus, it cannot be contested that UOA has "confidential information" worthy of protection through enforcement of the restrictive covenants.

Even more importantly, Plaintiffs admit that Clayton took home confidential information and only returned it last week, i.e., approximately a month after he started working with UOA's competitor and only a day before his opposition papers to this Order to Show Cause were due. Those hundreds of documents contained 1) patient names; 2) patient addresses; 3) the sites at which the patients were serviced by UOA; 4) diagnosis codes; 5) descriptions of the products provided; and 6) other information.  That Clayton saw fit to download and print this UOA information days before Plaintiffs filed their original complaint, and only returned it after Defendants moved for injunctive relief (and filed their motion to dismiss) demonstrates that his intentions were not innocent, but, rather were designed to undermine UOA and serve his self-interest and that of his new employer.  This proof of a blatant violation of the restrictive covenants in the Employment Agreement cries out for injunctive relief.

Clayton's self-serving declaration that he did not misuse this information is dispositive of nothing, given that he did not return it until a month after he started working for NEO and only after this Order to Show Cause was brought by Defendants. Notably, in Clayton's June 18, 2007 letter of termination (after UOA learned he was working for NEO), Ms. Diaz demanded the return of all UOA property; Plaintiffs, however, saw fit not to do so until weeks into Clayton's employment with NEO.[2] Yet another factor undermining Clayton's credibility is the showing that he has been telling insurers to audit UOA based on the allegation that UOA has been "dissolved" and spreading other false rumors concerning UOA's ownership.

Finally, Plaintiffs do not address the decisional law that holds that where an employee has signed an Employment Agreement acknowledging that certain post-termination activity, such as the revelation to third parties of trade secrets or breach of a restrictive covenant, would irreparably harm his employer, that acknowledgement is viewed by the courts as an admission of that fact. *See, Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999); *Estee Lauder Companies Inc. v. Batra*, 430 F.Supp.2d 158 (S.D.N.Y. 2006). Even without Clayton's acknowledgement, this conclusion would be inevitable..

**B.    Injunctive Relief Is Necessary To Maintain The Status Quo**

Plaintiffs fail to address this significant criteria in determining whether injunctive relief should be granted, which provides yet another reason to issue such relief. *See Sierra Club v. U.S. Army Corps of Engineers*, 732 F.2d 253, 256 (2d Cir. 1984); *New York v. Shinnecock Indian*

---

[2] In his affidavit, Ronald Manganiello merely states that, "[t]o the best of my knowledge," Clayton did not reveal confidential information. These words are hardly comforting, given the patent lack of certainty on Mr. Manganiello's part. Moreover, unless he was told that he was being given confidential information of UOA, Mr. Manganiello wouldn't be in a position of knowledge to know he had received it. Clayton, on the other hand, has such knowledge.

9

*Nation*, 280 F. Supp.2d 1, 4 (E.D.N.Y. 2003); *Lichtenberg v. Besicorp Group Inc. BGI*, 43 F. Supp.2d 376, 384 (S.D.N.Y. 1999).

## C.    The Claim Of Constructive Discharge Is Baseless And Does Not Constitute A Basis For Denying Enforcement Of The Restrictive Covenants

For reasons stated by Defendant Diaz in her Reply Affidavit and herein, Plaintiffs' assertion that Clayton was free to violate the restrictive covenants because he was constructive discharged from employment must be rejected for the sham that it is. (Because the factual allegations of wrongdoing by Defendants are fully addressed and rebutted in the Reply Affidavit of Defendant Diaz, they will not be rehashed here.)

### 1.    The Constructive Discharge Claim Is Not Credible

The claim of constructive discharge is simply a contrivance designed to cloud the blatant violation of the restrictive covenants by Clayton.

Of critical significance, this belated claim raised in the Amended Complaint did not exist until after Defendants served a Rule 11 letter on Plaintiffs, demanding that they withdraw the otherwise frivolous complaint; and was made during the same week when Clayton was on a paid vacation from UOA and was still using a UOA company car! This chronology demonstrates that the constructive discharge claim is part of a scheme designed by Plaintiffs to relieve Clayton, wrongfully, from his obligations under the Employment Agreement and the restrictive covenants designed to protect UOA.

Other proof showing the incredible nature of this claim is that, although Clayton states (*see* paragraph 35) that the "final straw" in terms of the alleged intolerable conditions took place

524941.01

in April 2007, he did not assert this constructive discharge claim until months later and as described above.

Rather than being forced to endure "intolerable conditions" that provide the necessary underpinning of a constructive discharge claim, the real basis of Clayton's complaint is that he was not, in his view, given the same employment conditions "as when my parents owned the company" (*see* paragraph 82). That things changed after his parents sold the company, however, does not give rise to a claim for constructive discharge. Even Clayton admits (*see* paragraph 28) that Defendants were authorized to make changes in the operation of UOA after they purchased it. Indeed, the Employment Agreement expressly states (*see* paragraph 2a) that Clayton's duties "shall be consistent" with those the Chief Executive Officer of UOA "may from time to time designate." Although Clayton may have found the changes not to his liking, "[a] constructive discharge claim requires more than a claim by plaintiff that his working conditions were simply difficult or unpleasant." *Ayromlooi v. St. Luke's Roosevelt Hospital Center*, 2005 WL 2205738 *5(Sup. Ct. N.Y. Co. 2005).

**2.    Plaintiff Clayton Hertzoff's Claim For Constructive Discharge Fails To Allege, Nor Can It, That He Was Forced To Resign, And Thus Fails To State A Claim**

A constructive discharge occurs when the employer, rather than acting directly, "deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Pena v. Brattleboro Retreat*, 702 F.2d 322 (2d Cir., 1983) (emphasis added). In this matter, unlike the *Pena* case cited above, Clayton Hertzoff simply does not and cannot allege that he resigned as a result of the "intolerable" working conditions alleged in the Amended Complaint. *See Mascola v. City University of New York*, 14 A.D.3d 409,

524941.01

787 N.Y.S.2d 655 (1st Dep't 2005)(constructive discharge claim dismissed); Martinez v. State

University of New York, 294 A.D.2d 650, 741 N.Y.S.2d 602 (3d Dep't 2002)(complaint failed

to state claim for constructive discharge).

Indeed, as is alleged earlier in the Amended Complaint, at all relevant times Plaintiff

Clayton Hertzoff was an employee of UOA. *See*, Am. Cmplt., 21. How is it possible to sustain

a claim for constructive discharge without any discharge of the employee? *See, e.g., Parker v.*

*Chrysler Corp.*, 929 F.Supp. 162 (S.D.N.Y. 1996) (holding that, in the analysis of the

"constructive discharge" element of Title VII claim, the court determines whether the

employee's resignation was forced so as to be treated as an actual discharge by the employer).

Plaintiff provides the Court with a laundry list of allegedly "intolerable" working conditions, but

fails to allege an essential element of the claim – that he resigned from employment because of

them. As a result, even taking all of the facts alleged in the Amended Complaint as true and

providing Plaintiff Clayton Hertzoff with the benefit of every possible inference in his favor, he

has simply failed to allege an element essential to make out a prima facie claim for constructive

discharge. As a result, this claim too, must be dismissed. *See also Clark v. State*, 302 A.D.2d

942, 754 N.Y.S.2d 814 (4th Dep't 2003)(claim of constructive discharge does not accrue until

employee tenders his or her resignation).

      **3.**      **Plaintiff Clayton Hertzoff's Claim For "Anticipatory" Breach Of The Employment Agreement Must Be Dismissed For Failure To Plead That The Alleged Breach Anticipated Rendered His Performance Under The Agreement Impossible Or That It Adequately Demonstrated UOA's Intention Not To Continue As His Employer**

In an attempt to plead some cause of action with regard to the Employment Agreement

worth more than $4,163 in lost commissions, Plaintiff Clayton Hertzoff alleges that UOA's

statements in the May 22, 2007 letter from Noreen Diaz to Clayton Hertzoff evidence UOA's

524941.01

"intention not to perform their obligations under the Employment Agreement." Am. Cmplt., 39. Nowhere in that letter does UOA ever state, through Ms. Diaz, that it does not intend to continue to employ Clayton Hertzoff. *See*, Diaz Dec., Exhibit 2. The letter merely chastises an employee for what UOA's President apparently felt was poor judgment and performance on that employee's part. Id.

"Repudiation or anticipatory breach of a contract occurs when there has been an overt communication of intention or an action which renders performance [by the other party] impossible or demonstrates a clear determination not to continue with performance." *Teachers Ins. and Annuity Ass'n of America v. Coaxial Communications of Cent. Ohio, Inc.*, 807 F.Supp. 1155 (S.D.N.Y. 1992). Here, Plaintiff Clayton Hertzoff does not allege that his performance under the Employment Agreement was rendered impossible (i.e., that he could not continue to be a prosthetist) as a result of UOA's statements in the May 22, 2007 letter or by the other unspecified "actions and statements" to Plaintiff. Moreover, mere conclusory allegations, without factual support, that the May 22, 2007 letter and other unspecified "actions and statements" by UOA were sufficient to evidence UOA's intention not to perform under the Employment Agreement renders the pleading insufficient, even under the liberal standards afforded to pleadings on a motion to dismiss pursuant to FRCP 12(b)(6). *See Mina Inv. Holdings, Ltd. v. Lefkowitz*, 51 F.Supp.2d 486 (S.D.N.Y., 1999).

Here, Plaintiff Clayton Hertzoff's claim for alleged "anticipatory breach" of the Employment Agreement by UOA is nothing if not conclusory, and as a result, fails to state a claim upon which relief can be granted.

13

**4.    There Were No Breaches, Let Alone Material Breaches, Of The Employment Agreement By UOA**

In her Reply Affidavit, Defendant Diaz adequately refutes the individual claims by Plaintiffs that Defendants breached the Employment Agreement. Those refutations will not be repeated here. Rather, it is additionally argued here that the alleged breaches relied upon Plaintiffs were not "material," and therefore, under bedrock New York law, cannot be relied upon be Plaintiffs as a justification for Clayton's failure to adhere to and honor the restrictive covenants.

The applicable law in New York is well established, and well stated in §237 of the Restatement of the Law Second, Contracts 2d, Vol.2, ALI, 1981 as follows:

> "… it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured *material* failure by the other party to render any such performance due at an earlier time." (emphasis added.)

In *Luo v. Main Street Assoc.*, 212 A.D.2d 675, 622 N.Y.S.2d 761 (2d Dep't 1995), the court held that only a "material" breach may be the basis for contract recission. Likewise, in *426 Realty Corp. v. 2147 Inc.*, 180 Misc.2d 298, 690 N.Y.S.2d 398 (App. Term, 2d Dep't 1999) the Appellate Term held that a breach by plaintiff was sufficiently "material" and "substantial" to excuse further performance (payment of rent) by defendant. The Appellate Division, Second Department reversed (273 A.D.2d 471 (2d Dep't 2000)), citing the principle that while "material" breach constitutes an excuse for performance of contract obligations, the party seeking to excuse nonperformance has a high burden of proof. A breach is not proven to be "material" unless it "substantially defeats the purpose" of the contract and "goes to the root of the contract." *Lavigne v. Hirsch*, 114 F.3d 379, 387 (2d Cir. 1997).

14

This standard is also stated in *Fitzgerald v. Hudson Nat'l Golf Club*, 11 A.D.3d 426 (2d Dep't 2004), which holds that a "substantial" breach is one that defeats the objective of the contract. This standard of "materiality" is more stringent that in other jurisdictions. *See, Bernard v. Las Americas Comm., Inc.*, 84 F.3d 103 (2d Cir., 1996)(contrasting New York and District of Columbia law and concluding that the law in D.C. is less demanding).

Thus, in New York, a contracting party who seeks to use the other party's prior breach as an excuse for not performing his own obligations, such as Clayton Hertzoff does here, must aver the particular circumstances which constitute such an excuse and then satisfy a high burden of proof. He must show that the alleged prior breach went to the "root of the contract."

Clayton Hertzoff has not met his burden in that regard in this case. Here, he obtained all of the benefit of his Employment Agreement, including a base salary which he admits now is more than he is being paid by UOA's competitor, commissions, life and health insurance benefits, and a company car. The only breach cited by Mr. Hertzoff is UOA's failure to pay him just over one half of one annual quarter's commissions (if same can even be considered such a breach, since the commissions complained of weren't contractually due until the end of June and this suit was commenced in mid-April), which clearly is not the "root" of the Employment Agreement. Rather, Defendants kept all or substantially all of their promises and, as it appears he had intended to do from the outset, Clayton Hertzoff instead used his position at UOA after the sale to steal patient information and obtain employment for a competitor of UOA in violation of the reasonable restrictions contained in the Employment Agreement.

**D.     Should Defendants Prevail On This Application, They Are Entitled To Payment From Defendant Clayton Hertzoff Of Legal Fees, Costs And Disbursements**

Plaintiffs do not contest that, pursuant to Paragraph 8.i. of the Employment Agreement, should this Court issue an Order granting Defendants' request for preliminary injunctive relief pursuant to Section 8 of the Employment Agreement, that such Order make provision for Defendant's recovery of legal fees, costs and disbursements incurred in procuring said relief.\

16

## CONCLUSION

For reasons stated by Defendants in their moving and reply papers, this Court should grant Defendants' request for injunctive relief and for sanctions in its entirety. .

Dated: Great Neck, New York
      July 23, 2007

GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendants*

By _____
      Andrew L. Zwerling
      Colleen M. Tarpey
111 Great Neck Road
Great Neck, NY 11021
(516) 393-2200

524941.01