UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY HERTZOFF, EDWIN HERTZOFF, AND CLAYTON HERTZOFF<br><br>Plaintiffs,<br>v.<br>NOREEN DIAZ, and UNITED ORTHOPAEDIC APPLIANCES CO. INC.<br><br>Defendants. | No. 07 CV 3157<br>(CM)(MHD) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

July 27, 2007

TRAIGER & HINCKLEY LLP
880 Third Ave. 9th Floor
New York, NY 10022-4730
Tel. 212-759-4933
Fax 212-656-1531

Christoph C. Heisenberg
George R. Hinckley, Jr.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................... 1

THE AMENDED COMPLAINT'S CLAIMS. ................................................................... 3

      The Purchase Agreement's "Bill And Collect" Obligation. ........................................... 4

      The Employment Agreement ........................................................................................ 5

ARGUMENT ...................................................................................................................... 9

I.     PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT IS RIPE, AS
       DEFENDANTS BREACHED THE CURRENT DUTY TO "BILL AND COLLECT,"
       CAUSING CURRENT INJURY ................................................................................. 9

       A.    The Purchase Agreement Contains a Current Duty to Bill and Collect, and to
           Allocate Each Dollar Collected to Pay the Accounts Payable. ......................... 10

       B.    Plaintiffs Are Not Suing on UOA's Separate Obligation to Make A Future
           Reconciliation, But the Current Obligation to Bill and Collect,
           And to Allocate Each Dollar Collected to Pay the Accounts Payable............... 11

II.    CLAYTON HERTZOFF'S CLAIMS FOR BREACH OF THE EMPLOYMENT
       AGREEMENT ARE WELL PLEADED AND NOT SUBJECT TO DISMISSAL ..... 12

       A.    The Failure to Pay Full Commissions Violated Clear New York Policy .......... 14

       B.    Defendants Breached Section 2(a) of the Employment Agreement By
           Constructively Discharging Plaintiff. ............................................................... 16

       C.    The Breach of Section 9(a) of the Employment Agreement By Demanding
           Improper Billing Practices .............................................................................. 18

III.   PLAINTIFF HAS ALLEGED UOA'S "ANTICIPATORY REPUDIATION"
       OF THE EMPLOYMENT AGREEMENT. .............................................................. 19

IV.   PLAINTIFF'S CLAIM FOR VIOLATION OF NEW YORK LAW 191-C IS NOT
       PREMATURE ........................................................................................................ 22

V.    DEFENDANTS' FAILURE TO PAY RENT IS A BREACH OF CONTRACT.......... 22

CONCLUSION ................................................................................................................ 24

## TABLE OF AUTHORITIES

Page

*Antares Aircraft v. Fed. Republic of Nigeria*,
948 F.2d 90, 96 (2d Cir. 1991), aff'd on remand, 999 F.2d 33 (2d Cir. 1992) ........................ 13

*Continental Ins. Co. v. RLI Ins. Co.*,
161 A.D.2d 385, 387 (1st Dept. 1990).................................................................................... 13

*Edlitz v. Nipkow & Kobelt*,
264 A.D.2d 437, 694 N.Y.S.2d 439 (2d Dept. 1999) ............................................................... 14

*Franconia Assocs. v. United States*,
536 U.S. 129, 153 L. Ed. 2d 132, 122 S. Ct. 1993, 2002 (2002) ............................................. 20

*Gebhardt v. Time Warner Entertainment-Advance/Newhouse*,
284 A.D.2d 978, 726 N.Y.S.2d 534 (4th Dept 2001) .............................................................. 15

*Harsco Corp. v. Segui*,
91 F.3d 337, 348 (2d Cir. 1996) .............................................................................................. 13

*Hishon v. King & Spalding*,
467 U. S. 69, 73 (1984)............................................................................................................. 3

*Lucente, v. IBM,*
310 F.3d 243, 258 (2d Cir. 2002) ............................................................................................. 20

*Lynch v. Pharmaceutical Discovery Corp.*,
208 A.D.2d 906; 617 N.Y.S.2d 883 (2d Dep't 1994)............................................................... 15

*Norcon Power Partners v. Niagara Mohawk Power Corp.*,
92 N.Y.2d 458, 682 N.Y.S.2d 664, 667, 705 N.E.2d 656 (1998) ............................................ 19

*People v. McDonald*,
88 N.Y.2d 281, 667 N.E.2d 320, 644 N.Y.S.2d 670 (1996)..................................................... 18

*Phifer v. City of New York*,
289 F.3d 49, 55 (2d Cir. 2002) ................................................................................................ 13

*P & L Group, Inc., v. Garfinkel*,
150 A.D.2d 663; 541 N.Y.S.2d 535 (2d Dep't 1989)............................................................... 15

*Reilly v. Natwest Mkts. Group Inc.*,
181 F.3d 253 (2d Cir. 1999), cert denied, 528 U.S. 1119 (2000)............................................. 15

*Rudman v. Cowles Communications, Inc.*,
30 N.Y.2d 1, 280 N.E.2d 867, 330 N.Y.S.2d 33 (1972)........................................................... 15

*State of New York v. Oneida Indian Nation of New York,*
90 F.3d 58, 63 (2d Cir. 1996) ................................................................... 11

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002) ................................................................................... 3

*Syracuse Orthopedic Specialists, P.C.  v. Hootnick,*
__ A.D.2d __ , 2007 NY Slip Op 05852 (July 6, 2007, 4th Dept.) ......................................... 17

*Teachers Ins. and Annuity Ass'n of America v. Coaxial Communications of Cent. Ohio, Inc.,*
807 F. Supp. 1155 (S.D.N.Y. 1992) ...................................................... 19

*United States Underwriters Ins. Co. v. Affordable Hous. Found., Inc.,*
256F. Supp. 2d 176 (S.D.N.Y. 2003) .................................................... 11

*Westview Assocs. v. Guaranty Nat. Ins. Co.,*
95 N.Y.2d 334, 339, 740 N.E.2d 220, 717 N.Y.S.2d 75 (2000) ............................................. 11

**<u>Other Sources</u>**

The Restatement (Second) Contracts § 241(b) (1981) .......................................................... 13

John D. Calamari and Joseph M. Perillo, The Law of Contracts § 12-3 (3d ed. 1987) ............. 20

Plaintiffs respectively submit this memorandum of law in opposition to the motion of defendants United Orthopaedic Appliances Co. Inc. ("UOA") and Noreen Diaz to dismiss the Amended Complaint ("AC").

## PRELIMINARY STATEMENT

The Amended Complaint sets forth the basic history of the parties' relationship, in which Plaintiffs sold UOA, a profitable 100-year-old company, to Defendants for <u>zero dollars</u>. Instead, Defendants promised to: (1) Bill and collect certain receivables of UOA and actually allocate each dollar received to pay off a loan guaranteed by the Hertzoffs; (2) Employ Clayton Hertzoff and pay him salary and commissions for 10 years; and (3) Pay rent - at rates 50% below market. The Amended Complaint then explains how Defendants breached each agreement, leading to this action.

Although Defendants protests Plaintiffs' supposed "frivolous" Amendment Complaint, Defendants' motion does not challenge its allegations directly. Instead, Defendants contend that Plaintiffs' efforts to hold them accountable for their breaches is "not ripe." That defense does not withstand scrutiny. As explained herein, Defendants breached their current obligations under the Purchase Agreement (1) to bill and collect, and (2) to apply these amounts on a dollar-for-dollar basis to reduce Plaintiffs' bank obligations. Specifically, as is pleaded in plain form, and what will be shown in greater detail at trial, Defendants' failure to bill, and their additional failure to allocate the amounts collected to the HSBC Bank line of credit, caused the bank to declare a default, and require that Plaintiffs pay off the $32,000 balance on the line of credit. That represents a current breach, of a current duty, causing a current injury. The claims are ripe.

Defendants' motion simply attacks a straw horse, focusing on another aspect of Section 1.3 – the duty to fund any shortfalls in August 2008, which arises <u>at the end of the collection process</u>. That separate duty has no bearing on the current duties concerning the collection process. Defendants breached the current, not future, obligations, and those breaches have caused Plaintiffs to suffer current damages.

Next, the Amended Complaint explains how Defendants breached Mr. Hertzoff's employment agreement in a number of ways. Specifically, Defendants deliberately and willfully deducted half of plaintiff's commissions from his paycheck based upon his claimed "poor judgment" in providing an amputee with an artificial leg without demanding cash upfront. This conduct, which plainly violates §193 of the New York Labor, also breached the employment agreement, which permitted only "appropriate and customary" deductions. Defendants also breached the agreement by failing to pay commissions on all work that Mr. Hertzoff created; by materially changing Mr. Hertzoff's duties; and by demanding that he engage in improper insurance claims. Those breaches were material.

Defendants, however, went further than those single breaches, and repudiated their obligation to pay Mr. Hertzoff his future commissions. Therefore, their conduct gave rise to a claim for total breach. Specifically, UOA repudiated its obligation to make only "appropriate and customary" deductions. When Mr. Hertzoff protested UOA's April 2007 breach, as it would jeopardize all of his future commissions, UOA consulted with its attorneys about its obligations under the employment agreement. Following that consultation, Mr. Hertzoff was given written "formal notification" that UOA now had a self-proclaimed "general policy" "regarding your employment agreement" by which they could and would hold him accountable for "poor judgment" and then deduct those amounts from

his pay.  Defendants made it clear to plaintiff that they could make similar deductions in the future, in breach of the employment agreement.  Defendants' repudiation of the ongoing contractual obligations constituted a material breach of the agreement.

In addition, defendants breached by materially changing plaintiff's duties, by firing all of the technicians that manufactured prosthetics and requiring that plaintiff work as a technician in the shop rather than as a Certified Practitioner.

Defendants further breached the employment agreement by engaging and requesting that plaintiff engage in improper Medicare and Medicaid billing practices, in violation of plaintiff's employment agreement.

Finally, the Amended Complaint sets forth Defendants' repeated default under the lease agreement.  While Defendants argue that they cured some of the earlier defaults alleged in the initial Complaint, they do not dispute that they are in default of their obligation to pay rent as of today.  Therefore, the straightforward rent nonpayment claim remains viable.

## THE AMENDED COMPLAINT'S CLAIMS[1]

UOA was founded in 1907 by plaintiff Beverly Hertzoff's grandfather.  It designed, manufactured and fitted orthopedic appliances.  Its office was located at 791 Broadway, New York City, in a building owned by Edwin and Beverly Hertzoff.  The Hertzoffs spent

---

[1]  The Amended Complaint contains a plain statement of Plaintiffs' claims, as provided by Rule 8 of the Federal Rules of Civil Procedure.  Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984).  If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  To provide the Court with a fuller understanding of the claims, the statement of facts includes the Plaintiffs' pleadings on the preliminary injunction hearing, which are part of the record in this case. FRCP 65(2) ("evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record…")

all of their working lives at UOA. Edwin Hertzoff worked there for 54 years, his wife

Beverly worked there for over 30 years, and their son Clayton Hertzoff worked at UOA for

33 years. Beverly and Edwin Hertzoff each owned 37.5% of UOA and Clayton Hertzoff

owned 25% of UOA.

In 2006, Edwin and Beverly Hertzoff were approached by Martin Diaz, who sought

to purchase UOA. Martin Diaz runs an Orthotics and Prosthetics business in East Meadow,

New York named Complete Orthopedic Services Inc., known as "C.O.S.I." Because Edwin

and Beverly Hertzoff were nearing retirement, they decided to sell UOA.

**The Purchase Agreement's "Bill And Collect" Obligation.**

At issue in the litigation is the Stock Purchase Agreement's Section 1.3, which

provides in relevant part:

> "*Accounts Receivable.* Purchaser shall cause the 'Net Accounts Receivable'
> to be billed and collected, to the extent reasonably collectable, in the normal
> course of the Corporation's operations. . . . Each dollar of the Net Accounts
> Receivable actually collected will be allocated to discharge the Accounts
> Payable…. In the event that the Corporation's Net Accounts Receivable are
> less than the Accounts Payable, Purchaser shall fund such shortfall up to a
> maximum amount of One Hundred Thousand Dollars ($100,000), and shall
> apply such funds to discharge the Accounts Payable, to the extent that
> Purchase is responsible to fund the Net Accounts Receivable Shortfall
> thereunder, . . ."

A reading of this plain language shows that it contains a series of independent duties:

(1) UOA committed that during a two-year period it would bill and collect the Accounts

Receivable "in the normal course .. . of operations"; (2) UOA committed to paying "each

dollar" collected on the Accounts Receivables to reduce the debts; (3) Finally, at the

conclusion of the two-year billing obligation, if there was a deficiency in the collection of

the Accounts Receivables, then UOA has an obligation to fund the shortfall, up to $100,000.

The Amended Complaint identifies breaches by UOA of the first and second duties set forth above.  First, Defendants are not billing on an ongoing basis "in the normal course." (AC ¶¶ 1, 12).  Instead, UOA fired the individuals who worked on billing the accounts receivables, and simply ignored processing boxes of documents that sat untouched in UOA's offices for months.  (Photographs of the untouched boxes of documents are annexed as Exhibit 4 to the Hertzoff Affidavit, Dkt. #27).  Second, the amounts collected are not being allocated to pay off the Accounts Payable on a "dollar-for-dollar" basis.  (*id.*)  Instead, Defendants have taken unauthorized deductions from those collections, meaning that they have paid only a portion of the amounts collected against the balance of the lines of credit.

The Amended Complaint also alleges that this violation has caused current damages.  (AC, Prayer for Relief ¶1).  As will be shown at trial, and has been demonstrated during the Preliminary Injunction hearing before Judge Dolinger, UOA's failure to make timely payments on the HSBC line of credit caused HSBC to call for an immediate payment by Mrs. Hertzoff of her guarantee.  As a result of this current breach, plaintiffs have suffered current damage by having to pay $32,222.63 to HSBC Bank that they would not have had to if Defendants fulfilled their current obligations to bill and collect monies in the normal course – and to then pay the Accounts Payable on a dollar-for-dollar basis.  Instead, because of Defendants' breach, Ms. Hertzoff was required to pay the balance out of her own pocket.

**Plaintiffs Allege Numerous Breaches of The Employment Agreement.**

Concurrent with the August 2006 transaction, Clayton Hertzoff required UOA to employ him for a ten-year period as a Prosthetist and Manager of the Orthotics & Prosthetics Shop.  (Employment Agreement 2(a)).  As compensation, Mr. Hertzoff would be entitled to

a yearly salary of $120,000, plus quarterly commissions calculated based upon his "Personal Sales Collections," and an annual $25,000 "bonus." Significantly, given what later transpired, the agreement specifically addressed the parties' rights with respect to a "collection failure" (sales on which a customer doesn't pay), stating that the amount of the sale would not be included in the amount of sales upon which Mr. Hertzoff would receive a commission. Employment Agreement 3(a)(ii). The employment agreement allowed UOA to take only "appropriate and customary payroll deductions" from these payments.

In March and April 2007, UOA committed a breach of their payment obligation, by deducting from Mr. Hertzoff's pay the <u>damages</u> (lost time and material costs) UOA claimed to have suffered from a collection failure. UOA claimed that Mr. Hertzoff "mishandled" a case in which he assisted an amputee patient, Mr. Isaiah Johnson, by providing him with an artificial leg. Although Mr. Johnson was insured, he had a version of Blue Cross insurance for federal employees that sent checks directly to employee rather than to the provider of services, as it is the case with the standard Blue Cross policy.

In April, Mr. Diaz demanded that Mr. Hertzoff meet with him at COSI's offices in East Meadow, with his office manager Ms. Smith. Mr. Diaz and Ms. Smith blamed plaintiff for the nonpayment and insisted that they should have collected money up front before delivering the artificial leg to Mr. Johnson. Mr. Diaz indicated that plaintiff was responsible for UOA's loss due to the nonpayment by Mr. Johnson, and that UOA would deduct from Mr. Hertzoff's paycheck the cost of parts and labor.

On April 16, 2007, plaintiff Clayton Hertzoff sent by facsimile to Mr. and Ms. Diaz a formal demand for his first-quarter bonus. Plaintiff expressly reserved his rights under the employment agreement and otherwise with regard to this breach of contract. (AC Ex. D).

Again on April 19, 2007, plaintiffs filed their initial complaint seeking, in their third cause of action, all of Plaintiff's first-quarter commissions, none of which had been paid.

On April 27, 2007, plaintiff received a paycheck from UOA, and his commissions (before taxes) were cut in half, from $8,163 to $4,000. In response, on April 27, 2007, counsel for plaintiff once again sent UOA a notice that "UOA's continued failure to pay [the amount due] constitutes a breach of Mr. Hertzoff's Employment Agreement dated as of August 20, 2006.)." (AC Ex. D). Thus, Defendants were expressly put on notice that their wrongful withholding of commissions was material breach of plaintiff's employment agreement.

Despite Plaintiffs' repeated requests that UOA comply with its employment agreement, Defendants refused to retract their improper deduction. On the contrary, after consulting with their counsel, on May 22, 2007 it wrote giving "**formal notification regarding your employment agreement and commission.**" The letter indicated that "**payment of commission will be paid in accordance with the general policy of U.O.A./C.O.S.I.**" The letter proceeded to assert a deduction for "mishandling" Mr. Isaiah Johnson's case. AC Ex. E.[2]

The Amended Complaint also alleges additional breaches of the employment agreement. It alleges that UOA's insistence on adhering to the new "general policy" after repeated requests for assurance by Mr. Hertzoff that future commissions would be honored, constituted an anticipatory repudiation of the employment agreement.

---

[2] The employment agreement expressly states, however, that its provisions –including restricting payroll deductions to those "appropriate and customary" – take precedent over any general policy. (Employment Agreement 10(i)).

Plaintiff also alleges that UOA breached his employment agreement by changing his employment conditions. In the agreement, UOA committed that Mr. Hertzoff's position would be as a Prosthetist and Manager of the Orthotics & Prosthetics Shop. (Employment Agreement 2(a)). This was important because it permitted Mr. Hertzoff to engage in work out of the shop, visiting hospitals and generating "Personal Sales Collection" upon which his compensation was based. However, during the ensuing months, the Diazes dismantled UOA, slashing it from twelve employees down to four, and eliminated the shop technicians that manufactured prostheses.

After the Diazes purchased UOA, Edwin Hertzoff and both of the other two Certified Practitioners were fired or forced to resign. As the only remaining Certified Practitioner, plaintiff was required to work their accounts. He would go to the hospitals where they had previously worked, and would solicit work from the doctors. He would originate and write up sales. However, Mr. Diaz wrongfully refused to include those sums in his sales commission, claiming that even though he was working the account, seeing patients and writing up the sales, he was not entitled to commissions because he was not the "original" source of these referrals. Clayton Hertzoff was entitled to those commissions. Commissions had always been paid to the Certified Practitioner who wrote up a sale, regardless of who had first worked with a particular doctor. As a result, Mr. Hertzoff went from "managing" the Orthotics & Prosthetics Shop, to having to perform his own shop work. That demotion had material impact on Mr. Hertzoff's job, as it came at the expense of his ability to earn commissions.

Furthermore, Martin Diaz repeatedly requested that Clayton Hertzoff engage in billing improprieties. The employment agreement stated that UOA "is fully committed to

ensuring its compliance, and the compliance of its employees, with all applicable rules, regulations and laws promulgated by the state and federal governments and by third party payors relating to the provision of billing services." (Employment Agreement 9(a)). That representation proved untrue, as was shown by a number of incidents. <u>First</u>, Mr. Diaz requested that UOA immediately bill insurance companies, including Medicare and Medicaid, for prostheses that had not yet been delivered. He repeatedly demanded that Clayton Hertzoff and other certified practitioners sign, and have their patients sign, a false "receipt" form acknowledging delivery of the prosthetics before UOA had even begun to process the orders or build the prosthesis. <u>Second</u>, Mr. Diaz demanded that Clayton Hertzoff over-bill and over-provide services. For example, insurers pay approximately 5-10 times as much for a brace with the billing code L-1832 as for a brace with the billing code L-1820. Mr. Diaz repeatedly requested that Clayton Hertzoff bill for code L-1832 when an adjustable knee joint brace was not necessary or provided. <u>Third</u>, UOA is apparently billing insurers, including Medicare and Medicaid, and stating that services were performed at UOA's facility (which until very recently, was accredited) when, in fact, services were not performed at UOA, but were performed elsewhere.

## ARGUMENT

## I.    PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT IS RIPE, AS DEFENDANTS BREACHED THE CURRENT DUTY TO "BILL AND COLLECT," CAUSING CURRENT INJURY.

The primary compensation that the Hertzoffs received for selling UOA was the amounts to be collected on the Accounts Receivable. Recognizing that Plaintiffs would have to rely upon UOA to collect those amounts, and that UOA would have little incentive to collect monies for someone else's benefit, Section 1.3 of the Purchase Agreement

9

required UOA to "cause the 'Net Accounts Receivable' to be billed and collected, to the extent reasonably collectable, in the normal course of the Corporation's operations." The Purchase Agreement does also contained a future obligation: **if**, at the end of 2008, those Account Receivables did not yield a specific value, then Defendants would be obligated to make a payment for the difference. However, the Amended Complaint alleges that UOA is in breach of those current obligations, and has caused current injury. Plaintiffs are <u>not</u> making a demand for Defendants to "settle up" the deficiency that will undoubtedly occur on August 2008. Therefore the claim is ripe.

### A. The Purchase Agreement Contains a Current Duty to Bill and Collect, and to Allocate Each Dollar Collected to Pay the Accounts Payable.

The Purchase Agreement contains the current obligation (1) to bill and collect Accounts Receivables "in the normal course," and (2) to allocate each dollar collected to the HSBC Loan as those dollars were collected. The Amended Complaint properly alleges that Defendants have failed to live up to their <u>current</u> obligations, to bill and collect accounts receivables and actually apply each dollar received to the HSBC loan as those amounts were collected. As a result, Plaintiffs have suffered current damages.

The reason for the creation of this obligation is clear. Plaintiffs would reap the benefits of strong collections, while UOA would gain nothing. To use an example, if the Accounts Receivable could yield $400,000, the collection of those accounts would have yielded positive value of far more than $100,000 to Plaintiffs, after paying off the HSBC line of credit. Thus, the $100,000 payment represented the floor on Defendants' payment obligation, but Plaintiffs hoped to achieve far greater recovery through the Accounts Receivable. Because UOA otherwise would have no incentive to bill those accounts (any billings would benefit only Plaintiffs, and defendants would reap no benefit), the Purchase

10

Agreement contains a billing obligation. Because UOA was essentially acting for Plaintiffs' benefit, they had to have an independent duty to collect those monies. Section 1.3 provides that obligation.

An obligation to bill and collect is well known in commercial transactions. See e.g., *FDIC v. Wrapwell*, 2002 U.S. Dist. LEXIS 76, *12-13 (S.D.N.Y. 2002)(Haight, J.) (conducting an extensive examination of a party's duty to collect accounts receivables entrusted to them by another party, and collecting cases applying that standard).

Other times, the holder of the accounts receivable will impose that duty upon an agent. See Restatement (Second) of Agency § 426, "Agents To Make Collections," which provides in relevant part: "Unless otherwise agreed, an agent employed to collect from others goods or money due the principal has a duty of using reasonable care and skill in making such collections in accordance with the directions of the principal."

**B.    Plaintiffs Are Not Suing On UOA's Separate Obligation To Make A Future Reconciliation, But Rather The Current Obligation To Bill And Collect, And To Allocate Each Dollar to Accounts Payable.**

Defendants' ripeness argument proceeds on the assertion that Section 1.3 contains only one obligation – a duty to pay in August 2008. Remarkably, Defendants' motion goes so far as to claim that: "nor is UOA yet required to have collected the [Net Accounts Receivable]." (Defs. Mem. at 10). That argument cannot stand.

Defendants' reading would render the first sentence of section 1.3 completely meaningless. If, as Defendants apparently would have this Court read the provision, UOA had no duty to bill those amounts and instead could pay $100,000 in August 2008, there would be no purpose to the "bill and collect" language. That interpretation would run afoul of the cardinal principle of contract interpretation that "all provisions of a contract should be

given effect if possible." *State of New York v. Oneida Indian Nation of New York*, 90 F.3d 58, 63 (2d Cir. 1996). When construing the terms of a contract, "an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable." *United States Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256F. Supp. 2d 176, 181 (S.D.N.Y. 2003); see also *Westview Assocs. v. Guaranty Nat. Ins. Co.*, 95 N.Y.2d 334, 339, 740 N.E.2d 220, 717 N.Y.S.2d 75 (2000) (an interpretation that "would render the . . . policy's specific exclusions mere surplusage [is] a result to be avoided.").

It is clear the August 2008 reconciliation process is not in lieu of the obligation to bill and collect. If the parties had not wanted UOA to have to take some action prior to August 2008, they simply would have provided that Defendants need only pay $100,000 in August 2008. Instead, they chose to create a separate duty on the part of UOA to maximize the amounts that Plaintiffs would receive. This separate provision was incorporated into the agreement to prevent what has happened: That UOA realized that they would not benefit from any serious effort to collect and decided instead just to pay the $100,000 in 2008. The amount of the Account Receivable was in excess of $400,000, meaning that successful collection would yield much more than the $100,000 sum which was the maximum amount that Plaintiffs were obligated to pay as a deficiency. That duty is clearly ongoing "in the normal course of … operations."

The later point distinguishes this case from the cases cited by Defendants' Memorandum of Law. In both, there was no ongoing duty, and the defendants' duties in those cases arose only in the future. Here, as explained, there is a current duty that is being breached.

In short, Plaintiffs' Amended Complaint pleads the existence of <u>current</u> obligations (1) to bill and collect in the normal course, and (2) to allocate "each dollar" to the HSBC credit line.[3]  Defendants breached of those duties prior to April, and caused out of pocket damages in April.  The claim is not premature.

## II.    CLAYTON HERTZOFF'S CLAIMS FOR BREACH OF THE EMPLOYMENT AGREEMENT ARE WELL PLEADED AND NOT SUBJECT TO DISMISSAL

Defendants' motion also challenges the claims of Plaintiff Clayton Hertzoff, which arise under his employment agreement with UOA.  As is shown below, those claims start with Defendants' failure to pay Mr. Hertzoff the full amount of his commissions, UOA's illegal deduction from those commissions, and their renunciation of a duty to make full payments in the future.

Plaintiffs have alleged a breach of contract claim.  To make out a viable claim for breach of contract a "complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

Defendants' deliberate conduct constituted a breach of those duties.  Although not required for pleading purposes, this breach was material.[4]  The Restatement (Second) of Contracts lists five significant criteria that determine materiality of a breach:

---

[3] As explained in the Hertzoff Affidavit (Docket #27), Defendants are also improperly asserting a right to take deductions from the Accounts Receivable collected, in violation of the Stock Purchase Agreement's obligation to actually allocate each dollar received to the designated Accounts Payable. Indeed, defendants have even taken deductions offered by plaintiffs only in return for an executed settlement agreement, without executing the settlement agreement. See Hertzoff Ex. 8.

[4] Materiality is not an element of Plaintiff's breach of contract claim.  Presumably, Defendants raise materiality only for purposes of challenging this Court's subject matter jurisdiction.  On a challenge to subject matter jurisdiction, the Court is not limited to considering the complaint alone, and may also consider matters outside the pleadings such as affidavits, documents, and testimony. See *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002); *Antares Aircraft v. Fed. Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991), aff'd on remand, 999 F.2d 33 (2d Cir. 1992).  Accordingly, Plaintiffs hereby incorporate by reference the testimony of

13

(1) A breach is material if the circumstances, including the language of the agreement, the reasonable expectations of the parties, the standards and practices of the trade or industry, or the character of the breach, indicate that:

(A) the breach caused or reasonably may cause substantial harm to the aggrieved party, such as costs or losses that significantly exceed the contract value; or

(B) the breach substantially deprived or is likely to substantially deprive the aggrieved party of a substantial benefit it reasonably expected under the contract.

(2) A breach of contract is material if the cumulative effect of nonmaterial breaches is material.

The Restatement (Second) Contracts § 241(b) (1981).

Plaintiffs allegations establish such materiality. Here, the receipt of sales commissions was an essential element of the employment agreement. Salary and commissions was *the* "substantial benefit [plaintiff] reasonably expected under the contract." The violation of the Labor Law also shows a violation of a standard and practice of the trade or industry – it violated an extremely important public policy of New York. The violation also would be repeated: If the Diazes could use self-help and make deductions from commissions anytime a patient did not pay his or her bill, plaintiff had no assurance whatsoever that he would receive his pay. Moreover, combined with the additional breaches alleged in the Amended Complaint, the cumulative conduct was material. Restatement (Second) of Contracts §241, Comment e, at 241 ("defaults by the other party under other contracts or as to other installments under the same contract argue for a determination of materiality."). In these circumstances, Plaintiffs' have adequately pleaded materiality.

Ultimately, it is the province of the finder of fact to determine whether plaintiff's violations are material. "It is only where the evidence concerning the materiality is clear and

---

Clayton Hertzoff in his affidavit filed with the Court on July 20, 2007 (Docket #27).

substantially uncontradicted that the question is a matter of law for the court to decide"

*Continental Ins. Co. v. RLI Ins. Co.*, 161 A.D.2d 385, 387 (1st Dept. 1990).

### A.    The Failure To Pay Full Commissions Violated Clear New York Policy, As Expressed in Labor Law § 193.

The first component of Defendants' material breach was the illegal deductions of

money from Mr. Hertzoff's salary.  UOA's deductions of purported damages resulting from

Mr. Hertzoff's "mishandling" of the Johnson case was a plain breach of his employment

agreement, which required UOA to pay the non-discretionary "Personal Sales Collection"

and allowed only "appropriate and customary payroll deductions."  Employment Agreement

at 3(b).  The breach was not just material, but independently, it was actually a crime.

Notably, Defendants have <u>not</u> moved to dismiss (or answered) the claim for violation of

New York's Labor Law § 193, which provides in pertinent part that:

> 1. No employer shall make any deduction from the wages of an employee, except deductions which:
>
> a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or
>
> "b. are expressly authorized in writing by the employee and are for the benefit of the employee * * *.  Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.

Defendants' conduct violated this section.  See, e.g., *Reilly v. Natwest Mkts. Group*

*Inc.* 181 F.3d 253 (2d Cir. 1999), cert denied, 528 U.S. 1119 (2000)  (Plaintiff's percentage

bonus was a "commission" that was expressly included within New York Labor Law's

definition of "wages" where his pay was guaranteed under Percentage Bonus formula to be

percentage of revenue he generated, and was not left to employer's discretion); *Gebhardt v.*

*Time Warner Entertainment-Advance/Newhouse* 284 A.D.2d 978, 726 N.Y.S.2d 534 (4th

Dept 2001) (Labor Law § 193 violated where employer deducted $375 from sales commissions of cable TV account executives; attorneys fees and liquidated damages awarded because deduction was willful).

A case on all fours with this one is *Edlitz v. Nipkow & Kobelt*, 264 A.D.2d 437, 694 N.Y.S.2d 439 (2d Dept. 1999), which, as here, concerned a failure to pay an employee sales commissions under an employment contract. Like the Diazes in this case, the employer withheld $3,000 from the plaintiff's wages "due to a customer's failure to pay the defendant." The Court held that "the deduction by the defendant of $3,000 from the plaintiff's wages violated Labor Law § 193 and summary judgment was, therefore, properly granted ..."

In *P & L Group, Inc. v. Garfinkel*, 150 A.D.2d 663; 541 N.Y.S.2d 535 (2d Dep't 1989), which also involved unlawful deductions from sales commissions, the Court held:

> Unless authorized by law or by consent, an employer is not permitted the self-help remedy of withholding employees' compensation. Labor Law §§ 197 and 198 reflect a strong legislative policy aimed at protecting an employee's right to wages earned. "The importance of this policy is underlined by the Legislature's decision to make its violation a misdemeanor punishable by a fine, jail, or both"

150 A.D.2d at 664.

### B. Defendants Breached Section 2(a) of the Employment Agreement By Constructively Discharging Plaintiff.

Another breach of the employment agreement was Defendants' post-sale changes to Mr. Hertzoff's duties. Defendants do not seem to challenge the substance of the pleading, but instead make the curious challenge that Mr. Hertzoff has not alleged that he has "resigned." (Defs. Mem. at 14). Defendants' contention is curious, as Mr. Hertzoff had resigned from UOA at the time of the service of the Amended Complaint on June 8, 2007.

Those changes violated Mr. Hertzoff's employment agreement. Under New York law, if an employee "is engaged to fill a particular position, any material change in his duties, or significant reduction in rank, may constitute a breach of his employment agreement." *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 11, 280 N.E.2d 867, 330 N.Y.S.2d 33 (1972); *Lynch v. Pharmaceutical Discovery Corp.*, 208 A.D.2d 906; 617 N.Y.S.2d 883 (2d Dep't 1994) ("The law is clear that if an employee is under contract to fill a particular position, any material change in his duties or significant reduction in rank may be treated by the employee as a breach of the contract").

Here, section 2(a) of the Employment Agreement provides that "Employee shall be employed as a Prosthetitst (working in the field of orthotics and prosthetics) and Manager of the Orthotics and Prosthetics Shop ("O&P Shop") and shall report to the Chief Executive Officer or his designee. Employee's duties and responsibilities shall be consistent with Employee's position as the Chief Executive Officer or his designee may from time to time designate. Employee's duty shall include, but not be limited to, overseeing production of the staff of company and the O&P Shop."

The Diazes materially changed plaintiff's duties and significantly reduced his rank by decimating UOA and firing all of the technicians in the O&P Shop that worked on prosthetics. UOA went from a dozen employees to only four. As a result, plaintiff was forced to spend approximately 40% of his time in the shop manufacturing prosthetics, when he did not do so previously. Instead of "managing" shop technicians, plaintiff was working in the shop. This was a significant reduction in his rank, and reduced his commissions, since no commissions were earned from the time plaintiff was forced to spend in the shop.

Moreover, once plaintiff was forced to commence lawsuit against UOA and Ms.
Diaz to recover his commissions, he was simply ignored by defendants. Near the end of his
employment, the O&P Shop closed down, leaving plaintiff unable to secure timely obtain
prostheses for the patients.  Although his employment agreement put him in charge of the
O&P shop, Mr. Diaz never took plaintiff to see the new O&P Shop. He did not consult
plaintiff on what equipment would need to work in the new place. Mr. Diaz dismantled the
old factory, and the two technicians left no longer had work to construct.  Near the end of
plaintiff's employment, there was no telephone, fax or computer service.  The work
conditions bore no resemblance to the work he had agreed to perform in the employment
agreement. Defendants breached their obligations under the Employment Agreement. They
may not now enforce their restrictive covenant.

In these circumstances, the Amended Complaint sufficiently alleges a breach of the
agreement and a constructive discharge.  Defendants' motion relies upon inapplicable law
from Title VII employment discrimination cases.  See Defs. Mem. at 14.  Plaintiffs' claim
does not arise under a statutory employment policy against workplace harassment, it derives
from the compliance with terms of the employment agreement.  In those cases, the standards
for a "constructive discharge" are tied to the terms of the contract.  Indeed, in similar
circumstances New York law has recently found the following claims sufficient to withstand
a summary judgment motion:

> Specifically, plaintiff admitted that it removed defendant's name from the
> telephone book listing and its letterhead, removed defendant from the rotation
> for incoming patients, did not provide one of the two February 2003 draw
> payments for all of its physicians, and failed to renew defendant's excess
> malpractice insurance. It is the province of the finder of fact to determine
> whether plaintiff's acts in allegedly breaching the implied covenant in the
> employment agreement are material.

18

*Syracuse Orthopedic Specialists, P.C. v. Hootnick*, __ A.D.2d __, 2007 NY Slip Op 05852 (July 6, 2007, 4th Dept.)  In short, the Amended Complaint properly alleges a violation of the employment agreement that caused him to be constructively discharged.

### C.    The Breach of Section 9(a) of The Employment Agreement By Demanding Improper Billing Practices.

The Amended Complaint also alleged that Defendants' conduct violated Section 9(a) of the Employment Agreement, which assured Mr. Hertzoff that:

> Company is fully committed to ensuring its compliance and the compliance of its employees, with all applicable rules, regulations and laws promulgated by the state and federal governments and by third-party payors relating to the provision of billing services.

Clearly, this was not the case here. Martin Diaz's improper billing practices put plaintiff in an impossible and untenable position.  The consequences of becoming involved in improper Medicare and Medicaid billing can be severe.  For example, in *People v. McDonald*, 88 N.Y.2d 281, 667 N.E.2d 320, 644 N.Y.S.2d 670 (1996), the Court of Appeals affirmed criminal convictions for larceny and offering a false instrument where podiatrists submitted Medicaid claims for reimbursement of $46 using an improper billing code in seeking reimbursement for orthotics. The podiatrists had used billing code 90473, which suggested the use of a mold, but actually provided custom-made orthotics that were fabricated using 2-D imprint techniques.

Here, Martin Diaz repeatedly demanded that plaintiff use billing code L-1832 to submit claims for a knee braces where the use of that code was not warranted because the devices were a single axis joint, not a multiple joint braces.  Mr. Diaz's response was "what's the difference – the joints are hidden." Mr. Diaz's conduct comes perilously close to conduct that runs afoul of the criminal law. It also ran afoul of Section 9(a) of the employment agreement.

Likewise, it does not take an expert in health care law to realize that it is blatantly wrong and perhaps criminal to have a patient sign an "acknowledgment of receipt" for goods that have not been delivered and in fact have yet to be fabricated. Yet Mr. Diaz repeatedly requested that plaintiff obtain and sign such false instruments. No employee should be put in this intolerable and untenable situation.

Third, as the most senior employee and only Certified Practitioner at UOA's offices at 791 Broadway, plaintiff might well reasonably fear becoming liable or having his professional reputation affected by Mr. Diaz's conduct in billing for numerous patients where the "place of service" is listed as UOA's offices at 791 Broadway, but the patients are not in fact UOA patients and UOA has not performed any services for them.

## III. PLAINTIFF HAS ALLEGED UOA'S ANTICIPATORY REPUDIATION OF THE EMPLOYMENT AGREEMENT.

Defendants also contend that the anticipatory repudiation claim fails because UOA never stated an intention "not to continue <u>as his employer</u>." (Defs. Mem. at 15)(emphasis added). That formulation of the argument completely misstates the legal standard governing "anticipatory repudiation," and therefore cannot support dismissal. The issue on anticipatory repudiation is not whether or not UOA renounced its intention to continue <u>employing</u> Clayton Hertzoff, it is whether or not they renounced an intention to <u>abide by his employment agreement</u>. Plaintiffs have plainly alleged such a repudiation by UOA.

## A. Defendants' Memorandum Misstates the Doctrine of Anticipatory Repudiation.

Defendants' motion completely misstates the standard governing anticipatory repudiation. They mis-cite *Teachers Ins. And Annuity Ass'n of America v. Coaxial Communications of Cent. Ohio, Inc.*, 807 F. Supp. 1155 (S.D.N.Y. 1992), for the proposition that an anticipatory repudiation occurs only where <u>Mr. Hertzoff's</u> performance is rendered

impossible. (Defs. Mem. at 15). In fact, anticipatory repudiation exists where UOA has taken action that either makes it's own future performance impossible, or – as is the case here –manifests a clear determination not to render future performance. See, e.g., *Lucente, v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002); *Franconia Assocs. v. United States*, 536 U.S. 129, 153 L. Ed. 2d 132, 122 S. Ct. 1993, 2002 (2002); *Norcon Power Partners v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 682 N.Y.S.2d 664, 667, 705 N.E.2d 656 (1998); John D. Calamari and Joseph M. Perillo, *The Law of Contracts* § 12-3 (3d ed. 1987).

In these cases, the law does not require a party to the contract to continue offering performance and await these future breaches. Instead, that party is entitled to demand assurance that the other side will perform as required, and if that assurance is not provided, the party may declare a material breach and be excused from having to perform his own obligations.

Here, the Amended Complaint clearly alleges that UOA manifested that determination by stating that it would continue its "general policy." There is no dispute that the employment agreement required UOA to make commission payments to Clayton Hertzoff. It also allowed only "appropriate and customary payroll deductions." The agreement's sole remedy for a "collection failure" was that the amount would not be included in the amount of the commission. Employment Agreement 3(a)(ii). Thus, there was a breach. However, Defendants went further and anticipatorily repudiated their duty to make subsequent commission payments. This repudiation of their obligations understandably made Mr. Hertzoff insecure about whether Defendants would live up to their future obligations. Taking deductions for alleged "poor judgment" in a collection failure

21

surely would occur again in the future, as there will always be patients who do not pay their medical bills.

Defendants' unilateral improper deduction from plaintiff's commission check was a material breach of contract. Defendants were put on notice of this, and were given numerous chances to remedy the breach.  Instead of doing so, and to remove any doubt on the score, the defendants, after consulting with their attorneys, formally declared that their conduct in making the deduction was pursuant to a "**general policy of UOA/C.O.S.I.**"  (AC Ex. E.)   In doing so, the Diazes have declared their intention not to pay a quarterly sales commission, and instead reserved the right to deduct any damages they deemed to be caused by Mr. Hertzoff when a customer fails to pay his or her bills. Plaintiffs have thus plainly alleged that defendants have repudiated their contractual obligations.

## IV.    PLAINTIFF'S CLAIM FOR VIOLATION OF NEW YORK LAW 191-C IS NOT PREMATURE

Defendants have <u>not</u> moved to dismiss plaintiffs claim under section 193 of the Labor Law.  They dispute, however, only whether Labor Law §191-c also applies to their wrongful failure to pay Mr. Hertzoff his earned commissions.  The statute provides that all commissions must be paid within five business days after termination.  Defendants take the position, that this claim was premature when filed (although it now is not premature).  Their arguments, however, are inaccurate.

Even if one credits defendants' interpretation that the claim was premature because Mr. Hertzoff had not been terminated at the time of the filing of the Amended Complaint, the fact remains that the claim is indisputably ripe now.  As Defendants do not challenge the substantive application of the claim, there is no basis for dismissing it, as it now is ripe.

## V.    DEFENDANTS' FAILURE TO PAY RENT IS A BREACH OF CONTRACT.

The Amended Complaint explains that Defendants are in breach of their lease, having repeatedly failed to pay rent of $10,000 per month.  At the time of the Amended Complaint, UOA was in arrears of $10,000 (AC ¶ 43).  Defendants remain in arrears on the rent.

As is the case with the breach of the duty to bill and collect the Account Receivables, UOA does not really dispute the underlying claim.  Instead, it argues that this claim is premature, as it had an opportunity to "cure" the default by June 15th.  It has not cured that default, and so there is no basis for dismissing the claim.  In fact, as set forth in the Hertzoff Affidavit, Defendants have not paid on the July rent, and therefore remain in default under the lease.  Should Defendants cure that default by paying the past-due rent, Plaintiffs would certainly withdraw the claim.

## CONCLUSION

For the reasons set forth herein, plaintiffs' respectfully request that defendants'

motion to dismiss be denied.

Dated: New York, New York
      July 27, 2007

                       TRAIGER & HINCKLEY LLP


                By: s/ _____
                  George R. Hinckley Jr. (GH-7511)

                  880 Third Avenue
                  New York, New York 10022-4730
                  Tel. (212) 759-4933
                  Fax  (212) 656-1531
                  Attorneys for Plaintiffs