Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (CT-7572)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200
*Attorneys for Defendants Noreen Diaz and*
*United Orthopaedic Appliances Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BEVERLY HERTZOFF, EDWIN HERTZOFF,  :
and CLAYTON HERTZOFF,
                                                                            :
                                    Plaintiffs,                    :
                                                                            :
    -against-                                                      :   07 CV 3157 (CM)(MHD)
                                                                            :
NOREEN DIAZ and UNITED ORTHOPAEDIC  :
APPLIANCES CO., INC.
                                                                            :
                                    Defendants.                 :
                                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS


GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendants*
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

*Of Counsel:*
*Andrew L. Zwerling (AZ-5455)*
*Colleen M. Tarpey (CT-7572)*

512183v.3

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

POINT I

THE CLAIM FOR BREACH OF THE STOCK PURCHASE AGREEMENT IS PREMATURE AND WILL NOT BE RIPE FOR ADJUDICATION FOR AT LEAST ANOTHER YEAR......................................................................................................................4

    A. The Contract Is Clear That No Payment Is Due From Defendants Until August, 2008, And Thus No Breach Could Yet Have Occurred............................................................4

    B. Plaintiffs' Arguments Regarding The Consequences If This Court Refuses To Rewrite The Parties' Agreement Are Specious, At Best...............................................................7

POINT II

MANY OF THE REMAINING CLAIMS ARE LIKEWISE DISMISSIBLE FOR THE REASONS PREVIOUSLY SET FORTH BY DEFENDANTS, DESPITE PLAINTIFFS' PROTESTS TO THE CONTRARY....................................................................................................9

CONCLUSION..........................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.,*
  361 F.Supp.2d 283 (S.D.N.Y. 2005)............................................................................9

*Frank Felix Associates, Ltd. v. Austin Drugs, Inc.,*
  111 F.3d 284 (2d Cir., 1997)......................................................................................9

*International Gateway Exchange, LLC v. Western Union Financial Services, Inc.,*
  333 F.Supp.2d 131 (S.D.N.Y., 2004)..........................................................................9

*Wechsler v. Hunt Health Systems, Ltd.,*
  186 F.Supp.2d 402 (S.D.N.Y., 2002)..........................................................................9


**STATE CASES**

*Ahrens v. Westchester Federal Sav. and Loan Ass'n,*
  58 A.D.2d 799, 396 N.Y.S.2d 246 (1st Dep't, 1977) ..................................................5

*Brewer for Value-Added Communications, Inc. Litigation Trust v. State,*
  176 Misc.2d 337, 672 N.Y.S.2d 650 (N.Y.Ct.Cl. 1998).............................................5

*Friedman v. Handelman,*
  300 N.Y. 188, 90 N.E.2d 31 (1949)............................................................................6

*Greenfield v. Philles Records, Inc.,*
  98 N.Y.2d 562, 750 N.Y.S.2d 565 (2002) .................................................................6

*In re Loew's Buffalo Theatres,*
  233 N.Y. 495, 135 N.E. 862 (1922)............................................................................6

*Morlee Sales Corp. v. Manufacturers Trust Co.,*
  9 N.Y.2d 16, 210 N.Y.S.2d 516 (1961) .....................................................................6

*Slatt v. Slatt,*
  64 N.Y.2d 966, 488 N.Y.S.2d 645 (1985) .................................................................6

*Wilson Sullivan Co. v. International Paper Makers Realty Corporation,*
  307 N.Y. 20, 119 N.E.2d 573 (1954)..........................................................................6

540939v.3

## PRELIMINARY STATEMENT

Defendants United Orthopaedic Appliances Co., Inc. ("UOA") and Noreen Diaz ("Ms. Diaz," collectively referred to as "Defendants"), are attempting to obtain the dismissal of certain causes of action alleged against them in an Amended Complaint by plaintiffs Beverly, Edwin, and Clayton Hertzoff (collectively, "Plaintiffs). As they are required to do in a motion of this type, Defendants merely assert arguments that show, as a matter of law, fatal flaws in Plaintiffs' pleadings.

Rather than respond to the purely legal arguments asserted by Defendants, Plaintiffs have, instead, chosen to cloud the legal issues by bringing before the Court factual contentions relating to separate motion pending before the Court. That application concerns Defendants' attempt to obtain injunctive relief against Defendant Clayton Hertzoff, in an effort to prevent his ongoing and blatant violation of a restrictive covenant and other provisions of his employment agreement with UOA. Plaintiffs drag such facts into this purely legal proceeding as a vehicle by which to portray themselves as the victims in the business transactions underlying this action, emphasizing their sale of a hundred year old family business to Defendants for "zero dollars" and certain other perceived, but inaccurately portrayed and otherwise irrelevant, injustices. But those facts are not relied upon by Defendants in this application and have no relevance here.[1]

Rather, what is relevant are the plain terms of the agreements between the parties, which

---

[1] In response to the many references to the record of the injunctive relief motion made by Plaintiffs, Defendants respectfully refer the Court to defendant Noreen Diaz' Affidavit and Reply Affidavit in Support of Defendants Motion for Preliminary Injunction, with annexed Exhibits, on the Court's ECF Docket as Document numbers 19 and 30. Defendants provide these documents only to complete the record for the Court, and maintain that Plaintiffs' claims as asserted in the Amended Complaint are, nevertheless, ripe for dismissal on the basis of the pleadings alone.

govern the resolution of the issues raised in this motion to dismiss. For example, as shown in Defendants' moving papers, reference to the Stock Purchase Agreement between the parties demonstrates conclusively that Plaintiffs' claimed breach of that agreement is woefully premature. Although Plaintiffs insist that the Stock Purchase Agreement mandates regular and immediate payments of monies as the open accounts receivable are collected, nowhere does the Stock Purchase Agreement require that or set forth a timetable of dates in which Defendants are supposed to make payment with regard to any of the accounts payable set forth therein. To the contrary, the only deadline referred to for payment in that contract is *August 2008*. Essentially, faced with the plain language of that contract that mandates dismissal of their claim, Plaintiffs are, in the effort to salvage this moribund claim, asking this Court to rewrite the Stock Purchase Agreement to contain mandatory and immediate payments prior to the August 2008 deadline. This tact, however, runs afoul of bedrock New York law that proscribes judicial redrafting of contracts in the guise of contract interpretation.

Moreover, Plaintiff Clayton Hertzoff's claim of constructive discharge is a pretext, and should be dismissed. Although Plaintiffs strive hard to focus on alleged (and baseless) actions that purportedly made it "intolerable" for Clayton to continue working at UOA, they fail to address facts that reveal the claim of constructive discharge for the sham that it is. Specifically, although Clayton claims in his affidavit that he had reached the breaking point of his ability to tolerate the working conditions at UOA in April 2007 (*see* paragraph 35), it is telling that the claim of constructive discharge was not made until two months later, on or about June 13, 2007, when Plaintiffs filed and served their Amended Complaint. Also conveniently ignored by Plaintiffs are the facts that the belated claim of constructive discharge 1) was not made until after Defendants served a Rule 11 letter on Plaintiffs, demanding that they withdraw the otherwise

frivolous complaint; and 2) was made during the same week when Clayton was on a paid vacation from UOA and was still using a UOA company car! To state the obvious, these are not the actions of those legitimately forced from their place of employment due to intolerable working conditions. Indeed, Defendants have argued that the constructive discharge claim was only added to the Amended Complaint as a preemptive measure by Plaintiffs, since Clayton Hertzoff was aware before the Amended Complaint was served that he had stolen proprietary information, consisting of seven years' worth of patient information, from UOA in anticipation of going to work for a direct competitor in breach of the restrictive covenant and non-solicitation provisions in his employment agreement.

In addition, Plaintiff Clayton Hertzoff's other claims for "breaches" of the employment agreement are likewise insufficient on their face. Each of the claimed breaches is either premature, insufficient as a matter of law, or lacking in any duty or obligation imposed on UOA, as set forth in the employment agreement. Indeed, the very essence of Clayton Hertzoff's breach claims fail to state any cognizable legal cause of action. Clayton Hertoff's "real" complaint is simply that he was disappointed to find that his employment with UOA did not remain exactly the same as it had been when his parents ran the company once the company was sold to Ms. Diaz. As the Court will note, however, this is not what Clayton Hertzoff or UOA bargained for – and UOA fulfilled its end of the bargain while Clayton Hertzoff filed a frivolous federal lawsuit because he was simply unhappy with his new employer.

Finally, the claim for non-payment of rent is simply baseless, as all back rent owed had been paid as of the date of the Amended Complaint, and the rent for the month of June was not yet due as of the date the Amended Complaint was filed (and has since been paid anyway). Accordingly, Plaintiffs have suffered no damages, and the claim must be dismissed.

## POINT I

## THE CLAIM FOR BREACH OF THE STOCK PURCHASE AGREEMENT IS PREMATURE AND WILL NOT BE RIPE FOR ADJUDICATION FOR AT LEAST ANOTHER YEAR

In essence, upon the sale by Plaintiffs of the stock of UOA to Noreen Diaz, UOA promised to bill for and collect on certain accounts receivable outstanding to UOA as of the date of the sale, to apply the collected A/R to certain accounts payable of UOA in a particular order of priority, and, that should the A/R collected not cover the entirety of the accounts payable, to fund a shortfall up to a maximum of $100,000 at the time of the two year anniversary of the agreement.

Plaintiffs now attempt to claim that Defendants have "breached" these obligations by imposing upon Defendants contractual obligations that simply do not exist. Further, Plaintiffs make specious arguments that, were this Court to accept Defendants' arguments regarding the contract, it would render the payment provision meaningless. However, as is set forth below, neither the Plaintiffs' claims of breach nor their contractual construction argument have any merit and the claim must be dismissed as premature.

### A. The Contract Is Clear That No Payment Is Due From Defendants Until August, 2008, And Thus No Breach Could Yet Have Occurred

The precise contractual provision in issue states that, "Purchaser [Ms. Diaz] shall cause the 'Net Accounts Receivable' to be billed and collected, to the extent reasonably collectable, in the normal course of the Corporation's operations. For purposes of this payment, 'Net Accounts Receivable' shall be calculated as the accounts receivable of the Corporation earned prior to and collected during the twenty-four (24) month period immediately following the Closing Date less

any refunds or repayments." Stock Purchase Agreement, ¶3.1. The Stock Purchase Agreement goes on to state that, "Each dollar of the Net Accounts Receivable actually collected will be allocated to discharge the Accounts Payable in the following order of priority:...," thereafter setting forth that the Net Accounts Receivable would be applied first to an HSBC line of credit, next to outstanding rent owed to the Hertzoffs by UOA, and then to a promissory note in favor of Beverly Hertzoff for money owed her by UOA. Stock Purchase Agreement, 3.1. Should the accounts payable not be paid off in full on the two-year anniversary of the Agreement, UOA would be obligated to fund the shortfall, up to $100,000. *Id.*

That Defendants cannot be in breach of any present obligation is obvious by virtue of what this provision of the Stock Purchase Agreement does *not* say. It does not, for example, state when UOA must commence collecting the "Net Accounts Receivable," other than that collection is to occur in the "normal course" of UOA's operations. It does not state a date by which UOA must make a first payment toward the accounts receivable, nor set any regular or fixed schedule of when such payments are to be made. It does not state how frequently UOA must apply the Net Accounts Receivable to the accounts payable. It does not require UOA to segregate the Net Accounts Receivable into a separate account. As money is fungible and there is no requirement to keep the Net Accounts Receivable segregated from other UOA funds, the Stock Purchase Agreement does not even require that the Net Accounts Receivable cannot be used to pay other UOA expenses. *See, Brewer for Value-Added Communications, Inc. Litigation Trust v. State*, 176 Misc.2d 337, 672 N.Y.S.2d 650 (N.Y.Ct.Cl. 1998); *Ahrens v. Westchester Federal Sav. and Loan Ass'n*, 58 A.D.2d 799, 396 N.Y.S.2d 246 (1st Dep't, 1977)(both discussing the fungible nature of money).

540939v.3

In point of fact, by definition, the Net Accounts Receivable cannot even be determined until 24 months have passed from the Closing Date of the Stock Purchase Agreement. Essentially, in an effort to spare their breach of contract claim from dismissal, Plaintiffs are asking this Court to redraft the contract to impose some present obligation upon UOA to pay accounts payable and to account for the receivables it has collected and/or paid to the accounts payable thus far. By asking the Court to re-write the parties' agreement, Plaintiffs run afoul of the bedrock principle that a court may not supply otherwise absent terms to an agreement under the guise of construction or interpretation, or even to reflect notions of equity or fairness. *See, In re Loew's Buffalo Theatres*, 233 N.Y. 495, 135 N.E. 862 (1922); *Friedman v. Handelman*, 300 N.Y. 188, 90 N.E.2d 31 (1949); *Wilson Sullivan Co. v. International Paper Makers Realty Corporation*, 307 N.Y. 20, 119 N.E.2d 573 (1954); *Morlee Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d 16, 210 N.Y.S.2d 516 (1961); *Slatt v. Slatt*, 64 N.Y.2d 966, 488 N.Y.S.2d 645 (1985); *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 750 N.Y.S.2d 565 (2002).

Plaintiffs would have this Court violate this fundamental precept by imposing a present obligation where none exists in order to sustain Plaintiff's premature claim of "breach." If Plaintiffs had wanted the ability to monitor collection of the Net Accounts Receivable, to get periodic accountings of the collections, to set a date upon which payment of the Net Accounts Receivable must begin being paid to the accounts payable, the opportunity to negotiate and agree with Defendants upon those terms was prior to the signing of the Agreement. It is not for Plaintiffs to have this Court re-write the deal Plaintiffs made, no matter how much Plaintiffs now protest its fairness - it is, at the end of the day, what they bargained for.

### B. Plaintiffs' Arguments Regarding The Consequences If This Court Refuses To Rewrite The Parties' Agreement Are Specious, At Best

In an effort to compel this Court to rewrite the Stock Purchase Agreement to comport with their liking, Plaintiffs argue that, without this Court's intervention in denying dismissal of the claim for breach as premature, Defendants would be free to simply do nothing with regard to the Net Accounts Receivable collections, wait for the August 2008 expiration date, and pay only $100,000 to Plaintiffs.

This argument is specious and, again ignores the plain language of the Stock Purchase Agreement. The agreement clearly obligates the Defendants to bill and collect for the accounts receivable in the ordinary course of UOA's business. If August, 2008 were to roll around and no A/R had been billed for or collected, a $100,000 payment would not suffice to fulfill the Defendant's contractual obligations. Rather, Plaintiffs conceivably would have, *at that time*, the precise cause of action they have alleged herein – an action for breach of the Stock Purchase Agreement, to the extent that UOA did not, pursuant to the duty of good faith and fair dealing, adequately bill for and collect the accounts receivable.

Plaintiffs also argue that they have suffered "damages" as a result of having to pay off the HSBC account in the amount of approximately $32,000. This argument fails as well. Presume for a moment that UOA has, in fact, been billing and collecting the accounts receivable in the ordinary course (which it has been), and that the accounts receivable had turned out to be largely uncollectible because of age, or insufficient information (which is also partly the case), and that the Net Accounts Collectible never reached more than $50,000 (which is not the case). At the end of the day, Plaintiffs would have been responsible for whatever was left over of the HSBC line of credit, less the net Accounts Receivable and less the $100,000 shortfall payment due in

7

August, 2008. If that amount turned out to be $7 or $700,000, that is precisely the result for which Plaintiffs bargained.

Moreover, Defendants have no control over HSBC Bank. Defendants are not responsible for the fact that HSBC demanded repayment of the entire line of credit prior to the end of the 24 month collection period negotiated by the parties, or that HSBC demanded payment from Plaintiffs (if, in fact, it did, and Plaintiffs' payment to HSBC was not solely a ploy so as to allow Plaintiffs to assert "damages" from the alleged breach).

As a result, Plaintiffs' pleas to allow the claim for breach of the Stock Purchase Agreement to stand because they have suffered "damages" are unavailing and the Court should not be swayed by that argument. In fact, Plaintiffs knew, when selling their highly distressed and highly levered company to Ms. Diaz, that they might not see enough collections from the accounts receivable to pay off all the accounts payable – that was the purpose of the shortfall payment due in August, 2008. Again, Plaintiffs received exactly that that for which they bargained, That they are unhappy with the bargain does not translate into an entitlement to a judicial redrafting of the agreement to overcome problems of prematurity.

The fact remains that there has been no breach of the Stock Purchase Agreement, and there cannot be any breach by Defendants of that agreement until August, 2008 when the "Net Accounts Receivable" can be determined and any shortfall, should one exist, is paid. Plaintiffs' claim, even if it had any merit (which it does not), must simply wait until then.

## POINT II

### MANY OF THE REMAINING CLAIMS ARE LIKEWISE DISMISSIBLE FOR THE REASONS PREVIOUSLY SET FORTH BY DEFENDANTS, DESPITE PLAINTIFFS' PROTESTS TO THE CONTRARY

The legal arguments set forth in Defendants' prior submission in support of dismissal of several of the causes of action alleged in the Amended Complaint are not affected by Clayton Hertzoff's attempts to cloud the record by introduction of additional, extraneous "facts."

To amplify the legal issues set forth by Defendant's previously, however, Plaintiffs concede that materiality of a breach of contract can be an issue of law for the Court to resolve. *See Frank Felix Associates, Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284 (2d Cir., 1997) (holding that, under New York law, whether defendant materially breached an agreement is a question of law); *Wechsler v. Hunt Health Systems, Ltd.*, 186 F.Supp.2d 402 (S.D.N.Y., 2002) ("The determination of the materiality of a breach is an issue of law for the Court to rule on."); *International Gateway Exchange, LLC v. Western Union Financial Services, Inc.*, 333 F.Supp.2d 131, 143 (S.D.N.Y., 2004) ("A breach of contract is material if it goes 'to the root of the agreement between the parties' or 'to the essence of the contract.' The determination of the materiality of a breach is, of course, an issue of law for the Court.")[2]

Clayton Hertzoff's allegations of "breach" in this case simply do not, as a matter of law, rise to the level of materiality required to sustain a cause of action for constructive discharge or breach of contract. Here, he obtained all of the benefit of his Employment Agreement, including

---

[2] Some courts have held that the issue of materiality is a mixed question of fact and law, depending upon the circumstances of the case. *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F.Supp.2d 283 (S.D.N.Y. 2005). However, where the circumstances are as clear as they are in this case that Defendants did not materially breach the agreement, the Court is not precluded from determining materiality and concluding that, as no material breach occurred, no claim for breach can survive, as a matter of law. *See e.g., Frank Felix, supra.*

a base salary which he admits now is more than he is being paid by UOA's competitor, commissions, life and health insurance benefits, and a company car. The only breach cited by Mr. Hertzoff is UOA's failure to pay him just over one half of one annual quarter's commissions (if same can even be considered such a breach, since the commissions complained of weren't contractually due until the end of June and this suit was commenced in mid-April), which clearly is not the "root" of the Employment Agreement. Rather, Defendants kept all or substantially all of their promises and, as it appears he had intended to do from the outset, Clayton Hertzoff instead used his position at UOA after the sale to steal patient information and obtain employment for a competitor of UOA in violation of the reasonable restrictions contained in the Employment Agreement.

Moreover, the claims of "breach" alleged by Clayton Hertzoff, as amplified in his affidavit referred to in defense of this motion, fail in large part for the lack of any corresponding contractual duty or obligation on UOA's part. The same is true for Clayton Hertzoff's constructive discharge claim. Seen for what they are, the claims of breach and constructive discharge are best characterized as Clayton Hertzoff's dissatisfaction that his employment after the sale of UOA to Ms. Diaz was not identical to his employment as he had enjoyed it for 30+ years of working for his parents. Mr. Hertzoff's dissatisfaction, however, is not a legally cognizable claim. As a result, the claims for breach, anticipatory breach, and constructive "discharge" (particularly odd, in light of the fact that he wasn't discharged by UOA at the time the Amended Complaint was filed), are improperly pled and UOA should not be forced to defend against Mr. Hertzoff's "dissatisfaction." Indeed, it seems far more likely that the claims of "breach" and "constructive discharge" alleged by Mr. Hertzoff, were mere pretext; a pre-emptive

540939v.3

strike by Plaintiffs in an effort to avoid the restrictive covenant and non-solicitation obligations set forth in the Employment Agreement.

## CONCLUSION

At its heart, this case is a dispute between an employer and its dissatisfied employee about $4,100 in commissions. This Court should simply refrain from exercising any jurisdiction over this matter, instead relegating it to the realm of the small claims courts where it belongs.

Dated: Great Neck, New York
~~July 2, 2007~~
Aug. 3, 2007

GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendants*

By _____
Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (CT-7572)
111 Great Neck Road
Great Neck, NY 11021
(516) 393-2200

540939v.3

11