Andrew L. Zwerling (AZ-5455)
Colleen M. Tarpey (CT-7572)
GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200
*Attorneys for Defendants Noreen Diaz and*
*United Orthopaedic Appliances Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BEVERLY HERTZOFF, EDWIN HERTZOFF,
and CLAYTON HERTZOFF,

      Plaintiffs,

 -against-         07 CV 3157 (CM)(MHD)

NOREEN DIAZ and UNITED ORTHOPAEDIC
APPLIANCES CO., INC.

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


DEFENDANTS NOREEN DIAZ AND UNITED
ORTHOPAEDIC APPLIANCES CO., INC'S
OBJECTIONS TO MAGISTRATE JUDGE DOLINGER'S
REPORT AND RECOMMENDATION DENYING
DEFENDANTS' REQUEST FOR INJUNCTIVE RELIEF


GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendants*
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

*Of Counsel:*
*Andrew L. Zwerling (AZ-5455)*
*Colleen M. Tarpey (CT-7572)*

603269v.3

## TABLE OF CONTENTS

|  | Page(s) |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
|    A. Introduction | 1 |
|    B. Background Facts | 2 |

POINT I.

THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION SHOULD NOT BE ACCEPTED BY THIS COURT AND SHOULD BE MODIFIED TO GRANT DEFENDANTS THE REQUESTED INJUNCTIVE RELIEF ............5

   A. The Restrictive Covenants Are Necessary To Protect A Legitimate Interest ............5

   B. The Clear Showing Of Irreparable Injury ............7

   C. As A Matter Of Law, The Claim Of Constructive Discharge Did Not Justify Clayton's Admitted Violation Of The Restrictive Covenants ............9

   D. Balancing Of The Hardships Favors The Granting Of Injunctive Relief ............10

CONCLUSION ............11

603269v.3

TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Absolute Recovery Hedge Fund, L.P. v. Gaylord Container Corp.*,
185 F.Supp.2d 381 (S.D.N.Y. 2002) ..................................................................................10

*EarthWeb, Inc. v. Schlack*,
71 F.Supp.2d 299 (S.D.N.Y. 1999) ......................................................................................9

*Estee Lauder Companies Inc. v. Batra*,
430 F.Supp.2d 158 (S.D.N.Y. 2006) ....................................................................................9

*FMC Corp. v. Taiwan Tainan Giant Indus. Co*,
730 F.2d 61 (2d Cir.1984) ....................................................................................................8

*Jay's Custom Stringing, Inc. v. Yu*,
2001 WL 761067 (S.D.N.Y. 2001) ......................................................................................8

*Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*,
323 F.Supp.2d 525 (S.D.N.Y. 2004) ....................................................................................8

*Markovits v. Venture Info Capital, Inc.*,
129 F.Supp.2d 647 (S.D.N.Y. 2001) ....................................................................................8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn*,
73 F.Supp.2d 425 (S.D.N.Y. 1999) ......................................................................................8

*Natsource LLC v. Paribello*,
151 F.Supp.2d 465 (S.D.N.Y. 2001) ....................................................................................8

*Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*,
202 F.Supp.2d 228 (S.D.N.Y. 2002) ....................................................................................8

*Ticor Title Ins. Co. v. Cohen*,
173 F.3d 63 (2d Cir. 1999) ...................................................................................................8

*Velo-Bind, Inc. v. Scheck*,
485 F.Supp. 102 (S.D.N.Y. 1979) ........................................................................................8

**STATE CASES**

*Albany Medical College v. Lobel*,
296 A.D.2d 701, 745 N.Y.S.2d 250 (3d Dep't 2002) .........................................................10

*BDO Seidman v. Hirshberg*,
93 N.Y.2d 382, 690 N.Y.S.2d 854 (1999) ....................................................................5, 6, 7

TABLE OF AUTHORITIES

Page(s)

*Greystone Staffing, Inc. v. Goehringer,*
    2006 WL 3802202 (Sup. Ct. Nas. Co. 2006)..................................................................6

603269v.3

# PRELIMINARY STATEMENT

## A. Introduction

Defendants United Orthopaedic Appliances Co., Inc. ("UOA") and Noreen Diaz ("Ms. Diaz," collectively referred to as "Defendants") submit the following objections to the Report and Recommendation issued by Magistrate Judge Michael H. Dolinger ("Magistrate Dolinger") on August 13, 2007 (hereinafter, "R. & R."), denying defendants' request for preliminary injunctive relief against plaintiff Clayton Hertzoff in connection with an employment agreement between the parties, which includes a restrictive covenant and non-solicitation provision. The Defendant's request for injunctive relief was intended to stop Plaintiffs Beverly, Edwin and Clayton Hertzoff ("Plaintiffs"), the prior owners of UOA, from destroying the value of the business they sold to Ms. Diaz. Moreover, the request was warranted in light of the contractual restrictive covenant agreed to by Plaintiff Clayton Hertzoff ("Clayton") in the Employment Agreement that he signed with UOA once his parents, Edwin and Beverly Hertzoff, had consummated the sale of UOA to Ms. Diaz.

This case is rendered most remarkable by the powerful dichotomy between the admitted and uncontested facts and the conclusion reached by Magistrate Dolinger. It is uncontested that, after defense counsel served a Rule 11 letter on Plaintiffs' counsel, Plaintiffs amended their complaint leaving the original claims intact, but added claim by Clayton that he was constructively discharged from his employment with UOA. The claim was asserted despite the fact that 1) at no time did Clayton terminate his employment with UOA and 2) service of the amended complaint was immediately followed by Clayton's one-week paid vacation from UOA and his continued retention of a UOA vehicle. It is further admitted – and indeed it was found by Magistrate Dolinger – that on the day he was to return from vacation, Clayton went to work as a

prosthetist for a "rival" and direct competitor of UOA in violation of a restrictive covenant in Clayton's employment agreement with UOA, providing his services at the same sites as those he handled for UOA.

Despite these admitted facts, Magistrate Dolinger found that the injunctive relief that Clayton's employment agreement mandated in the face of a violation of the restrictive covenant contained therein was not warranted. The essential predicates of Magistrate Dolinger's recommendation are flawed, however, and should not be accepted by this Court.

- Magistrate Dolinger found that the restrictive covenant could not be enforced because it was not shown that Clayton possessed "unique" skills. But case law makes plain that this showing need not be made where, as here, it is shown that the restrictive covenant is necessary to protect legitimate interests of the former employer.

- Magistrate Dolinger noted that a claim of constructive discharge may not be asserted where a party "continues to accept the benefits of the employment relationship." But he also found that Clayton's assertion of a constructive discharge claim justified his violation of the restrictive covenant, despite the uncontested facts that Clayton took a one-week paid vacation from UOA and maintained possession of a company car. These latter facts were overlooked by Magistrate Dolinger.

- Despite well settled case law holding that where, as here, a party violates a non-compete clause the ensuing loss of client relationships and customer good-will constitutes irreparable harm to a legitimate interest of the former employer for which injunctive relief is appropriate, Magistrate Dolinger found that Defendants had an adequate remedy at law in the form of a lawsuit for money damages and that there was insufficient evidence that the fact that Clayton took 30 years of experience and customer connections to a direct competitor was likely to cause harm to Defendants.

## B. **Background Facts**

In August 2006, Ms. Diaz purchased UOA from Plaintiffs. (UOA is in the business of manufacturing and selling standard and custom-built orthopedic appliances, prosthetics and braces to customers/patients referred to UOA by their physicians and at hospital clinics.) One

2

603269v.3

facet of that transaction was that Defendants were required to employ Clayton for a period of ten years and pursuant to a generous compensation package. Relevant to this request for injunctive relief, Clayton's Employment Agreement contained restrictive covenants that, among other things, proscribed him, upon terminating his employment with UOA, from providing proprietary information of UOA to its competitors and from working with any competitors of UOA within a specified geographic area and for a period of one year. By signing the Employment Agreement, Clayton acknowledged that any breach of the restrictive covenants would necessarily cause UOA harm that could not be remedied with monetary damages and would be subject to injunctive relief.

Approximately eight months after the purchase agreement, Plaintiffs commenced a lawsuit against Ms. Diaz and UOA for breach of the stock purchase agreement executed at the time of the sale of UOA to Ms. Diaz, as well as for breach of the employment agreement between Clayton Hertzoff and UOA. Based upon the perceived frivolous nature of the lawsuit, counsel for Defendants wrote a Rule 11 letter to counsel for Plaintiff requesting that the lawsuit be discontinued. Rather than do so, on Friday June 8, 2007, Plaintiffs served Defendants with an Amended Complaint. That pleading kept the original claims and, in addition to some other changes, added a claim that Clayton Hertzoff had been "constructively discharged" from his job. This cause of action was initially rendered incredible by the facts 1) Clayton had not been terminated by UOA nor had he or his counsel ever claimed that he had been terminated or that he was no longer working for UOA; 2) Clayton was still using the company car provided to him, even after filing the claim for purported "constructive discharge," and 3) in the week immediately following his claim of "constructive discharge," Clayton took a one week paid vacation from UOA! None of these facts have been (nor could they be) disputed by Clayton.

3

On the day Clayton was slated to return from his paid vacation, Clayton simply did not show up to work. Defendants learned, after repeated unanswered calls to Clayton's phone, that he had commenced work with a direct competitor of UOA (New England Orthotic & Prosthetic Systems, LLC ["NEO"]) within the geographic area proscribed by the restrictive covenant in Clayton's employment agreement. This fact too, is nowhere disputed by Plaintiffs. To make matters worse, in direct violation of his employment agreement, Clayton was servicing UOA customers on behalf of his new employer.

Compounding the egregiousness of Clayton's blatant violation of the restrictive covenants, shortly before a scheduled appearance before Magistrate Dolinger with respect to Defendants' request for injunctive relief, Clayton's counsel "returned" to UOA's counsel a stack of documents representing patient contact, insurance, and other account information on over 200 of UOA's former patients, printed by Clayton Hertzoff immediately prior to his commencement of this lawsuit and retained by him, without UOA's knowledge or consent, for months following his unannounced departure from UOA and the commencement of his work with a direct competitor of UOA! Importantly, in his affidavit, Clayton admits that "customer histories" constituted "might be deemed confidential to UOA."

Based upon these facts, Defendants should be granted the requested injunctive relief and, for the reasons stated below, the Court should reverse the Report and Recommendation of Magistrate Judge Dolinger, and grant Defendants the injunctive relief to which they are clearly entitled.

## POINT I

## THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION SHOULD NOT BE ACCEPTED BY THIS COURT AND SHOULD BE MODIFIED TO GRANT DEFENDANTS THE REQUESTED INJUNCTIVE RELIEF

Magistrate Dolinger expressly found that "Clayton does not deny that he" provided services at as a prosthetist at sites within the zone of the restrictive covenant, and wrote of "Clayton's admitted employment by a rival company since June 18, 2007, and his service as a prosthetist for that company within what could potentially be determined to be a three-mile radius of UOA's headquarters…" Despite these findings, however, Magistrate Dolinger did not impose the injunctive relief that Clayton contractually agreed to be subject to in the event he violated the restrictive covenants in his employment agreement. Although lengthy, stripped to its essence Magistrate Dolinger's recommendation rests upon only a handful of salient predicates, which, as will be shown and is respectfully submitted, should be reversed by this Court.

### A.   The Restrictive Covenants Are Necessary To Protect A Legitimate Interest

Magistrate Dolinger found that the restrictive covenants were not necessary to protect a "legitimate interest" of Defendants, because it was not shown that Clayton possessed skills that may be deemed "unique or extraordinary." (R. & R., pg. 43.)

But as emphasized by the New York Court of Appeals in *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 690 N.Y.S.2d 854 (1999):

> "Protection of customer relationships the employee acquired in the course of employment may indeed be a legitimate interest… The employer has a legitimate interest in preventing former employees from exploiting or appropriating the

5

goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment."

93 N.Y.2d at 391.

Here, that standard is easily met. Indeed, the essence of Defendants' request for injunctive relief rests upon the fact that, over the decades prior to the sale of UOA to Ms. Diaz, UOA had built up a customer base and a business reputation that was as much a part of the consideration for the sale of UOA as any other asset of the company. Indeed, the restrictive covenant was designed to protect Ms. Diaz from losing the value of what she had purchased – the underlying customer base and good will of the company. By taking his thirty years experience and family name to UOA's rival, Clayton was robbing Defendants of the goodwill and customer relationships that had been built up over a period of decades and for which Defendants had contracted to purchase.

Moreover, Clayton admittedly had access to confidential information that Defendants have a legitimate interest in protecting through enforcement of the restrictive covenants. *See Greystone Staffing, Inc. v. Goehringer*, 2006 WL 3802202, *4 (Sup. Ct. Nas. Co. 2006). Clayton was an employee of UOA for over thirty years and the son of the prior owners, no doubt privy to every facet of the operation of the business and its referral sources, customer lists, and contracts with the third party insurance payors whose payments generate the revenue that keeps UOA operational. Moreover, as a trained prosthetist, he knows any and all UOA "tricks of the trade" with regard to the manufacture and fitting of custom build prosthetic devices. Furthermore, Clayton acknowledged and admitted by his signature on the Employment Agreement that he was privy to "Confidential Information" relating to UOA, and that his theft of such information or disclosure of it to third parties would constitute "irreparable harm" to UOA. Additionally,

Clayton does not dispute that, when he abruptly left UOA without announcing his intentions to do so, he took with him detailed contact, insurance, billing, and treatment history information regarding at least 200 UOA patients, spanning several years.[1] In his affidavit, Clayton even admits that "some customer materials" such as "customer histories" "might be deemed confidential to UOA" and that he not only had access to such information, but had copied it and had taken it home. That he did this without the knowledge or authority of Defendants, and only returned these documents during the pendency of the Order To Show Cause and after he started working for Defendants's direct competitor, heightens the need to provide Defendants with the protections the restrictive covenants were designed to provide.

Magistrate Dolinger found that Clayton's skills are not so unique or extraordinary as to constitute a legitimate interest of UOA's that required protection through enforcement of the restrictive covenant. But this showing need not be made where the legitimate interests cited above are demonstrated. *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 391, 690 N.Y.S.2d 854 (1999).

**B.     The Clear Showing Of Irreparable Injury**

Magistrate Dolinger found that, even assuming that restrictive covenants were proper and were being violated, Defendants had an adequate remedy at law, and that the "record is bare of any evidence that the presence of Clayton Hertzoff at any given hospital or clinic as a

---

[1] Magistrate Dolinger reached the conclusion (without any testimony in the record) that neither Clayton nor his new employer would benefit from this information, based on his assumption that the "stolen" patients, once fitted with a prosthesis, would have no need to re-contact UOA for additional business. This assumption, however, has no evidentiary predicate in the record. Moreover, Magistrate Dolinger overlooked other possibilities, including, but not limited to, that patients, who have input into the choice of prosthetist, might request UOA from their physicians at future visits, or that a prosthetic device might break or need repair or modification, for which work the patient might contact UOA directly.

603269v.3

representative of New England will have any noticeable impact on the value of the business of UOA."

These conclusions run afoul of the line of cases in New York that hold that when, as here, a party violates a non-compete clause, generally the ensuing loss of client relationships and customer good-will built up over the years constitutes irreparable harm to a legitimate interest of the former employer for which injunctive relief is appropriate. As the Second Circuit has remarked, it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69-70 (2d Cir. 1999). *See Natsource LLC v. Paribello*, 151 F.Supp.2d 465 (S.D.N.Y. 2001). *See also Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F.Supp.2d 228 (S.D.N.Y. 2002); *Markovits v. Venture Info Capital, Inc.*, 129 F.Supp.2d 647 (S.D.N.Y. 2001); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn*, 73 F.Supp.2d 425 (S.D.N.Y. 1999); *Velo-Bind, Inc. v. Scheck*, 485 F.Supp. 102, 109 (S.D.N.Y. 1979).

Also overlooked is Clayton's admitted taking of confidential information, for example, in the form of customer histories. Irreparable harm to an employer may also result where an employee has misappropriated trade secrets or confidential customer information, including pricing methods, customer lists and customer preferences. *FMC Corp. v. Taiwan Tainan Giant Indus. Co*, 730 F.2d 61, 63 (2d Cir.1984) ("[I]t is clear that the loss of trade secrets cannot be measured in money damages."). Indeed, irreparable harm is presumed where a trade secret has been misappropriated, even in the absence of an employment agreement. *Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*, 323 F.Supp.2d 525, 533 (S.D.N.Y. 2004); *Jay's Custom*

*Stringing, Inc. v. Yu*, 2001 WL 761067 at *8 (S.D.N.Y. 2001); *EarthWeb, Inc. v. Schlack*, 71 F.Supp.2d 299, 309-10 (S.D.N.Y. 1999).

That Clayton claims not to have divulged confidential information of UOA's to his new employer is of no import. This is because, as the Second Circuit has explained, "Even where a trade secret has not yet been disclosed, irreparable harm may be found based upon a finding that trade secrets will inevitably be disclosed...." *Estee Lauder Companies Inc. v. Batra*, 430 F.Supp.2d 158 (S.D.N.Y. 2006) (citing, *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984).[2]

### C. As A Matter Of Law, The Claim Of Constructive Discharge Did Not Justify Clayton's Admitted Violation Of The Restrictive Covenants

Magistrate Dolinger found that Defendants' material breach of Clayton's employment agreement – through its alleged constructive discharge of him – permitted Clayton to ignore his contractual obligation to abide by the restrictive covenants. Importantly, however, although Magistrate Dolinger expressly noted that a party may not rely on an alleged prior material breach as a basis for terminating a contract if it "continues to accept the benefits of the contractual

---

[2] Magistrate Dolinger cites the unreported case of *East Coast Orthotic and Prosthetic Corp. v. Allen* ("East Coast") for the proposition that injunctive relief is not justified here. In no way did the decision in *East Coast* undermine the firm body of decisional law, cited above by Defendants, that firmly holds that when, as here, a party violates a non-compete clause, generally the ensuing loss of client relationships and customer good will built up over the years constitutes irreparable harm to a legitimate interest of the former employer for which injunctive relief is appropriate. Moreover, in *East Coast*, unlike here, the court found an insufficient showing by the movants of a likelihood of success on the merits, because 1) the former employee had been forced to sign the non-compete agreement without prior negotiation and only after uprooting his family from England, and 2) there was no geographical limitation set forth in the agreement. Also, unlike this case, in *East Coast* the court found that there was an adequate legal remedy because plaintiffs had pleaded a specific amount of damages that would compensate them for losses due to breach of restrictive covenant. Finally, in *East Coast*, the court held that the balance of equities fell in favor of the former employee because of the impermissibly wide scope of the restrictive covenant and because its enforcement would "prevent Allen from pursuing his livelihood." Here, there is no challenge by Plaintiffs to the scope of the restrictive covenant and no showing at all that Clayton can't adequately make a living if forced to seek employment outside the small three-mile radius of the restrictive covenant.

603269v.3

relationship," he failed to apply that principle here. Overlooked by Magistrate Dolinger are the facts that, after asserting the claim of constructive discharge in the Amended Complaint, Clayton took a one-week paid vacation from UOA and continued to possess the company car. These facts, which have never been contested and are thereby admitted by Plaintiffs, as a matter of law refute the claim of constructive discharge, and eliminate that claim as a basis for denying effect to the restrictive covenants. Because Magistrate Dolinger overlooked or ignored these undisputed facts that relate to Clayton's claims for "constructive discharge" and the enforceability of the restrictive covenant, the Report & Recommendation must be modified.[3]

### D.     Balancing Of The Hardships Favors The Granting Of Injunctive Relief

Reference to the factor of a balancing of the equities also favors the issuance of the injunctive relief requested by Defendants. "[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Absolute Recovery Hedge Fund, L.P. v. Gaylord Container Corp.*, 185 F.Supp.2d 381, 388 (S.D.N.Y. 2002). Here, if Clayton is permitted to work for UOA's direct competitor and to violate the restrictive covenants, there is a genuine threat that all value from the company Plaintiffs sold to Ms. Diaz will be stripped: the good faith, customer base, and referral network. Such harm is accruing on a daily basis.

Magistrate Dolinger concluded that a worse harm would befall Clayton in the form of depriving him of an ability to support his family. But there was no showing that Clayton could

---

[3] Moreover, although Clayton claims that the "final straw" underlying his constructive discharge claim occurred in April 2007, it is significant that he did not assert that claim until June 8, 2007. This fact also undermines his constructive discharge claim as a matter of law, because by not terminating the contract at the time of the alleged breach, Clayton "surrendered" his right to do so later based on the breach. *Albany Medical College v. Lobel*, 296 A.D.2d 701, 702-703, 745 N.Y.S.2d 250 (3d Dep't 2002)(cited by Magistrate Dolinger).

not find employment outside of the zone of the restrictive covenants. Moreover, Clayton knew of the risk of the restrictive covenants being enforced when he purposefully violated them. Having violated them despite foreknowledge of that risk, he cannot be heard to complain about any hardship to him through their enforcement.

## CONCLUSION

For the reasons set forth above, the Report & Recommendation of Michael H. Dolinger should be modified to grant Defendants the requested injunctive relief.

Dated: Great Neck, New York  
August 30, 2007

GARFUNKEL, WILD & TRAVIS, P.C.  
*Attorneys for Defendants*  
   *Noreen Diaz and United Orthopaedic*  
   *Appliances Co., Inc.*

By _____  
   Andrew L. Zwerling (AZ-5455)  
   Colleen M. Tarpey (CT-7572)  
111 Great Neck Road  
Great Neck, NY 11021  
(516) 393-2200