UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

BEVERLY HERTZOFF, EDWIN
HERTZOFF, AND CLAYTON HERTZOFF,

          Plaintiffs,                       07 Civ. 3157 (CM)(MHD)

    -against-

NOREEN DIAZ AND UNITED
ORTHOPAEDIC APPLIANCES CO., INC.,

          Defendants.

------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

McMahon, J.:

     United Orthopaedic Appliances, Inc. (UOA) was founded, owned and operated by members of plaintiff Beverly Hertzoff's family for a century. In 2006, plaintiffs sold UOA to defendant Noreen Diaz pursuant to an agreement that obligated Diaz and UOA to: (1) bill and collect receivables of UOA "in the normal course of the corporation's operations" and expend each and every dollar so collected to pay off a line of credit from HSBC Bank that had been guaranteed by plaintiff Beverly Hertzoff; (2) employ plaintiff Clayton Hertzoff and pay him salary and commissions for 10 years; and (3) pay below market rent for UOA's space at 791 Broadway. Diaz paid no other compensation for the company up front, although she agreed that, at the end of two years, she would pay off any deficiency between the Net Accounts Receivable and the Accounts Payable, up to the sum of $100,000.

     The amended complaint in this action charges that Diaz and UOA have breached the first two of those three undertakings. Plaintiffs allege that Diaz and UOA have not billed and collected receivables that went on the books while the Hertzoffs owned the company; and to the extent they have collected on the receivables, defendants have not used whatever monies were collected, "dollar-for-dollar," to reduce the Accounts Payable, which caused HSBC to call the loan and forced Beverly Hertzoff, using her own funds, to pay off the $32,000 balance. They also allege that defendants breached Clayton Hertzoff's employment agreement by taking unauthorized and illegal deductions from Hertzoff's pay (for breakage and for difficulties in collection), and by failing to pay an agreed-upon bonus. They further allege that defendants failed to keep their written commitment that Clayton would serve as Prosthetist and Manager of the Orthotics and Prosthetics Shop, thereby negatively impacting his ability to earn commissions,

and they charge that defendants asked Clayton to engage in illegal billing activities. The totality of these actions allegedly forced Clayton to leave his job with the company; he alleges that he was constructively discharged.

Defendants move to dismiss the complaint. They argue that the claim for the alleged breach of their obligation to bill and collect in the normal course of operations, and to pay off the HSBC line of credit "dollar for dollar" with the proceeds so collected, is "woefully premature" and not ripe for adjudication. And they argue that Clayton Hertzoff has failed to state a claim for breach of his employment contract.

Defendants are wrong on both counts. The motion to dismiss is denied.

**Count One: Breach of Contract**

Section 1.3 of the Stock Purchase Agreement provides as follows:

> Accounts Receivable. Purchaser shall cause the 'Net Accounts Receivable' to be billed and collected, to the extent reasonably collectable, in the normal course of the Corporation's operations . . . . Each dollar of the Net Accounts actually collected will be allocated to discharge the Accounts Payable . . . . In the event that the Corporation's Net Accounts Receivable are less than the Accounts Payable, Purchaser shall fund such shortfall up to a maximum amount of One Hundred Thousand Dollars ($100,000), and shall apply such funds to discharge the Accounts Payable, to the extent that Purchaser is responsible to fund the Net Accounts Receivable Shortfall thereunder . . . .

Among the accounts payable of the business at the time of sale was a line of credit in the amount of $32,000 from HSBC Banking Corporation. The line of credit was guaranteed by plaintiff Beverly Hertzoff.

Plaintiffs allege that defendants had a duty to bill and collect the accounts receivable in the ordinary course of UOA's operations, which means on a regular and recurring basis, rather than on any deferred basis. Reading the plain language of Section 1.3, they are correct.

Plaintiffs also assert that defendants had to use any funds collected in respect of the Net Accounts Receivable to pay off Accounts Payable from the Hertzoff era, including the HSBC loan. Again, reading the plain language of Section 1.3, they are correct. Section 1.3 is unambiguous; it does not contemplate that the money collected in respect of Hertzoff-era Accounts Receivable can be used to fund ongoing business operations or vacations to Brazil by the Diazes. Those monies are to be used, "dollar for dollar," to pay off Hertzoff-era debts. I reject categorically defendants' assertion, under a theory that "money is fungible," that the new owner could use funds collected from Hertzoff-era accounts for other purposes and defer payment of Accounts Payable until the end of the two year collection period provided for in the Stock

Purchase Agreement, at which point it would tote up the amount of receivables collected, apply that amount on its books to accounts payable and make up any shortfall that appeared as an accounting matter. Such a reading of the contract is utterly untenable. In the real world, debtors are entitled to payment of their debts, and can be expected to take action to collect on those debts – including calling loans – if regular payments are not made. It would be absurd to read Section 1.3 in a manner that would expose the sellers of the business to personal liability for debts of the business when the clear import of the language of the contract is that those debts would be paid out of proceeds realized from the business. Paying down the debts of the business was the principal consideration for the sale of the business. Money paid two years from now for a debt owed today is not "fungible" with money paid on the debt today.[1]

To the extent that defendants collected money on Hertzoff-era receivables and did not apply that money, dollar-for-dollar, to Hertzoff-era payables, defendants would appear to be in breach of the Stock Purchase Agreement. It appears that at least plaintiff Beverly Hertzoff can state a claim for damages for that breach, in that she has been forced to make good on a personal guarantee and to pay off one of the Hertzoff-era accounts payable out of her own funds, when it should have been paid off out of funds collected from Hertzoff-era customers.[2] Therefore, the complaint states a present claim for breach of the Stock Purchase Agreement. Defendants may well have a defense – they assert in their moving papers that many of the Hertzoff-era receivables are uncollectable – but there is absolutely no basis on which to conclude that each and every possible claim for breach of contract that might be asserted under Section 1.3 of the Stock Purchase Agreement is premature.

For this reason, the motion to dismiss Count One is denied.

**Breach of Employment Contract and Constructive Discharge**

Clayton Hertzoff is the only plaintiff on these claims.

Defendants allege that Clayton has failed to assert a material breach of his employment agreement because the allegedly illegal deductions made from his pay and commissions were not material. I disagree. It is illegal, under New York's Labor Law, for an employer to make

---

[1] Because money is fungible, the actual dollar bills collected from customers did not have to be sent to HSBC; different dollar bills, or a check or money order, could have been used. But the fungibility of money has nothing to do with defendants' ongoing obligation to use whatever funds they collected from the Hertzoffs' customers to pay down the Hertzoffs' bills.

[2] This detail does not appear in the pleading, but in the papers in opposition to the motion. In the complaint the claim for breach of contract is brought on behalf of "plaintiffs," without distinction, but it appears that some plaintiffs may have been damaged by the alleged breach of contract and some may not have been damaged. I expect plaintiffs to file an amended complaint that distinguishes among each of the three Hertzoffs in this regard. As additional time has passed since the filing of this action, plaintiffs should update their pleading to assert any new damages that any of them may have suffered since last summer.

deductions from the wages of an employee, unless those deductions are (a) made in accordance with a law or a governmental agency rule or regulation, or (b) expressly authorized in writing by the employee and are for the benefit of the employee. N.Y. LAB. LAW § 193 (McKinney 2002). The deductions allegedly taken by defendants, if proved, would run afoul of that law. Violation of § 193 carries both civil and criminal penalties. *See* N.Y. LAB. LAW §§ 197, 198-a. Thus, any illegal deduction from wages qualifies as material. Moreover, compensation is, from the employee's standpoint, *the* material term of any employment agreement, so an employer's failure to pay the compensation to which the parties agreed is necessarily material.

Clayton also asserts a claim under New York Labor Law Section 191-c for failure to pay him commissions earned and owing within five business days after the termination of his employment. Defendants move to dismiss this claim pursuant to Rule 12(b)(6) because, they say, Clayton alleges in the complaint that he was still employed by UOA at the time this lawsuit was commenced. In fact, he does no such thing. The Amended Complaint alleges that "at all relevant times, plaintiff Clayton Hertzoff was an employee of Defendant UOA." (Am. Compl. ¶ 21.) The phrase "at all relevant times" does not necessarily include the date of the filing of the action, and I do not so read the pleading. Therefore, that aspect of defendants' motion must be denied.

Clayton's claim for constructive discharge, on the ground that defendants asked him to perform illegal acts and rendered it impossible for him to perform the work anticipated by the employment agreement, is adequately pleaded and will be adjudicated in due course.

Finally, Clayton's claim for anticipatory breach of the employment agreement will not be dismissed on the pleading. Clayton alleges that Noreen Diaz announced that UOA would not be paying him in accordance with the terms of the Agreement. If, after discovery, it appears that the claim does not withstand scrutiny, it can be dealt with on a motion for summary judgment.

## Conclusion

At the outset of their brief in support of the motion to dismiss, defendants' counsel implicitly threatens plaintiffs' counsel, by asserting that plaintiffs' counsel have "tossed by the wayside" their obligations under Rule 11. Actually, if anyone has acted in violation of Rule 11, it is defendants' counsel. I have rarely seen such an utterly meritless motion to dismiss. It is denied in all respects.

I am not imposing sanctions *sua sponte* and I am not inviting a motion for sanctions, either. I would rather proceed to litigate the merits of this action and see where the chips fall.

Dated: February 8, 2008

_____
U.S.D.J.

BY ECF TO ALL COUNSEL